# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC.; <br><br> AMERICAN PSYCHOLOGICAL ASSOCIATION, INC.; and <br><br> NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC., <br><br>            Plaintiffs, <br><br> v. <br><br> PUBLIC.RESOURCE.ORG, INC., <br><br>            Defendant. | Case No. 1:14-cv-00857-CRC <br><br> **PUBLIC.RESOURCE.ORG, INC.'S COUNTERCLAIM FOR DECLARATORY RELIEF; ANSWER TO COMPLAINT FOR COPYRIGHT INFRINGEMENT AND CONTRIBUTORY COPYRIGHT INFRINGEMENT; AND DEMAND FOR TRIAL BY JURY** <br><br> Action Filed:   May 23, 2014 |
| PUBLIC.RESOURCE.ORG, INC., <br><br>            Counterclaimant, <br><br> v. <br><br> AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC.; <br><br> AMERICAN PSYCHOLOGICAL ASSOCIATION, INC.; and <br><br> NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC., <br><br>            Counterdefendants. | |

## COUNTERCLAIM FOR DECLARATORY RELIEF

Defendant and Counterclaimant Public.Resource.Org, Inc. ("Public Resource") counterclaims against Plaintiffs and Counterclaim-Defendants American Educational Research Association, Inc. ("AERA"), American Psychological Association, Inc. ("APA"), and National Council on Measurement in Education, Inc. ("NCME") as follows:

## INTRODUCTION

1.      As part of its mission to protect and promote the right of the public to know and speak the laws that govern it, Public Resource has undertaken to make certain edicts of government available on a noncommercial basis.

2.      Regulations promulgated by federal, state, and local governments are a fundamental component of modern government.

3.      Most of the federal law that governs daily life in the United States is in the form of regulations promulgated by federal agencies.

4.      Standards incorporated by reference into federal regulations carry the same force of law as regulations incorporated directly into the Code of Federal Regulations.

5.      The Code of Federal Regulations incorporates by reference the 1999 edition of the *Standards for Educational and Psychological Testing* ("1999 Standard"). *E.g.*, 34 C.F.R. §§ 462.13(c)(1), 668.148(a)(1)(iv).

6.      Various states have also incorporated the 1999 Standard by reference into their laws. The Minnesota Administrative Rules incorporate the 1999 Standard by reference at Section 4761.2460. The North Carolina Administrative Code incorporates the 1999 Standard by reference at Chapter 21, Section 30.0102. The Code of Maryland Administrative Regulations incorporate the 1999 Standard by reference at Section 09.12.26.04.

1

7.      Defendant-Counterclaimant Public Resource posted the 1999 Standard in Portable Document Format (PDF) on its website.

8.      Plaintiffs-Counterclaim Defendants take the position that they have a privileged relationship to the 1999 Standard despite its incorporation into federal law.

9.      Plaintiffs-Counterclaim Defendants take the position that copyright law gives them a privileged relationship to the 1999 Standard despite its incorporation into federal and state law.

10.     Plaintiffs-Counterclaim Defendants take the position that copyright law gives them the power to deny others the lawful opportunity to make reproductions of the 1999 Standard despite its incorporation into federal and state law.

11.     Plaintiffs-Counterclaim Defendants take the position that copyright law gives them the power to deny others the lawful opportunity to prepare derivative works based upon the 1999 Standard despite its incorporation into federal and state law.

12.     Plaintiffs-Counterclaim Defendants take the position that copyright law gives them the power to deny others the lawful opportunity to distribute to the public copies of the 1999 Standard despite its incorporation into federal and state law.

13.     By claiming the power under copyright law to deny others the lawful opportunity to engage in certain activities with respect to the 1999 Standard, Plaintiffs-Counterclaim Defendants function as gatekeepers to the 1999 Standard despite its incorporation into federal and state law.

14.     Plaintiffs-Counterclaim Defendants claim the power to set the conditions under which the public shall have access to the 1999 Standard, and at what price the public may gain certain rights with respect to it.

15.     Copyright does not give any person or entity the power to control or limit access to, or use of, the content of law.

16.     Copyright does not give any person or entity the power to control or limit access to, or use of, the content of law incorporated by reference.

17.     Organizations like Plaintiffs-Counterclaim Defendants are free to assert copyright in standards to the extent the law does *not* incorporate those standards by reference.

18.     Organizations like Plaintiffs-Counterclaim Defendants are free to sell the standards they create, whether or not government entities have incorporated them into law, in any format.

19.     The law does not permit Plaintiffs-Counterclaim Defendants to prohibit Public Resource, or any member of the public, from accessing, reproducing, posting, translating, reformatting, annotating, or publishing the law, or enabling others to do so.

## PARTIES

20.     Defendant-Counterclaimant Public Resource is a California nonprofit corporation with its principal place of business at 1005 Gravenstein Highway North, Sebastopol, CA, 95472.

21.     Plaintiff-Counterclaim Defendant AERA is a District of Columbia not-for-profit corporation with its principal place of business at 1430 K Street NW, Suite 1200, Washington, DC 20005.

22.     Plaintiff-Counterclaim Defendant APA is a District of Columbia not-for-profit corporation with its principal place of business at 750 First Street NE, Washington, DC 20002.

23.     Plaintiff-Counterclaim Defendant NCME is a District of Columbia not-for-profit corporation with its principal place of business at 2424 American Lane, Madison, WI 53704.

## JURISDICTION AND VENUE

24.    This Court has subject-matter jurisdiction over these counterclaims pursuant to 17 U.S.C. § 101 et seq. (the Copyright Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (exclusive federal copyright jurisdiction); and 28 U.S.C. § 2201 (the Declaratory Judgment Act).

25.    This Court has personal jurisdiction over AERA, APA, and NCME in that each Plaintiff-Counterclaim Defendant resides, may be found, or transacts business in this District. Public Resource believes and therefore alleges that AERA and APA maintain offices in Washington, DC for the conduct of their regular activities.

26.    This Court also has personal jurisdiction over each Plaintiff-Counterclaim Defendant because each submitted to such jurisdiction for purposes of this case by filing claims against Public Resource.

27.    Venue is proper in this court pursuant to 28 U.S.C. § 1391 and § 1400 because each Plaintiff-Counterclaim Defendant resides and may be found in this District, and because Plaintiffs-Counterclaim Defendants filed this lawsuit in this District.

## FACTS

### I.    Public Resource's Operations

28.    Public Resource is a tax-exempt, non-profit, public interest organization. Its mission is to improve public access to public records and the law.

29.    The growth of the Internet provides a tremendous opportunity for government to inform its citizens in a broad and timely manner about the legal standards that govern education, employment, and other important areas of life. It also allows business enterprises, university

professors and students, non-profits, and citizens to better organize and use this information. Public Resource exists to help realize these opportunities.

30.     To accomplish this mission, Public Resource acquires public records, including court decisions, tax filings, statutes, and regulations, and posts them online in easily accessible formats that make them more useful to readers, entirely free of charge.

31.     The Judicial Conference of the United States and members of both houses of Congress, among others, have recognized Public Resource's contributions to the public interest.

32.     Public Resource operates the websites public.resource.org, law.resource.org, house.resource.org, and bulk.resource.org.

33.     Public Resource also operates a program that helps the public access U.S. Government-produced videos (such as training films), called FedFlix, which Public Resource originally developed in a joint venture with the National Technical Information Service and subsequently in cooperation with the Archivist of the United States. FedFlix content has been viewed more than 29 million times on YouTube.com.

34.     Public Resource hosts standards that various government entities have incorporated into law at law.resource.org.

35.     Public Resource reformats some of the laws it posts, including some standards incorporated by reference, in order to make them easier to find, more useful, and more accessible to the public.

36.     This reformatting includes putting standards into standard Hypertext Markup Language (HTML), and converting graphics into the standard Scalable Vector Graphics format.

37.     These steps make the standards, including the diagrams they contain, viewable with many different kinds of computer hardware and software, more accessible to people with disabilities, and easier to translate and annotate.

38.     Government employees, academics, education professionals, and other individuals use the material Public Resource posts to learn about and follow the law, and to evaluate others' compliance with the law.

39.     Lowering barriers to access to standards that the law incorporates means that students, educators, government employees, public interest organizations, journalists, and concerned citizens will be more likely to read, understand, apply, and improve the law.

40.     These activities empower citizens and encourage participation in government and in education and employment policy debates.

41.     Public Resource does not post privately drafted standards, except to the extent that national, federal, state, or local governments have incorporated them into law.

42.     Where a government has incorporated a privately drafted standard, and the entity that drafted the standard has adopted and published a new version of the standard, and no government has incorporated the new version into law, Public Resource does not post the new version, because the new version is not law.

43.     Public Resource maintains an agent, registered with the U.S. Copyright Office, to receive notifications of claimed copyright infringement, pursuant to the Digital Millennium Copyright Act, 17 U.S.C. § 512(c)(2).  Public Resource provides contact information for that agent at https://public.resource.org/copyright_policy.html.

44.     Public Resource does not sell any copies of the law or charge for any access to the law, including standards incorporated by reference such as the one at issue in this litigation, the 1999 Standard.

**II.     Plaintiff-Counterclaim Defendants' Operations**

45.     Plaintiffs-Counterclaim Defendants have multiple motivations to develop and disseminate standards like the *Standards for Educational and Psychological Testing*.

46.     Members of organizations like the Plaintiffs-Counterclaim Defendants have incentives to encourage and fund their organizations to develop standards.

47.     Standards engender uniform practices within a field. That uniformity creates efficiencies, reduces waste, and lowers costs for professionals in the field, especially when switching jobs or locations.

48.     The development of standards reduces duplication of effort for test writers, among others.

49.     Uniform educational testing standards allow for more direct comparison of educational facilities and providers.

50.     Testing standards can promote norms of fairness and equality, and can serve as methods to reduce bias in admission, hiring, or provision of services or funds.

51.     Norms of fairness and equality, and the reduction of bias, improve the public perception of members of organizations like the Plaintiffs-Counterclaim Defendants.

52.     The law does not incorporate the majority of standards developed by organizations like Plaintiffs-Counterclaim Defendants.

53.     Professionals use many standards that the law does not incorporate.

54.     Organizations like Plaintiffs-Counterclaim Defendants update standards regularly regardless of whether the law incorporates such updates.

55.     For example, Public Resource has posted the 1999 edition of the *Standards for Educational and Psychological Testing*.

56.     The federal government has incorporated the 1999 edition of the *Standards for Educational and Psychological Testing* into federal regulations.

57.     Public Resource believes and therefore alleges that Plaintiffs-Counterclaim Defendants are developing a new edition of the *Standards for Educational and Psychological Testing*.

58.     The new version of the *Standards for Educational and Psychological Testing* is not incorporated into federal regulations.

59.     Public Resource has not posted any draft of the new version of the *Standards for Educational and Psychological Testing*.

60.     Plaintiffs-Counterclaim Defendants have multiple ways to fund the development and dissemination of standards.

61.     Public Resource believes and therefore alleges that Plaintiff-Counterclaim Defendant AERA receives revenue from member fees.

62.     Public Resource believes and therefore alleges that Plaintiff-Counterclaim Defendant APA receives revenue from member fees.

63.     Public Resource believes and therefore alleges that Plaintiff-Counterclaim Defendant NCME receives revenue from member fees.

64.     Public Resource believes and therefore alleges that Plaintiff-Counterclaim Defendant AERA receives revenue from the sale of copies of materials other than the 1999 Standard.

65.     Public Resource believes and therefore alleges that Plaintiff-Counterclaim Defendant APA receives revenue from the sale of copies of materials other than the 1999 Standard.

66.     Public Resource believes and therefore alleges that Plaintiff-Counterclaim Defendant NCME receives revenue from the sale of copies of materials other than the 1999 Standard.

67.     The 1985 edition of the *Standards for Educational and Psychological Testing*, as amended in 1989, was incorporated by reference in federal regulations in 1995. 60 Fed. Reg. 61830 (December 1, 1995).

68.     An edition of the *Standards for Educational and Psychological Testing* was cited in the Supreme Court's opinions in *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975) and *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977 (1988).

69.     Public Resource believes and therefore alleges that Plaintiff-Counterclaim Defendant AERA was aware, prior to the filing of this lawsuit, that the 1999 Standard was incorporated by reference into federal or state regulations.

70.     Public Resource believes and therefore alleges that Plaintiff-Counterclaim Defendant APA was aware, prior to the filing of this lawsuit, that the 1999 Standard was incorporated by reference into federal or state regulations.

71.     Public Resource believes and therefore alleges that Plaintiff-Counterclaim Defendant NCME was aware, prior to the filing of this lawsuit, that the 1999 Standard was incorporated by reference into federal or state regulations.

72.     Public Resource believes and therefore alleges that Plaintiff-Counterclaim Defendant AERA has never asked any U.S. Government entity to refrain from incorporating the 1999 Standard into regulations.

73.     Public Resource believes and therefore alleges that Plaintiff-Counterclaim Defendant APA has never asked any U.S. Government entity to refrain from incorporating the 1999 Standard into regulations.

74.     Public Resource believes and therefore alleges that Plaintiff-Counterclaim Defendant NCME has never asked any U.S. Government entity to refrain from incorporating the 1999 Standard into regulations.

75.     Public Resource believes and therefore alleges that Plaintiff-Counterclaim Defendant AERA has never asked any U.S. Government entity to compensate AERA for incorporating the 1999 Standard into regulations.

76.     Public Resource believes and therefore alleges that Plaintiff-Counterclaim Defendant APA has never asked any U.S. Government entity to compensate APA for incorporating the 1999 Standard into regulations.

77.     Public Resource believes and therefore alleges that Plaintiff-Counterclaim Defendant NCME has never asked any U.S. Government entity to compensate NCME for incorporating the 1999 Standard into regulations.

78.     Public Resource believes and therefore alleges that Plaintiff-Counterclaim Defendant AERA has never protested any U.S. Government entity's incorporation of any edition of the *Standards for Educational and Psychological Testing* into regulations.

79.     Public Resource believes and therefore alleges that Plaintiff-Counterclaim Defendant APA has never protested any U.S. Government entity's incorporation of any edition of the *Standards for Educational and Psychological Testing* into regulations.

80.     Public Resource believes and therefore alleges that Plaintiff-Counterclaim Defendant NCME has never protested any U.S. Government entity's incorporation of any edition of the *Standards for Educational and Psychological Testing* into regulations.

81.     A website that describes the *Standards for Educational and Psychological Testing* states that the document has been "referenced in law and cited in Supreme Court and other judicial decisions lending additional authority to the document."  Wayne Camara, *Influence in Assessment Development and Use*, at http://www.teststandards.org/resources.htm.

## III.     <u>Standards That The Law Incorporates</u>

82.     Standards that the law incorporates become part of the substance of the law.

83.     Failing to follow a standard that the law incorporates has significant consequences. For example, on July 1, 2004, the Department of Education published a Federal Register notice inviting state, local, and tribal educational agencies, institutions of higher learning, and non-profits to submit applications for awards of federal funds to be used to improve services to children with disabilities. One of the requirements for the award was that "[t]o the greatest possible degree, the principles and guidelines developed under this goal must be compatible extensions of the Standards for Educational and Psychological Testing." 69 Fed. Reg. 39913, 39914 (2004).

84.     As another example, the State of Minnesota requires that "a person who seeks a permit to administer examinations that are independent of a training course" must "include documentation that the examination meets the validity standards for educational and psychological testing specified in" the 1999 Standards. Minn. Admin. Rules § 4761.0100.

85.     Other regulations, funding opportunities, and Requests for Proposals require compliance with all or part of the *Standards for Educational and Psychological Testing*.

86.     The process of incorporating a standard into law is deliberative.

87.     The process of incorporating a standard into law involves the time, attention, and judgment of administrative agencies.

88.     Incorporating a standard into law often involves the soliciting and consideration of public comments, as with other laws and regulations.

89.     The incorporation of a standard into law by a government entity benefits the organization that developed the standard.

90.     For example, the incorporation of a standard signifies the government entity's approval of the work of the organization.

91.     Incorporation also gives users of a standard a degree of confidence that the standard will continue to be relevant.

92.     Incorporation may also give a competitive advantage to professionals with expertise in applying the standard, because the application of that expertise becomes a legal requirement.

93.     The general public has an interest in the effect of laws and regulations on society, and in compliance with the laws.

94.     For example, the general public has an interest in learning how well a standard that purports to establish a basis for fair evaluation of students and employees addresses issues of racial, ethnic, economic, or other bias in standardized testing.

95.     Public access to the 1999 Standard is limited. For example, federal regulations require that a copy of all material incorporated by reference be deposited with the Office of the Federal Register. Public Resource believes and therefore alleges that a copy of the 1999 Standard was deposited in this manner. However, the public can view that deposited copy only by making an appointment with that office, in Washington DC, on a specific date and time. http://www.archives.gov/federal-register/cfr/ibr-locations.html.

96.     The website www.teststandards.org contains the table of contents for the 1999 Standard but not its contents.

97.     Public Resource believes and therefore alleges that none of the Plaintiffs-Counterclaim Defendants provides access to the contents of the 1999 Standard in an electronically searchable format.

98.     Lack of access to the contents of the 1999 Standard in a machine-readable format impedes access to the 1999 Standard by people with disabilities.

99.     Lack of access to the contents of the 1999 Standard in a searchable and machine-readable format impedes the ability of researchers, academics, nonprofit organizations, and other users of the standard to search the 1999 Standard and to analyze it algorithmically, making some forms of research and analysis more difficult.

100.    Incorporating a standard by reference into the Code of Federal Regulations requires the same rulemaking procedures as other forms of promulgation of federal regulations. 47 Fed. Reg. 34108 (Aug. 6, 1982), Sec. 51.1(c)(2), provides that incorporation by reference

13

"[i]s not intended to detract from the legal or practical attributes of the system established by the Federal Register Act, the Administrative Procedure Act, the regulations of the Administrative Committee of the Federal Register, and the acts which require publication in the Federal Register."

101.    Plaintiffs-Counterclaim Defendants charge fees for access to the 1999 Standard.

102.    For example, the 1999 Standard is available from the AERA Bookstore for $39.95 for AERA members; $49.95 for non-members. http://www.aera.net/tabid/11736/Default.aspx.

103.    Printed copies of the 1999 Standard are also available for rental from Amazon.com for $18.00. http://www.amazon.com/gp/product/0935302255/ref=olp_product_details.

104.    Public Resource believes and therefore alleges that these fees are an impediment to many members of the public who have an interest in the 1999 Standard. In particular, the fees are an impediment for nonprofit organizations that analyze or seek to influence the law on behalf of the public.

105.    Public Resource believes and therefore alleges that these fees are an impediment to government agencies and companies seeking funding or business opportunities from government agencies.

106.    Public Resource believes and therefore alleges that these fees are an impediment to educational facilities, including public schools that seek to adhere to government guidelines.

107.    Uncertainty over which uses are permitted by copyright law discourages the public from sharing, annotating, excerpting, quoting, and otherwise using standards that the law incorporates.

108.    Uncertainty over whether copyright law applies to standards that the law incorporates, and the threat of high civil damages, injunctions, criminal prosecution, and legal expenses discourage the public from sharing, annotating, excerpting, quoting, and otherwise using such standards.

109.    This discouragement diminishes the public's familiarity with, understanding of, and ability to engage constructively with these important pieces of public law.

110.    When the public faces obstacles in using incorporated standards, the public's familiarity with, understanding of, and ability to engage constructively with these important pieces of public law may diminish.

111.    When the public faces costs in using incorporated standards, the public's familiarity with, understanding of, and ability to engage constructively with these important pieces of public law may diminish.

112.    Public Resource's posting of the 1999 Standard does not impair Plaintiffs-Counterclaim Defendants' ability to develop standards.

113.    Public Resource's posting of the 1999 Standard has given the public greater access to it.

114.    Public Resource's posting of the 1999 Standard has given the public greater power to analyze and understand it.

115.    Public Resource's posting of the 1999 Standard has lowered the cost of public access to a portion of the law.

<u>COUNT I</u>

**[Declaratory Relief Pursuant to 28 U.S.C. § 2201, *et seq.* (Declaratory Judgment Act) and Title 17 U.S.C. (Copyright Act of 1976)]**

116.    Defendant-Counterclaimant Public Resource incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

117.    The people are the authors of the law, regardless of who first pens the words that later become law through enactment by a legislature or government agency.

118.    The principle that the law must be public and available to citizens to read and speak has its roots in the concept of the rule of law itself.

119.    The legal principle that ignorance of the law is no defense presumes that all citizens have access to the law.

120.    The First, Fifth and Fourteenth Amendments to the U.S. Constitution require that all people have the power to read, speak, and disseminate the law.

121.    Laws and regulations are in the public domain and not subject to copyright.

122.    Laws and regulations do not lose their public domain status and become subject to copyright restrictions because private parties drafted them.

123.    Laws and regulations do not lose their public domain status and become subject to copyright restrictions because they incorporate material that private parties drafted or prepared.

124.    There is only one way to express a particular law fully and authoritatively, namely with explicit reference to the language of the law and with explicit reference to any matters that the law incorporates within itself.

125.    Once the law incorporates material within itself, use of that material by the public or by private parties is lawful under the doctrine of merger.

126.    Public Resource's purpose in using the 1999 Standard is to facilitate scholarship, criticism, and analysis of education and employment law, to inform the public about the laws that govern them, and to encourage public engagement with education and employment law.

127.    Upon their incorporation into law, incorporated materials are entirely factual as statements of the law. Public Resource posted the 1999 Standard in its entirety. Scholarship, criticism, analysis, and other public engagement with the law is not possible without access to a complete standard. Therefore, Public Resource posted as much of the 1999 Standard as is necessary to fulfill its purposes.

128.    Public Resource's use of the 1999 Standard does not have an adverse effect on the market for the creation and use of educational testing standards.

129.    Thus, even if the 1999 Standard were protected by copyright after being incorporated into law, Public Resource's use is a fair use, and is not an infringement of copyright.

130.    There is a real and actual controversy between Public Resource and the Plaintiffs-Counterclaim Defendants regarding whether Public Resource's reproduction and posting of the 1999 Standard in a searchable format constitutes copyright infringement.

131.    The Plaintiffs-Counterclaim Defendants are seeking a broad injunction against Public Resource that would hinder Public Resource's activities.

132.    Those activities are part of Public Resource's mission of making the law accessible to all.

133.    Governments may – with the Plaintiffs-Counterclaim Defendants' knowledge and acquiescence – additionally incorporate into law other versions of the *Standards for Educational and Psychological Testing*.

134.     Access to future incorporated standards will accordingly be subject to Plaintiffs' claim of a power to control the expression of those standards.

135.     The Plaintiffs-Counterclaim Defendants would therefore have the power to inhibit public discourse about and public use of the law.

136.     The controversy between Public Resource and the Plaintiffs-Counterclaim Defendants is thus real and substantial and demands specific relief through a decree of a conclusive character.

137.     Public Resource is entitled to declaratory judgment that its reproduction, posting, or reformatting of the 1999 Standard does not infringe any copyright rights of Plaintiffs-Counterclaim Defendants.

## ANSWER TO COMPLAINT FOR COPYRIGHT INFRINGEMENT AND CONTRIBUTORY COPYRIGHT INFRINGEMENT

Defendant Public Resource responds to Plaintiffs' Complaint for Copyright Infringement and Contributory Copyright Infringement as follows:

1.     Defendant admits that this action purports to be by three non-profit organizations: the American Educational Research Association, Inc., the American Psychological Association, Inc., and the National Council on Measurement in Education, Inc.  Defendant admits that this action seeks injunctive relief against Public Resource for alleged copyright infringement and contributory copyright infringement.  Defendant denies the remaining allegations of paragraph 1 of the Complaint.

2.     Defendant admits the allegations of paragraph 2 of the Complaint.

3.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 3 of the Complaint and therefore denies the allegations.

4.     Defendant admits the allegations of paragraph 4 of the Complaint.

18

5.      Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 5 of the Complaint and therefore denies the allegations.

6.      Defendant admits the allegations of paragraph 6 of the Complaint.

7.      Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 7 of the Complaint and therefore denies the allegations.

8.      Defendant admits that Defendant is a California not-for-profit corporation having offices located at 1005 Gravenstein Highway North, Sebastopol, CA 95472.

9.      Defendant admits the allegations of paragraph 9 of the Complaint.

10.     Defendant admits that it has posted state and municipal codes, as well as certain standards that have been incorporated by reference into law, on the website https://law.resource.org.  Defendant denies the remaining allegations of paragraph 10 of the Complaint.

11.     Defendant denies the allegations of paragraph 11 of the Complaint.

12.     Defendant admits that it posts on the website https://law.resource.org certain public safety codes and other standards that have been incorporated by reference into law, without needing or seeking permission from any other person or entity.  Defendant denies the remaining allegations of paragraph 12 of the Complaint.

13.     Defendant admits that AERA and APA are located in Washington, DC. Defendant denies the remaining allegations of paragraph 13 of the Complaint.

14.     Defendant denies the allegations of paragraph 14 of the Complaint.

15.     Defendant denies the allegations of paragraph 15 of the Complaint.

16.     Defendant admits that the webpage https://public.resource.org/about/index.html allows the public to contribute donations to Public Resource by means of a credit card or PayPal

account.  Defendant admits that it has received donations or other support from Google, Yahoo!, the Electronic Frontier Foundation, Creative Commons, Justia, Fenwick & West LLP, Durie Tangri, Davis Wright Tremaine LLP, iRights.Law, Alston & Bird LLP, the Elbaz Family Foundation, the Cutts Foundation, the O'Reilly Foundation, the Beal Fund, the Sunlight Foundation, the Omidyar Network, and others.  Defendant denies the remaining allegations of paragraph 16 of the Complaint.

17.     Defendant denies the allegations of paragraph 17 of the Complaint.

18.     Defendant denies the allegations of paragraph 18 of the Complaint.

19.     Defendant admits that it entered into a past joint venture with the National Technical Information Service ("NTIS"), a bureau within the U.S. Department of Commerce, to digitize non-copyrighted videotapes within NTIS's collection, and that certain of the digitized videos are available on YouTube.  Defendant denies the remaining allegations of paragraph 19 of the Complaint.

20.      Defendant admits that Public Resource, through its President and founder Carl Malamud, testified on the subject of edicts of government during a hearing on the scope of copyright protection held by the U.S. House of Representatives Judiciary Committee, Subcommittee on Courts, Intellectual Property, and the Internet.  Defendant denies the remaining allegations of paragraph 20 of the Complaint.

21.     Defendant admits the allegations of paragraph 21 of the Complaint.

22.     Defendant denies the allegations of paragraph 22 of the Complaint.

23.     Defendant admits that like many other charities, it allows members of the public to purchase items bearing its logo, such as stickers, T-shirts, and books by its founder. To date, Public Resource has made less than $100 in revenue from the sale of any items. Public Resource

does not sell any items containing the text of any standard. The remainder of Public Resource's funding comes from charitable donations. Defendant denies the remaining allegations of paragraph 23 of the Complaint.

24.     Defendant admits that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Defendant admits that this action purports to allege claims arising under an Act of Congress relating to copyrights.  Defendant denies the remaining allegations of paragraph 24 of the Complaint.

25.     Defendant denies the allegations of paragraph 25 of the Complaint.

26.     Defendant denies the allegations of paragraph 26 of the Complaint.

27.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 27 of the Complaint and therefore denies the allegations.

28.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 28 of the Complaint and therefore denies the allegations.

29.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 29 of the Complaint and therefore denies the allegations.

30.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 30 of the Complaint and therefore denies the allegations.

31.      Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 31 of the Complaint and therefore denies the allegations.

32.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 32 of the Complaint and therefore denies the allegations.

33.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 33 of the Complaint and therefore denies the allegations.

34.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 34 of the Complaint and therefore denies the allegations.

35.     Defendant admits that the 1999 edition of "Standards for Educational and Psychological Testing" (the "1999 Standard") has been incorporated by reference into the Code of Federal Regulations and into state regulations and has also been cited in judicial decisions. Defendant lacks information or belief sufficient to admit or deny the remaining allegations of paragraph 35 of the Complaint and therefore denies the allegations.

36.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 36 of the Complaint and therefore denies the allegations.

37.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 37 of the Complaint and therefore denies the allegations.

38.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 38 of the Complaint and therefore denies the allegations.

39.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 39 of the Complaint and therefore denies the allegations.

40.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 40 of the Complaint and therefore denies the allegations.

41.     Defendant denies the allegations of paragraph 41 of the Complaint.

42.     Defendant denies the allegations of paragraph 42 of the Complaint.

43.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 43 of the Complaint and therefore denies the allegations.

44.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 44 of the Complaint and therefore denies the allegations.

45.     Defendant admits that it posted the 1999 Standard on the webpage https://law.resource.org/pub/us/cfr/ibr/001/aera.standards.1999.pdf.  Defendant denies the remaining allegations of paragraph 45 of the Complaint.

46.     Defendant admits that it posted the 1999 Standard on the webpage https://law.resource.org/pub/us/cfr/ibr/001/aera.standards.1999.pdf without needing or seeking permission from Plaintiffs.  Defendant denies the remaining allegations of paragraph 46 of the Complaint.

47.     Defendant admits that it posted the 1999 Standard on the webpage https://law.resource.org/pub/us/cfr/ibr/001/aera.standards.1999.pdf along with a Certificate that states that the Code of Federal Regulations incorporated the 1999 Standard by reference at 34 C.F.R. 668.148.  Defendant denies the remaining allegations of paragraph 47 of the Complaint.

48.     Defendant admits that Defendant posted the 1999 Standard on the webpage https://archive.org/details/gov.law.aera.standards.1999 along with a Certificate that states that the Code of Federal Regulations incorporated the 1999 Standard by reference at 34 C.F.R. 668.148.  Defendant admits that Defendant also posted the 1999 Standard and the same accompanying Certificate to the webpage https://archive.org/details/gov.law.aera.standards.1999 in the same format as it posted to the webpage https://law.resource.org/pub/us/cfr/ibr/001/aera.standards.1999.pdf.  Defendant denies the remaining allegations of paragraph 48 of the Complaint.

49.     Defendant admits that it declined to comply with Plaintiff AERA's demand that Defendant remove the 1999 Standard, as incorporated by reference into the Code of Federal Regulations and various state regulations, from the webpage

https://law.resource.org/pub/us/cfr/ibr/001/aera.standards.1999.pdf.  Defendant denies the remaining allegations of paragraph 49 of the Complaint.

## FIRST CAUSE OF ACTION

50.     Defendant repeats and incorporates here its responses to paragraphs 1-49 of the Complaint.

51.     Defendant denies the allegations of paragraph 51 of the Complaint.

52.     Defendant denies the allegations of paragraph 52 of the Complaint.

53.     Defendant denies the allegations of paragraph 53 of the Complaint.

54.     Defendant denies the allegations of paragraph 54 of the Complaint.

55.     Defendant denies the allegations of paragraph 55 of the Complaint.

## SECOND CAUSE OF ACTION

56.     Defendant repeats and incorporates here its responses to paragraphs 1-55 of the Complaint.

57.     Defendant denies the allegations of paragraph 57 of the Complaint.

58.     Defendant denies the allegations of paragraph 58 of the Complaint.

59.     Defendant denies the allegations of paragraph 59 of the Complaint.

60.     Defendant denies the allegations of paragraph 60 of the Complaint.

61.     Defendant denies the allegations of paragraph 61 of the Complaint.

62.     Defendant denies the allegations of paragraph 62 of the Complaint.

63.     Defendant denies the allegations of paragraph 63 of the Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

Defendant asserts the following defenses, whether affirmative or otherwise.  Defendant reserves all further defenses that may now or in the future exist based on discovery and further factual investigation in the case.

1.      The Complaint and each claim within it fail to allege facts sufficient to state a
cause of action.

2.      Plaintiffs have no copyrights in works that government entities have incorporated
by reference into law.

3.      Lack of ownership of the alleged copyrights bars Plaintiffs' claims.

4.      The doctrine of copyright fair use bars Plaintiffs' claims.

5.      The doctrine of unclean hands bars Plaintiffs' claims.

6.      The doctrine of copyright misuse bars Plaintiffs' claims.

7.      Waiver and estoppel bar Plaintiffs' claims.

8.      Lack of irreparable injury bars Plaintiffs' demand for injunction.

9.      Injunction would greatly harm the public interest and thus the public interest bars
Plaintiffs' demand for injunction.

## PRAYER FOR RELIEF

WHEREFORE, Public Resource prays for judgment as follows:

1.      That Plaintiffs-Counterclaim Defendants take nothing by their claims and that the
Court enter judgment in favor of Public Resource on both the complaint and the
counterclaim;

2.      For a declaration that Public Resource is not liable for copyright infringement for
the reproduction or posting of the 1999 Standard, or for making the 1999 Standard
available to the public;

3.      For a declaration that Public Resource is not liable for copyright infringement for
any conduct with respect to other persons' reproduction, posting, publication,
reformatting, or other use of the 1999 Standard;

4.      For an order enjoining Plaintiffs-Counterclaim Defendants, their agents,

attorneys, and assigns from asserting any copyright claim against Public Resource

in connection with reproduction or posting of the 1999 Standard;

5.      For costs of suit incurred herein, including reasonable attorneys' fees; and

6.      For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Defendant-Counterclaimant Public Resource requests trial by jury.


Dated:  July 14, 2014                              Respectfully submitted,


                                                   */s/ Andrew P. Bridges*
                                                   Andrew P. Bridges (admitted)
                                                   abridges@fenwick.com
                                                   FENWICK & WEST LLP
                                                   555 California Street, 12th Floor
                                                   San Francisco, CA 94104
                                                   Telephone:  (415) 875-2300
                                                   Facsimile:   (415) 281-1350

                                                   David Halperin (D.C. Bar No. 426078)
                                                   davidhalperindc@gmail.com
                                                   1530 P Street NW
                                                   Washington, DC 20005
                                                   Telephone: (202) 905-3434

                                                   Mitchell L. Stoltz (D.C. Bar No. 978149)
                                                   mitch@eff.org
                                                   ELECTRONIC FRONTIER FOUNDATION
                                                   815 Eddy Street
                                                   San Francisco, CA 94109
                                                   Telephone: (415) 436-9333
                                                   Facsimile:  (415) 436-9993

                                                   *Attorneys for Defendant-Counterclaimant*
                                                   *Public.Resource.Org, Inc.*