**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., and NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC.,<br><br>Plaintiffs/Counterdefendants,<br><br>v.<br><br>PUBLIC.RESOURCE.ORG, INC.,<br><br>Defendant/Counterclaimant. | Civil Action No. 1:14-cv-00857-TSC-DAR |

**DEFENDANT-COUNTERCLAIMANT PUBLIC.RESOURCE.ORG, INC.'S
OPPOSITION TO PLAINTIFFS-COUNTERDEFENDANTS' AMENDED MOTION
TO COMPEL DISCOVERY, PRIVILEGE LOG, AND FURTHER INITIAL
DISCLOSURES (DKT. 27)**

**Table of Contents**

                                                                                                          **Page**

INTRODUCTION ................................................................................................................... 1

PUBLIC RESOURCE CONSCIENTIOUSLY AND REASONABLY RESPONDED TO PLAINTIFFS' DISCOVERY REQUESTS. ............................................................................ 2

ARGUMENT ............................................................................................................................ 6

    A.     The Copyright Act Defines "Publication" and Plaintiffs Cannot Impose a Misleadingly Different Definition in This Copyright Dispute. ................................................................ 6

    B.     Plaintiffs' Motion Regarding Requests Including the Terms "View," "Access," and "Download" Are Moot. ............................................................................................... 7

    C.     Public Resource's Production Plan Is Reasonable and Timely. .......................................... 8

    D.     Plaintiffs Fail to Explain why Responses to Contention Interrogatories are Necessary at This Stage of Litigation. ................................................................................................. 8

    E.     Public Resource's Initial Disclosures Are Appropriate and Sufficient. ............................. 9

    F.     Plaintiffs Improperly Seek Rulings on Other Discovery Matters. ..................................... 11

CONCLUSION ........................................................................................................................ 11

## Table of Authorities

**CASES**

*Everett v. USAir Grp., Inc.*,
 165 F.R.D. 1 (D.D.C. 1995)..................................................................................................8, 9

*Robinson v. Champaign Unit 4 Sch. Dist.*,
 412 F. App'x 873 (7th Cir. 2011) ...............................................................................................10

*United States ex rel. Hunt v. Merck-Medco Managed Care, LLC*,
 223 F.R.D. 330 (E.D. Pa. 2004)..................................................................................................10

**STATUTES**

Copyright Act......................................................................................................................2, 6, 7

Section 101 of the Copyright Act ...............................................................................................5, 6

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure Rule 8(c)....................................................................................9

Federal Rules of Civil Procedure Rule 26(a).............................................................................9, 10

## **INTRODUCTION**

Defendant-counterclaimant Public.Resource.Org, Inc. ("Public Resource") is a nonprofit organization dedicated to open access to government documents, laws, and regulations. It has digitized judicial opinions, the Code of Federal Regulations, and state codes. As part of its open access efforts, it regularly posts standards that the government has incorporated into law by reference.

This litigation concerns one such posting. Plaintiffs-counterdefendants claim exclusive copyright over a federal mandate, in this case a standard the government has incorporated expressly, by reference, into federal law. Copyright law and the copyright-law significance of particular terms and actions thus play a significant role in discovery.

In the end, the discovery disputes at issue simply boil down to the fact that Plaintiffs disagree with the answers Public Resource gave in its discovery responses, and they disagree with Public Resource's legal positions. These are not grounds for a motion to compel.

Plaintiffs also unfairly accuse Public Resource of dragging its feet on amended discovery responses and document production. But Plaintiffs served discovery requests with several key terms that were unintelligible or at best misleading or ambiguous. Different interpretations of those terms would change the contours of the request. When Public Resource conferred with Plaintiffs about the definitions of these terms, Plaintiffs repeatedly offered contradictory, inconsistent, or changing definitions, including agreeing to one set of definitions on the phone and then backtracking and claiming a different set of definitions by email. It was *Public Resource* that offered written definitions that Plaintiffs finally agreed to only two days before Thanksgiving. After the holiday weekend, Public Resource acted promptly and served amended

written discovery responses based on the new definitions two weeks later, and it produced documents responsive to that same set just two weeks after that.

Public Resource has fairly and reasonably responded to Plaintiffs' discovery requests, and it will continue to do so.  Plaintiffs' remaining demands overreach.  Plaintiffs cannot unilaterally change the definition of a term in the Copyright Act nor demand that Public Resource agree to such a change.  Nor can Plaintiffs force Public Resource to respond prematurely to contention interrogatories on its defenses.  The defenses depend on discovery information that will unfold during the case, and Public Resource's legal and factual analysis of the information is incomplete.  Requiring contentions now would improperly force disclosure of strategies of ongoing legal and factual analysis that are not yet complete or ripe for disclosure; at this point they remain work product.  This Court should deny Plaintiffs' motion.

## PUBLIC RESOURCE CONSCIENTIOUSLY AND REASONABLY RESPONDED TO PLAINTIFFS' DISCOVERY REQUESTS.

Plaintiffs served eight interrogatories, nine requests for production, and eight requests for admission.  Of these, the scope of three interrogatories (Nos. 5, 6, and 7), three requests for production (Nos. 6, 7, and 8), and three requests for admission (Nos. 6, 7, and 8), all of which Plaintiffs have moved on, depended on the meanings of the terms "viewed," "accessed," or "downloaded."  Declaration of Andrew P. Bridges in Support of Public Resource's Opposition to Plaintiffs' Amended Motion to Compel ("Bridges Decl.") ¶ 2.  In the context of websites and online activities, these terms are ambiguous as different persons may use them to mean different actions or use some or all of them interchangeably.  *See id.*; Dkt. Nos. 27-10, 27-13 (letters explaining problem to Plaintiffs).

Public Resource raised this issue with Plaintiffs, and the parties conferred by letter on November 10, November 13, November 14, and November 19, 2014; by phone on November 20, 2014; and again by letter on November 21, November 24, and November 25, 2014. *Id.* at ¶¶ 3–5. In their letters before the November 20 call, Plaintiffs repeatedly made factually and technologically incorrect assertions about how both the Internet as a whole and Public Resource's website specifically function and thus Plaintiffs sought to impose distorted definitions of the terms "viewed," "accessed," and "downloaded." For example, in their November 14, 2014 letter, Plaintiffs claimed:

> "[D]ownload" refers to "the act of copying data and/or data files from one computer system to another, typically over the Internet." The term "viewed", however, refers to the "act of seeing or examining," which in this case relates to seeing the 1999 Standards on Public Resource's website. While "downloading" requires that data and/or data files be transferred from one computer system to another, "viewing" only requires seeing the data and or data files.

Dkt. 27-11 at 2. Plaintiffs' attempt at justifying their meanings demonstrated an incomprehension of the basic functionality of the Internet and the Web.

"Seeing or examining" someone else's web page on that person's site does not occur without a transfer of data. When a user visits a web page, the user's browser fetches data from the web page (typically HTML code and associated files) and uses the data, now on the user's own computer or device, to render on the display what appears as the web page. The data must reside on the user's computer, at least in RAM, in order for a person to load or "see" a web page. The "seeing" occurs within the person's own browser on the person's own system and display.

Of course, once a person has loaded the webpage in his or her computer in order to "see" it (by obtaining the code and files that make up the web page), that person may save the webpage data in a new file or group of files on the person's computer or other storage location for later

3

access, but that action, and the later access, would all take place on the user end with no involvement of Public Resource.

Similarly, for example, if a person views an opinion on PACER, that is only because PACER has transmitted the data to the user's computer or device, where it resides during its appearance on the display. If the person then saves the opinion to a PDF file on the person's computer, the person's later interaction with that file (such as opening the file to read the opinion) does not involve PACER in the activity.

Thus, Plaintiffs are wrong that "seeing or examining" the web page at issue on Public Resource's website would not involve the transfer of data or data files from one computer system or another, and they were also wrong in believing that Public Resource would have records of user's actions on the user's own machines.

Public Resource explained the problems with using factually incorrect and confusing definitions and sought definitions that would be both accurate and meaningful. Bridges Decl. ¶ 3. During the November 20th conference of counsel, Plaintiffs' counsel put forth a different set of definitions, proposing that "view" meant to "see it on my screen"; "download" means "take a file and save it to [a] hard drive or wherever else a user stores things" but does not include to print; and "access" meant to "pull up" by "typ[ing] an address into the browser address bar and access a website through a web browser" and did not differ from "view." *Id.* ¶ 4. The next day, Plaintiffs' counsel reneged on the definitions he offered during the telephone conference of November 20th and offered yet another set of definitions similar to the November 14, 2014 set which again misused and conflated the terms. *Id.* ¶ 5. Worse yet, he falsely claimed that Public Resource's counsel had agreed to such convoluted definitions. *Id.* When Public Resource responded with definitions that were technologically accurate yet distinguished between the

4

terms, Plaintiffs finally agreed to terms on November 25, 2014. *Id.* It was only at that point that Public Resource had a final set of requests it could respond to, and it promptly did so. Public Resource supplemented its responses to Interrogatories Nos. 5–7 and Requests for Documents Nos. 6–8 on December 15, 2014, as it had already informed Plaintiffs it would do once the parties came to a firm agreement on definitions. *Id.* ¶ 6.

Public Resource had offered to produce documents and a privilege log throughout the course of discovery and to supplement as necessary. *Id.* ¶ 7 (confirming Public Resource would produce documents and a privilege log on a rolling basis). Many of Plaintiffs' document requests used the terms in dispute or directly referred to other written discovery still in dispute. Several other requests depend on what documents support Public Resource's defenses, i.e., what documents Public Resource will find as it investigates Plaintiffs' claims and conducts its own discovery. Plaintiffs refused to accept this plan. Nevertheless, as it had indicated, Public Resource has begun its production of documents and believes that the bulk of its production is complete at this time. *Id.* Public Resource plans to supplement its production as necessary as it finds additional relevant documents. Thus, the bulk of Plaintiffs' motion was premature, and it is now largely moot.

During the same communications, the parties also disagreed about Plaintiffs' use of the term "publication" in Plaintiffs' contention interrogatory No. 8, and Public Resource's initial disclosures. Bridge Decl. ¶ 2. The parties continue to disagree on these issues. "Publication" has a statutory definition in section 101 of the Copyright Act, but Plaintiffs insist on giving it a different meaning, which would be misleading in the context of a copyright dispute.

Plaintiffs incorrectly imply in their amended motion that counsel for the parties conferred on the substance of Plaintiffs' motion on December 15, 2014. They did not. Instead, Mr. Hudis,

counsel for Plaintiffs, informed counsel for Public Resource by telephone that Mr. Hudis had contacted the Court's clerk and determined that a telephone conference with the Court (in accordance with the Scheduling Order and as Judge Chutkan's Minute Order on December 12, 2014 instructed) was not necessary and thus he would be filing Plaintiffs' motion. *See id.* ¶ 8. Counsel did not discuss any topic other than Mr. Hudis's conversation with the clerk and did not discuss the substance of any of the issues Plaintiffs move on. *Id.*

## ARGUMENT

### A. The Copyright Act Defines "Publication" and Plaintiffs Cannot Impose a Misleadingly Different Definition in This Copyright Dispute.

Plaintiffs acknowledge that the Copyright Act defines the term "publication." Section 101 of Title 17 is unequivocal:

> "Publication" is the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. A public performance or display of a work does not of itself constitute publication.

17 U.S.C. § 101. But Plaintiffs then misstate the law by claiming that the Copyright Act's definition "encompass[es] posting information on a publicly available website." Mot. at 12. Plaintiffs ignore that the Copyright Act also defines the term "*copies*":

> "Copies" are material objects, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. The term "copies" includes the material object, other than a phonorecord, in which the work is first fixed.

17 U.S.C. § 101 (emphasis added). Making a post to a website does not involve the distribution of, or the offer to distribute, any *material object*.

6

In any event, it is improper for Plaintiffs to attempt to redefine terms in the Copyright Act *in a copyright case* through discovery requests. This is the equivalent of a plaintiff using "possessing controlled substances" to mean "uninvited entry onto land" and then requiring an opposing party to respond to questions about the absurdly defined controlled substances when the case is really about entry onto land. What is perplexing about the Plaintiffs' intransigence is that there is also no need for Plaintiffs to contort legal terms to reach the facts they want to address. As Plaintiffs admit, Public Resource has already responded to Plaintiffs' Request for Admission No. 3, where "the only difference" is that Request for Admission No. 3 uses the term "posted" instead of the term "published." *See* Mot. at 12. The only reason for Plaintiffs to insist that Public Resource change its response to Request for Admission No. 2 to adopt a misleading definition out of step with copyright law is to use such a response to mislead the Court or the jury on copyright law and its application to the facts in this case. The Court should reject Plaintiffs' attempt.

### B. Plaintiffs' Motion Regarding Requests Including the Terms "View," "Access," and "Download" Are Moot.

Plaintiffs spent six pages of their motion arguing a moot issue about discovery requests that turn on the definitions of the terms "view," "access," and "download." After two weeks of discussions by letter and by phone, counsel for the parties agreed to use specific definitions for these terms for the purposes of interpreting Plaintiffs' discovery requests and providing amendments to written discovery responses. *See* Bridges Decl. ¶ 5. Counsel came to this agreement on November 25, 2014, two days before Thanksgiving. *Id.* Counsel for Public Resource had informed Plaintiffs that Public Resource could provide amended written discovery responses "in the next couple of weeks" after the parties came to a firm agreement. *See* Bridges

7


Decl. ¶ 6, Dkt. 27-15 at 3.  Public Resource served its amended written discovery responses two weeks after the Thanksgiving holiday weekend was over, the same day Plaintiffs filed their motion.  *See* Bridges Decl. ¶ 6; Exs. 1, 2.  Plaintiffs simply jumped the gun, and their motion is moot.

### C.  Public Resource's Production Plan Is Reasonable and Timely.

Plaintiffs also jumped the gun regarding document production.  As it had promised, Public Resource has begun production of documents, including a privilege log regarding documents that date to before the filing of the complaint (pursuant to the agreement of the parties).  *See* Bridges Decl. ¶ 7.  Public Resource has thus produced or logged all documents that it agreed to do so during the parties' conferences, just as Public Resource promised.  While Public Resource plans to supplement its production as necessary as it locates any further relevant and responsive documents, Public Resource believes the bulk of its production to be complete at this time.

### D.  Plaintiffs Fail to Explain why Responses to Contention Interrogatories are Necessary at This Stage of Litigation.

Plaintiffs demand that Public Resource provide legal and factual basis of each affirmative and other defense to Plaintiffs' complaint in Interrogatory No. 8 and Request for Production No. 9.  Not only is this interrogatory compound (Public Resource asserted nine defenses in its Answer and Counterclaim), but it is premature, as is Plaintiffs' motion.  Plaintiffs' Interrogatory No. 8 ("State the factual and legal basis of each Affirmative and Other Defense to Plaintiffs' Complaint") is nearly identical to a set of requests this Court denied in *Everett v. USAir Grp., Inc.*, 165 F.R.D. 1, 3 (D.D.C. 1995) (denying Interrogatories Nos. 14–21, which sought "'the full factual bases . . . that were relied upon' in asserting defendants' Second through Ninth

Affirmative defenses").[1]  Plaintiffs' Request for Production No. 9 similarly asks for all documents on this topic.  Plaintiffs improperly demand that Public Resource commit to, and disclose, all its legal strategies before discovery is complete.  Federal Rules of Civil Procedure Rule 8(c) requires a defendant to state affirmative defenses in the answer, at the very beginning of the litigation, or else risk waiving them.  Discovery is necessary to flesh a number of those affirmative defenses out, and late in the discovery period is the appropriate time for responses to contention interrogatories on them.

Plaintiffs have offered no reason for the Court to treat their interrogatory differently from the interrogatories in *Everett,* and they have cited no case law justifying an exception here.  As in *Everett*, Plaintiffs' contention interrogatory is premature.  Plaintiffs served their first set of discovery requests on October 1, 2014; Public Resource served its responses on November 3, 2014 and amended responses on December 22, 2014.  Discovery has just begun, and Defendant is diligently developing its defenses.  The Court should deny Plaintiffs' premature motion.

### E.  Public Resource's Initial Disclosures Are Appropriate and Sufficient.

Public Resource disclosed the categories of documents it has in its possession it may use to support its claims and defenses in its Initial Disclosures, and thus these categories meet the requirements of Federal Rules of Civil Procedure Rule 26(a).  Federal Rules of Civil Procedure Rule 26(a)(1)(ii) requires simply "a description by category and location" of documents "that the disclosing party has in its possession, custody, or control and may use to support its claims or

---

[1] Plaintiff does not explain why it may style its discovery as a single "interrogatory" when, as the *Everett* case demonstrates, the proper format would have be for Plaintiffs to serve a separate interrogatory for each defense on which it sought discovery.  While Interrogatory No. 8 should count as nine interrogatories instead of one, Plaintiffs have not at this time exceeded their limit of 25 interrogatories, and Public Resource does not refuse to answer Interrogatory No. 8 on the basis that is compound but instead reserves its right to object to any later interrogatories that exceed the limit.

9

defenses, unless the use would be solely for impeachment." Public Resource has met this requirement. Plaintiffs state the general purpose of Rule 26(a)(1) is "to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information," (Mot. at 21) but the case they cite, *United States ex rel. Hunt v. Merck-Medco Managed Care, LLC*, concerned the disclosures of names and addresses under Rule 26(a)(1)(i) and found the initial disclosures at issue there to be sufficient. 223 F.R.D. 330, 333 (E.D. Pa. 2004).

The other case Plaintiffs cite, *Robinson v. Champaign Unit 4 Sch. Dist.*, does not support their position either. In that case, the Seventh Circuit *overturned* the district court's finding the initial disclosures at issue were insufficient. Rather, the Seventh Circuit chided the moving party because "[a]t no time has [it] explained how Robinson's disclosures fail to satisfy the narrow rules it says she violated, nor has [it] cited any legal authority to support its position." 412 F. App'x 873, 877 (7th Cir. 2011). Plaintiffs are correct that the court noted, quoting the 1993 Advisory Committee notes, that the "disclosure requirements should, in short, be applied with common sense," but the court also emphasized that the "rule is not intended, however, to encourage litigants to 'indulge in gamesmanship with respect to the disclosure obligations.'" *Id.* That is precisely what Plaintiffs do.

Plaintiffs complain that Public Resource's categories of documents that it may rely upon to support its claims or defenses are broad, but that is simply because many of Public Resource's defenses are primarily legal in nature; other documents, such as documents related to the development of the standard at issue, are likely in Plaintiffs' possession, not Public Resource's. At the early stage of discovery, Public Resource does not yet have a full understanding of Plaintiffs' claims and, consequently, which documents it may use to support its defenses.

10

Plaintiffs complain specifically about the category of "communications and prepared statements for Pipeline and Hazardous Materials Safety Administration workshop," but that category simply covers statements regarding the legal effect of the government's incorporation by reference of standards generally, which will be a key legal issue in this litigation.  There is nothing improper about Public Resource disclosing the existence of these statements.

Public Resource's initial disclosures reflect its current knowledge about the case and thus are sufficient at this time.  Public Resource will supplement its initial disclosures, if appropriate, as the rules provide.

### F.  Plaintiffs Improperly Seek Rulings on Other Discovery Matters.

After filing their discovery motion, Plaintiffs informed counsel for Public Resource that Plaintiffs intended to raise at the hearing additional issues that Plaintiffs did not move on and that Plaintiffs did not first raise with Public Resource's counsel until December 30, 2014.  Bridges Decl. ¶ 10.  Counsel have not conferred telephonically about these matters.  While Public Resource intends to confer with Plaintiffs about these and any other discovery matters, it asks that the Court require Plaintiffs to confer in good faith with Public Resource before raising a discovery matter with the Court.

### CONCLUSION

For the reasons above, Public Resource respectfully requests the Court deny Plaintiffs' motion in its entirety.

Date: January 5, 2015          FENWICK & WEST LLP

*/s/Andrew P. Bridges*
Andrew P. Bridges (admitted)
abridges@fenwick.com
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350

David Halperin (D.C. Bar No. 426078)
davidhalperindc@gmail.com
1530 P Street NW
Washington, DC 20005
Telephone: (202) 905-3434

Corynne McSherry (pro hac vice)
corynne@eff.org
Mitchell L. Stoltz (D.C. Bar No. 978149)
mitch@eff.org
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

*Attorneys for Defendant-Counterclaimant*
PUBLIC.RESOURCE.ORG, INC.