UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

AMERICAN EDUCATIONAL      .  Case No. 1:14-CV-00857
                         .  (TSC/DAR)
RESEARCH ASSOCIATION, INC., .
                         .
ET AL.,                  .  Washington, D.C.
                         .  January 22, 2015
          Plaintiffs,    .
                         .
     v.                  .
                         .
PUBLIC.RESOURCE.ORG., INC., .
                         .
          Defendant.     .
. . . . . . . . . . . . . .

     HEARING ON PLAINTIFFS' AMENDED MOTION TO COMPEL
                    (DOC. #27)
       BEFORE THE HONORABLE DEBORAH A. ROBINSON
          UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs:      Oblon, McClelland, Maier
                         & Neustadt, LLP
                         By:  JONATHAN HUDIS, ESQ.
                              KATHLEEN COONEY-PORTER,
                              ESQ.
                         1940 Duke Street
                         Alexandria, VA 22314

For the Defendant:       Fenwick & West, LLP
                         By:  MATTHEW B. BECKER, ESQ.
                         801 California Street
                         Mountain View, CA 94041

1          (Proceedings commenced at 9:47 a.m.)

2               THE CLERK:  The matter now pending before

3     this Court is American Educational Research

4     Association, Incorporated, et al. v.

5     Public.Resource.Org,Inc., in Civil Action Number 14-

6     857.

7               Kathleen Cooney-Porter and Jonathan Hudis is

8     representing the Plaintiff.

9               Matthew Becker is representing the Defendant.

10               We're here for the purpose of a motions

11     hearing.

12               THE COURT:  Now, again, good morning to all

13     of you, and I will again apologize to all of you for

14     the scheduling conflicts on my calendar, which led to

15     the continuance of this matter until this morning.

16               As far as I'm able to determine, although I'm

17     not suggesting that your hearing should span hours,

18     there is nothing that will prevent us, this morning,

19     from addressing the pending matter.

20               I do have a concern that I would like to

21     share with you before I hear argument with respect to

22     the pending motion, and that is, as I think all of you

23     know, the case that is a related case that is also on

24     the calendar of District Judge Chutkan, is also

25     referred to this Court.  Indeed, those parties will

1    return on February 4th at 10:00, and I've already

2    conducted a hearing in that case, and there have been

3    some agreements, there is still some matters in

4    dispute.

5         One of the concerns I have is whether or not

6    there is a need for, at least for discovery purposes,

7    for the two matters to be consolidated.  I know they

8    are not consolidated cases, they are considered related

9    cases, I believe, because the identity of the Defendant

10   is the same in both cases.  I believe that is the

11   reason that, for clerk's office purposes, they are

12   assigned to this same district judge.

13        I would like for you to address, as you

14   enlighten me regarding the status of this case, whether

15   or not, for discovery purposes, there is any overlap of

16   the issues, there are -- or whether for any other

17   reason, discovery should be consolidated in the cases.

18        I am also concerned in this case, as I was in

19   the other, though nothing I had done in the other is

20   necessarily binding in this matter.  That is that there

21   appears to be an absence of a genuine effort to meet

22   and confer with an end toward resolving some of these

23   disputes.  The matter is referred to me to resolve them

24   but that does not relieve the parties of the

25   obligation, or counsel of the obligation to meet and

1    confer as the rules require, in an effort to at least

2    narrow the areas of disagreement.

3           This should not turn into -- As is true in

4    any case, discovery should not turn into whole new

5    litigation, or the discovery dispute should not.

6    Discovery is a part of the litigation process, it is

7    not litigation in and of itself.

8           It is anticipated by the drafters of the

9    rules, that the parties will conduct discovery without

10   the need for micromanagement by the Court.  So I am

11   concerned in this case, as I am in the related case,

12   that there appears to be an absence of any meaningful

13   understanding of the need to meet and confer to resolve

14   these disputes.

15          While we are clearly some time away from

16   addressing the merits of the case, I also think it is

17   important that the parties, in their efforts to meet

18   and confer and manage discovery, bear in mind what it

19   is you are actually trying to accomplish.  I cannot

20   answer that question, of course, but if your goal, for

21   example, is to reach a point that dispositive motions

22   can be filed, then discovery should be tailored to that

23   which is necessary to enable you to file such motions

24   or oppose such motions.  If there is some other manner

25   in which the litigation will proceed, then discovery

1   should be tailored toward that goal.

2          I believe I will hear from -- Because I do

3   want to hear from you regarding the status of the

4   litigation, I believe it is appropriate for me to hear

5   first, from counsel for Plaintiffs.

6          Before I hear anything about the pending

7   motions, I would like to know more about exactly what

8   it is you are doing, what you contemplate with regard

9   to discovery, what your objectives are, and what you

10  anticipate with regard to the course of further

11  litigation.  So I will hear first from Plaintiffs'

12  counsel.

13         And for the record, bear in -- we have a

14  record -- we have no court reporter here, which is why

15  I may ask, when you approach, that you state your name.

16         MR. HUDIS:  Good morning, Judge Robinson.

17  Jonathan Hudis --

18         THE COURT:  Mr. Hudis, good morning.

19         MR. HUDIS:  -- for Plaintiffs, American

20  Educational Research Association, AERA; and the

21  American Psychological Association, the APA; and the

22  National Council on Measurement in Education, NCME v.

23  Public.Resource.  If the Court wouldn't mind if we

24  referred to the parties, we will refer to their

25  acronyms.

1          Your Honor, --

2          THE COURT:  That is fine.

3          MR. HUDIS:  -- before we do address the

4   merits of the motion to compel --

5          THE COURT:  And again, just so the record is

6   clear, the first named Plaintiff will be referred to as

7   "AERA"?

8          MR. HUDIS:  Correct, Your Honor.

9          THE COURT:  And the second, APA?

10         MR. HUDIS:  Correct, Your Honor.

11         THE COURT:  And the third, NC --

12         MR. HUDIS:  ME.

13         THE COURT:  -- ME?

14         MR. HUDIS:  Yes, Your Honor.

15         Your Honor, before we address the merits of

16   the motion to compel, we would like to answer the

17   Court's questions.

18         First, on the matter of consolidation.  Lead

19   counsel for Defendants is Andrew Bridges, and when he

20   and I were here for the initial pretrial conference

21   before, at the time it was Judge Cooper, we did not

22   want a consolidation of the cases.  They are related

23   insofar as there is a similar Defendant.  There is no

24   overlap of Plaintiff parties.

25         Also, --

1          THE COURT:  I am aware, and that is why I

2     indicated for clerk's office purposes it appears that

3     the matters were assigned to the same U.S. district

4     judge, because the Defendants are the same.

5          MR. HUDIS:  Yes, Your Honor.

6          Now, in terms of consolidation.  The matter

7     was referred, on substance, from Judge Cooper to Judge

8     Chutkan because she already had the other case.  The

9     lead Plaintiff is ASTM.  We call that the "ASTM case."

10    That case involves standards and codes.  Our case only

11    involves standards, the difference being one is a

12    suggestion of best practices, codes being test that is

13    ultimately enacted into law.  We do not have codes in

14    our case.

15         As we understand, what is remaining at issue

16    between the parties in the ASTM case has to do with

17    discovery over licenses.  Our Plaintiffs, AERA, APA,

18    NCME do not license our standards, we sell them for a

19    modicum amount per copy.  There is no licensing.

20         What is at issue in the ASTM case are

21    technical standards and technical codes.  We are

22    regulatory standards.

23         For example, technical standards could be

24    fire, safety, building.  We are not that.  We are a

25    suggestion of best practices for testing purposes.

1          What the two cases have similarly in common,

2     is that the principal of Public.Resource has taken

3     these matters, and for reasons that Mr. Becker will

4     explain, either took them in their original digital

5     form or, if they were in paper form, had them digitized

6     and uploaded them to the Internet.  That is where the

7     similarities between the cases basically ends.

8          One other similarity, as a meta-procedure, is

9     that in neither case are the Plaintiffs asking for

10    monetary damages.  In both cases, our case as well, all

11    Plaintiffs are asking solely for injunctive relief, and

12    in both cases Public.Resource is asking for a

13    declaratory judgment of no liability based upon certain

14    substantive defenses.

15          All right, so --

16          THE COURT:  How do the Plaintiffs intend to

17    reach the merits of their claim for injunctive relief?

18          MR. HUDIS:  That was your next question.  So,

19    I took notes as the Court was speaking.

20          THE COURT:  Very well.  I appreciate that.

21          MR. HUDIS:  Not at all, Your Honor.

22          All right.  As far as we can tell, subject to

23    a factual surprise that comes out between now and the

24    end of discovery, this is a legal matter.  At the end

25    of the day we do not believe there's going to be a

1    dispute as to what Public.Resource did with our

2    standards.  The question becomes, as a matter of law,

3    given that our standards are copyrighted, "Was

4    Public.Resource and its principal, Mr. Carl Malamud,

5    allowed to do that without our authorization and

6    consent?"  That should be a legal matter decided by

7    Judge Chutkan on summary judgment.

8            THE COURT:  Well, what discovery -- You may

9    have anticipated this question, as well.

10           What discovery is needed in order to permit

11   you, Mr. Hudis, on behalf of your clients, to address

12   that issue?

13           MR. HUDIS:  Your Honor, so this is going to,

14   in part, get into the merits of the motion to compel,

15   and I'm resisting the temptation to go there so, --

16           THE COURT:  Very well.

17           Proceed with your discussion of the overall

18   status --

19           MR. HUDIS:  All right.

20           THE COURT:  -- and your objectives --

21           MR. HUDIS:  All right.

22           THE COURT:  -- in the litigation.

23           MR. HUDIS:  Sure.

24           So the overall status is it's a copyright

25   case, a case of direct infringement and a case of

1  contributory infringement.

2       The direct infringement is Mr. Malamud took

3  our standards, he uploaded it to his own company's

4  website, but what he also did is he uploaded a digital

5  version of our standards to another website called

6  "Internet Archive."

7       Your Honor, if you or your chambers has ever

8  done any factual research on the history of the

9  Internet, one thing that is commonly used is something

10 called the "Way Back Machine," so you can see what a

11 website looked like a year, five years, ten years ago.

12      Internet Archive are the people who operate

13 the Way Back Machine.  Their cause for existence is to

14 capture the Internet as it moves along in  history, and

15 also its other mission is to be a digital library.

16 They not only upload materials themselves, but they

17 take materials offered to them by other people such as

18 Public.Resource.

19      Public.Resource took a digital copy of our

20 standards, uploaded it to Internet Archive, and now

21 its, "Everybody come one; come all."  So if you're not

22 looking for the standards for free on Public.Resource's

23 website, you can also go to Internet Archive's website.

24 So that's the other part of our case, contributory

25 infringement.

1          Now, what are we doing to get there?  We've

2     already taken, by way of a subpoena deuces tecum and a

3     deposition subpoena, the deposition of Internet

4     Archive.  We've gotten documents from Internet Archive.

5     So that part of our case, we have taken discovery.

6          Now, so what is left is to clean up the

7     little of the documentary discovery that we served on

8     Public.Resource, and then take Mr. Malamud's deposition

9     by way of a 30(b)(6) deposition.  From our perspective,

10    subject to maybe cleanup, depending upon what we hear

11    from Mr. Malamud, we're done.

12         We then go to summary judgment, all right?

13         The status of the case.  Discovery right now,

14    according to the initial pretrial conference -- the

15    scheduling order, discovery closes on March 16th, all

16    right?  We're less than two months away from that now.

17         So we've given you a picture of, at least

18    from our point of view, what discovery looks like, what

19    our goals are, and where we want to go.

20         Your Honor, if we have answered your

21    questions, now we'd like to turn to the merits of the

22    discovery motion.

23         Is that okay with the Court?

24         THE COURT:  Yes, I would appreciate that, and

25    one of my concerns is the extent to which -- one of my

1   questions is the extent to which, since this motion was

2   filed in December, have any of the matters that you

3   identified with the bullet points beginning on page 1,

4   been resolved by the parties?

5            MR. HUDIS:  Yes, Your Honor.  So --

6            THE COURT:  Which ones can we delete from our

7   consideration?

8            MR. HUDIS:  Your Honor, what is left are the

9   matters raised in our reply papers.

10       (Pause.)

11           THE COURT:  Very well.

12           MR. HUDIS:  And that's all I'm going to

13   address today.

14           To the extent that we have resolved matters

15   with Public --

16           THE COURT:  Are we looking -- Just so our

17   record is clear, you're referring to the bullet points

18   beginning at the bottom -- well, on the bottom of page

19   2 of the reply?

20           MR. HUDIS:  Yes, Your Honor.  Indeed, that is

21   true.

22           THE COURT:  Very well.

23           MR. HUDIS:  Your Honor, so just to summarize,

24   this is a simple case.  I've described what the

25   copyright infringement and contributory infringement

1   are, the nature of the infringement, which was from

2   paper, making a digital copy of the standards, and then

3   publishing them in two area.

4          Public.Resource defends its actions as fair

5   use because our standards were allegedly incorporated

6   by reference into law, and we do not agree with this

7   premise.

8          The case does not involve money damages, only

9   injunctive relief.

10          Now, discovery opened in this case on

11   September 25th, after the parties had their Rule 26(f)

12   conference.

13          We served interrogatories, admissions and

14   production requests on October 1st.

15          Public.Resource served their responses on

16   November 3rd, and their initial disclosures on November

17   14th.

18          Now, your last question, when we opened this

19   hearing today, Your Honor, is the good faith efforts of

20   the parties.  Between October 10th and December 30th we

21   wrote seven letters to Mr. Bridges and his colleagues.

22   Each one of those letters were answered by Mr. Bridges

23   or one of his colleagues.

24          We had two telephone conferences, a lengthy

25   one on November 20th with Mr. Bridges.  He describes

1   his version of the telephone conference in his papers,

2   and then we had another one after the motion was taken

3   off, and then we had to re-file it.  We wanted to make

4   sure that there was no change in Defendant's position

5   and, as far as we understand, there wasn't.  So off we

6   go with the motion.

7        We received amended responses shortly after

8   we filed the amended motion, but apart from those

9   amended responses, Defendant has not seen itself

10  inclined to go any further, and that was on December

11  15th.

12       December 19th, we were given 78 documents,

13  totaling 10,000 pages of materials, with no

14  identification as to what interrogatories or document

15  request to which these materials were responsive.

16       Now, why so many pages of 78 documents?

17  Because we got, in the majority, mostly whole volumes

18  of the California Code, when probably two or three

19  pages were relevant.

20       THE COURT:  What was -- What is your

21  understanding now, of the discovery request to which

22  the documents were responsive?

23       MR. HUDIS:  That they deal with the defense

24  of incorporation by reference.

25       Should I elaborate, Your Honor?

1            THE COURT:  Yes.

2            MR. HUDIS:  All right.

3            So, for example, the Department of Education

4    has a set of regulations that outside vendors, if they

5    are going to provide a testing package to any one of

6    the parts of the agency, they have to follow a certain

7    protocol.  The protocol suggested, is a referral to our

8    standards.  The standards say what questions should

9    look like in terms of not being biased and being valid,

10   how you account for the answers, and then there are

11   suggestions by way of commentary, of how that can be

12   handled.

13           So, it is a guidepost of generally how

14   testing companies should prepare their testing

15   packages, what the questions look like, what the

16   proposed answer should be, and how they are validated.

17           Well, if the Federal Government had to do

18   that every single time they ordered a testing package,

19   you would have whole parties of people in various

20   agencies of the government, having to do this over and

21   over and over again.  So what they do is they use a

22   shortcut, and they say, "Standards testing company, if

23   you want to provide a testing" -- And by the way, these

24   testing companies, they can be paid a lot of money for

25   promulgating these tests, 30, 40, $50,000.

1          So, the Federal Government does not want to

2     go through a set of best practices every single time a

3     testing company promulgates a package, and they said,

4     "Go follow the standards that have been written up by

5     these three expert organizations: APA, AERA and NCME."

6          Now, so it is the position of the defendants

7     -- Defendant, as we understand, that when that happens

8     we lose our copyright, and that's what this is all

9     about.  We disagree with that because if that were

10     true, that would be a government taken (phonetic).

11          So, Your Honor, if there's no copyright, it

12     is Defendant's position that they can do whatever they

13     want with standards, including put them up on the

14     Internet and, well, if it's free they don't have to pay

15     us.

16          So --

17          THE COURT:  Very well.  You may continue.

18          MR. HUDIS:  Thank you, Your Honor.

19          So, we got the amended responses, we got

20     their documents, and then we just had an exchange of

21     word games as to what things meant, and you'll see when

22     I get into the specifics, what we're talking about.

23          And so, we were working with defense counsel

24     all the way until we -- even after the motion was

25     filed, even during the last time we were here before

1    Your Honor and we had to be rescheduled, you asked us

2    to go into the antechamber and talk about it and we

3    did.

4          Mr. Becker cogently expressed his client's

5    position.  It is no different than, and I suspect

6    today, than it was when we closed briefing on this

7    motion.

8          Now, let's do a little bit of general

9    housekeeping before we get into the specifics.

10          Part of our motion says that there are a host

11    of general objections, several pages of them, in fact,

12    that precede Defendant's answers to our discovery, and

13    then what they say, before they get into any substance

14    or any specific objections, we take all of these

15    objections and we incorporate them by reference in each

16    one, and we're left to guess which objections apply and

17    which don't.

18          We briefed for you, to a fare thee well,

19    judges and magistrate judges throughout the country

20    saying, "That's not the way you assert objections."

21          Defendant, in their opposition papers, did not

22    brief this issue.  In our reply we say that issue has

23    been waived.

24          Your Honor, we're asking for a ruling that

25    the general objections not specifically addressed in

1    each interrogatory, document request, admission, are

2    waived.

3          Now to the substance of what's left and, Your

4    Honor, truly, we have worked to reduce the number of

5    issues to be decided by the Court.

6          So, Interrogatory Number 5 and its

7    accompanying document, Request Number 7, asked for and

8    -- documentation supporting the number of views and

9    accesses of the standards.

10          Well, in an amended response, and by the way,

11   we agreed to these definitions which were proposed the

12   end of November by Defendant, and we agreed to these

13   definitions.

14          Sorry, Your Honor, I'm going dry.

15          THE COURT:  Please feel free, all of you,

16   when you need to take a sip, to do so.  The air in here

17   is very dry, --

18          MR. HUDIS:  Thank you.

19          THE COURT:  -- and you'll see that I have my

20   own little cup of water --

21          MR. HUDIS:  Appreciate it.

22          THE COURT:  -- right next to me, so I

23   understand.

24          MR. HUDIS:  So the amended response we got,

25   Judge Robinson, were the number of each HTTP requests,

1  the number of FTP requests, and the number of rsync

2  requests of Public.Resource's website.

3        We agreed to the definitions of "viewed" and

4  "access," and we got an amended answer that's techno-

5  jargon, and here's the problem, and this goes back to

6  your question of what goal do we have at the end of the

7  case to get it resolved?  That's a motion for summary

8  judgment.  Failing a motion for summary judgment, a

9  judge trial.

10        By the way, there's still a pending motion

11  before Judge Chutkan, as to whether Defendant's jury

12  demand was proper.  A motion to strike has been made in

13  the ASTM case and a motion to strike has been made in

14  our case as well.

15        So --

16        THE COURT:  Very well.

17        Let me ask you to proceed with your

18  discussion of the concerns you have regarding the

19  parties' agreements of definitions, and --

20        MR. HUDIS:  Uh-huh.

21        THE COURT:  -- we're still considering

22  Interrogatory 5 and Request Number 7.

23        MR. HUDIS:  Seven.  Right.

24        So, we asked the question, "Please give us

25  the number of views and access."  We got techno-jargon

back.  We want an answer in English, and the response

to us, when we discussed this with Mr. Bridges is, "You

don't understand the Internet.  You don't understand

how the Internet works, and you don't understand how

our client's server works."  Well, that's very nice.

If we don't understand it, Judge Chutkan certainly is

not going to understand it.

So, what we'd like is an amended answer that

is in English, that is according to what we asked and

according to the definitions the parties agreed to.

THE COURT:  Let me ask you to expand upon

your contention that what you received is "techno-

jargon."

MR. HUDIS:  It is.  Http request means you

are asking for -- to see data, -- an FTP request -- All

these definitions, by the way, are in our papers.  We

gave them to you.  -- is to download a file by file

transfer protocol.

Rsync, as we understand, is that -- is the

transfer of data so that a file -- that the source and

the file, at the destination, are always the same, all

right?

So, Your Honor, we would like to know, "Well,

what does that mean in terms of what we asked you,

Public.Resource?  How many people viewed the content?

1    This standard's up on your website?  How many people

2    accessed this content on your website, as we asked?"

3    And we said, "All right, fine then, we'll figure it out

4    by your server logs."  This will give us an accounting

5    of how, because Mr. Bridges says we don't understand

6    how the Internet works, and we don't understand how, in

7    particular, Public.Resource's web server works.  Well,

8    give us the server logs.  He absolutely refuses.  He

9    says "privacy" and "it's too difficult."  We need a

10   ruling.

11              Moving on, Interrogatory --

12              THE COURT:  Before you do, --

13              MR. HUDIS:  Sure.

14              THE COURT:  -- let me ask a question.

15              When you indicate you simply want an answer

16   in plain English, did you mean a number of views --

17              MR. HUDIS:  And -- Right.

18              THE COURT:  -- and accesses?

19              MR. HUDIS:  Right, and why do we want it?

20   That's your question?  Because I'm going back --

21              Well, the question has two parts.  Is that

22   your request?  In other words, it's an answer which is

23   a number.

24              MR. HUDIS:  Yes.  Okay.

25              Now, the next question --

1          THE COURT:  And the next question?

2          MR. HUDIS:  All right, is when we want it?

3          Your Honor, one of the defenses of

4   Public.Resource is lack of irreparable injury, because

5   ultimately we want a permanent injunction.  We have to

6   quantify that injury.  Even though we're not asking for

7   damages, we have to find out how many people viewed,

8   how many people accessed, how many people downloaded

9   our standards from Public.Resource's website for free.

10  That would quantify our damages and go to our proof of

11  irreparable harm.  That's why we need it.  That's why

12  we asked for it, Interrogatory 6 and its accompanying

13  Request  for Production Number 1.

14          Now, Your Honor, Request for Production

15  Number 1 is in the event documents were identified in

16  the interrogatory answers, we want them produced.

17          Interrogatory 6 says:

18          "We would like you to identify how many

19          downloads of the standards there have been

20          from Public.Resource's website."

21          In their initial answer before we filed the

22  motion, they said that they would -- they,

23  Public.Resource, said they would give us a report after

24  we agreed to the definition of "download."  In their

25  amended answer Public.Resource says there's no

1   information because they can't get it.

2           Well, that's very nice except we have, as

3   part of their document production, two very large

4   spreadsheet files that have a column of the number of

5   downloads from Public.Resource's website, of not only

6   our standards, but all of the other copyrighted works

7   that have been uploaded to Public.Resource's website.

8   So which is it, you have a document that doesn't mean

9   what it says, or you haven't given us a complete

10  answer?  I don't want to say non-truthful, but a

11  complete answer in the amended answer -- Interrogatory

12  Answer Number 6.

13          A similar issue.  Request for Admission

14  Number 6:

15          "Admit that visitors have downloaded the

16          standards from Public.Resource's website."

17          We got an answer that uses the term,

18  "access."  We asked an admission for "download," we get

19  an answer that says "access."

20          We want an admission response to the question

21  as put.

22          Admission Number 3:

23          "Admit that Public.Resource published our

24          standards to their website."

25          Now, here is the one definition the parties

did not agree to, and to which we are not agreeing now,

and we are not going to get an answer until the Court

rules.

Now, before their answer they assert only

general objections.  So, if the Court rules that

general objections are waived, there are no more

procedural or substantive objections to this admission

request.

Now, Admission Number 2, as we said in our

opening papers, they admit that our standards were

posted to Public.Resource's website.  They will not

admit that the standards were published there.  Why?

Because Mr. Bridges, Defendant's lead counsel, is

nervous that "publish" is a defined term in the

Copyright Act, and so when bantered back and --

THE COURT:  Is that not the case?

MR. HUDIS:  It is the case.

Now, it's our position that even if you use

that definition, they should admit to publication.

There's a number of reasons why, and it goes to the

conversation that I and Mr. Becker had when we were

here last.

So, Your Honor, from the Copyright Act,

publish is -- "publication" is defined as, "The

distribution of copies or photo records," and we're not

dealing with photo records here, so "copies of a work

to the public, by sale or other transfer of ownership,

or buying, rental, lease or lending, the offering to

distribute copies to a group of persons for purposes of

further distribution, public performance or public

display constitutes publication."

So then we go to, "What is a copy?"

Under the Copyright Act, a -- excuse me, Your

Honor, it's not "copy" it's "copies" used in the

statute, --

THE COURT:  Very well.

MR. HUDIS:  -- "On material objects, other

than photo records, in which a work is fixed by any

method now known or later developed, and from which the

work can be perceived, reproduced or otherwise

communicated, either directly or with the aid of a

machine or device.  The term 'copies' includes the

material object, other than the photo record in which

the work his first fixed."

So what I just read to you, that is the

extent to which that was briefed in Public.Resource's

opposition papers.

When we had a conversation with Mr. Becker

when we were here last week, we asked if there was a

compromise.  The answer was "No" because what Mr.

Malamud did was not a copy, because they're defining "material object" as a physical object, not a computer file.

So, in preparation for coming back here today, did little research.  Roeslin v. The District of Columbia, 921 F.Supp 793:

> "The placement of a copyrighted program into a computer, or the loading of a copyrighted program into a computer, which occurs every time an employee uses the program, constitutes copying the program for purposes of Copyright Act."

Now, that's a computer programmer.

THE COURT:  Well, to what extent is that an issue regarding the merits of the case, rather than a matter that the Court can determine in resolving a discovery dispute?

MR. HUDIS:  If they admit to publication, they're admitting to infringement.  It's very simple.

Another case for Your Honor to consider, which is closely -- we know that you have a penchant for D.C. cases, that's why I mentioned the D.C. case first.

And, Your Honor, this case is from the District of Maryland, hopefully it's close enough,

 1   geography, at least.  The case is <u>Lowry's</u>, L-O-W-R-Y-

 2   'S, <u>Reports v. Legg Mason</u>, and the court case cite is

 3   271 F.Supp.2d 737, and that had to do with the

 4   unauthorized distribution of a financial newsletter,

 5   and the case says:

 6            "Unauthorized electronic transmission of

 7            copyrighted text from the memory of one

 8            computer into the memory of another creates

 9            an infringing copy under the Copyright Act."

10            Last one on this point, Your Honor, which is

11   cited, <u>Louis Vuitton Malletier v. Akanoc</u>, A-K-A-N-O-C.

12   It's unpublished. 2010 U.S. District Lexis 85266 (N.D.

13   Cal.), where Public.Resource is from:

14            "The Digital pictures stored on Defendant's

15            servers fall squarely within the language

16            'copies.'  Defined otherwise would render the

17            protection of a copyright meaningless by

18            permitting, for example, unauthorized digital

19            copies of a paper photograph to be non-

20            infringing simply because the copy is

21            embodied in a different medium than the

22            original work."

23            That's exactly what we have here.

24            So, Your Honor, we need an answer to Admission

25   Request Number 3 as put, and it's particularly

1   interesting that the cease and desist letter that AERA

2   wrote to Mr. Malamud says, "Please stop posting the

3   standards on your website," and the response gotten

4   back, Exhibit BB to our reply papers is, "Yes, we're

5   the ones who published the standards on-line."

6         So the parties clearly, as a non-legal matter,

7   considered posting and publishing the (unintelligible).

8         I've gone through the legal reasons why even

9   if you use Defendant's definition of "publish" under

10   the Copyright Act, it is the publishing of a copy.

11         Your Honor, moving on.

12         Interrogatory Number 8 and Document Request

13   Number 9.  This asked for the basis of

14   Public.Resource's defenses, and the documentation that

15   supports those defenses.  They utterly refuse, citing,

16   it's a rather old case, Everett v. USAir, 165 F.R.D. 1

17   (1995).

18         Now, this has to do what the Court in that

19   case termed "contention interrogatories and document

20   requests."

21         First of all, with regard to documents, even

22   Everett says there's no merit to withholding those

23   documents.  That's not contention anything.  That would

24   be something that would be given as part of initial

25   disclosures anyway, so there's -- even according to

1   Everett, they should've produced the documents on which

2   their defenses are based.

3           Now, interrogatories, the Court does not put

4   an absolute prohibition on them if they are contention

5   in nature.  What the Court says is that you have to

6   give a good reason why you are asking for contention

7   interrogatories at this time.

8           Your Honor, --

9           THE COURT:  What is the -- Let me ask you to,

10  for purposes of this record, --

11          MR. HUDIS:  Uh-huh.

12          THE COURT:  -- to read your Interrogatory

13  Number 8.

14          MR. HUDIS:  Sure.  Your Honor, for the

15  record:

16              "State the factual or legal basis of each

17              affirmative and other defense to Plaintiffs'

18              complaint, as asserted in Public.Resource's

19              counterclaim and answer filed with the Court

20              on July 14, 2014."

21          Two matters that occurs to us, Your Honor.

22  At the time that those affirmative defenses were

23  asserted, they had to have a Rule 11 basis for them.

24  They should have been unable to, right out of the

25  starting gate, give us answers.

1          Now, what is put forward in Defendant's

2     opposition papers is discovery is ongoing.  We haven't

3     had a chance to take discovery.

4          Your Honor, I mentioned before, that

5     discovery opened on November 25th.  Do you know when we

6     got our first set of discovery -- written discovery

7     from Public.Resource?  December 15th.  Guess what,

8     that's also the same day that we filed our amended

9     motion to compel.  We just gave them our answers.  They

10    have them.  We're collecting documents to give to them,

11    but it's very strange that they cannot -- they delayed

12    almost three months in propounding written discovery,

13    and then they say, "Oh well, we still have to take

14    discovery so that we can give you a complete answer."

15         What's alarming me and our clients, Your

16    Honor, is right now, according to Judge Cooper's

17    scheduling order, discovery closes on March 16th.  What

18    are they waiting for?  All right.

19         Your Honor, next is Document Requests Numbers

20    4 and 5.  This has to do with the materials regarding

21    the digitization of our standards from paper to

22    electronic format, and then the posting or publishing

23    of them to Public.Resource's website.

24         Well, we got the document of the actual

25    digital file that was uploaded to Public.Resource's

website.  We didn't get anything else which was

described in their answer to Interrogatory Number 3 as

basically taking the binder off the book, slicing it

up, scanning the pages, having them scanned for optical

character recognition so that it could be searched,

include metadata, and then they were uploaded.

          Well, we got that kind of documentation from

Internet Archive.  We've got no such documentation from

Public.Resource, and they're not willing to give it to

us.

          Finally, Public.Resource's initial disclosures

--

          THE COURT:  Before you move on --

          MR. HUDIS:  Yes.

          THE COURT:  -- did you say, "Request for

Production 4 and 5"?

          MR. HUDIS:  Yes.  Yes.

          THE COURT:  Because in your reply, I'm

looking at page 14, it references to Request 1 and 5.

          MR. HUDIS:  This is in the reply?

     (Pause.)

          MR. HUDIS:  It would be covered the same way

because Document Request Number 1 is:

               "Everything you identified in your

               interrogatories."

1          So I'm going to get it either way.

2          Would you like me read those both into the

3     record for you?

4          THE COURT:  You should read -- For purposes

5     of clarity, --

6          MR. HUDIS:  Uh-huh.

7          THE COURT:  -- is the request 1 and 5?  I'm

8     looking here at the further sentence:

9               "Plaintiffs withdraw their motion as to

10              Production Request 3 and 4."

11         MR. HUDIS:  Yes, Your Honor.

12         THE COURT:  I thought I heard you say "4 and

13    5."

14         MR. HUDIS:  Uh-huh.  Your Honor, all right,

15    you are correct, you are correct, however, we still

16    would need to get the documents that would be -- have

17    been identified in Interrogatory Number 3, through

18    Document Request Number 1, which is:

19              "All documents you identified in your

20              Interrogatory answers."

21         So I'm still going to -- I'm going to get it

22    either way.

23         THE COURT:  Very well.  I'll ask you to move

24    on to the --

25         MR. HUDIS:  Initial disclosures.

1          THE COURT:  -- initial disclosures, yes.

2          MR. HUDIS:  Your Honor, the only part we

3     complain about is the identification of the documents

4     that Public.Resource relies upon, under Federal Rules

5     26(a)(1), (a)(2), and then according to our Document

6     Request Number 2, produce them.

7          Your Honor, we set out in our motion papers,

8     what the list of documents were.  They are -- Some of

9     the categories of documents don't even apply to this

10    case.  Other categories are so vague, we don't know

11    what they're talking about.

12         We're entitled to know, under the case law we

13    cited to you, what specific categories of documents

14    they're relying on in their defense of this case, and

15    Public.Resource utterly refuses.

16         Now, would you like me to read into the

17    record, what their list of documents are?

18         THE COURT:  Not at this time.

19         MR. HUDIS:  All right.

20         But they either have no relation to the case,

21    or they're so general and vague, we had no idea what

22    they're talking about, and we suspect they were not

23    produced, but I can't tell you.

24         THE COURT:  Very well.  What we will do is

25    take a very brief recess.  I will hear from

1    Public.Resource first, with respect to the opposition

2    to the Plaintiffs' motion, and then any argument with

3    respect to -- or perhaps I should say first, your

4    discussion of the status, as Mr. Hudis did, and then

5    your opposition to the motion.

6              Is that reasonable?

7              MR. BECKER:  (Inaudible.)

8              THE COURT:  Because you may be here at the

9    podium for awhile, I think this is a good time to take

10   just a five-minutes recess, or so.

11             MR. HUDIS:  Gladly, Your Honor.

12             THE COURT:  Very well.  I thank you very

13   much.

14        (Recess at 10:33 a.m., until 10:42 a.m.)

15                     AFTER RECESS

16             THE CLERK:  This honorable court is in

17   session.

18             THE COURT:  Now?

19             MR. BECKER:  May I approach, Your Honor?

20             THE COURT:  Yes.  You are Mr.?

21             MR. BECKER:  I'm Matthew --

22             THE COURT:  Matthew Becker.

23             MR. BECKER:  -- Becker for --

24             THE COURT:  Very well.

25             MR. BECKER:  -- the Defendant, Your Honor,

1    Public.Resource.Org.

2              THE COURT:  Very well.  Please, proceed.

3              MR. BECKER:  So as an initial matter, Your

4    Honor, we do believe that the cases should be

5    consolidated for the purposes of discovery.

6              THE COURT:  And let me ask you to please

7    articulate the basis of that request.

8              MR. BECKER:  Yes.

9              THE COURT:  I've heard from counsel for

10   Plaintiffs regarding, I think we can call it their

11   strenuous objection to such process.  We recognize that

12   the state of the record is that the cases are assigned

13   to the same District Judge as related cases; that is,

14   the mere fact that the District Judge did not

15   consolidate the cases does not mean that this Court

16   could not consolidate for purposes of discovery, so

17   that is what I'll ask you to address, with that

18   background in mind.

19             MR. BECKER:  Yes, Your Honor.

20             THE COURT:  Now, please continue.

21             MR. BECKER:  As you are aware, we have a

22   parallel case going on, the ASTM case, and that case

23   has produced -- has, in itself, been a great deal of

24   work.  We are actually about to approach Judge Chutkan

25   about getting a discovery extension in that case, until

1    April 15th, and their -- we've encountered significant

2    issues in that case which, as have been noted, have

3    parallel legal issues to this one.

4            In that case we've discovered that where we

5    thought that the case would be decided on just a narrow

6    issue, we've instead found that there's significant

7    reason to believe that the Plaintiffs do not actually

8    own the copyright for the works that they claim and --

9    but in doing so, this has been a very document-

10   intensive process, and has required a great deal of

11   effort on our part --

12           THE COURT:  Just so the record is clear, the

13   ownership issue applies to the -- or your argument

14   regarding the ownership issue is with respect, not to

15   this case, but the one we will call the "ASTM case,"

16   and I apologize, I do not have immediate recall of the

17   number, but we will call it the "ASTM case" as opposed

18   to this one.

19           MR. BECKER:  Correct, Your Honor.

20           THE COURT:  Very well.

21           MR. BECKER:  However, we believe that similar

22   issues could be at play in this case, and we have not

23   yet had the opportunity to delve into this.  We had not

24   yet received any documents, and we have only just

25   received discovery responses in this case, this past

1    Tuesday.

2              THE COURT:  All right.  Let me interrupt you

3    again.

4              What do you believe the Defendant would need

5    to know by way of discovery or other procedures, in

6    order to determine whether consolidation of the two

7    cases, either for discovery or for some broader

8    purpose, would be something that would be requested?

9              MR. BECKER:  So, as an initial matter, Your

10   Honor, we don't believe that we would need to know

11   anything at this point, simply because of the -- the

12   burdens of responding to and participating in the

13   discovery process, for both the parallel case and this

14   case, I believe, warrant that they should be treated in

15   tandem and consolidated for discovery purposes, as

16   there's a great deal of work being put on us, and we

17   are being essentially pulled in opposite directions

18   whereas if the cases were consolidated for discovery

19   purposes, that would allow us to move forward in a more

20   collected and efficient manner.

21             THE COURT:  Is there authority -- Are you

22   aware of authority at this time, which would -- which

23   stands for the proposition that the burden of

24   responding to competing or conflicting requests is a

25   basis for consolidating cases for discovery?

1          MR. BECKER:  Not at the moment, Your Honor,

2     but I can look into that if that's something that you

3     would request.

4          THE COURT:  The Court's concern, of course,

5     is that if there is a basis in support of your request,

6     certainly the Court must consider it.  At this time I

7     have no basis to order such a consolidation because I

8     haven't been presented with authority.  My question was

9     one that I posed to both sides, believing there might

10    be some agreement that that would be appropriate.  If

11    there had been an agreement, perhaps we would not need

12    further discussion, at least at the moment, regarding

13    how to resolve this conflict, there would be an

14    agreement, but there is no agreement.  So it is

15    imperative that the Court understand the full basis of

16    the Defendant's request.

17          In other words, is it a request based solely

18    on the logistical problems associated with responding

19    to requests in two separate cases, or is there

20    something else --

21          MR. BECKER:  No, --

22          THE COURT:  -- concerning an overlap of

23    issues?

24          MR. BECKER:  No, Your Honor.  We believe

25    there's also an overlap in terms of the issues from a

1    legal perspective, most immediately the issues that are

2    being dealt with in both cases are similar, if not

3    identical.

4          We disagree with the Plaintiffs'

5    characterization that there's a difference between

6    standards and codes, or that the standards and codes

7    have been treated differently with regards to

8    incorporation by reference into law for the ASTM case

9    verses the present case, Your Honor.

10         THE COURT:  How does that affect the issues

11   with respect to the conduct of discovery?

12         MR. BECKER:  Well, with regards to the

13   conduct of discovery, Your Honor, we would -- this

14   would influence the way in which we would go forward

15   with depositions and other things, such as that -- like

16   that, and will note that many of the same parties are

17   being deposed in both cases, and this may also affect

18   the particular requests for production of documents and

19   the discovery that we proceed with in that matter.

20         THE COURT:  Do you believe that the

21   Defendant's request will be to consolidate both cases

22   for all purposes, or only for the purpose of discovery?

23         MR. BECKER:  Your Honor, we are only just

24   contemplating that issue.  It may be the case that we

25   would ask for the cases to be consolidated for all

1    purposes, though I can't answer specifically on that

2    point yet.

3              THE COURT:  Very well.

4              I'll ask you to please continue with your

5    discussion of the background.

6              MR. BECKER:  Thank you, Your Honor.

7              THE COURT:  If you are ready to address the

8    merits of the -- or the substantive issues, the

9    remaining issues that the Plaintiffs have identified,

10   you may do that.

11             MR. BECKER:  Your Honor, if I may first

12   address the matter of the status of the litigation --

13             THE COURT:  Of course.

14             MR. BECKER:  -- and our efforts, in terms of

15   meeting and conferring?

16             THE COURT:  Yes.

17             MR. BECKER:  As the Plaintiffs have noted, we

18   have met and conferred many times over the past few

19   months regarding this case, and specifically regarding

20   these -- the points that are noted here.

21             In the process of that, we also -- there were

22   ambiguities in the particular terms that Plaintiffs'

23   had used in a discovery request, and we sought to

24   clarify those ambiguities and set definitions.  It was

25   Public.Resource that put forward the definitions that

were decided on, and then that was just before the

Thanksgiving holiday.  Then two weeks after the

Thanksgiving holiday, Public.Resource produced it's

discovery responses that are based off of those

particular definitions.

Now, with regards to the particular issues

that still remain, Public.Resource has, of course,

endeavored to try to meet and confer and to dispel with

any remaining issues.  There are some issues, but

Public.Resource believes that it has tried, in good

faith, to answer them, and that any remaining issues

are ones that it either already has provided a proper

answer for, or one that simply cannot be answered

further.  So --

THE COURT:  May I ask whether the parties

would benefit from an opportunity now, to attempt to

reach a resolution --

MR. BECKER:  Your Honor, I --

THE COURT:  -- regarding any of the matters

that remain, that we've addressed by review of the

reply?

MR. BECKER:  I would hope that that would be

the case, but unfortunately, Your Honor, we discussed

these issues just last week and the Plaintiff did not

accept Public.Resource's position on this, and as I'll

1    explain, There are certain things that we simply cannot

2    provide to Plaintiff, any greater than what has already

3    been provided.

4         So, for instance, with regards to

5    Interrogatory Number 5 and Request for Production

6    Number 7, these are regarding the viewing and accessing

7    of standards.

8         Now, Plaintiffs have called our amended answer

9    "Techno-jargon," and they've said that they want an

10   answer in plain English, but what they're asking for,

11   as we have explained to Plaintiffs, it is something

12   that simply cannot be produced.  They say they want to

13   know the number of viewers.

14        The issue is that Public.Resource, as any

15   standard Internet website, cannot actually know the

16   number of viewers who are looking at a web page.

17   Public.Resource can know the number of hits,

18   essentially, to the website, the number of calls that

19   have been made to the server, but not all of those are

20   from individuals.  Sometimes they might be, say, from a

21   web caller like Google or like the Internet Archive.

22   They might be from other automated programs like that.

23   They may also be from the same individual making

24   multiple calls from different machines.  And so, for

25   that reason we -- Public.Resource cannot produce the

1    number of viewers.

2         A similar question was asked by the Plaintiffs

3    in deposition of the representative of the Internet

4    Archive, and that representative similarly noted that

5    it's impossible for them to know the number of viewers.

6         Now, what we can produce and what we have

7    produced is, in good faith we've attempted to provide

8    the next best thing, which is that the only information

9    we have, the actual information requests, the calls to

10   the Public.Resource server, and so we've provided that

11   in the detailed information that we thought would be

12   helpful.

13        So, breaking that down for HTTP requests

14   verses FTP requests versus rsync requests.  So those

15   are different ways of requesting that information, and

16   then --

17        THE COURT:  Well, what is your response to

18   the Plaintiffs' contention that what was produced is

19   "techno-jargon"?

20        MR. BECKER:  No, we do not believe it's

21   techno-jargon, Your Honor.

22        THE COURT:  To what extent is it responsive

23   to the request that the number -- that the answer be a

24   number?

25        MR. BECKER:  We believe it's fully

1    responsive.  If you have an opportunity to look at our

2    response, you'll see it is a listing of numbers.  We

3    break it down by each month so that it's easier for

4    Plaintiffs to see how many of the particular requests

5    have been made per month for -- going as far back as

6    Public.Rescource has that information.

7           Public.Rescource doesn't have any information

8    before the point in time in which those -- that

9    information is provided, and so for that reason we

10   simply -- Public.Rescource is not capable of providing

11   greater detail on that request.

12          We also believe that's fully intelligible.

13          THE COURT:  Is there any -- Has there been

14   any withholding of information --

15          MR. BECKER:  No, Your Honor.

16          THE COURT:  -- on any -- on the basis of any

17   claim of privilege or any other objection?

18          MR. BECKER:  We have fully responded to the

19   interrogatory.  We have not produced the server logs,

20   and we do not believe that it would be proper to

21   produce the server logs.  The server logs themselves

22   show the individual pings or requests to the server

23   over the period of time in question.  We believe that

24   that would not provide any additional information to

25   Plaintiffs that they don't already have, other than to

1    provide the IP addresses of those requests.

2         Our concern, Your Honor, is that --

3         THE COURT:  Am I correct in my recollection

4    that that information was not requested?

5         MR. BECKER:  That information was not

6    requested, Your Honor.

7         THE COURT:  Very well.

8         MR. BECKER:  And, in fact, that was not

9    brought up in the initial motion, Your Honor.  It was

10   only -- The request for server logs was only mentioned

11   in the reply brief, Your Honor, and so Public.Rescource

12   hasn't had an opportunity to fully respond to the -- to

13   that request, but so far as that request has been made

14   in the reply motion, we believe that there would be

15   significant issues with regards to a chilling affect on

16   those individuals who used Public.Rescource.Org to get

17   access to a law, and we have concerns that among this

18   community of users, the knowledge that their personal

19   information, and the fact of their accessing particular

20   laws was being provided to a third party would thereby

21   chill their participation in this important endeavor of

22   providing access to the law.

23        THE COURT:  Very well.  You may continue.

24        MR. BECKER:  So similarly, Your Honor, with

25   regards to Interrogatory Number 6 and Request for

1   Production Number 1, this is concerning the downloads

2   of standards.

3            As we've explained to Plaintiffs and as

4   Plaintiffs have agreed, we had issues with the

5   ambiguity of particular terms in their discovery

6   requests.  Plaintiffs had used the terms "accessed" and

7   "viewed" and "download" as if they were

8   interchangeable, but these terms all have actual

9   technical meanings, and so in that respect we asked for

10  a clarification and eventually came upon an agreement

11  as to what these terms mean.

12           It's odd then, in that respect, that

13  Plaintiffs are now seeming to push against the very

14  definition that had already been agreed to on November

15  25th in writing, and trying to cite other documents

16  that they say shows a different understanding of the

17  meaning of "download."

18           With regards to the document that they have

19  provided, Your Honor, or rather, the two documents that

20  they cite, Your Honor, I should note that although

21  those documents have been produced by Public.Rescource,

22  those are not actually documents that were created by

23  Public.Resource, and so the fact that they mention

24  "download" does not mean that it's an actual statement

25  from our client.  They're simply responsive to the

1    production request.

2         And moreover, Your Honor, even if they had

3    been created by our clients, documents -- statements by

4    a layperson are not the same as a legally binding

5    admission, and so a statement that's made outside of

6    court shouldn't be used to hold our clients to a

7    particular definition that would have repercussions if

8    it was actually made to be an admission in court.

9         So, with regards to the actual term

10   "downloading," as we've explained to Plaintiffs and as

11   the definition has been agreed to by both parties, a

12   "download" means that a third party is saving a

13   document to their computer.  Public.Rescource cannot

14   know whether a third party is saving a document to

15   their computer.  There's a difference between when

16   someone accesses a document, makes an HTTP request to

17   Public.Resource's servers.  Public.Resource's servers

18   then send them the information, but the information is

19   stored only in temporary storage.

20        So if you think when you visit a web page,

21   and then if you were to close your browser and then

22   unplug your Internet and try to visit that web page

23   again, you couldn't access it because the information

24   hasn't actually been saved to your computer.  The way

25   you would be able to access it in that case, is if you

1   actually saved it onto your computer.  And so that's

2   the way that "download" has been defined.

3           Public.Rescource has no way of knowing that

4   something has been saved onto a third parties'

5   computer, and this is also an issue that was explored,

6   again, at the deposition of the Internet Archive

7   representative, where that person also said that they

8   have no way of knowing that -- similar information, and

9   that the representative from the Internet Archive also

10  said that "download" itself, is a term that could be

11  defined in various ways by various parties, and was

12  therefore an ambiguous term.

13          So as to the way that these things have been

14  defined, as agreed to by the parties, we --

15  Public.Resource believes that it's provided a full

16  response.  Nonetheless, I will note that this request

17  is also -- it actually doesn't produce a tangential

18  result, whether it's decided one way or the other,

19  because Public.Rescource has already provided, as

20  mentioned just earlier, an accounting of the number of

21  people who have accessed the -- these standards on the

22  Public.Rescource website, and so whether we call it

23  "access" or whether we call it "download," it has no

24  effect as to what has actually happened, it just means

25  that Plaintiffs get to use a term that's somewhat

1    pejorative and is technically inaccurate in this case.

2         THE COURT:  Very well.  You may continue.

3         MR. BECKER:  Your Honor, we believe that also

4    addresses the matter with regards to Request for

5    Admission Number 6.  They asked for the number of

6    downloads from the Public.Rescource website.  We don't

7    have that information.  In good faith, we provided them

8    an answer as to access, so as I noted just a moment

9    ago, it makes no difference, in terms of what has

10   actually happened, whether it's referred to as

11   "download" or whether it's referred to as "access,"

12   except for the fact that "download" is an incorrect

13   term.  It's not the term that's been agreed to by the

14   parties in writing on November 25th, and it is also, as

15   I noted, a somewhat pejorative term as it's associated

16   with peer to peer (phonetic) and downloaders, and so

17   forth.

18        THE COURT:  Very well.  I believe the next

19   issue concerns the contention interrogatory and the

20   companion request for production of documents.

21        MR. BECKER:  Yes, Your Honor.

22        So with regards to the contention

23   interrogatories, we view Everett v. USAir differently,

24   and we believe that that case firmly establishes that

25   contention interrogatories do not need to be answered

1    until the end of discovery, unless the party who is

2    requesting that they be answered has shown a firm basis

3    for why that -- those particular requests need to be

4    answered so that discovery can move forward.

5           At this point we are still in the process of

6    discovery, as I noted.  We have received -- We have not

7    received documents from Plaintiffs.  We have only just

8    received their discovery responses, and there are a

9    number of issues that need to be addressed with regards

10   to those, and so our discovery process is still -- it's

11   not nearly far enough along, such that we could respond

12   to these particular contention interrogatories.

13          Now, we have --

14          THE COURT:  Are you suggesting that the court

15   in Everett held that in every instance contention

16   interrogatories need not be answered until the close of

17   discovery?

18          MR. BECKER:  Well, we -- I am saying that

19   unless that they're a party who is requesting those

20   contention interrogatories firmly established a basis

21   or a need for those particular documents earlier than

22   that point.

23          THE COURT:  Is that what Everett holds?

24          MR. BECKER:  That is my reading of it, Your

25   Honor.

1          THE COURT:  Do you have your copy of --

2          MR. BECKER:  Yes, I do, Your Honor.

3          THE COURT:  -- Everett with you?

4     (Pause.)

5          THE COURT:  I note that the opposition filed

6     by the Defendant includes a citation to Everett, but

7     the precise language on which the Defendant seemingly

8     relies for the proposition that such interrogatories

9     need not be answered until the close of discovery, is

10    not --

11         MR. BECKER:  Your Honor, --

12         THE COURT:  -- cited anywhere in the

13    opposition, unless I've overlooked it.

14         MR. BECKER:  Your Honor, the opposition does

15    cite Everett generally --

16         THE COURT:  Yeah, I noted that.  It cites

17    Everett generally, but you have relied upon Everett for

18    a more precise proposition, and that is that contention

19    interrogatories need not be answered until the close of

20    discovery.

21         MR. BECKER:  If I may quote from Everett,

22    Your Honor?

23         THE COURT:  Yes.

24         MR. BECKER:  So, within the first paragraph

25    under Section (a), contention interrogatories, Everett

1    states:

2              "While such interrogatories are permitted,

3              the obligation to respond to them is often

4              postponed until near the end of the discovery

5              period unless the proponent carries its

6              burden of demonstrating why they are

7              necessary earlier on."

8              And the case then goes on to address these

9    contention interrogatories, then say:

10             "Insofar as these interrogatories call for

11             Defendants to separately articulate the

12             underlying facts upon which they base their

13             defenses, however, they are contention

14             interrogatories, and Defendants need not

15             respond at this time."

16             THE COURT:  To what extent have judges of

17   this court addressed this question since the 1995

18   opinion in Everett?  Or put another way, is that --

19   does that remain the applicable --

20             MR. BECKER:  Your Honor, to my understanding

21   this --

22             THE COURT:  -- law?

23             MR. HUDIS:  -- remains the applicable law.

24             THE COURT:  Perhaps I should say the

25   applicable articulation of the standard.

1          MR. BECKER:  Yes, Your Honor.  I have not

2    seen any cases that say otherwise.

3          THE COURT:  Very well.  You may continue.  I

4    believe the next item -- final item concerns the

5    sufficiency of Public.Rescource's initial disclosures.

6          MR. BECKER:  Your Honor, if I may also

7    address the third Request for Admission regarding the

8    term "publish"?

9          THE COURT:  I apologize.  You may.

10         MR. BECKER:  So, with regards to "publish,"

11   as Plaintiffs have noted, that is a definition that is

12   listed in the Copyright Act itself.  As this is a

13   copyright case, we believe that we should be using the

14   definitions where they are provided by the Copyright

15   Act, and as Plaintiffs have noted, "publish" does refer

16   to copies, and "copies" themselves are defined as

17   material objects, in the Copyright Act.

18         While Plaintiffs say that if

19   Public.Rescources admits to publication, they're

20   therefore admitting to infringement, that doesn't

21   change the fact that what Public.Rescource has done is

22   not, in fact, publication.

23         There are -- As 17 U.S.C. 106 provides, there

24   are numerous rights provided by the Copyright Act that

25   come into effect in different circumstances with

1    regards to the form of the copyrighted work itself.

2    Only some of those addressed copies, which are defined

3    as material objects, while others do not address copies

4    or material objects, and so for that reason we think

5    that it's important for the proper application of the

6    copyright law, that we use the actual definition of

7    "publish."

8         I'll also note that Plaintiffs, in their

9    reply, say that they don't believe that there should be

10   any difference between "publish" and "post."  They

11   don't actually address the legal issues.  They simply

12   say that they want it to be defined in its colloquial

13   sense, and that -- and then they provide a number of

14   dictionary definitions for non-legal sources, and our

15   point, Your Honor, is simply that those -- that while

16   there may be a colloquial sense for the term "publish,"

17   we don't think that it's appropriate to use a

18   colloquial term for the -- as for the -- a copyright

19   case.  And so for that reason we believe that we should

20   be defining "publish" according to the Copyright Act.

21        Now again, this is another issue where we

22   don't think that it makes a difference with regards --

23   a material difference with regards to whether we're

24   saying that we post or publish, insofar as if they're

25   saying that the Copyright Act definition should not

1    apply and it should be used in the colloquial sense.

2    Well, they're trying to -- we have said that we posted

3    the documents on-line.  They're trying to argue in

4    their reply, that post and publish are the same thing,

5    in a colloquial sense, and therefore, after admitting

6    to post it online, Public.Rescource should also admit

7    to publishing online.

8            We disagree with this stance.  We think that

9    it -- that there is a material difference, and

10   therefore, we should be using "publish" as to its

11   Copyright Act definition, and we had --

12   Public.Rescource has admitted to posting these

13   materials on line, and so therefore Plaintiff has

14   gotten a complete answer to their Request for

15   Admission.

16           THE COURT:  Very well.  You may continue.

17           MR. BECKER:  Moreover, Your Honor, although I

18   -- because Plaintiffs did not address the underlying

19   legal issue as to the term "publish," and its

20   definition in the Copyright Act, in either their motion

21   or in their reply, and only now at oral argument say

22   that they think that there is a material difference

23   between "post" and "publish," and actually address the

24   meaning of "publish" under the Copyright Act, I don't

25   have the cases at my disposal to address it, however, I

do want to take contention with the characterization of

the -- of copies and material objects under the

Copyright Act, Your Honor, and simply note that cases

have found the difference between when something --

when information is stored in temporary memory versus

when it's fixed in memory, such as a hard drive, and

that's the issue that we're dealing with in this case.

As I noted with regards to the term

"download," there's a difference between when somebody

simply accesses a web page and when they actually save

that web page to their hard drive itself.

THE COURT:  Very well.

You may move on to the question of the

sufficiency of the initial disclosures.

MR. BECKER:  Your Honor, with regards to the

sufficiency of our initial disclosures, we don't

believe that Plaintiffs have provided any case law to

say that our initial disclosures are not sufficient.

We have provided all the information that we had at the

time of producing our initial disclosures, and

discovery is ongoing.  We believe that much of the

information that we're going to find to further

supplement those initial disclosures, which I should

note, we do expect to eventually supplement as new

information becomes available --

1          THE COURT:  You may have anticipated the

2     Court's question.  You recognize, I assume, that there

3     is an obligation under the rules, to supplement?

4          THE DEFENDANT:  Yes, we do, Your Honor, and

5     we do plan on supplementing as additional information

6     becomes available, because many -- much of this case

7     relies on people issues and information that we expect

8     to get from Plaintiffs, and because the Plaintiffs have

9     only just provided their discovery responses on

10    Tuesday, and because document production is still

11    outstanding, we are not in a position yet, to

12    supplement our initial disclosures.

13         THE COURT:  Very well.  I have one final

14    question before I hear any brief reply that the

15    Plaintiffs wish to make.

16         When is it that you contemplate filing a

17    motion to consolidate this case and the ASTM case for

18    purposes of discovery?

19         MR. BECKER:  Your Honor, although we

20    determination on that point hasn't yet been made as it

21    was brought up just this morning, I would imagine that

22    we would file that shortly, most likely -- I'm sorry,

23    Your Honor, are you asking for the purposes of

24    discovery or for --

25         THE COURT:  For the purposes of discovery.

1          MR. BECKER:  Yes.  Your Honor, we would

2    anticipate filing that -- I think we can do so sometime

3    next week, if that would be all right, Your Honor.

4          THE COURT:  I assume you do not take the

5    position that there is a reason to stay consideration

6    of the pending motion?  In other words, the Court can

7    rule on the pending motion, which I will take under

8    advisement, and your request for consolidation would be

9    prospective.

10          MR. BECKER:  You know, Your Honor, that does

11    sound like a good idea.  With your permission, Your

12    Honor, we would like to seek that.

13          THE COURT:  I believe we should set a

14    deadline because the -- my recollection is that the

15    parties in the ASTM case are scheduled to return to

16    court on the -- on February 4th.  Perhaps I will say

17    sometime during the week of February 2nd.  I believe it

18    is the fourth.

19          MR. BECKER:  I believe that's correct,

20    Wednesday the 4th, if I'm not mistaken.

21          THE COURT:  Yes.

22          Can you propose a date by which you would

23    file a motion to consolidate the two cases, if at all?

24    Please bear in mind I am not directing that you do so.

25    In response to my question you have indicated that that

1    is something you consider.

2              Is one week from today a reasonable deadline?

3              MR. BECKER:  Is this something that you would

4    like to be able to address on February 4th, Your Honor?

5              THE COURT:  It may be that the Court would

6    have to move the February 4th hearing because the

7    motion would not have been fully briefed at that time,

8    bearing in mind that discovery deadlines are looming in

9    both cases, and that the parties, as well as the Court,

10   share an interest in ensuring that discovery is

11   completed in an expeditious and orderly manner.  If

12   this request is going to be made, it should be made

13   sooner so it can be fully briefed and decided.

14             MR. BECKER:  Yes, Your Honor.

15             And would next week -- would by Friday of

16   next week be appropriate for Your Honor, or do you

17   require that earlier?

18             THE COURT:  One week from today is January

19   29th.  So my -- The order I anticipate, is that if the

20   motion is to be filed, it must be filed by no later

21   than next week, because we recognize, all of us, that

22   there are remaining issues concerning discovery in this

23   case and the ASTM case, and we must have a mechanism in

24   place for addressing them in an orderly fashion.

25             MR. BECKER:  Yes, Your Honor.

1                In that case, would January 29th be

2     appropriate or --

3                THE COURT:  That would be the latest.

4                MR. BECKER:  Okay.  Thank you, Your Honor.

5                THE COURT:  Very well.

6          (Pause.)

7                THE COURT:  Now, is there anything further,

8     Mr. Becker?

9                MR. BECKER:  Your Honor, with regards to

10    Plaintiffs' Request for Production Number, I believe

11    it's 1 and 5, there's a question as to whether it was 4

12    and 5 or 1 and 5, but 1 and 5 are those that are stated

13    in the reply brief itself.  These concerned production

14    of documents regarding digitization of standards.

15                Your Honor, we have provided some documents

16    that are responsive to that, and as our document

17    production is ongoing, we do plan to continue to

18    produce documents.  If any additional documents that

19    are responsive to that request, and not otherwise

20    objected to on the grounds of privilege or some other

21    reason exist, and I'll note at our -- when conferring

22    last week, Public.Rescource did say it would produce

23    responsive documents to that request, and did not

24    refuse to produce documents, as has been characterized,

25    and the -- and with regards to our actual written

1    responses, there is also -- say that responsive -- that

2    particular responsive documents will be produced.

3            THE COURT:  So does that mean then, that with

4    respect to Request for Production 1 and Request for

5    Production 5, you have agreed to continue to produce

6    documents?

7            MR. BECKER:  With regards to the particular

8    discovery Request Number 5 and Number 1, as it applies

9    to the same content as Number 5, we have agreed to

10   produce documents, and the particular statement that

11   we've said is that Public.Rescource will produce

12   responsive, non-privileged documents that refer to

13   Public.Rescource posting or publishing the 1999

14   standards to a Public.Rescource website.

15           THE COURT:  Is there an agreement regarding

16   what will occur with respect to documents as to which

17   there's a claim of privilege?

18           MR. BECKER:  Public.Rescource has refused to

19   produce documents that -- for which there would be a

20   claim of privilege, as is typical for any privilege.

21           THE COURT:  Is there an agreement with

22   respect to a privilege log?

23           MR. BECKER:  Yes, Your Honor.  A privileged

24   log has already been provided in this case.

25           THE COURT:  And will that log be supplemented

1    to the extent that additional documents are discovered

2    but not produced on the basis of a claim of privilege?

3            MR. BECKER:  Yes, Your Honor.

4        (Pause.)

5            THE COURT:  Very well.  Thank you --

6            MR. BECKER:  Thank you very much.

7            THE COURT:  -- very much.  You may have a

8    seat.

9            MR. BECKER:  Your Honor, if I may address one

10   more point?

11           THE COURT:  Yes.  I'm sorry.

12           MR. BECKER:  It's the matter of the, excuse

13   me, the matter of the general objections.  I simply

14   wanted to note that Public.Resource believes that the

15   matter of whether the general objections should be

16   discarded is unripe as Public.Resource has specifically

17   pled objections that underlie all category of documents

18   that are being addressed, and there's no particular

19   categories that are being -- that are addressed in this

20   motion that are withheld on that basis.

21           And I'll also note that Plaintiffs themselves

22   produced general objections in their discovery

23   responses to Public.Resource, and I will further note

24   that all of the cases that are cited by Plaintiffs do

25   not actually say that these general objections do not

1    actually state a basis for why these general objections

2    themselves should be discarded.  They state that the

3    rules themselves, as to general objections, are vague

4    and have not been well established by the Court.

5            THE COURT:  Very well.  Thank you very much,

6    Mr. Becker.

7            MR. BECKER:  Thank you, Your Honor.

8            THE COURT:  Now, Mr. Hudis, I will permit you

9    a brief reply.

10           MR. HUDIS:  Thank you, Your Honor.

11           So in the matter of consolidation, Mr. Becker

12   says that the case law does not provide any different

13   consideration between standards and codes.  That's

14   incorrect, and it's -- The principal case on which

15   Public.Resource relies, says exactly the opposite of

16   what Mr. Becker has just told the Court.  The case is

17   Veeck, V-E-E-C-K, v. Southern Building Code, 293 F.3d

18   791 (5th Cir. 2002) and makes a very distinct

19   distinction between codes and standards vis-a-vis

20   copyright protection.

21           As to the reasons for consolidation, the

22   ownership issue that's involved in the ASTM case, at

23   best, is speculative in our case.  It's been raised as

24   a defense.  There's not going to be an issue about

25   ownership.

1          As for consolidation for any purposes, when

2    we were before a Judge Chutkan on the motion for

3    striking jury demand, co-counsel, Nick Stoltz, said

4    categorically that Public.Resource did not want

5    consolidation so, that Mr. Becker is now advocating for

6    consolidation, at least with respect to discovery, is

7    news to us.

8          Regarding --

9          THE COURT:  But no motion has been --

10          MR. HUDIS:  Been filed.

11          THE COURT:  -- filed yet.  I asked the

12    question for the reasons that I identified when I asked

13    it; that is, to the extent that there are common

14    issues, overlap of issues regarding efficiency or any

15    other reason that suggests that the matter should be

16    consolidated, I would like to know that.

17          I thought perhaps there would be an agreement

18    that the matters -- the two cases should or should not

19    be consolidated.  There is no agreement, so I know of

20    no other way to ensure that the matter is addressed

21    other than to do what I did, and that is set a deadline

22    for --

23          MR. HUDIS:  For a motion.

24          THE COURT:  -- for a motion to be filed.

25          MR. HUDIS:  Your Honor, the matter that Mr.

1    Becker addressed on each of the specific discovery

2    items, definitions of "view," "access" and "download,"

3    which we agreed to and published, which, as you can see

4    that Plaintiffs did not agree to, on information that

5    there's no information on download, so Mr. Becker and

6    counsel basically -- they're walking away from their

7    own documents they produce to us, that give us the

8    statistics on download.

9            So then on the techno-jargon, on HTTP and FTP

10   and rsync, Mr. Becker calls these documentation of HIP

11   server calls, and there could be a problem with

12   automatic calls by a web -- well, let them say that,

13   okay?  If HTTP is the calling up of information so that

14   somebody can view it, say that.  If FTP file transfer

15   protocol means it is something equivalent to a download

16   or rsync, which is simultaneous download, then say

17   that.

18           We want an answer that's in plain English

19   that Judge Chutkan can understand, whether it's by way

20   of summary judgment motion or by way of a bench trial.

21           Now, as to the chilling effect of giving us

22   the server logs, a chilling effect on people who would

23   access Public.Resource, there's a protective order in

24   this case.

25           THE COURT:  Am I correct that server -- or is

1    Mr. Becker correct that server logs were never

2    requested?

3         MR. HUDIS:  No.  No.  No.  No.  No.

4         THE COURT:  In other words, there is no

5    request for server logs?

6         MR. HUDIS:  Identify --

7         "Produce the documents identified in your

8         interrogatory answers."

9         That is Document Request Number 1.  That

10    clearly would -- They got this information about HTTP,

11    FTP and rsync from their servers.  That's where they

12    got the information.  Now they don't want us to have

13    the documents to either dispute or prove up what

14    they've given us in an interrogatory answer.

15         So basically, what Public.Resource is saying,

16    "Trust us," all right?  We have no basis to refute what

17    they're saying.

18         We need to document for Judge Chutkan, the

19    degree of our damage, as part of our motion for summary

20    judgment that will request a final injunction.

21         THE COURT:  Can you not do that with the

22    information that has been provided?

23         MR. HUDIS:  No.

24         THE COURT:  Why is that?

25         MR. HUDIS:  Because it's incomplete and Mr.

Becker, for the first time, says they're not even
documents that Public.Resource can testify to because
they're not their own documents.

They won't give us the very documents that we
need to prove up or dispute what they said in
interrogatory answers.  This is basically a process of
hide the ball.  That's not the way discovery works.

THE COURT:  Let me ask you, in the time
remaining, --

MR. HUDIS:  Yes.

THE COURT:  -- to address the contention --
to address Mr. Becker's argument regarding the
contention interrogatory, --

MR. HUDIS:  Sure, Your Honor.

THE COURT:  -- Number 8, and the companion
request.

MR. HUDIS:  What --

THE COURT:  -- and 9.

MR. HUDIS:  -- Public.Resource is saying is
that they don't get -- have enough information to give
us a full answer.  Well, guess what?  That was their
fault.  The waited almost three months to serve their
discovery.

Mr. Becker said, "Oh, we didn't get their
answers until Tuesday."  Because that's when they were

1    due.  We didn't even ask for an extension.  We gave

2    them our answers the day they were due.  We're

3    collecting up the documents.  It took Public.Resource

4    three months, under the threat of a motion to compel,

5    to give us their documents.

6            We're collecting up the documents.  We've

7    been collecting documents since the beginning of the

8    case, plus additional documents we didn't anticipate

9    they were going to ask for.  So we're going full speed

10   ahead.

11           What we are really suspicious about, Your

12   Honor, is that this whole thing about delay and

13   consolidation, this is all just to drag their feet, so

14   we're going have to depose Mr. Malamud under the threat

15   of a gun because we are up to the discovery deadline.

16   We have been diligently requesting discovery all along,

17   and all we've been getting is stall tactics.

18           Your Honor, if you were to rule that our

19   interrogatory and document requests under contentions

20   could not be answered at this time, after three and a

21   half months of discovery and two months to go, you'd be

22   rewarding Public.Resource for their delay.

23           Now, on this issue about published, and that

24   it means "material objects," that's very nice.  It was

25   never briefed by Public.Resource in their opposing

1   papers.  All they did was cite the statute, and then we

2   heard from Mr. Becker for the first time last week in

3   the anteroom, that "material object" meant a physical

4   material object.

5         First of all, that's not what the statute

6   says.

7         Second, we gave you cases that say it's the

8   opposite of the position Public.Resource has taken.

9         Case law and disclosures, yes, we did give it

10  to you, Your Honor, on pages 21 and 22 of our papers on

11  the digitalization.

12        Mr. Becker says they'll provide us with the

13  documents on digitization and uploading to

14  Public.Resource's website.  Where are they?  Where are

15  the documents?  We've been asking for them now for

16  three and a half months.

17        On general objections that -- being unripe,

18  this is -- I cannot understand where that's coming

19  from.  We've had letter, after letter, after letter,

20  and telephone calls about this very issue.  That's all

21  in our motion papers.  We briefed the issue.

22        What Mr. Becker is trying to avoid is the

23  fact that they never briefed it in their opposition

24  papers.  So don't decide it.

25        As for our general objections, it's one

paragraph.  It says:

> "We object to your interrogatories, document
> requests, admissions to the extent that they
> have definitions that would take obligations
> beyond the Federal Rules of Civil Procedure."

That's our general objections.  That's it.

Their general objections go on for page,
after page, after page.  Your Honor, I've addressed
them in my reply arguments.

Unless the Court has any further questions,
I'll sit.

THE COURT:  Thank you very much, Mr. Hudis.

The Court will take the pending motion under
advisement.  The entry with respect today's proceeding
will, of course, indicate that we conducted a hearing
on the motion; that is, Plaintiff's Amended Motion to
Compel, the motion bearing Document Number 27.

The order that I enter at this time is that
the Defendant shall file a motion to consolidate this
case and the related case for discovery purposes, no
later than one week from today.

I'm not directing that you file the motion.
It may be that you will consider the authorities and
determine there's no ground for it.  The parties may
ultimately meet and confer and reach some agreement

1    regarding consolidation or not, but if a motion is to

2    be filed, it must be filed by January 29th.

3            Now, is there anything further with respect

4    to this matter this morning?  Anything further, Mr.

5    Hudis or Ms. Cooney-Porter?

6            MR. HUDIS:  My colleague, Ms. Cooney-Porter

7    reminded me, you know, the problem I have, and I really

8    do not want to upset Mr. Becker, is we have heard from

9    ASTM's counsel, that they're having difficulty deposing

10   Mr. Malamud.  So that just raises concern about the

11   progress of discovery, given what Your Honor said at

12   the beginning of this hearing.

13           I just wanted to bring that to the Court's

14   attention.  It's a concern of ours if that, in fact, is

15   true.

16           All I can say is that is a hearsay statement

17   that was given to us by ASTM's counsel, and we know

18   nothing further about it.

19           THE COURT:  Very well.  Thank you, Mr. Hudis.

20           Is that something you wish to address now,

21   Mr. Becker?

22           MR. BECKER:  Yes, Your Honor.

23           Your Honor, I'd simply like to say that we

24   have provided multiple dates in the ASTM case, to

25   Plaintiffs in that case, for the deposition of Mr.

1   Malamud.  I'm not certain what Mr. Hudis is responding

2   -- referring to with regards to that.  It may be with

3   regards to the Plaintiffs in that case refusing the

4   dates that we had provided, trying to ask for dates on

5   which the lead counsel in that case, for Mr. Malamud,

6   will be at trial or preparing for trial in another

7   case, and therefore not available.

8          THE COURT:  Well, let me ask of all of you

9   who are involved in, when I say "this case" I mean 14-

10  857, to please concur in an effort to agree upon dates.

11         MR. BECKER:  Yes, Your Honor.

12         THE COURT:  Very well.  Thank you very much.

13         Anything further, Mr. Hudis or Ms. Cooney-

14  Porter?

15         MR. HUDIS:  No, Your Honor.

16         THE COURT:  Mr. Becker, is there anything

17  further on behalf of your client?

18         MR. BECKER:  Nothing further.

19         THE COURT:  Very well.  I thank all of you

20  very much.  Thank you.

21      (Proceedings concluded at 11:38 a.m.)

22

23

24

25

C E R T I F I C A T E

I certify that the foregoing is a correct transcript

from the electronic sound recording of the proceedings

in the above-entitled matter.


/s/_____          February 7, 2015

STEPHEN C. BOWLES