```
 1                  IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
 2
         - - - - - - - - - - - - - - - x
 3       AMERICAN SOCIETY FOR TESTING
         AND MATERIALS, et al.,          CA No:  1:13-cv-01215-TSC-DAR
 4
                      Plaintiffs,        Washington, D.C.
 5                                       March 19, 2015
         vs.                             2:11 p.m.
 6
         PUBLIC.RESOURCE.ORG, INC.,
 7
                      Defendant.
 8       - - - - - - - - - - - - - - - x
         - - - - - - - - - - - - - - - x
 9       AMERICAN EDUCATIONAL RESEARCH
         ASSOCIATION, INC., et al.,      CA No:  1:14-cv-00857-TSC-DAR
10                    Plaintiffs,
11       vs.
12       PUBLIC.RESOURCE.ORG, INC.,
13                    Defendant.
         - - - - - - - - - - - - - - - x
14       _____

15                   TRANSCRIPT OF STATUS HEARING
             HELD BEFORE THE HONORABLE DEBORAH A. ROBINSON
16                   UNITED STATES MAGISTRATE JUDGE
         _____
17
         APPEARANCES:
18
         For the Plaintiff ASTM:    J. KEVIN FEE, ESQ.
19                                  JORDANA SARA RUBEL, ESQ.
                                    MORGAN, LEWIS & BOCKIUS LLP
20                                  1111 Pennsylvania Avenue, NW
                                    Washington, DC 20004
21                                  (202) 739-5353
                                    jkfee@morganlewis.com
22                                  jrubel@morganlewis.com

23
         (APPEARANCES CONTINUED ON NEXT PAGE)
24
         Proceedings recorded by mechanical stenography; transcript
25       produced by computer-aided transcription
```

1    A P P E A R A N C E S (CONTINUED):

2    For the Plaintiff NFPA:          **NATHAN M. REHN, ESQ.**
                                      MUNGER, TOLLES & OLSON, LLP
3                                     560 Mission Street, 27th Floor
                                      San Francisco, CA 94105-2907
4                                     (415) 512-4000
                                      thane.rehn@mto.com
5

6    For the Plaintiff ASHRAE:       **ANTONIO E. LEWIS, ESQ.**
                                      KING & SPALDING, LLP
7                                     100 N. Tryon Street, Suite 3900
                                      Charlotte, NC 28202
8                                     704-503-2583
                                      alewis@kslaw.com
9

10   For the Plaintiff AERA,         **JONATHAN HUDIS, ESQ.**
     et al.:                         **KATHLEEN COONEY-PORTER, ESQ.**
11                                    OBLON, MCCLELLAND, MAIER &
                                      NEUSTADT, LLP
12                                    1940 Duke Street
                                      Alexandria, VA 22314
13                                    (703) 413-3000
                                      jhudis@oblon.com
14                                    kcooney-porter@oblon.com

15   For the Defendant:              **MATTHEW B. BECKER, ESQ.**
                                      FENWICK & WEST LLP
16                                    801 California Street
                                      Mountain View, CA 94041
17                                    (650) 335-7930
                                      mbecker@fenwick.com
18
                                      **DAVID ELLIOT HALPERIN, ESQ.**
19                                    1530 P Street, NW
                                      Washington, DC 20005
20                                    (202) 905-3434
                                      davidhalperindc@gmail.com
21

22
     Court Reporter:                 Lisa A. Moreira  RDR, CRR
23                                    Official Court Reporter
                                      U.S. Courthouse, Room 6718
24                                    333 Constitution Avenue, NW
                                      Washington, DC  20001
25                                    202-354-3187

```
 1                    P R O C E E D I N G S

 2          THE COURTROOM DEPUTY:  The matter now pending

 3   before this court is American Society for Testing and

 4   Materials, et al. vs. Public.Resource.org, Incorporated and

 5   American Educational Research Association, Incorporated, et

 6   al. vs. Public.Resource.org, Incorporated in Civil Action

 7   Nos. 13-1215 and 14-857.

 8          Jordana Rubel and Kevin Fee are representing

 9   plaintiff ASTM; Nathan Rehn is representing plaintiff NFPA;

10   Antonio Lewis is representing plaintiff ASHRAE; Jonathan

11   Hudis and Kathleen Cooney-Porter are representing plaintiffs

12   American Educational Research Association, Incorporated and

13   American Psychological Associations, Incorporated.  And

14   David Halperin and Matthew Becker are representing the

15   defendants, Public.Resource.org, Incorporated.

16          We're here for the purpose of a status hearing.

17          THE COURT:  Now, again, good afternoon to all of

18   you.  We have called the cases together, I scheduled them

19   together, and we are going to proceed to make an effort to

20   address a coordinated effort to complete discovery.

21          At the time I scheduled the hearing in this

22   fashion, there was an outstanding question concerning

23   whether or not the two cases would be consolidated for the

24   purpose of discovery.  It appears that as of this time none

25   of you believe that that would be an appropriate exercise of
```

1    the Court's discretion, and no order consolidating the cases

2    has been entered.

3          Nonetheless, there are some issues which are

4    common to both cases which concern scheduling and, to some

5    extent, a single deposition, the deposition of Mr. -- the

6    proposed deposition of Mr. Malamud and Public Resource that

7    perhaps we can address in a coordinated fashion.

8          More broadly, however, the Court's concern is that

9    the parties do not yet appear to have committed to the

10   completion of discovery without the need for micromanagement

11   by the Court.  The Court has -- the assigned district judge

12   has, of course, referred these cases to me for the purpose

13   of management of discovery, but that should not be regarded

14   by the parties or by counsel as an invitation to resist

15   every effort by the opposing party or opposing parties to

16   take discovery, and, particularly in the case which has been

17   pending for the longer period of time, it is imperative that

18   you commit to a schedule which will permit you to complete

19   discovery as expeditiously as possible and move on to the

20   next phase of the litigation.

21         Another reason that the Court scheduled this

22   hearing in this fashion is because the Court was not

23   confident that the parties had complied with the letter and

24   spirit of the local rule directing that parties meet and

25   confer with respect to nondispositive matters.  All of the

1    matters pending at this time are nondispositive.  And while

2    it will certainly be incumbent upon me to conduct hearings

3    with respect to any matters that you are unable to resolve

4    through your efforts to meet and confer, my review of the

5    pending motions, at least as of this point, suggests that

6    there is no reason that the Court should not expect that you

7    won't resolve these matters without the need for the

8    intervention of the Court.

9          Having said that, I will hear from counsel in turn

10   regarding how you believe we should proceed.  I am not

11   prepared to hear argument this afternoon on the substance of

12   any motion, and instead, what it is, consistent with all

13   that I've said thus far, that I want you to do is address

14   what you have agreed to do and what you have committed to do

15   in order to ensure that discovery is completed promptly.

16         It appears that the parties in the case filed more

17   recently may actually be further along in that effort

18   because I see that in the 2014 case there -- at least it

19   appears that there is an agreement regarding new deadlines

20   for the completion of discovery.  In the 2013 case, in which

21   completion of discovery may have greater urgency given the

22   length of time the case has been pending, I am not certain

23   that there is an agreement.  I have read your respective

24   contentions, but I cannot discern that you have reached any

25   agreement, and that is certainly a matter as to which the

1    parties should be able to agree.

2              So we can do one of several things.  I can take a

3    recess at this point so that you can discuss what agreements

4    you might make regarding any such matters, or I can hear you

5    preliminarily beginning with counsel in the 2013 case

6    regarding your status.

7              Do you want to just take a moment?  We'll go off

8    the record briefly, and you can consider those options; or

9    alternatively, I will hear from counsel beginning with

10   plaintiffs' counsel, and I imagine there are three of you

11   who will want to be heard -- am I correct? -- in the 2013

12   case.

13             MR. REHN:  Thank you, Your Honor.  I believe I can

14   cover most of what needs to be said.

15             THE COURT:  For the record, you are Mr...?

16             MR. REHN:  I'm Mr. Rehn representing the plaintiff

17   NFPA in the 2013 case, and I think I can cover most of the

18   key issues with respect to our case.  And if need be, my

19   co-plaintiffs' counsel can fill in some of the details.

20             We don't believe a recess is necessary at this

21   time, Your Honor, because we -- at plaintiffs' request we

22   had a meet-and-confer with -- I'm sorry -- yes, at

23   plaintiffs' request, our request, we met and conferred with

24   Public Resource shortly before this conference, and we made

25   every attempt to offer them a compromise.  We offered to

1    accept the date for the close of discovery that they have

2    proposed in their motion, and we said, "Is there any

3    compromise that you are willing to reach with respect to the

4    number of depositions that you've requested?"  And they said

5    flat out, "No."

6             So we feel like the parties right now are very far

7    apart on this issue, and I can give you a little bit of

8    background as to how we've gotten to this place.

9             THE COURT:  Well, before you move on, Mr. Rehn,

10   does that mean that the principal dispute regarding

11   completion of discovery has to do with the number of

12   depositions?

13            MR. REHN:  I think that's accurate except that

14   Public Resource informed us, I believe it was yesterday,

15   that they no longer stand by the position they took in their

16   own motion of concluding discovery on April 13th.  Their

17   position now is that discovery should conclude on April

18   30th.

19            So they've moved the date back even further from

20   where they were just a few days ago.  And we have

21   continually tried to accommodate them, but they keep -- it's

22   sort of like when you're approaching a mirage in the desert,

23   it keeps receding into the distance, from our perspective,

24   as much as we try to accommodate them.  So even the date now

25   may be up to some dispute because of that.

1     THE COURT:  Would the parties be aided by a brief

2     recess to agree upon a date?

3     MR. REHN:  I mean, we'd be willing to -- again,

4     our offer would be to agree on the date that they've put in

5     their motion, which is a month past the date we proposed in

6     opposition, which was already a compromise of a month and a

7     half after the Court ordered close of discovery.  We've said

8     notwithstanding your failure to take any depositions or to

9     take all the depositions you want so far, we're willing to

10     give you a few -- some more time, and they've rejected that.

11     But we're willing to make that offer again here on

12     the record.  Just with respect to the date.  Now, there are

13     some issues with respect to how many depositions are

14     covered, but at least with respect to the date.

15     THE COURT:  Are those the only issues that exist

16     regarding a timetable and other limits for the completion of

17     discovery --

18     MR. REHN:  I believe that once a date --

19     THE COURT:  -- in the 2013 case?

20     MR. REHN:  Yes.  I believe that once a date for

21     the close of fact discovery were to be agreed upon, I think

22     the parties -- substantively our positions on how expert

23     discovery should proceed after that point are basically the

24     same.  It's just the matter of when you start that clock on

25     the expert reports.

1          So once we set a date on that, I believe we'd be

2     able to agree on a complete date certain for the close of

3     discovery with respect to --

4          THE COURT:  You agree right now we're speaking

5     only for a date for the close of fact discovery.

6          MR. REHN:  That's correct, but my expectation is

7     there would not be further scheduling disputes following the

8     date on the agreement of the close of fact discovery because

9     there's never been any disagreement as to the amount of time

10    needed for the parties to complete expert discovery.

11         THE COURT:  May I ask you to briefly summarize the

12    plaintiffs' contention in the 2013 case with respect to the

13    number of additional depositions, if any, which should be

14    permitted?

15         MR. REHN:  Yes, Your Honor.  And I think, to put

16    this in some context, Public Resource first noticed a number

17    of depositions -- I believe it was eight depositions -- in

18    December.  Plaintiffs offered dates for those depositions in

19    January.  For example, NFPA offered dates -- and Public

20    Resource specifically requested that the depositions be done

21    in the first half of January at that time.  So in compliance

22    with Public Resource's request, we offered dates for those

23    witnesses in early January.

24         Two days before those depositions were to take

25    place, before the first of those was to take place, Public

1    Resource informed us they didn't intend to go forward at

2    that time.  We asked them if they would reschedule in late

3    January.  They said no, they were unwilling to take

4    depositions in late January.

5            Our position was and remains that Public Resource

6    should not be permitted to take depositions that weren't

7    noticed in sufficient time for the depositions to be

8    scheduled before the close of discovery.

9            Now, Public Resource has taken the position that

10   it should be able to notice depositions even after the close

11   of discovery up to whatever the number is, ten or if the

12   Court would agree on more than ten.  Our position has been

13   that there is no reason, unless you can point to a

14   particular discovery of a name in the documents, for you to

15   be able to notice additional depositions beyond that.

16           So that continues to be the plaintiffs' position,

17   that the depositions they should be permitted to take are

18   those that they noticed in a timely fashion.  We're willing

19   to compromise on scheduling those after the close of

20   discovery, but not to create an open-ended opportunity for

21   them to continue to notice additional depositions beyond

22   that.

23           THE COURT:  What is the status, from your

24   perspective, in the 2013 case of the proposed deposition of

25   Mr. Malamud and the extent to which that is a deposition

1    that can be accomplished in a single deposition session?  I

2    don't know whether we should term that a joint deposition or

3    a single deposition in which all counsel would participate.

4         MR. REHN:  Yes, Your Honor.  That issue has been

5    rendered moot because plaintiffs in the ASTM case have now

6    taken the deposition of Mr. Malamud and of Public Resource.

7    We took those depositions on February 26th and 27th.  That

8    was the subject of intensive negotiations between the

9    parties, and Public Resource agreed on February 25th to

10   provide Mr. Malamud -- to make him available.

11        We took that opportunity, jumped on it.  We took

12   that deposition.  Therefore, there's no remaining

13   overlapping discovery issues between the two cases, and

14   consistent with that, Public Resource withdrew their motion

15   for consolidation.

16        THE COURT:  Very well.  In that event, I am

17   pleased to note that at least one matter has been resolved.

18        What else is there to be resolved concerning the

19   completion of fact discovery?

20        MR. REHN:  There are no outstanding issues with

21   written discovery or document discovery of which at least

22   plaintiffs are aware.  The only remaining issue is whether

23   Public Resource should be entitled to take -- how many

24   depositions Public Resource should be entitled to take.

25        THE COURT:  Very well.  We've already included

 1     that in the list, the date for the close of fact discovery,

 2     and the second issue, seemingly the one to which you just

 3     referred, the number of additional depositions, if any.

 4             MR. REHN:  That's correct, Your Honor.

 5             THE COURT:  Does that mean, then, that you know of

 6     no further issue to be addressed in the 2013 case affecting

 7     the completion of fact discovery?

 8             MR. REHN:  Well, I should say the plaintiffs have

 9     filed a motion for a protective order that would limit -- so

10     the plaintiffs have certainly agreed to proceed with

11     30(b)(6) depositions on the few topics that are remaining.

12     Public Resource has taken a 30(b)(6) deposition of each

13     plaintiff with respect to a number of the noticed topics.

14     Plaintiffs have certainly agreed to go forward with the

15     remaining topics with the exception that we filed a motion

16     for a protective order with respect to some of those.

17             THE COURT:  You're speaking of 86?

18             MR. REHN:  I believe it's Docket No. 86.

19             MR. FEE:  Right.

20             MR. REHN:  Yes.  So we would request that the

21     deposition not be scheduled until the Court has had an

22     opportunity to address that protective order.

23             THE COURT:  Now, what have the parties done to

24     resolve the dispute which is presented by the motion for

25     protective order?

1           MR. REHN:  We have met and conferred repeatedly.

2     This has been a subject the parties have been at odds over

3     for several months, I would say, the subject of -- I would

4     describe it as very extensive meet-and-confer sessions both

5     in person, over the telephone, and in email regarding

6     whether the defendant, in a copyright action who doesn't

7     claim any rights in the copyrighted works at issue, has

8     standing to challenge the validity of the assignment of

9     those rights to the plaintiff in that action; and, if the

10    defendant lacks standing to make that challenge, then all of

11    the discovery that Public Resource is seeking with respect

12    to the assignment forms, which is the subject of the

13    protective order motion, would be irrelevant as a matter of

14    law.  I think the parties don't disagree on that.  They just

15    disagree on whether the cases actually say that Public

16    Resource lacks standing.

17          We filed our motion for protective order.  We

18    requested an expedited briefing schedule, but the Court

19    hasn't ruled on that, and I believe the Public Resources

20    opposition is due on Monday to that motion.

21          THE COURT:  In other words, you agree we cannot

22    address this motion today because it has not been fully

23    briefed?

24          MR. REHN:  That's correct, and that would affect

25    whether the remaining 30(b)(6) depositions can go forward

1    because those would relate to the topics that are covered by

2    the protective order, at least in part.

3              THE COURT:  What is the reason that the parties

4    cannot resolve the dispute?

5              MR. REHN:  Well, I think -- the parties disagree

6    on that, but from the plaintiffs' perspective, the issue has

7    been, as I mentioned earlier, a repeated pattern of

8    plaintiffs trying to accommodate requests by Public

9    Resource, and then Public Resource moving the goal line a

10   little bit further away.

11             So, for example, there are two depositions of NFPA

12   witnesses that are -- that Public Resource noticed back in

13   December.  These are witnesses Public Resource has been

14   aware of since before this case was even filed.  These are

15   of the current and former president of NFPA.  They're well

16   known to Public Resource.  They've been in our disclosures

17   for many months, and they're not the subject of any of the

18   recent document productions that Public Resource complains

19   about.

20             There's no reason these depositions couldn't have

21   been taken a year ago.  We offered dates in January.  We

22   offered dates for these witnesses in February.  We offered

23   dates for these witnesses in March.

24             And just to give you an example, counsel for

25   Public Resource informed us at the beginning of March that

1    only lead counsel for Public Resource could take those

2    depositions, and lead counsel was only available on March

3    12th, and that was it.  So we said, well, any time in the

4    week of March 9th, the week of March 16th, the week of March

5    23rd we can try to schedule these, but they're just -- they

6    refused to give us dates, and we've just been facing an

7    impasse with respect to that.

8              We've had similar problems with scheduling for the

9    other plaintiffs as well.  We've offered many dates, and

10   Public Resource has just declined to go forward with those,

11   and they've continued to insist that only their lead counsel

12   can take depositions.  I guess he's very busy.  He's

13   certainly not here today.  I guess they can appear in court

14   without their lead counsel, but they can't take any

15   depositions, which is why we cannot get discovery completed,

16   which all plaintiffs are interested in doing, getting

17   discovery completed in a timely fashion.

18             THE COURT:  Very well.  Thank you very much,

19   Mr. Rehn.

20             I should inquire whether other counsel wish to be

21   heard, or if you are prepared simply to concur in Mr. Rehn's

22   proffers and arguments?

23             Mr. Fee?

24             MR. FEE:  Yes, Your Honor.  I don't disagree with

25   anything that Mr. Rehn said, but I thought a little bit of

1    specific detail with respect to ASTM might be helpful.

2            I'm not sure this came across as clearly as maybe

3    it should have in our papers, but I want to make sure Your

4    Honor understands that the real source of all this problem

5    is we were served with 20 deposition notices the day after

6    fact discovery closed in this case.  Many of the witnesses

7    had never been identified before the 30(b)(6) or before the

8    depositions were served the day after the close of fact

9    discovery.  So in addition to fighting about when the

10   discovery period should be over, it's ASTM's position -- I

11   believe the other plaintiffs are in a similar position --

12   that persons that they had never asked to take the

13   deposition of until the day after the close of fact

14   discovery are not an appropriate witness to be deposed

15   during some -- you know, after the close of the fact

16   discovery deposition process.

17           We don't believe that any of these people have

18   important information that's relevant to this case that

19   hasn't been the subject of a 30(b)(6) deposition of ASTM.

20   And just so you know, we already did provide a witness on 26

21   out of the 29 subjects that were in their 30(b)(6)

22   deposition notice.  The only topics that we did not provide

23   a witness on so far related to the motion for a protective

24   order.

25           But they, on the day after close of fact

1    discovery, wanted to depose for the first time the president

2    of ASTM, Jim Thomas.  We had identified him back in January

3    of 2014 as one of our two witnesses in our initial

4    disclosures that we knew would be testifying and had

5    relevant information in this case.  There were no documents

6    -- you know, their excuse for a lot of this is we produced a

7    lot of documents towards the end of discovery.  And it is

8    true we produced about 40,000 documents towards the end of

9    December.  Primarily they were examples of granting

10   permission requests when somebody would say, "I want to use

11   some portion of ASTM's standard in our textbook," and we

12   said, "Yes, go ahead."

13          There are no documents from Jim Thomas that could

14   possibly explain why they did not think it was appropriate

15   to take his deposition from January of 2014 until January

16   31, 2015, and then send us a deposition notice that Saturday

17   morning.  In addition, we had identified him in our initial

18   disclosures of having a wide range of knowledge of all

19   topics that would be relevant to this case.  So I just don't

20   understand how it could be that, having been aware of him

21   for the past year, they could wait until the close of fact

22   discovery to ask for his deposition, especially when the

23   topics which he's knowledgeable about are also topics that

24   were covered during the 30(b)(6) deposition of ASTM.

25          There are a couple of other similar circumstances.

1    They recently, on the 31st of January, said they wanted to

2    take our, you know, manager of IT.  We never identified him

3    in our initial disclosures because we don't believe he's got

4    really any relevant information to this case.  It's

5    possible.  And I think their explanation for listing him is

6    that they want to know information about our reading room

7    where we post standards for free access by members of the

8    public.

9           There was already a 30(b)(6) deposition on that

10   topic.  We identified this guy as the head of our IT

11   department in October of 2014, and they have not identified

12   any specific emails that were produced towards the end of

13   discovery that somehow explained why he only became

14   identified as a witness in this case until after the close

15   of fact discovery.

16          I don't want to bore you with the details of all

17   these, but there are three other witnesses that they want to

18   take depositions of with respect to ASTM that are all

19   persons that they had known about for some time, and they've

20   also -- for most of these people there were virtually no

21   documents produced with respect to them.

22          They asked for depositions of Randy Jennings and

23   Steve Cramer.  Randy Jennings, I think, was mentioned in a

24   couple of documents, none of which were produced in January

25   and only, you know, listing members and things of that

1    nature.  There are no hot Randy Jennings documents that were

2    produced in January.

3             Same goes for Steve Cramer.  I think he was listed

4    on two -- identified in two documents in our entire document

5    production, and they were both lists of members or lists of

6    participants in a very large group.

7             And Kathe Hooper is our person who is responsible

8    for rights and permissions.  We identified her in that

9    regard on our organizational chart that was produced in

10   October of 2014.  They've, again, not identified any reason

11   why they need to take her deposition and certainly haven't

12   identified anything that was missing with respect to rights

13   and permissions during the 30(b)(6) deposition.

14            And in that regard, they actually took the

15   30(b)(6) deposition several weeks ago, and we have not heard

16   any complaints about the witness being inadequately prepared

17   until I raised this point in our meet-and-confer a few

18   minutes ago and I was told, oh, some day they'll get us a

19   letter with the supposed inadequacies of our preparation.

20            So we don't think that they've made any showing

21   that they should be permitted to take extra depositions, let

22   alone take depositions within the ten of persons that were

23   not properly noticed within the fact discovery deadline.

24            THE COURT:  Very well.  Thank you very much,

25   Mr. Fee.

1          Mr. Lewis?

2          MR. LEWIS:  ASHRAE has nothing to add, Your Honor.

3          THE COURT:  Very well.  Thank you, Mr. Lewis.

4          Now, Mr. Halperin or Mr. Becker?

5          MR. BECKER:  Good afternoon, Your Honor.  Matthew

6     Becker for the defendant Public.Resource.org.

7          THE COURT:  Good afternoon, Mr. Becker.

8          MR. BECKER:  So Public Resource has been trying to

9     work with the plaintiffs to get their cooperation in

10    reaching an orderly completion of discovery.  Public

11    Resource believes that part of that means that they need to

12    cooperate with us to provide deponents just as we've

13    cooperated with them; for instance, in February, when we

14    provided Mr. Malamud and Public Resource as a 30(b)(6) on

15    separate days despite the fact that we did have an

16    opposition as to the separate depositions apart from the

17    AERA plaintiffs.

18          As you are likely aware, the plaintiffs had

19    produced over 92 percent of their documents in the last

20    month of discovery.  This made it incredibly difficult for

21    us to identify the witnesses that should be the proper

22    deponents in this case.  They had 16 individuals listed on

23    their initial disclosures, some of which were added within

24    the last month, even up to the day before the close of

25    discovery, and as such, it was incredibly difficult for us

1      to actually provide these notices for them.

2             We believed that we had an agreement with the

3      plaintiffs such that any notices that were provided by the

4      close of discovery on January 30th would be honored for

5      depositions that would take place after January 30th.  It

6      now --

7             THE COURT:  What is the basis of your assertion

8      that you believe the parties had an agreement?

9             MR. BECKER:  That was because we had discussed

10     this with the parties, and we have email records that show

11     this discussion with the parties.  It was an offer that had

12     been made by the plaintiffs, and Public Resource then

13     provided their documents to the plaintiffs on January 30th.

14            THE COURT:  How many depositions has Public

15     Resource taken thus far in the 2013 case?

16            MR. BECKER:  Public Resource has taken three

17     depositions:  one 30(b)(6) of each of the plaintiffs, but

18     there are additional topics outstanding for the plaintiffs.

19            THE COURT:  Very well.  You may continue.

20            MR. BECKER:  Since the filing of our motion

21     initially at the end of January, there have been a number of

22     incidents that have made it even more difficult for Public

23     Resource to obtain the discovery that it needs.  The

24     plaintiffs have not been cooperative in providing dates for

25     depositions as they said, for instance, with regards to the

1    former president of NFPA.  They have provided two dates for

2    that individual, none of which were workable.

3              For other individuals, they tried to provide them

4    on dates such as the exact same date that we were -- had

5    offered Mr. Malamud for deposition and that they intended to

6    take Mr. Malamud's and did take Mr. Malamud's deposition.

7    They wanted us to simultaneously take the deposition of

8    their 30(b)(6) on the other side of the country, which was

9    simply unworkable.

10             And so many of the offers that have been made have

11   been -- they're not true offers.  All three plaintiffs will

12   offer depositions on the exact same day, which they know is

13   not going to be workable for the defendant.

14             Additionally, since the filing of the motion to

15   extend discovery, NFPA has filed a motion to amend the

16   complaint to include another standard, the 2014 National

17   Electric Code, which has its own specific issues and appears

18   to have been designed in part to try to get around the

19   problems with copyrightability that are evident in the prior

20   versions of the National Electric Code.

21             And the plaintiffs have additionally filed their

22   emergency motion for protective order which, as one of the

23   plaintiffs mentioned just a moment ago, is -- they believe

24   is going to delay the time at which a final set of 30(b)(6)

25   topics can be taken as to all three plaintiffs.  And for all

1    of these factors, that's the reason why Public Resource now

2    believes that it needs an additional two weeks beyond the

3    original date that it had asked for back in January.

4              THE COURT:  Is it correct that the -- that

5    deponents or designees were available to address all but

6    three of the twenty -- I believe someone referred to the

7    number 27 topics?

8              MR. BECKER:  No, they have not all been made

9    available for us.  So there are still --

10             THE COURT:  What is your response to Mr. Rehn's

11   contention that, except for the three that are the subject

12   of the motion for protective order, a witness addressed all

13   the remaining topics?

14             MR. BECKER:  That's not true, Your Honor.

15   Witnesses had been provided --

16             THE COURT:  What did occur, in your view?

17             MR. BECKER:  Public Resource took the depositions

18   of three individuals, one for each plaintiff, that were --

19   they were each designated for a subsidiary of the number of

20   topics that had been provided other than the three that are

21   the subject of the motion.

22             Now, the exception for that would be ASTM, which

23   has -- which claimed that the single individual they

24   provided had been provided as to all topics except for those

25   three that are the subject of the protective order motion.

1    However, Public Resource encountered a great amount of

2    difficulty from ASTM at that deposition, did not believe

3    that that single deponent had been adequately prepared and

4    was able to adequately respond to many of the topics that

5    were addressed, and so therefore Public Resource is in the

6    process of preparing to meet and confer with ASTM regarding

7    providing additional time or an additional deponent to

8    address the insufficient topics.

9         THE COURT:  What is the reason that the other

10   depositions were not noticed until the deadline for the

11   close of discovery?

12        MR. BECKER:  The reason has been -- so --

13        THE COURT:  We agree that that is a period of

14   approximately one year from when their identities first

15   became known?

16        MR. BECKER:  It depends on the individuals.

17        Your Honor, a party is entitled to know the scope

18   of discovery and the scope of the individuals that are

19   involved in an action prior to noticing its' ten deponents,

20   particularly in a circumstance like this where Public

21   Resource believes, because of the complexity of the case and

22   because of the number of parties, that Public Resource would

23   need to take more than ten depositions.

24        THE COURT:  And my question is -- my request is

25   that you address the failure to even notice the depositions

1    for a period of one year and further failing to notice them

2    until the date for fact discovery -- the date for the close

3    of fact discovery had already arrived.

4            MR. BECKER:  Yes, Your Honor.  We had noticed some

5    of the depositions, but we weren't -- did not want to notice

6    the full scope of ten depositions because we were still in

7    the process of determining who would be our remaining ten

8    and discovering that, with the complexity of the case, it

9    was necessary to go beyond ten deponents.

10           And so although in November -- I believe it was

11   November 16th -- we had noticed a number of those

12   individuals, there were questions as to which should the

13   remaining deponents be, and that was pushed back because the

14   plaintiffs had not produced -- they didn't produce over 92

15   percent of their documents until the last month of

16   discovery.  A large number of those individuals who we had

17   subsequently noticed were individuals who were discovered

18   through that document production.  And furthermore, it would

19   have been impossible for us to be certain that those -- that

20   individuals such as the president of ASTM was the correct

21   person to be noticing before we had the opportunity to

22   review those documents.

23           THE COURT:  To what extent do those circumstances

24   have a bearing upon the decision that a Court must make

25   regarding additional depositions?  In other words, would a

1    Court not be within the bounds of its discretion to

2    determine that if, for a period of one year, a party took no

3    depositions, that there is no basis for permitting the

4    original number allowed and some more?

5            MR. BECKER:  Your Honor, the question as to

6    allowing the depositions is one that does involve the

7    Court's discretion, but it's also a question of whether the

8    parties -- specifically the party that's asking for relief

9    -- have been prejudiced and whether the party that's asking

10   for relief has been reasonably diligent given the

11   circumstances.

12           I believe that Public Resource --

13           THE COURT:  Well, perhaps the answer bespeaks the

14   second of the two concerns, and that is the extent to which

15   the party has been diligent.  It was for that reason that I

16   referred to what appear to be the undisputed facts here, and

17   that is for a period of one year after the identities of the

18   witnesses had become known that no depositions at all of

19   those individuals were noticed until the date for the close

20   of discovery had passed.

21           MR. BECKER:  Your Honor, they had identified 16

22   individuals on their initial disclosures.  That's more than

23   the ten individuals that we would initially be allowed to

24   notice.  And so we needed to actually have the documents and

25   be able to review the discovery in order to know who we

1    needed to depose.

2           If we had noticed them prior and then subsequently

3    discovered, with the massive last-minute productions by

4    plaintiffs, that we had noticed the wrong individuals, we

5    would simply have been out of luck.  And so we're put in a

6    Catch-22 where because --

7           THE COURT:  You still have not addressed the delay

8    until after the close of discovery to serve the notices.  Do

9    you agree that the notices were served on the day after fact

10   discovery closed?

11          MR. BECKER:  No, I do not, Your Honor.  They were

12   served at 9:42 p.m. on the day of the close of discovery.

13   The plaintiffs --

14          THE COURT:  You say 9:42 p.m.?

15          MR. BECKER:  Yes.  And the plaintiffs argue that

16   that is after the close of discovery because --

17          THE COURT:  What is your argument concerning when

18   discovery would have closed?

19          MR. BECKER:  Your Honor --

20          THE COURT:  When discovery did close on that day?

21          MR. BECKER:  The rules for service are that when a

22   document is, for instance, put in a mailbox on a particular

23   date, that is the date of service.  And so if that -- if we

24   had placed -- instead of providing electronic service, if we

25   had mailed out these notices at that time on that date, then

1    it would have been sufficient.  To have provided it to the

2    parties -- the plaintiffs in a more immediate fashion, some

3    of which are located in San Francisco and therefore received

4    it at that time, at 9:42 p.m., it's therefore proper

5    service.

6              THE COURT:  My question did not go to proper

7    service.  My question went to the date on which discovery

8    closed.

9              MR. BECKER:  Yes.

10             THE COURT:  Do you agree that discovery had closed

11   at the time the notices were served?

12             MR. BECKER:  Without an order from the Court, yes,

13   discovery had closed on that date.

14             THE COURT:  Had discovery closed -- what is your

15   contention regarding whether discovery had closed as of the

16   time you served the notices?

17             MR. BECKER:  No, we do not believe that the

18   discovery had closed as of the time that we served the

19   notices.

20             THE COURT:  Let me ask you to explain why that --

21   on what basis you ask the Court to make such a finding?

22             MR. BECKER:  Because there had been a previous

23   offer by the plaintiffs to accept any notices that were

24   served up and through January 30th to then allow the

25   depositions to be taken thereafter, and that the notices

1    were served on January 30th to all three plaintiffs.

2            THE COURT:  By that, do you mean that the emails

3    were sent at 9: -- did you say 48?

4            MR. BECKER:  9:42 p.m., Your Honor.

5            THE COURT:  9:42 p.m.  Very well.  You may

6    continue.

7            MR. BECKER:  Your Honor, with regards to the date

8    of the close of discovery, plaintiffs have been -- have said

9    that they think that they would suffer prejudice because of

10   the date that we're asking discovery to be extended to.

11   Public Resource --

12           THE COURT:  For what purposes should discovery be

13   extended, in your view?

14           MR. BECKER:  Discovery should be extended for the

15   purposes of allowing Public Resource to take the depositions

16   that it has noticed, and, if the Court intends to allow the

17   plaintiff NFPA to amend the complaint to introduce the 2014

18   National Electric Code, Public Resource believes that it

19   should be allowed to take written discovery as to the 2014

20   National Electric Code and its relationship to the previous

21   versions of the National Electric Code because it does

22   appear that the 2014 version has been crafted to avoid the

23   problems with copyrightability that the plaintiffs face with

24   their other standards at issue in this case.  And --

25           THE COURT:  Do you agree that the time to address

1    the need for further discovery arising from any amendment of

2    the complaint would be after there is a ruling on the motion

3    for leave to amend, bearing in mind that at this time none

4    of us know whether or not that motion will be granted?

5              MR. BECKER:  Your Honor, Public Resource had --

6    Public Resource would be willing to address that again if

7    Your Honor chose that she wanted to decide as to the motion

8    to amend prior to determining whether discovery on that

9    amended standard would be allowed.  But Public Resource

10   simply wanted to raise the issue that we would not object to

11   the amendment so long as Public Resource is allowed fair

12   discovery on that particular standard.

13             THE COURT:  What other discovery does Public

14   Resource require?  I'm speaking now of the 2013 case.

15   You've indicated that your request is to extend discovery to

16   permit Public Resource to take depositions, both those that

17   were not noticed until discovery had closed -- were not

18   noticed until the date on which discovery was set to close,

19   depending on what finding the Court might make, and that

20   there could be a request based upon an amendment of the

21   complaint.

22             What is the other -- what additional discovery is

23   there that Public Resource believes it requires --

24             MR. BECKER:  It is --

25             THE COURT:  -- in the 2013 case?

1          MR. BECKER:  In the 2013 case, it is just the

2     extension of the discovery to the end of April so as to take

3     those depositions that had -- that Public Resource has

4     already noticed and to -- if there is amendment, to allow

5     the 2013 National Electric Code -- to have written discovery

6     as to the National Electric Code and its relationship to

7     prior standards and to, of course, be able to address the

8     2014 National Electric Code in its depositions, which would

9     include potentially amending the 30(b)(6) notice to the

10    National Fire Protection Association to have targeted topics

11    based off of the 2014 National Electric Code.

12          THE COURT:  Am I correct in my impression that

13    should the Court deny the plaintiffs' motion for protective

14    order, that Public Resource would wish to reconvene or

15    reopen the 30(b)(6) depositions?

16          MR. BECKER:  I'm not certain if I understand, Your

17    Honor.

18          THE COURT:  The plaintiffs have moved for a

19    protective order precluding witnesses from testifying

20    regarding certain matters.  Is that your understanding of

21    the motion?

22          MR. BECKER:  Yes.

23          THE COURT:  Am I correct that that is your

24    understanding of the motion?

25          MR. BECKER:  Yes.

1     THE COURT:  Should the motion be denied, would it

2     be Public Resource's intention to seek to reopen those

3     depositions to ask questions with respect to the topic as to

4     which seemingly there was no inquiry?

5     MR. BECKER:  Yes, though I should note that only

6     one plaintiff, ASTM, has provided what it claims to be the

7     single witness that's necessary for 30(b)(6)s.  As to NFPA

8     and ASHRAE, they have not yet provided the remaining

9     30(b)(6) witnesses, and so it would not be necessary so much

10    to reopen unless we had gone past the close of discovery by

11    that point.

12    THE COURT:  What have the parties discussed

13    regarding completion of the depositions?

14    MR. BECKER:  So, for instance, Your Honor, ASHRAE

15    has worked with Public Resource to schedule the deposition

16    of Ms. Reinecke, which I believe is scheduled for April

17    10th, if I'm not mistaken, and Ms. Reinecke is noticed for a

18    number of topics, some of which include those topics that

19    are the subject of the protective order.  And so if the

20    protective order was decided prior to that point, then there

21    would be no need to go back and have yet a further designee

22    from ASHRAE because that designee would be able to address

23    that subject.

24    THE COURT:  Very well.  Thank you very much,

25    Mr. Becker.

1              Is that the extent, the full extent, of the

2      remaining discovery that Public Resource expects or wishes

3      to take?

4              MR. BECKER:  Yes, Your Honor.

5              THE COURT:  Very well.  Thank you very much.

6              MR. BECKER:  Your Honor, may I address just one

7      more subject?

8              THE COURT:  Yes.

9              MR. BECKER:  With regards to the plaintiffs' claim

10     of prejudice, I'd simply like to address the fact that

11     plaintiffs -- documents that we've submitted in our reply

12     brief show that the plaintiffs have been planning this

13     litigation since February 2011 and such that an extension of

14     discovery for an additional month doesn't seem like it would

15     be so much of a hardship to plaintiffs as they're now

16     claiming that it is, which is simply to say that this has

17     been -- this is a matter that has been going on for quite

18     some time, and that Public Resource should be entitled to

19     have a fair opportunity to take discovery.

20             And furthermore, with regards to plaintiff ASTM's

21     comments regarding Randy Jennings and Steve Cramer, these

22     are individuals who plaintiffs say were not -- that they did

23     not believe that there were important documents that were

24     produced at the last minute as to their involvement in

25     relationship to this case.  Those were individuals who were

1    identified in Public Resource -- excuse me, in plaintiffs'

2    initial disclosures, some of which I believe were amended

3    and added in in January.

4          And so Public Resource has tried to work with

5    plaintiffs in order to take the ten depositions -- ten of

6    the depositions that it has noticed and had hoped that we

7    would be able to schedule and have taken those ten

8    depositions by this time so that Your Honor would be able to

9    address just the issue of the remaining depositions, many of

10   which are individuals who had been on plaintiffs' amended

11   initial disclosures or who are individuals who we believe

12   have information that would go beyond the topics that the

13   30(b)(6) designees would be knowledgeable about.

14          THE COURT:  And just so the record is clear, when

15   were those amended disclosures served?

16          MR. BECKER:  So there were multiple amended

17   disclosures that were served by plaintiffs --

18          MR. FEE:  Your Honor, I can answer that, if you'd

19   like.

20          THE COURT:  I will hear Mr. Becker's response.  It

21   is principally the month and the year that is of concern to

22   the Court.  My impression is that you've referred to initial

23   disclosures served at the latest January of 2014, but if I

24   am incorrect, please so indicate.

25          MR. BECKER:  Plaintiff National Fire Protection

1    Association served an amended disclosure on the 14th of

2    January 2015.  On January 30, 2015, plaintiff ASHRAE served

3    an amended initial disclosure.

4            THE COURT:  Is it your contention that the January

5    2015 amended initial disclosures included names of

6    additional witnesses?

7            MR. BECKER:  Yes.  Yes, Your Honor.

8            Excuse me, it was ASTM that had served on the 14th

9    day of January, and it was NFPA that served -- let's see.  I

10   don't have the date for NFPA.

11           THE COURT:  Very well.  Thank you very much,

12   Mr. Becker.

13           MR. BECKER:  Thank you, Your Honor.

14           THE COURT:  I have a brief question of plaintiffs,

15   and we will then take a brief recess.

16           Mr. Rehn, perhaps I will hear from you first, and

17   we'll proceed in the same sequence that we did earlier.

18   What additional discovery -- what additional fact discovery,

19   if any, do the plaintiffs wish to take?  The only motion

20   that the plaintiffs have filed, of course, is the motion for

21   protective order precluding further discovery, precluding

22   discovery on those designated topics, I should note.  What,

23   at this point, is the additional discovery that the

24   plaintiffs believe plaintiffs should be permitted to take?

25           MR. REHN:  We do not believe there is additional

1    discovery needed on behalf of NFPA.

2              THE COURT:  Very well.  Thank you, Mr. Rehn.

3              Mr. Fee?

4              MR. FEE:  Your Honor, we took all the depositions

5    that we thought needed to be taken during the discovery

6    period that was set forth by the Court's order.

7              THE COURT:  Very well.  Thank you, Mr. Fee.

8              And Ms. Rubel, you and Mr. Fee are co-counsel with

9    respect to your client?

10             MR. RUBEL:  That's correct.

11             THE COURT:  Very well.  Mr. Lewis?  Good

12   afternoon.

13             MR. LEWIS:  Good afternoon.

14             THE COURT:  The Court has been reminded that the

15   motion which was filed for your admission pro hac vice has

16   not yet been ruled upon.  I believe that's an oversight on

17   the Court's part, and because it will be granted before the

18   end of the day, I will ask you to please proceed.

19             MR. LEWIS:  Thank you, Your Honor.

20             THE COURT:  Thank you.

21             MR. LEWIS:  ASHRAE does not believe that it needs

22   any additional discovery.

23             THE COURT:  Very well.  Thank you very much,

24   Mr. Lewis.

25             I believe one of you -- perhaps it was you,

1    Mr. Fee -- who seemingly wished to respond to the question

2    about the amended initial disclosures.  Am I correct?

3              MR. FEE:  Yes, Your Honor.  I was just going to

4    let you know that when opposing counsel referenced an

5    initial disclosure that added Mr. Jennings and Mr. Cramer,

6    those witnesses were identified in a December 2014 initial

7    disclosure, not in a January 2015 initial disclosure, as had

8    been suggested.  And I have a copy of that, if you'd like to

9    see it.

10             THE COURT:  I will ask you to first share it with

11   Mr. Halperin and Mr. Becker, please.

12             MR. REHN:  If I may, Your Honor?

13             THE COURT:  Mr. Fee.  Excuse me --

14             MR. REHN:  Mr. Rehn.

15             THE COURT:  -- Mr. Rehn.

16             MR. REHN:  On behalf of NFPA, yes.  And the

17   witnesses at issue for NFPA were also disclosed November 29,

18   2014 or earlier.  Some in January of 2014 and some in an

19   amended on November of 2014.  And there was an amendment on

20   January 20th, but that witness has not been at issue in the

21   discussions we're having right now.

22             THE COURT:  Thank you very much, Mr. Rehn.

23             Mr. Lewis, do you wish to address this issue

24   concerning amendment of the initial disclosures?

25             MR. LEWIS:  Yes, Your Honor.  Briefly, we did

1    amend our initial disclosures earlier this year, but it was

2    only to add the name of one witness who had already been

3    noticed for deposition by defendants.  So it was not a new

4    -- a newly identified individual.

5              THE COURT:  Very well.  Thank you very much,

6    Mr. Lewis.

7              At this time, we will take a brief recess, and the

8    Court will be prepared -- will prepare at that time to

9    address the requests for extension of time in which to

10   complete fact discovery and the issue concerning the number

11   of additional depositions, if any.  We recognize that the

12   motion for protective order has not yet been fully briefed.

13   Perhaps it will be necessary to set a date for argument on

14   that motion, or alternatively you may agree whether it may

15   be decided by the Court based upon the parties' written

16   submissions.

17             So my suggestion is that during the recess, you

18   address that last question that I just posed, in other

19   words, whether, as to 86, the parties agree that the Court

20   can decide the party without oral argument; in other words,

21   based solely on your written submissions once it has been

22   fully briefed.

23             Very well.  Thank you very much.  You may remain

24   seated, and we'll take a brief recess.  Thank you.

25             (Recess taken)

1                    THE COURT:  Now, we're back on the record.

2               The Court is now prepared to address the issues in

3       the 2013 case.  The principal one, of course, is the request

4       of the defendants to extend discovery.  The Court notes that

5       the defendant seeks to extend discovery for the purpose of

6       -- essentially for three purposes:  the first, to permit the

7       defendant to take the depositions which were noticed on the

8       date set for the close of fact discovery; second, to take

9       discovery regarding the amended complaint; and third, for

10      the purpose of completion of the 30(b)(6) depositions.

11              Plaintiffs oppose the request and note that there

12      is no additional discovery that the plaintiffs -- no

13      additional fact discovery that the plaintiffs seek.

14              The Court has reviewed the motion and accompanying

15      materials and, in addition, the scheduling order entered by

16      the Court, the initial scheduling order entered by the Court

17      in December of 2013, and considered the arguments made by

18      counsel here in open court.  Having done so, the Court will

19      deny the request to extend discovery except to permit a

20      brief period for the completion of the 30(b)(6) depositions

21      to the extent that there is one seemingly underway as to

22      which the parties may have some agreement.

23              The pending motion and any further 30(b)(6)

24      questions that might be occasioned I cannot address now and

25      will provide for that at such time that there is a ruling on

1    the motion.  The motion is not ripe, and I cannot consider

2    it at this time.

3          In so ruling, the Court finds that no good cause

4    for the continuance or the extension has been shown by the

5    defendant.  The Court principally relies upon the authority

6    in this district which holds that the Court, in making such

7    a finding, may indeed consider whether or not the party

8    seeking the extension has been diligent.  In this

9    circumstance, the Court finds that the defendant has not

10   made the requisite showing of diligence.

11         It is not within the province of the Court to

12   require counsel for the defendant to state all of the

13   reasons that the notice was not served until the date set

14   for the close of discovery.  Reasons have been proffered.

15   The Court has considered them very carefully; however, the

16   Court is unable to find that the reasons constitute good

17   cause, as that term has been defined by the judges of this

18   court.

19         In addition, the Court notes that the scheduling

20   order entered on December 31, 2013, Document No. 30,

21   precludes -- expressly precludes the very conduct in which

22   defendant engaged.  I am referring now to Page 2 of that

23   scheduling order which reads:  "Accordingly, the parties are

24   directed to ensure that all discovery requests are served in

25   sufficient time to allow a response consistent with the

1    timing set forth in the Federal Rules of Civil Procedure and

2    the local civil rules unless otherwise stipulated by the

3    parties."

4          The Court reads that provision, a customary

5    provision entered by judges of this court, indeed to

6    preclude the service of a notice of deposition two hours

7    before the end of the day on the date that discovery was set

8    to close.  A timely notice of deposition would be one made

9    in accordance with the notice requirements of the applicable

10   rules well in advance of the last day so that the

11   depositions could be completed by that last day.

12         Clearly that did not happen here.  There is no

13   scenario in which the Court could find that the service of a

14   notice in the remaining two hours of the day on which

15   discovery closed was a timely notice, as that phrase has

16   been utilized by the judge who entered the scheduling order

17   and other judges of the Court.

18         For the purpose of the completion of any 30(b)(6)

19   deposition that has been the subject of an agreement of the

20   parties, the Court will suggest -- will order that that be

21   accomplished within the next two weeks.  In other words, by

22   April 2nd.  Any additional discovery consistent with a

23   ruling on the motion which we cannot address at this time

24   will be addressed at the time the motion is decided.

25         If the parties reach an agreement regarding

1     whether or not argument is requested on the plaintiffs'

2     motion for protective order or instead that the Court can

3     simply decide the order based on the parties' written

4     submissions -- perhaps I should inquire of plaintiffs first

5     since plaintiffs filed the motion.  We'll proceed in the

6     same sequence.

7              Mr. Rehn?

8              MR. REHN:  Yes, Your Honor, and I can speak for

9     all plaintiffs in the case, that we are willing to submit

10    that motion on the papers.  We briefly conferred with the

11    defendant.  I believe we initially reached an agreement, but

12    I'm not sure if -- I'll let them speak.

13             THE COURT:  Very well.  Thank you, Mr. Rehn.

14             So all plaintiffs agree that the Court can decide

15    the motion based on the written submissions.  Mr. Fee or

16    Ms. Rubel, is that correct?

17             MR. FEE:  That's right, Your Honor.

18             THE COURT:  And Mr. Lewis?

19             MR. LEWIS:  Yes, Your Honor.

20             THE COURT:  Very well.  Thank you.

21             Mr. Becker or Mr. Halperin?  Mr. Becker.

22             MR. BECKER:  Yes, Your Honor.  We also agree that

23    the motion can be heard on the briefs or decided on the

24    briefs.  One matter that we had discussed was whether there

25    would be a need for a sur-reply or not, but we think that

1    that can be addressed later when we see the reply.

2              THE COURT:  Very well.  Once the motion has been

3    fully briefed -- in other words, once I have received the

4    opposition and the reply -- then the Court will quickly take

5    the matter under advisement.

6              MR. BECKER:  Your Honor, may I ask a question

7    regarding your order, an ambiguity that was unclear to me?

8              THE COURT:  Yes, of course.

9              MR. BECKER:  On November 16th, Public Resource had

10   noticed not just the 30(b)(6) depositions for the

11   plaintiffs, but also a 30(b)(6) deposition for a third

12   party, ANSI, and also for two individuals, Jim Pauley and

13   Jim Shannon.  Will Public Resource be permitted to take

14   those depositions as well, Your Honor, as they were noticed

15   in November?

16             THE COURT:  The Court intended to indicate that

17   the 30(b)(6) depositions, which I understood to be the

18   subject of some agreement between the parties except in the

19   matters addressed in the motion for protective order, will

20   be completed.  Is that your question?

21             MR. BECKER:  My question is, will -- it seems that

22   the Court's reasoning was that Public Resource had

23   improperly delayed in noticing the other depositions, but on

24   the same day that Public Resource had noticed the 30(b)(6)

25   depositions in November of 2014, Public Resource had also

1    noticed additional depositions, a 30(b)(6) of a third party,

2    ANSI, as well as the deposition of NFPA member Jim Pauley

3    and NFPA member Jim Shannon.  My question is whether Public

4    Resource may be permitted to take those depositions that

5    have been previously noticed in November as well?

6              THE COURT:  I will hear from counsel in turn.

7    Thank you, Mr. Becker.

8              Mr. Rehn?

9              MR. REHN:  Yes, thank you, Your Honor.  I believe

10   he raised two issues.  One was the 30(b)(6) deposition of

11   the third-party ANSI, which was served with a subpoena by

12   Public Resource.  I don't believe plaintiffs -- at least

13   NFPA does not have any objection to that deposition going

14   forward.

15             With respect to the additional witnesses from --

16             THE COURT:  None of you who are seated at

17   plaintiffs' table represent that third party; am I correct?

18             MR. REHN:  That's correct, Your Honor, but at

19   least for purposes of NFPA, we don't have an objection to

20   that deposition.

21             THE COURT:  Very well.

22             Before we move on, I will suggest that I am making

23   no finding regarding any third-party deposition because I do

24   not know at this point whether counsel for the third party

25   will appear and move to quash the subpoena on some ground.

```
 1      So since that party is not here, I simply can make no

 2      finding.

 3              MR. REHN:  Thank you, Your Honor.

 4              And I -- now, with respect to the other matter, as

 5      we detail in our papers, I don't think he has his dates

 6      right, but certainly there were never any deposition notices

 7      served to the NFPA with respect to those witnesses prior to

 8      January 31.

 9              Now, if there were some emails --

10              THE COURT:  Let me interrupt you.

11              MR. REHN:  -- identifying those two witnesses --

12              THE COURT:  Mr. Becker, was there a notice of

13      deposition served?

14              MR. BECKER:  Yes, Your Honor.  I believe there

15      was.

16              THE COURT:  Do you have it?

17              MR. BECKER:  I don't think I have it on me, Your

18      Honor.

19              MR. REHN:  I don't believe there was.  I do

20      believe there were some emails in which they indicated they

21      were interested in deposing those witnesses.  We had

22      suggested we'd be willing to schedule those.  But the notice

23      wasn't served, and they -- we asked the notice to be served

24      in January.  It wasn't served.  So we would say that that

25      should be subject to the same order at this point.
```

1          THE COURT:  Very well.  Thank you, Mr. Rehn.

2          Are you looking for the notice, Mr. Becker?

3          MR. BECKER:  Yes, Your Honor.

4          THE COURT:  Very well.

5          (Pause)

6          THE COURT:  If you have found it, I will ask you

7      to show it to plaintiffs' counsel before you proceed.

8          MR. BECKER:  Your Honor, I have not found it yet.

9      I was wondering if we may be allowed to supplement on that

10     today if we're able to locate the document?

11         MR. REHN:  And Your Honor --

12         THE COURT:  The Court will permit you an

13     opportunity to file the notice of deposition, if there is

14     one, with a notice of filing.  The Court will not require

15     any further briefing by way of supplementation.  I have

16     heard all of your arguments.  My only question is whether

17     there was a timely notice of deposition --

18         MR. BECKER:  Yes, Your Honor.

19         THE COURT:  -- that was served.  Until you raised

20     this point, I was under the impression that there was only

21     one notice of deposition served, and that was the one served

22     at nearly 10:00 on the date that discovery closed.  If I am

23     mistaken, and there was some earlier notice of deposition,

24     then -- earlier and timely in accordance with the

25     requirements of the Court, then I would encourage you to

1     file it, and the Court will determine at that time whether

2     discovery should be -- whether this additional period of

3     discovery should include the deposition of those two

4     individuals.

5              MR. BECKER:  Yes, Your Honor.

6              MR. REHN:  And, Your Honor, just to state on the

7     record, my recollection is that there was no notice of

8     deposition.  If my recollection is incorrect, we would not

9     object, if there was a timely notice served.  But my

10    recollection is we specifically requested such a notice, and

11    there wasn't one served as of the close of discovery.  But

12    we'll see what the record shows.

13             THE COURT:  Very well.  Thank you very much.

14             Unless there is something further regarding the

15    2013 case, I believe we can turn our attention to 2014.  Is

16    there anything further concerning 2013, Mr. Rehn?

17             MR. REHN:  No, Your Honor.  That concludes the

18    2013 matters.

19             THE COURT:  Very well.  Thank you, Mr. Rehn.

20             MR. REHN:  And if I may beg Your Honor's

21    permission, I have to catch a plane, if you wouldn't mind if

22    I leave?

23             THE COURT:  You may be excused.

24             MR. REHN:  Thank you.

25             THE COURT:  Ms. Rubel or Mr. Fee, is there

1    anything regarding the 2013 case?

2              MR. FEE:  No, Your Honor.

3              THE COURT:  Thank you very much, Mr. Fee.

4              Mr. Lewis, is there anything further concerning

5    the 2013 case?

6              MR. LEWIS:  No, Your Honor.

7              THE COURT:  Very well.  The four of you

8    representing the 2013 plaintiffs may be excused.  Thank you.

9              MR. FEE:  Thank you, Your Honor.

10             THE COURT:  Now I believe we're ready to turn our

11   attention to the 2014 case.  Do the four of you need further

12   opportunity to confer before we begin?

13             MR. HUDIS:  No.  No, Your Honor.

14             THE COURT:  Very well.  Mr. Hudis and Ms. Cooney-

15   Porter, you were present during the discussions of the 2013

16   case so you know the concerns that the Court has regarding

17   completion of discovery.  So with that in mind, I will ask

18   you to please turn your attention to the status.

19             MR. HUDIS:  Your Honor, thank you very much.

20   Jonathan Hudis for the plaintiffs in the 2014 case.  I would

21   like to reserve some time to respond to Mr. Becker's

22   comments regarding Public Resource's needs on discovery.  I

23   will address the Court's questions about plaintiffs' needs

24   and what has been accomplished so far.

25             We very much, in order for the plaintiffs to

1    complete discovery, need the Court's guidance on the motion

2    to compel that we filed with the Court on December 15, 2014,

3    which we argued before Your Honor on January 22, 2015.  We

4    have been --

5            THE COURT:  The Court has not forgotten that the

6    parties have at least preliminarily addressed that motion.

7    However, at that time, because of the concerns that there

8    were -- that the Court had regarding the absence of any

9    meaningful effort to meet and confer, as well as the looming

10   issue concerning consolidation, the expectation of the Court

11   was that the parties would address those two matters and

12   narrow the areas of dispute.

13           MR. HUDIS:  When the motion was argued before Your

14   Honor on January 22nd, by that point we had considerably

15   narrowed the issues that were initially addressed in the

16   motion, leaving only what was addressed in the reply when we

17   had that conversation, Your Honor.

18           Since then, we have propounded a second round of

19   written discovery.  The issues have not gone away.  The

20   parties are at loggerheads on those issues, and until the

21   Court rules, subject to something Mr. Becker might inform

22   the Court, we do need those rulings so that we can go

23   forward taking the depositions of Public Resource and

24   Mr. Malamud as was done in the 2013 case.

25           We have tried very much to come to a resolution of

 1    those issues even after the motion was briefed and argued.

 2    The issues are still not going away.  Since the time that we

 3    appeared before Your Honor, we had propounded the second set

 4    of discovery.  We have had four -- five exchanges of written

 5    correspondence back and forth between Mr. Becker's co-

 6    counsel and Ms. Cooney-Porter and myself.  We had a

 7    telephone conversation as late as last -- late last week,

 8    which, to my recollection, was over an hour.  The

 9    conversation was over an hour, Your Honor.  The issues are

10    just not going away, and that's why we had to turn to the

11    Court to ask for an extension of -- at least for our

12    discovery, to ask for an extension of time for the close of

13    discovery from March 16th to May 16th so that we could

14    complete the written discovery.

15            And then, for our purposes, we have two

16    depositions left.  And that's it.  After the paper discovery

17    issues are resolved, we're ready to take the two

18    depositions, and we're ready to close fact discovery.

19            Your Honor, we have been extremely diligent in

20    propounding discovery going after our needs in discovery

21    after the answers and documents that we got were not to

22    plaintiffs' satisfaction.  We have been trying our utmost to

23    bring this case, at least on the discovery phase that is

24    before Your Honor, to a close.

25            I would at this point entertain any questions from

1    the Court, and then reserve the rest of my time to respond

2    to Mr. Becker's comments on Public Resource's needs.  But

3    that is basically the -- the plaintiffs' position is we need

4    a few rulings on paper discovery, and then going forward

5    with Mr. Malamud's and Public Resource's depositions, and

6    then we should be fine.

7              THE COURT:  What have the parties done in an

8    effort to reach an agreement regarding the issues presented

9    by the motion bearing Document No. 27?

10             MR. HUDIS:  Your Honor, I want to be very specific

11   to your question.  Before we filed a motion, at the time we

12   filed a reply, or since the motion has been argued?

13             THE COURT:  Both.

14             MR. HUDIS:  Okay.  So before the motion was filed,

15   we had an exchange of several letters back and forth.  We

16   had one conversation lasting an hour, another conversation

17   lasting about ten minutes to see if Public Resource had

18   changed any of their positions, and then we filed the

19   motion.

20             After we filed the motion, after Public Resource

21   filed its opposition and the time we filed a reply, we still

22   had even more conversations.  At the time we filed our reply

23   we had narrowed considerably the areas of disagreement,

24   leaving for decision before Your Honor only those issues.

25             Since that time, we propounded a more specific and

1    targeted set of written discovery.  Public Resource's answer

2    to our satisfaction is probably about 60 percent of that

3    written discovery.  They have promised to give us a few

4    items more.  I'm reluctant to address specifically what

5    those are because in the 2013 case the Court said you were

6    not prepared to address matters that were not already

7    briefed and before the Court, so I am not doing so.

8            We have as late as -- then, after the propounding

9    of the second round of discovery, we had these letters back

10   and forth, the long conversation lasting over an hour late

11   last week, and now we're before you.

12           So we have been discussing matters constantly with

13   Public Resource's counsel, and we're just at points of

14   disagreement.  And we very much want to get past paper

15   discovery so we can take depositions and frankly go to the

16   merits.

17           THE COURT:  Very well.  Thank you very much,

18   Mr. Hudis.

19           MR. HUDIS:  And I reserve the rest of my time for

20   Public Resource's arguments.

21           THE COURT:  Very well.  Thank you very much.

22           Mr. Becker?

23           MR. BECKER:  Thank you, Your Honor.

24           So Public Resource has been engaging in many

25   conversations, as Mr. Hudis has said, with the AERA

1    plaintiffs, and we have been attempting to try to come to

2    agreements.  We have been addressing both AERA's more recent

3    discovery request to Public Resource as well as Public

4    Resource's discovery requests to AERA and their responses to

5    our discovery requests, and, to some extent, AERA's more

6    resent discovery requests overlap with the matters that were

7    addressed at the previous motion.

8              MR. HUDIS:  That's right.

9              THE COURT:  Are you satisfied that the parties

10   have exhausted their efforts to meet and confer to reach an

11   agreement regarding the pending motion?

12             MR. BECKER:  Yes, Your Honor.  With regards to

13   the pending motion, I do believe that we, as to borrow

14   Mr. Hudis's words, are at loggerheads.

15             THE COURT:  Is there further argument that you

16   request on behalf of your client in opposition to the

17   motion, or do you rest on the oral argument that you

18   previously made?

19             MR. BECKER:  Your Honor, we rest on the oral

20   argument that was previously made.

21             THE COURT:  Very well.  Thank you very much.

22   Thank you, Mr. Becker.

23             Mr. Hudis or Ms. Cooney-Porter?  Mr. Hudis.

24             MR. HUDIS:  Since Mr. Becker, like plaintiffs'

25   counsel, has listened to Your Honor's directives, we are not

1     bringing anything specifically to you that has not already

2     been briefed.  What is on both plaintiffs' and defendant's

3     mind is our consented motion for the two-month extension of

4     the close of fact discovery.

5               THE COURT:  May I ask you to articulate for the

6     purposes of the written record the need for that extension

7     independent of discovery which might flow from a ruling on

8     the amended motion to compel.  In other words, what else is

9     there that needs to be accomplished?

10              MR. HUDIS:  I'm at a quandary to answer Your

11    Honor's question without going into specifics.  I will, if

12    the Court wants us to.

13              THE COURT:  The Court asked that question so that

14    the basis of the request for an additional two months will

15    be clear.

16              MR. HUDIS:  Okay.

17              THE COURT:  We will assume for the moment that

18    should the Court grant the motion, the amended motion to

19    compel discovery even in part, that some time would be

20    needed for the parties to complete whatever tasks flow from

21    the ruling.  What else could there be?

22              It may be that even a favorable ruling on the

23    entirety of the motion would not require an additional two

24    months.

25              MR. HUDIS:  Now that counsel understands the

1    Court's question, I will gladly answer it.

2              THE COURT:  Very well.

3              MR. HUDIS:  Okay.  Presuming, from plaintiffs'

4    point of view, the motion to compel is fully responded to,

5    Your Honor presumably would order the production of the

6    materials requested by a date certain.  Public Resource

7    would give us those materials.  We would digest them in part

8    with the other 78 documents that they have produced to date.

9    We would then notice -- we have not yet -- notice and take

10   Public Resource's and Mr. Malamud's depositions and complete

11   our discovery.

12             The second sets of --

13             THE COURT:  In other words, in addition to the

14   discovery that you seek through this motion, there are two

15   depositions that you want to take?

16             MR. HUDIS:  Yes, Your Honor, and that would be our

17   second sets of written discovery.

18             Now, Mr. Becker made a good point.  The matters

19   that we disagree over in our second sets of written

20   discovery -- which is not recent; it was a while ago -- some

21   of those items do specifically track the discovery that we

22   ask be ordered in the motion to compel.  The other items

23   Mr. Becker and his co-counsel have agreed to provide us; we

24   just don't know when.

25             So apart from the motion to compel, Public

1    Resource has agreed to provide the other pieces of written

2    material that we have asked for in our second round of paper

3    discovery.  Then we would take -- notice and take the two

4    depositions, and we're done.

5            Today is March 18th [sic].  The two months would

6    put us at May 16th.

7            And in the other matter, Your Honor, the 2013

8    case, it has been Public Resource's position, we understand,

9    that only lead counsel can take and defend depositions, and

10   Mr. Bridges has a very busy schedule.  So if Public Resource

11   is going to take the same position in the 2014 case, that

12   only Mr. Bridges can take and defend all depositions, we're

13   certain -- hopefully we're going to get it all done in two

14   months.

15           Then there is, of course, the needs of Public

16   Resource, and we're trying to meet those.  I can tell you,

17   without going into specifics, we did have a conversation

18   about depositions.  We identified in our initial disclosures

19   way, way back, probably at the beginning of discovery, that

20   we had five witnesses which we believe would also satisfy

21   any 30(b)(6) topics that Public Resource would propound on

22   us.  We believe that's what they would need, unless they

23   tell us otherwise of different witnesses.  But that's all

24   they've let us know in a telephone conversation to date.

25           They have certain needs on documentary discovery,

1   and, as Mr. Becker has said, we are trying to work through

2   them.  Whether Public Resource is going to file another

3   motion to compel, I do not know.

4              THE COURT:  Very well.  Thank you very much,

5   Mr. Hudis.

6              Mr. Becker, what is the additional discovery that

7   Public Resource contemplates in the 2014 case?

8              MR. BECKER:  Your Honor, as described earlier, we

9   have a number of requests that are pending with the

10  plaintiffs, and we are meeting and conferring in attempting

11  to resolve them.  So those matters are outstanding.

12             THE COURT:  Are those the issues concerning the

13  responses to the second set of written discovery?

14             MR. BECKER:  No, Your Honor.  This is Public

15  Resource's first set of discovery to the plaintiffs, and

16  that has not been -- that has not come before Your Honor.

17             THE COURT:  When were those requests served?

18             MR. HUDIS:  December 15th.

19             MR. BECKER:  December 15th, Your Honor.

20             THE COURT:  And that is the first set?

21             MR. BECKER:  Yes, Your Honor.

22             And once that is resolved, Your Honor, we would

23  then want to take depositions of plaintiffs, and we are

24  contemplating the 30(b)(6)s and the five individuals who

25  have been identified in the initial disclosures.  We may, in

1    our review of their documents, identify additional

2    individuals that we may want to depose.

3              THE COURT:  Very well.  Thank you very much,

4    Mr. Becker.

5              MR. BECKER:  If I might just say one note, Your

6    Honor.  With regards to the lead trial counsel taking the

7    depositions, Public Resource had wanted the lead trial

8    counsel to take -- to defend Public Resource's depositions

9    and to take what it considered to be the most important

10   depositions in the case.  That would not necessarily exclude

11   other counsel from taking other depositions.

12             THE COURT:  That does not appear to be a matter

13   that requires the attention of the Court, and I expect that

14   counsel will reach some accommodation regarding who will be

15   present.

16             It is not my practice to indicate which lawyers

17   must take or defend a deposition.  Each party in this case

18   or multiple counsel have entered appearances for each party,

19   and I see no reason why you cannot, in a civil matter,

20   decide whose presence is necessary --

21             MR. BECKER:  Yes, Your Honor.

22             THE COURT:  -- or whose presence is desired.  The

23   unavailability of a single counsel of record where there are

24   multiple counsels who have entered an appearance likely

25   would not be regarded as good cause for an extension of time

1    to complete discovery.

2              MR. BECKER:  Yes, Your Honor.

3              THE COURT:  Very well.  Thank you very much.

4              MR. HUDIS:  Your Honor?

5              THE COURT:  Mr. Hudis, yes.

6              MR. HUDIS:  Yes, if Your Honor does not rule on

7    the pending consent motion to extend, then fact discovery

8    would already have been closed.  We just want to know, can

9    we go forward?

10             THE COURT:  The Court is aware.  I'm simply

11   attempting to determine what period of time is reasonably

12   necessary.  The Court expects to rule promptly on the

13   amended motion to compel and the motion to extend discovery.

14             MR. HUDIS:  Should we -- in the meantime, should

15   the parties just keep going?

16             THE COURT:  Yes.

17             MR. HUDIS:  Thank you, Your Honor.

18             THE COURT:  Thank you very much.

19             Now, is there anything further with respect to the

20   2014 case this afternoon?  Mr. Hudis or Ms. Cooney-Porter?

21             MS. COONEY-PORTER:  No, Your Honor.

22             MR. HUDIS:  Not for the plaintiffs, Your Honor.

23             THE COURT:  Very well.

24             Mr. Becker or Mr. Halperin?

25             MR. BECKER:  No, Your Honor.

1          THE COURT:  Very well.  I thank all of you very

2     much.  Have a good afternoon.

3          MR. HUDIS:  You too, Your Honor.  Thank you.

4          THE COURT:  Thank you.

5     (Whereupon the hearing was concluded at 4:21 p.m.)

6

7

8     **CERTIFICATE OF OFFICIAL COURT REPORTER**

9

10         I, LISA A. MOREIRA, RDR, CRR, do hereby

11    certify that the above and foregoing constitutes a true and

12    accurate transcript of my stenographic notes and is a full,

13    true and complete transcript of the proceedings to the best

14    of my ability.

15        Dated this 26th day of March, 2015.

16

17                              /s/Lisa A. Moreira, RDR, CRR
                               Official Court Reporter
18                             United States Courthouse
                               Room 6718
19                             333 Constitution Avenue, NW
                               Washington, DC 20001
20

21

22

23

24

25