# EXHIBIT I

Case No. 1:14-cv-00857-TSC-DAR

WHERE TO LISTEN | CONTACT US | SIGN IN |



Submit Q

 STEM TEACHERS: Get up to $60,000 in stipends and other benefits. Apply for an M/A fellowship.   Get Started

< MAKING LAWS MORE PUBLIC

**Transcript**

Friday, April 13, 2012

  

**BOB GARFIELD:** You think media ownership is arcane? How about the issue of transparency in government safety standards? Dry as dust, yet, an issue presenting a confounding and arguably un-American problem. That is, the sets of standards that the government uses to write laws are unavailable to the public, unless the public pays money to see them.

This is the bête noir of Carl Malamud, a government transparency advocate and president of public.resource.org. He believes safety standards should be easily accessible to all citizens for free. So Malamud's organization has ponied up the dough to purchase exactly 73 of these standards, which he will publish online, copyright or no copyright. Carl, welcome back to On the Media

So there are regulations out there that are built on standards designed by the industry, and they are the law of the land, right?

**CARL MALAMUD:** Oh, absolutely. These are binding laws. They're laws of general applicability. That means that everybody in the United States has to obey them, they have criminal penalties and they're critical to the public safety.

**BOB GARFIELD:** Well, give me a for instance.

**CARL MALAMUD:** Well, the standard for portable fire extinguishers, the standard for drinking water, system components and their health effects, the standard for testing for lead and water. These are not things you may necessarily want to read every day, but they certainly should be available to a small business person and they should be available to an engineering student, available to a journalist.

For example, there are standards that say things like you shall not use lead paint on walls of schools. And what the law says is you shall not use lead paint, and we define lead paint in the following standard developed by, in this case, the American Society for Testing and Materials, known as ASTM. And those standards are pretty expansive; they're 50 to 100 dollars for a couple of pages. And so, if you're a conscientious school principal, it's gonna cost you hundreds or thousands of dollars simply to read these standards to see what they say.

**BOB GARFIELD:** Does that school principal have no other means of getting those standards than to pay the organization that has published them?

Blame, Shame, or Deny?

California's #DroughtShaming

The Denialist Mystique

Rolling Stone's Fallout at UVA

Climate Feedback

The Guardian Takes A Stand

Every Edit You've Ever Made

Facebook Post Is Visible



AERA_APA_NCME_0032075

CARL MALAMUD: Mostly, these standards are simply not available in public libraries. So the only way you can get 'em is to spend the money or possibly go to Washington; there's one obscure office in the [LAUGHS] Office of the Federal Register that has one copy of every standard that's been incorporated by reference. And if you can make your way to that office, you might be able to read that standard.

BOB GARFIELD: Well, on the subject of the Federal Register, aren't the regulations published in full at the time they're adopted?

CARL MALAMUD: Regulations are published in full but they don't public the actual standard, they simply publish the fact that the standard has been incorporated. And then they put the address of the standards body that sells it. So if you want to read the full text of the law, you have to go where these non-profits are headquartered or go on the Web and, and pay for these things.

There is a principle in American law that the law doesn't belong to the government, it belongs to the people. And because of that, there's no copyright on the law. It – it isn't private property. It's available for everybody. And if you have to charge 500 dollars to read the law, then all of a sudden it becomes a poll tax on access to justice.

BOB GARFIELD: There is an expense attached to developing and codifying these standards. If we take the revenue away from those who do this work, then what happens?

CARL MALAMUD: Well, there's two answers to that. One is that the non-profits that develop these standards have a lot of different revenue streams. They do conferences, they do certification. They develop standards that aren't law. In fact, the vast majority of their standards are not. And so, maybe they need to adjust their business model, particularly given the fact that they are a non-profit public charity.

Answer number two is that government has shirked its responsibilities. It said, gee, we can just incorporate these privately developed standards in the law, and we won't have to pay anything. And the only people that get screwed up by this are the citizens that need to read the law.

BOB GARFIELD: Well, I mean, King Solomon I ain't but it seems to me that there's a pretty obvious solution to all of this. And that is for the government to pay a fixed fee to any of these third party organizations for providing the standards that the government goes on to adopt.

CARL MALAMUD: That's maybe one way to do it but there's a couple of things to look at. First of all, these organizations that develop the standards, they're getting the gold seal of approval from the [LAUGHS] United States government, and that's worth a lot to them. It means that they can sell training and certification and all sorts of things. And so, I think they have a public obligation.

But there are other solutions, such as calling them to the table and saying, "Look, if we're going to incorporate your stuff by reference into law, maybe they have a public obligation to share a little bit more." I know a member of Congress that was investigating HazMat during the BP oil spill, wanted to read a standard having to do with pipeline safety, and was told that it would cost 1500 dollars for him to read that.

The Unreported Story, Part 1: The Burden of Proof

Episodes 7 & 8: A Change in the Weather

The Cancer Show: Part 2

FEEDS
On The Media Podcast

AERA_APA_NCME_0032076

BOB GARFIELD: All right, so as a champion of disclosure and the public's right to know, you are doing what to make sure that we have access to these standards?

CARL MALAMUD: There was a guy named Peter Veeck in Texas in about the year 2000 decided that the Texas Building Code should be available. And so, he went and bought the Model Building Code and he put it on the Internet. And it went to court, and it went up to the Fifth Circuit. And the Fifth Circuit said, well, you know, maybe that model building code had copyright when it was a model building code, but once it is incorporated by law into the Building Code of Texas, it has no copyright and, therefore, Peter Veeck is allowed to post those.

The Fifth Circuit decision was specifically about the Texas Building Code. The Code of Federal Regulations is different. The Fifth Circuit did not look at Federal law. We believe the Veeck decision does, in fact, apply to public safety standards incorporated in the Code of Federal Regulations, which is why we have picked 73 of these and intend to public them on the Net.

BOB GARFIELD: So you're saying, "I'm publishing these, come and get me."

CARL MALAMUD: No, I'm not saying come and get me. I'm saying "I have the right to publish these, please leave me alone." And so, we sent notice to all these non-profits and, and let them know that we've picked 73 of the standards and intend to publish them on the Net. And we hope they just leave us alone, like they do with the Building Codes.

BOB GARFIELD: But if you are sued and you fight back under Veeck, that you have the absolute right to publish what is incorporated in public law, then this issue at long last will be clarified. It's a win-win for you, unless you, you know, lose-lose.

CARL MALAMUD: Well, I mean, we -- we believe the law is on our side, and we hope we don't litigate. But if we do litigate, the hope is that it will clarify this issue of the law must be available to everybody. It goes all the way back to the founding of the United States and the Constitutional Convention and very key Supreme Court decisions, like Wheaton v. Peters in 1924 that said that there is no copyright in the law. So we think we'll win.

And there is a risk that we do this and as a result the law costs money forever. But we don't think that'll happen.

BOB GARFIELD: Carl, many thanks.

CARL MALAMUD: Thank you.

BOB GARFIELD: Carl Malamud is president of Public Resource. That's public.resource.org.

[MUSIC UP AND UNDER]

Coming up, American schools are failing or not failing. This is On the Media.

GUESTS: Carl Malamud
HOSTED BY: Bob Garfield

AERA_APA_NCME_0032077

TAGS: transparency
Back to story:
Making Laws More Public

ON THE MEDIA    © 2015 WNYC   |   BECOME A SPONSOR   |   TERMS OF USE   |   PRIVACY POLICY   |   CORRECTIONS

On The Media is funded, in part, by the John D. and Catherine T. MacArthur Foundation, the Overbrook Foundation and the Jane Marcher Foundation.

AERA_APA_NCME_0032078