# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., and NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>PUBLIC.RESOURCE.ORG,<br><br>Defendant. | Case No. 1:14-CV-00857-TSC-DAR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT-COUNTERCLAIMANT PUBLIC.RESOURCE.ORG'S MOTION TO STRIKE ECF NO. 60-88, THE DECLARATION OF KURT F. GEISINGER IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTION**<br><br>Action Filed:   May 23, 2014 |

## [PUBLIC VERSION]

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................................1

ARGUMENT ..........................................................................................................................1

I.    LEGAL STANDARD....................................................................................................1

II.   GEISINGER IS NOT QUALIFIED TO OPINE AS AN EXPERT ON THE
ECONOMICS OF PUBLISHING OR PLAINTIFFS' ORGANIZATIONAL
PRIORITIES. ..........................................................................................................................4

III.  NONE OF GEISINGER'S OPINIONS SATISFY FEDERAL RULE OF
EVIDENCE 702 AND MOST ARE UNTIMELY. ............................................................6

      A.    Geisinger's Opinion That Public Resource Caused a Decrease in
Plaintiffs' Revenues Should Be Stricken. ...............................................................6

      B.    Geisinger's Opinion Concerning Plaintiffs' Inability to Reasonably
Calculate Lost Revenues Should Be Stricken........................................................11

      C.    Geisinger's Opinion Concerning Plaintiffs' Use of Revenues Should
Be Stricken............................................................................................................12

      D.    Geisinger's Opinion Concerning the Plaintiffs' Likelihood of
Developing Future Updates to the Standards Should Be Stricken. .......................14

      E.    Geisinger's Remaining Opinions Should Be Stricken...........................................17

CONCLUSION.....................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aguilar v. Int'l Longshoremen's Union Local No. 10*,
966 F.2d 443 (9th Cir. 1992) .................................................................4

*Aventis Envt'l Science USA LP v. Scotts Co.*,
383 F. Supp. 2d 488 (S.D.N.Y. 2005)......................................................2

*Baker v. Urban Outfitters, Inc.*,
254 F. Supp. 2d 346 (S.D.N.Y. 2003)...................................................3, 5

*Brainard v. American Skandia Life Assur. Corp.*,
432 F.3d 655 (6th Cir. 2005) ..................................................................2

*Ciomber v. Co-op. Plus, Inc.*,
527 F.3d 635 (7th Cir. 2008) ...............................................................2, 6

*Cooper v. Brown*,
510 F.3d 870 (9th Cir. 2007) ..................................................................3

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993)................................................................................3

*In re APA Assessment Fee Litig.*,
766 F.3d 39 (D.C. Cir. 2014) ................................................................10

*In re TMI Litig.*,
193 F.3d 613 (3d Cir. 1999), *as amended*, 199 F.3d 158 (3d Cir. 2000)............................3, 13

*Interplan Architects, Inc. v. C.L. Thomas, Inc.*,
No. 4:08-CV-03181, 2010 WL 4065465 (S.D. Tex. Oct. 9, 2010) ......................................2, 5

*Kozak v. Medtronic, Inc.*,
512 F. Supp. 2d 913 (S.D. Tex. 2007) ...............................................4, 14

*Kron v. Moravia Cent. Sch. Dist.*,
5 Fed. Appx. 60 (2d Cir. 2001).................................................................7

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999).............................................................................2, 3

*LifeWise Master Funding v. Telebank*,
374 F.3d 917 (10th Cir. 2004) .................................................................2

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Meister v. Med. Eng'g Corp.*,
   267 F.3d 1123 (D.C. Cir. 2001) .............................................................................2

*Mukhtar v. Cal. State Univ.*,
   299 F.3d 1053 (9th Cir. 2002), *as amended* 319 F.3d 1073 (9th Cir. 2003) ............3

*Safeco Ins. Co. of Am. v. S & T Bank*,
   No. 2:07-cv-01086, 2010 WL 786257 (W.D. Pa. Mar. 3, 2010)...............................7

*Unger v. Amedisys Inc.*,
   401 F.3d 316 (5th Cir. 2005) ...................................................................................7

*Wannall v. Honeywell Intern., Inc.*,
   292 F.R.D. 26 (D.D.C. 2013)....................................................................................6

*Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*,
   254 F.3d 706 (8th Cir. 2001) ...................................................................................2

*Wilder Enters., Inc. v. Allied Artists Pictures Corp.*,
   632 F.2d 1135 (4th Cir. 1980) .................................................................................7

*Young v. Burton*,
   567 F. Supp. 2d 121 (D.D.C. 2008) *aff'd*, 354 Fed. Appx. 432 (D.C. Cir.
   2009) .........................................................................................................................7

*Zaremba v. GMC*,
   360 F.3d 355 (2d Cir. 2004).....................................................................................2

## RULES

Fed. R. Civ. P. 26......................................................................................................1, 2

Fed. R. Civ. P. 37.........................................................................................1, 2, 11, 12

Fed. R. Civ. P. 56(c) ......................................................................................................1

Fed. R. Evid. 702 ............................................................................................1, 2, 3, 12

## OTHER AUTHORITIES

Robert L. Dunn, RECOVERY OF DAMAGES FOR LOST PROFITS, § 1.6 (6th ed. 2005) ....................11

# INTRODUCTION

Public Resource objects and moves to strike the Declaration of Kurt F. Geisinger in support of Plaintiffs' motion for summary judgment (ECF No. 60-88) ("G. Decl.") and the opinions and facts within it upon which Plaintiffs rely for their Motion for Summary Judgment and Permanent Injunction, or any other purpose in this action.

Geisinger represents himself as an expert on psychometric testing. In his Expert Report, Geisinger focused his opinions on the quality and importance of the standards to the testing community. Plaintiffs did not, however, rely on Geisinger's expert report to support their motion for summary judgment, but a new declaration that raises facts and opinions that were not disclosed in his report, that fall outside of Geisinger's area of qualification, and lack any reliable foundation. The testimony in his declaration, in contrast to his report, focuses on the effect that Public Resource's posting of the 1999 Standards had on Plaintiffs' revenue and on Plaintiffs' need for revenue to continue updating the standards. Geisinger is not an economist and lacks the qualifications to analyze Plaintiffs' sales data. His opinion that Plaintiffs will cease updating the standards rests on the self-serving statements of Plaintiffs' executives and his own unqualified and unreliable assumptions about Plaintiffs' future revenue.

Geisinger's testimony should be stricken as inadmissible under Federal Rules of Civil Procedure 26 and 37 and Federal Rule of Evidence 702.

# ARGUMENT

## I.   LEGAL STANDARD

On summary judgment, the Court must only consider admissible evidence. Fed. R. Civ. P. 56(c). Geisinger's declaration is not based on his percipient knowledge and therefore must satisfy the requirements of Federal Rule of Evidence 702, which requires that he be qualified, that his testimony is helpful to the trier of fact, that his testimony is based on sufficient facts or

data, that his testimony be the product of reliable principles and methods, and that he reliably applied the principles and methods to the facts of this case. The party offering the expert's testimony must establish by a preponderance of the evidence that the expert testimony is admissible and that the expert is qualified. *Meister v. Med. Eng'g Corp.,* 267 F.3d 1123, 1127 n. 9 (D.C. Cir. 2001); *Zaremba v. GMC*, 360 F.3d 355, 358 (2d Cir. 2004); *Aventis Envt'l Science USA LP v. Scotts Co.*, 383 F. Supp. 2d 488, 513 (S.D.N.Y. 2005).

Under Federal Rule of Civil Procedure 26, parties must disclose the identity of specially retained witnesses and a complete report of all the witness's opinions and the basis and reasons therefore. Opinions, facts, and data not included in the report are automatically excluded under Federal Rule of Civil Procedure 37. *See Ciomber v. Co-op. Plus, Inc.*, 527 F.3d 635 (7th Cir. 2008) (affirming exclusion of expert testimony opposing a motion for summary judgment that exceeded the scope of the expert's report). *Brainard v. American Skandia Life Assur. Corp.*, 432 F.3d 655 (6th Cir. 2005) (excluding expert affidavit that was substantially different than report).

Concerning the substance of testimony under Federal Rule of Evidence 702, an important part of a district court's "gatekeeping role" is "ensuring that the actual testimony does not exceed the scope of the expert's expertise, which if not done can render expert testimony unreliable under Rule 702, *Kumho Tire*, and related precedents." *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001). (finding trial court abused its discretion is allowing expert to opine outside his area of expertise). *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (expert excluded for lacking familiarity with methods to model damages). Similarly, a small number of personal experiences does not qualify a witness to render expert opinions. *See Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 4:08-CV-03181, 2010 WL 4065465, at *13 (S.D. Tex. Oct. 9, 2010) (excluding opinion on industry

custom based on experience with only two architects); *Baker v. Urban Outfitters, Inc.*, 254 F.

Supp. 2d 346, 354 (S.D.N.Y. 2003) (excluding agent as expert on licensing where agent's

experience was primarily in commissions and agent had experience with only four licensing

transactions).

To be admissible, expert testimony must "rest[] on a reliable foundation." *Daubert v.*

*Merrell Dow Pharm., Inc.*, 509 U.S. 579, 580 (1993); *see also Kumho Tire Co. v. Carmichael*,

526 U.S. 137, 147 (1999) (applying the requirements of *Daubert* to all expert testimony). Among

the factors to consider are "(1) whether a scientific theory or technique can be (and has been)

tested; (2) whether the theory or technique has been subjected to peer review and publication; (3)

the known or potential rate of error and the existence and maintenance of standards controlling

the technique's operation; and (4) whether the technique is generally accepted." *Cooper v.*

*Brown*, 510 F.3d 870, 943 (9th Cir. 2007), citing *Daubert*, 509 U.S. at 593–94. "Maintaining

*Daubert*'s standards is particularly important considering the aura of authority experts often

exude[.]" *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1063 (9th Cir. 2002), *as amended* 319

F.3d 1073 (9th Cir. 2003), *overruled in irrelevant part by Estate of Barabin v. AstenJohnson,*

*Inc.,* 740 F.3d 457, 467 (9th Cir. 2014) (en banc)).

Finally, an expert must reliably apply the foundational principles and methods to the facts

of the case. "Whether the situation is a proper one for the use of expert testimony is to be

determined on the basis of assisting the trier." Fed. R. Evid. 702, Adv. Comm. Notes. "The

expert's testimony must 'fit,' and admissibility depends, in part, on a connection between the

expert opinion offered and the particular disputed factual issues in the case. Fit is not always

obvious, and scientific validity for one purpose is not necessarily validity for other unrelated

purposes." *In re TMI Litig*., 193 F.3d 613, 670 (3d Cir. 1999), *as amended*, 199 F.3d 158 (3d Cir.

2000) (internal quotation marks and citations omitted). In addition, "matters of law for the court's determination . . . [a]re inappropriate subjects for expert testimony." *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992).

## II.   GEISINGER IS NOT QUALIFIED TO OPINE AS AN EXPERT ON THE ECONOMICS OF PUBLISHING OR PLAINTIFFS' ORGANIZATIONAL PRIORITIES.

Geisinger appears to be an expert on the quality and function of psychometric testing. G. Decl. ¶¶ 1–17. Plaintiffs, however, asked him to testify far outside the scope of his expertise.



Courts recognize that expertise with a substantive area is distinct from expertise in selling or marketing products in that area. In *Kozak v. Medtronic, Inc.*, 512 F. Supp. 2d 913, 919 (S.D. Tex. 2007), for example, plaintiff sought to qualify an orthopedic surgeon to testify concerning a damages model concerning lost sales for an orthopedic product. The court excluded that testimony, holding that the surgeon's personal experience may have provided some passing familiarity with how such devices were marketed, but it did not show the surgeon had any

expertise in calculating projected future sales. Similarly, Geisinger's qualifications in the

academic field of testing do not suggest he has any expertise to render the opinions in his

declaration about the sales of the Standards.



Courts, however, routinely reject claims that a person's personal, anecdotal

experiences qualify them as expert witnesses. *See Interplan Architects*, 2010 WL 4065465, at

*13; *Baker*, 254 F. Supp. 2d at 354.

III.    **NONE OF GEISINGER'S OPINIONS SATISFY FEDERAL RULE OF EVIDENCE 702 AND MOST ARE UNTIMELY.**

   A.    **Geisinger's Opinion That Public Resource Caused a Decrease in Plaintiffs' Revenues Should Be Stricken.**

Geisinger opines: "For a publication with the longevity of the 1999 Standards, one otherwise would expect to see a gradual decline in sales year-over-year; not the precipitous drop in sales experienced by the 1999 Standards in 2012 and 2013." G. Decl. ¶ 25. He attributes at least some of that decline to Public Resource posting the 1999 Standards online in 2012. G. Decl. ¶ 24.

First, these facts and opinions do not appear in Geisinger's expert report. ██████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████ Testimony not disclosed in an expert's report is excluded automatically. *Wannall v. Honeywell Intern., Inc.*, 292 F.R.D. 26 (D.D.C. 2013); *Ciomber,* 527 F.3d at 642.

Second, he is not qualified to render that opinion. *See* Section II, above. ██████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████ Absent familiarity with accepted principles and methodologies for analyzing the substitution effect of Public Resource's posting

the 1999 Standards on Plaintiffs' sales of the 1999 or 2014 Standards, Geisinger cannot be

qualified to render an expert opinion on that subject.

Third, Geisinger did not use on any reliable principles or methodology to



*Kron v. Moravia Cent. Sch. Dist.*, 5 Fed. Appx. 60, 62 (2d

Cir. 2001) (excluding testimony of expert regarding school district budget because expert "was

not an economist"); *Wilder Enters., Inc. v. Allied Artists Pictures Corp.*, 632 F.2d 1135, 1144

(4th Cir. 1980) ("Calculation of damages is inherently difficult . . . " and requires expert

testimony); *Safeco Ins. Co. of Am. v. S & T Bank*, No. 2:07-cv-01086, 2010 WL 786257, at *11

(W.D. Pa. Mar. 3, 2010) (discussing reliability of expert's analysis of budgets).

Geisinger's observation of

is not an adequate basis for expert testimony.

"Drawing conclusions about causation from temporality is a common logical fallacy known as

*post hoc ergo propter hoc* (after the fact, therefore because of the fact), and is as unpersuasive in

the courts as it is in the scientific community." *Young v. Burton*, 567 F. Supp. 2d 121, 140

(D.D.C. 2008) *aff'd,* 354 Fed. Appx. 432 (D.C. Cir. 2009); *see also Unger v. Amedisys Inc.*, 401

F.3d 316, 325 (5th Cir. 2005) (evidence of press releases and stock price drops inadmissible without expert testimony in support; expert committed *post hoc ergo propeter hoc* fallacy).

Given Geisinger's methodology, ███████████████████████████████████

███████████████████████████. The following table shows Plaintiffs' annual sales

revenue and units sold of the 1999 Standards since 2000 and the percentage change each year:

| Year | Revenue | % Change | Units Sold | % Change |
|------|---------|----------|------------|----------|
| FY 2000 | ██████ | ████ | 3,797 | |
| FY 2001 | ██████ | ████ | 3,755 | -1.11% |
| FY 2002 | ██████ | ████ | 5,592 | 48.92% |
| FY 2003 | ██████ | ████ | 3,310 | -40.81% |
| FY 2004 | ██████ | ████ | 3,218 | -2.78% |
| FY 2005 | ██████ | ████ | 3,803 | 18.18% |
| FY 2006 | ██████ | ████ | 3,888 | 2.24% |
| FY 2007[1] | ██████ | ████ | 3,077 | -20.86% |
| FY 2008 | ██████ | ████ | 3,358 | 9.13% |
| FY 2009 | ██████ | ████ | 2,590 | -22.87% |
| FY 2010 | ██████ | ████ | 3,043 | 17.49% |
| FY 2011 | ██████ | ████ | 2,132 | -29.94% |
| FY 2012 | ██████ | ████ | 1,649 | -22.65% |
| FY 2013 | ██████ | ████ | 1,732 | 5.03% |
| FY 2014 | ██████ | ████ | 855 | -50.64% |

Becker Decl. ¶ 9. ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[1] █████████████████████████████████████████████████████████

████████████████████████████████████. Public Resource was unable to determine a
continuous annual sales trend because Plaintiff did not produce monthly sales information.
Becker Decl. ¶ 11. The data, however, does not suggest ██████████████████ would
affect the analysis.

████████████████████████████████████████████████████████████

███████████████████████████

          ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████   Moreover, Public Resource posted the 1999

Standards in early Summer 2012. Plaintiffs have not produced, and Geisinger did not consider,

monthly sales data for 2012 or 2013. ████████████████████████████████████████

████████████████████████████████████████████████████████████████

          Geisinger has not used any accepted principles or methods for eliminating alternate

causes for the decline in the Standards' sales revenue. ██████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████ █████

██████████████████████████████████████████████████████████

---

[2] Plaintiffs released a version of the revised Standards for public comment in January 2011.
http://www.apa.org/science/about/psa/2011/01/testing.aspx

████████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

Further, Geisinger did not consider any other alternative causes for the decline in sales,

despite numerous possibilities. ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████ There is no

suggestion Geisinger considered the effect of changes in Plaintiffs' membership. APA

membership has been in decline since 2009 and the rate of membership decline accelerated in

2011. Becker Decl. ¶ 12, Ex. 8 (APA Membership Records). APA members receive a discount

on purchasing the Standards. Becker Decl. ¶ 13, Ex. 9 (Purchase Page for 1999 Standards).

Fewer available discounts effectively increase the price of the Standards, which could decrease

sales. In addition, in late 2010, APA members filed two class actions against the APA for

deceptive membership dues. *In re APA Assessment Fee Litig.*, 766 F.3d 39, 44 (D.C. Cir. 2014).

Those lawsuits may have alienated consumers from APA products. Finally, Geisinger did not

consider changes in education policy in the relevant timeframe. In 2012, President Obama

featured education reform in his State of the Union Address and began offering States waivers

from the No Child Left Behind Act requirements, which focused on high-stakes testing. Becker

Decl. ¶ 14, Ex. 10 (President Obama's Address stating "stop teaching to the test"); ¶ 15, Ex. 11

(Waiver announcement stated: "No Child Left Behind has serious flaws . . . it determines

whether schools are falling behind based on test scores."). At the same time, a brewing campaign

against high-stakes testing fomented into multiple resolutions and press articles. *Id.* ¶ 16–17,

Exs. 12–13. Geisinger acknowledged that this movement has dampened AERA's institutional commitment to the Standards. G. Dep. 190:19–22. The changes in federal government policy and growing antagonism towards high-stakes testing may have depressed demand for the Standards.

Geisinger also did not consider comparable events to validate his opinions concerning the cause of Plaintiffs' decrease in sales revenue. ██████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████ As this Court is aware, ASTM, NFPA, and ASHRAE have made many of their standards freely available online and have not shown any causal relationship with a decline in sales revenue. Case 1:13-cv-01215-TSC (D.D.C.) ECF No. 118-1 at 1 ("Plaintiffs even make read-only versions of these standards available for free on their websites.").

Therefore, Geisinger's untimely testimony on the cause of Plaintiffs' decline in sales revenue should be excluded.

**B.      Geisinger's Opinion Concerning Plaintiffs' Inability to Reasonably Calculate Lost Revenues Should Be Stricken.**

Geisinger opines that Plaintiffs cannot calculate their lost revenues with "any degree of certainty." G. Decl. ¶ 24. That opinion does not appear in his expert report and thus must be excluded. *See* G. Rep. ¶¶ 55–63; Fed. R. Civ. P. 37. Further, Geisinger is not qualified to make that opinion because he has not demonstrated any familiarity with, or expertise in, calculating lost revenue. This opinion intrudes on the province of the court to determine whether Plaintiffs' alleged harm is irreparable because it is not feasible to calculate. Geisinger's opinion is also unreliable because economists and other qualified experts routinely calculate lost revenues from infringement with *some* degree of certainty, and often do so with *reasonable* certainty. Robert L. Dunn, RECOVERY OF DAMAGES FOR LOST PROFITS, § 1.6 (6th ed. 2005) (noting that most courts

have adopted "reasonable certainty" as the standard for proving lost profits). Finally, Geisinger's

opinion is inconsistent with his other opinion that Public Resource caused Plaintiffs to lose sales.

### C.     Geisinger's Opinion Concerning Plaintiffs' Use of Revenues Should Be Stricken.

Geisinger testifies that Plaintiffs do not keep revenues from sales of the Standards and

instead use those revenues to offset development and production costs and to generate funds for

subsequent revisions. Neither his declaration nor his report state what those development or

production costs have been or how those revenues generate additional funds, although Public

Resource assumes he means that the revenues are invested. He then opines that Plaintiffs'

"strategy" of using income from the sales of the Standards to offset their development and

production costs "allows the Sponsoring Organizations to develop up-to-date, high quality

Standards that otherwise would not be developed due to the time and effort that goes into

producing them." G. Decl. ¶ 22. There are two opinions embedded in that statement. First, that

offsetting for development and production costs from sales revenue and generating additional

funds "allows" Plaintiffs to develop standards. Second, no other approach would permit

Plaintiffs to develop up-to-date, high quality standards.

Again, these opinions do not appear in Geisinger's expert report. *See* G. Rep. ¶¶ 55–63.

They must therefore be excluded. Fed. R. Civ. P. 37.

These opinions should also be excluded under Federal Rule of Evidence 702. First,

Geisinger is not qualified to render an opinion on the necessity of Plaintiffs' "strategy." His

qualifications concerning design and evaluation of psychometric testing are not relevant to

evaluating the business justification for Plaintiffs' use of sales revenue to pay for development

costs and generate investment returns. Nor has he provided any reason to suspect his personal

experience as an academic administrator and member of the Plaintiff organizations provides him

12

with specialized knowledge about optimal or necessary methods for financing projects generally, or standards specifically.

Second, Geisinger has not based his opinion on sufficient facts or data. His opinion relies on two unsupported assumptions: (1) Plaintiffs' development and production costs are necessary; and (2) no other funding source is available. As to the first assumption, Geisinger's declaration offers no facts or data about those costs whatsoever. █████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████ He has not offered an opinion on whether those expenses were necessary. As to the second assumption, he does opine that Plaintiffs would not fund the development of the standards from a budget reallocation or by raising membership dues. *See* G. Decl. ¶ 23. But he does not consider alternative sources of funding, ████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

████████████████ He also offers no facts or data about the "time and effort that goes into producing [the Standards]." G. Decl. ¶ 22.

Third, Geisinger did not use reliable principles or methodology to render his opinion. ██

███████████████████████████████████████████████████████████

██████████████████████████████████████████ Geisinger's uncritical acceptance of Plaintiffs' information justifies excluding his opinions. Where the data comes from representatives of a party and were made for purposes of litigation, "[c]ommon sense alone suggests that such evidence is based on an unreliable source of information." *In re TMI Litig.*, 193 F.3d at 698 (internal quotation marks omitted) (excluding opinion based on

plaintiffs' counsel's summaries of interviews with plaintiffs instead of review of records or

personal examination). A qualified expert using reliable principles would have at least

considered alternative financing options. Geisinger did not. Thus his opinion concerning

Plaintiffs' "strategy" should be excluded.

### D. Geisinger's Opinion Concerning the Plaintiffs' Likelihood of Developing Future Updates to the Standards Should Be Stricken.

Geisinger testifies that "Without the sales revenue from prior Standards versions (because

– if Public Resource succeeds in this litigation – this publication will be made freely available

online), it is extremely unlikely that future updates to the Standards will be undertaken." G. Decl.

¶ 23. █████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Moreover, Geisinger is not qualified to render an opinion whether Plaintiffs will continue

to update the Standards. Geisinger is not an economist, an accountant, or a sales executive. Nor

is he an expert in the politics of professional organizations or corporate entities. His opinions do

not rest on his qualifications concerning the design and evaluation of psychometric testing. *See

Kozak,* 512 F. Supp. 2d at 919 (excluding orthopedic surgeon's testimony concerning future sales

of orthopedic surgery products for lack of qualifications). He has no background in evaluating

market forces and therefore cannot analyze whether the market forces fueling demand for the

current development of updates to the Standards would overcome a decline in revenue for sales

of future standards. He further has no qualifications to determine the effect of online availability

of versions of the Standards incorporated by reference into law on Plaintiffs' revenue. And he

has no qualifications to predict how Plaintiffs' would prioritize their budgets or membership dues in the future.

Geisinger also fails to apply reliable principles or methodology in rendering this opinion.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████
████████████████ Further, Geisinger has no basis to assume that, if Public Resource prevails in this litigation, it will post the 2014 Standards, which are not incorporated by reference into law.

Moreover, he assumes that the free, online availability of the Standards will eliminate *all* revenue. He offers no support for that assumption. Further, that assumption is contrary to the facts in this case and common-sense. ████████████████████████████████
████████████████████████████████████████ And many entities sell texts that are in the public domain, from copies of state and federal codes to classic literature. Becker Decl. ¶¶ 18–20, Exs. 14–16. Thus, Geisinger's testimony is both unreliable and unhelpful.

Further, he offers no opinion whether Plaintiffs would continue to develop the Standards following a decline in sales revenue, as opposed to the complete elimination of all sales revenue. He has not identified any threshold beyond which a decline in sales would prevent development of the standards or materially affect their quality, ████████████████████████████
████████████████ As discussed above, he has rendered no opinion about the necessity of Plaintiffs' expenses. ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████ Thus, if this Court finds that Geisinger's assumption that

revenue drops to zero is unreliable, his opinion should be excluded entirely, even if the Court accepts that there would be a decline in the amount of sales revenue.

Geisinger has not identified any reliable principles or methodology for evaluating Plaintiffs' probable responses to the free, online availability of the Standards. Those responses could include decreasing the price of the Standards, including explanatory material that is not incorporated by reference into law, issuing updates more frequently, or seeking alternative sources of funding. Geisinger cherry-picks two funding alternative strawmen—budget reallocations and raising membership dues—to knock down, but offers no explanation for why he considered those potential responses over others.

As to his opinions concerning why Plaintiffs would not fund future development of the Standards from other sources, his opinions do not flow from any accepted principles or methodology. It appears he once again relied, uncritically, on information from Plaintiff's senior executives. G. Dep. 255:23–256:25. He has not identified any principles for how multiple organizations address the introduction of free or lower-cost substitutes to the market. He also appears to assume that the Plaintiffs will not cooperate to find an acceptable solution. Instead, he presents reasons why each organization cannot, individually, pay for the standards. G. Decl. ¶ 23.

Moreover, Geisinger ignores that Plaintiffs currently have sufficient funding to update the standards for decades. ██████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████ Plaintiffs update the Standards approximately every 15 years. G. Rep. ¶ 39. Even assuming that development costs marginally increase over time, Plaintiffs already have enough money to pay for two or three revisions of the

standards, spanning the next 45 years. Moreover, Plaintiffs will continue to earn revenue from sales of the 2014 Standards both before and after they are incorporated into law (if that actually happens), adding further to Plaintiffs' fund for future revisions.

     **E.**     **Geisinger's Remaining Opinions Should Be Stricken.**

Geisinger's opines that Plaintiffs suffered past harm from Public Resource's "misuse of Plaintiffs' intellectual property." G. Decl. ¶ 26. It is unclear if he means anything by this that is distinct from his opinions concerning allegedly lost revenue. If he does mean something distinct, he has failed to provide sufficient facts or data to illustrate and non-economic harm.

Geisinger further opines that if Public Resource prevails, the public will be harmed by "uncontrolled publication of the 1999 Standards without any notice that those guidelines have been replaced by the 2014 Standards." G. Decl. ¶ 27. Although it is not entirely clear from the declaration, in Geisinger's report he claimed that because "unsuspecting people" might incorrectly believe the 1999 Standards are the current standards, making the 1999 Standards available at all would harm the public. G. Rep. ¶ 62. Yet Geisinger's declaration and report both lack any reliable foundation for that conclusion. Geisinger admits that he is not aware of any instance where a member of the public encountered the 1999 Standards after the 2014 Standards were published and believed the 1999 Standards were the current standards. G. Dep. 250:24. He has no evidence that anyone has ever detrimentally relied upon that error, despite versions of the standards being available in libraries and on the secondary market. G. Dep. 244:4–13 (libraries); 244:21–245:5 (used books). And he has no qualifications to make assumptions about what people will or will not assume if they happen upon the 1999 Standards online.

Finally, Geisinger testifies as to facts and his opinions concerning the advantages of the Standards. G. Decl. ¶ 17–21. This testimony is not relevant to this matter and therefore not helpful to the trier of fact. The advantages of the currently published Standards do not determine

whether Plaintiffs can hold and assert copyright in the 1999 Standards, whether Plaintiffs were harmed by Public Resource posting the 1999 Standards online, or even whether an injunction would be in the public interest. To the extent that the advantages of the standards have any relevance, it would be conditional on a showing that Public Resource will cause them to cease to exist. Given the shortfalls in Geisinger's testimony on that causal link, his remaining testimony is unhelpful and therefore is inadmissible.

## CONCLUSION

Nearly all of Geisinger's testimony in his declaration supporting Plaintiffs' motion for summary judgment exceeds the scope of his expert report and his domain of expertise. The remaining testimony—concerning the advantages of the standards—is not relevant without credible evidence that Public Resource's acts will cause Plaintiffs to stop developing the Standards. Geisinger's new testimony on that issue, however, is entirely unreliable. For those reasons, Geisinger's declaration should be stricken in its entirety, as well as all portions of Plaintiffs' memorandum in support of their motion for summary judgment that cite to or rely on his testimony.

Dated: January 21, 2016                    Respectfully submitted,


                                           */s/   Andrew P. Bridges*
                                           Andrew P. Bridges (admitted)
                                           abridges@fenwick.com
                                           Sebastian E. Kaplan (*pro hac vice* pending)
                                           skaplan@fenwick.com
                                           Matthew Becker (admitted)
                                           mbecker@fenwick.com
                                           FENWICK & WEST LLP
                                           555 California Street, 12th Floor
                                           San Francisco, CA 94104
                                           Telephone:   (415) 875-2300
                                           Facsimile:    (415) 281-1350


                                           Corynne McSherry (admitted *pro hac vice*)
                                           corynne@eff.org
                                           Mitchell L. Stoltz (D.C. Bar No. 978149)
                                           mitch@eff.org
                                           ELECTRONIC FRONTIER FOUNDATION
                                           815 Eddy Street
                                           San Francisco, CA 94109
                                           Telephone:   (415) 436-9333
                                           Facsimile:    (415) 436-9993


                                           David Halperin (D.C. Bar No. 426078)
                                           davidhalperindc@gmail.com
                                           1530 P Street NW
                                           Washington, DC 20005
                                           Telephone: (202) 905-3434


                                           *Attorneys for Defendant-Counterclaimant*
                                           Public.Resource.Org, Inc.

SF/5546706.6