# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AMERICAN EDUCATIONAL RESEARCH
ASSOCIATION, INC., AMERICAN
PSYCHOLOGICAL ASSOCIATION, INC.,
and NATIONAL COUNCIL ON
MEASUREMENT IN EDUCATION, INC.,

     *Plaintiffs*,

     v.

PUBLIC.RESOURCE.ORG,

     *Defendant*.

No. 1:14-cv-857 (TSC/DAR)

## BRIEF OF PUBLIC KNOWLEDGE AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANT/COUNTER-PLAINTIFF PUBLIC.RESOURCE.ORG

Charles Duan (D.C. Bar No. 1013998)
Public Knowledge
1818 N Street NW, Suite 410
Washington, DC 20036
(202) 861-0020
cduan@publicknowledge.org

*Counsel for amicus curiae*

February 11, 2016

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

INTEREST OF *AMICUS CURIAE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    As with the *ASTM* Case, the Texts Here Are Not Entitled To Copyright Protection Due to Their Incorporation Into Laws and Regulations . . . . . . . . . . . . . . . . . . . . . . 1

II.   Claims that the Standards-Setting Process Depends on Copyright Revenues Are Belied by Numerous Other Standards Organizations that Allow Free Access to Their Standards . . 2

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**TABLE OF AUTHORITIES**

**Statutes**

17 U.S.C. § 102(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Other Sources**

Scott Bradner, *The Internet Engineering Task Force, in Open Sources: Voices from the Open Source Revolution* 47 (Chris DiBona et al. eds., 1999) . . . . . . . . . . . . . . . . . . . . . . 2

*HTML 4.01 Specification* (Dave Raggett et al., W3C ed., Dec. 24, 1999), https://www.w3.org/TR/1999/REC-html401-19991224/ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IETF Trust, *Legal Provisions Relating to IETF Documents* (Mar. 25, 2015), http://trustee.ietf.org/docs/IETF-Trust-License-Policy.pdf . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Int'l Telecomms. Union, *ITU-T Recommendations* (last visited Feb. 10, 2016), http://www.itu.int/en/ITU-T/publications/Pages/recs.aspx . . . . . . . . . . . . . . . . . . . . . . . . . 4

SIF Ass'n, *"Access 4 Learning" Toolkit (North America)* (Apr. 2014), *available at* https://www.sifassociation.org/Resources/Decision-Maker-Resources/Implementing%20SIF%20%20NA/Access%204%20Learning%20Toolkit.pdf . . . . . . . . . . . . . . . . 4

U.S. Dep't of Educ., *Common Education Data Standards: Related Initiatives* (last visited Feb. 10, 2016), https://ceds.ed.gov/relatedInitiatives.aspx . . . . . . . . . . . . . . . . . . . 3

*W3C Document License*, World Wide Web Consortium (Feb. 1, 2015), https://www.w3.org/Consortium/Legal/2015/doc-license . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## INTEREST OF *AMICUS CURIAE*

Public Knowledge[1] is a non-profit organization that is dedicated to preserving the openness of the Internet and the public's access to knowledge, promoting creativity through balanced intellectual property rights, and upholding and protecting the rights of consumers to use innovative technology lawfully. Public Knowledge advocates on behalf of the public interest for a balanced patent system, particularly with respect to new and emerging technologies.

## ARGUMENT

## I.   As with the *ASTM* Case, the Texts Here Are Not Entitled To Copyright Protection Due to Their Incorporation Into Laws and Regulations

*Amicus* maintains its views set forth in the brief filed in the companion case *ASTM v. Public Resource* (Case No. 13-cv-1215, Doc. No. 147). To avoid unnecessary duplication and repetition before this Court, those arguments are only briefly summarized here.

The text of the law, including any texts incorporated by reference into and thereby essential to that law, cannot receive the statutory monopoly of copyright. The lifeblood of statutory law is exact wording, meaning that each and every word of a statute is operative and functional, rendering copyright protection inappropriate under 17 U.S.C. § 102(b). No paraphrasing of the law can operate exactly as the original wording does, meaning that no expressive or creative elements—the requisite elements for copyright protection—inhere in the original wording. Standards incorporated into laws or regulations are indistinguishable from original statutory text in this respect, and

---

[1]This brief is being tendered with a motion for leave to file this brief. Pursuant to Local Rule 7(o)(5) and Federal Rule of Appellate Procedure 29(c)(5), no counsel for a party authored this brief in whole or in part, and no counsel or party made a monetary contribution intended to fund the preparation or submission of the brief. No person or entity, other than *amicus*, its members, or its counsel, made a monetary contribution to the preparation or submission of this brief.

accordingly, incorporated standards cannot be the subject of copyright either.

Furthermore, the proposition that the text of the law is outside the bounds of copyright's exclusivity is no mere accident, but rather it is a proposition that traces its roots back to the very founding principles of this nation and its Constitution. Since its inception, courts have held that citizens have a right to access the law—and not only a right to read it, but also a right to recompile it, redistribute it, and reconform it for understandability by those of differing abilities such as the blind. Efforts to secure an exclusive monopoly over the words that govern the citizenry are anathema to this strong historical tradition of accessibility and due process.

## II.  Claims that the Standards-Setting Process Depends on Copyright Revenues Are Belied by Numerous Other Standards Organizations that Allow Free Access to Their Standards

In briefing in the companion *ASTM* case, several standards organizations as *amici* argued that the viability of their standards-setting activities depended on their revenue stream from copyright royalties, and to rule that incorporated standards were uncopyrightable would destroy their businesses and the standards-setting process overall. But the larger context of standards setting proves these fears highly unfounded. Numerous standards-setting bodies—even today—are viable and successful enterprises, even though they distribute their standards entirely for free.

Many of the most important standards bodies of the digital age gladly offer their standards unrestrictedly for free, a supposed impossibility if copyright royalties were as essential to standards organizations' viability as these *amici* supporting Plaintiffs suggest. The Internet Engineering Task Force (IETF), for example, has "created the routing, management, and transport standards without which the Internet would not exist." Scott Bradner, *The Internet Engineering Task Force*, *in Open Sources: Voices from the Open Source Revolution* 47, 47 (Chris DiBona et al. eds., 1999). And

IETF makes its standards documents available for free to all comers.  It grants to all people rights "to copy, publish, display, and distribute IETF Contributions and IETF documents," and even "to translate IETF Contributions and IETF Documents into languages other than English." IETF Trust, *Legal Provisions Relating to IETF Documents* §§ 3(a)(i)–(ii) (Mar. 25, 2015), http://trustee.ietf.org/docs/IETF-Trust-License-Policy.pdf.

Similarly, the World Wide Web Consortium (W3C) manages numerous technology standards, such as the specifications for the HTML, CSS, and XML[2] languages that underlie every web page transmitted across the Internet today.  *See, e.g., HTML 4.01 Specification* (Dave Raggett et al., W3C ed., Dec. 24, 1999), https://www.w3.org/TR/1999/REC-html401-19991224/.  W3C grants to all people a copyright license to copy and distribute its standards "in any medium for any purpose and without fee or royalty." *W3C Document License*, World Wide Web Consortium (Feb. 1, 2015), https://www.w3.org/Consortium/Legal/2015/doc-license.

The practice of free licensing of standards is not limited to Internet infrastructure standards bodies, but appears in fields as diverse as education and conservation.  Of particular relevance to the subject matter of this case, the Schools Interoperability Framework, or SIF, is a free-to-use, "platform independent, vendor neutral" data management protocol and implementation framework for educational institutions.  It has been endorsed by the US Department of Education and is widely adopted in the U.S., U.K., and Australia.  U.S. Dep't of Educ., *Common Education Data Standards:  Related Initiatives* (last visited Feb. 10, 2016), https://ceds.ed.gov/relatedInitiatives.aspx.  The Access for Learning Community (A4L), which devises the stan-

---

[2]HTML stands for HyperText Markup Language; CSS stands for Cascading Style Sheets; XML stands for Extensible Markup Language.  These languages are used for formatting of web pages and other Internet content.

dard, is a member-driven nonprofit that engages in a full spectrum of work to develop, promote, and support SIF and SIF implementation. It does this without monetizing the standards in any form. SIF Ass'n, *"Access 4 Learning" Toolkit (North America)* (Apr. 2014), *available at* https://www.sifassociation.org/Resources/Decision-Maker-Resources/Implementing%20SIF%20%20NA/Access%204%20Learning%20Toolkit.pdf. Similarly, the International Telecommunications Union's Telecommunication Standardization Sector (ITU-T) is responsible for a wide range of telecommunications and audiovisual technologies, and it makes "[t]he vast majority of all Recommendations [] available in electronic (PDF) form free of charge." Int'l Telecomms. Union, *ITU-T Recommendations* (last visited Feb. 10, 2016), http://www.itu.int/en/ITU-T/publications/Pages/recs.aspx.

Certainly it is true that these organizations are funded through other sources. But so are Plaintiffs and the other standards organizations acting as *amici*, all of whom are membership organizations or at least appear to have other lines of income-generating business. And of particular note: none of the standards described above are incorporated into law, meaning that the organizations promulgating those standards benefit neither from royalties of copyright nor from the monopoly lock-in effect of a legal mandate. Yet they manage to succeed, strongly indicating that copyright royalties are by no means a necessity for the survival of the standards-setting process.

Accordingly, contrary to the sky-is-falling contentions of some *amici*, there is little reason to believe that the beneficial standards-setting process will disappear were this Court to rule correctly that incorporated standards are not subject to copyright protection.

**CONCLUSION**

For the foregoing reasons, Public Resource's motion for summary judgment should be granted, and Plaintiffs' motion should be denied.

Respectfully submitted,

Dated: February 11, 2016

*/s/ Charles Duan*

Charles Duan (D.C. Bar No. 1013998)
Public Knowledge
1818 N Street NW, Suite 410
Washington, DC 20036
(202) 861-0020
cduan@publicknowledge.org

*Counsel for amicus curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 11, 2016, I caused the foregoing **Brief of Public Knowledge as *Amicus Curiae* in Support of Defendant/Counter-Plaintiff Public.Resource.Org** to be electronically filed with the Clerk of the Court using CM/ECF, which will automatically send email notification of such filing to all counsel of record.


Dated: February 11, 2016            */s/ Charles Duan*
_____
                                    Charles Duan
                                    *Counsel for amicus curiae*