# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., and NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC., <br><br> Plaintiffs/Counterclaim-Defendants, <br><br> v. <br><br> PUBLIC.RESOURCE.ORG, INC., <br><br> Defendant/Counterclaim-Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 1:14-cv-00857-TSC-DAR

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTION AND OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

Jonathan Hudis (DC Bar # 418872)
Nikia L. Gray (*pro hac vice*)
Jonathan P. Labukas (DC Bar # 998662)
QUARLES & BRADY LLP
1700 K Street NW, Suite 825
Washington, DC 20006-3825
Tel. (202) 372-9600
Fax (202) 372-9599
E-Mail Jonathan.Hudis@quarles.com
E-Mail Nikia .Gray@quarles.com
E-Mail Jonathan.Labukas@quarles.com

Counsel for Plaintiffs American Educational Research Association, Inc., American Psychological Association, Inc., and National Council on Measurement in Education, Inc.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................v

INTRODUCTION ............................................................................................1

ARGUMENT ...................................................................................................2

I.   PLAINTIFFS' UNREBUTTED PROOF WARRANTS SUMMARY JUDGMENT IN
     THEIR FAVOR AND DENIAL OF DEFENDANT'S CROSS-MOTION ..................2

     A.   The Parties' Respective Burdens on Cross-Motion For Summary Judgment ......2

     B.   Plaintiffs' Unrebutted Proof of Defendants' Direct Infringement ......................3

     C.   Plaintiffs' Unrebutted Proof of Defendant's Liability For Contributory
          Infringement........................................................................................5

II.  ENTRY OF SUMMARY JUDGMENT ON DEFENDANT'S AFFIRMATIVE
     DEFENSES IS WARRANTED FOR PUBLIC RESOURCE'S FAILURE OF PROOF
     OR ARGUMENT IN OPPOSITION...........................................................7

III. DEFENDANT'S DEFENSES ASSERTED FOR THE FIRST TIME ON SUMMARY
     JUDGMENT SHOULD BE DISMISSED FOR FAILURE TO RAISE THEM *AB
     INITIO* IN PUBLIC RESOURCE'S ANSWER ...........................................8

     A.   Defenses Not Raised in Defendant's Answer Cannot be Raised for the First
          Time on Summary Judgment...............................................................8

     B.   In Any Event, the Systems, Processes, Procedures Bar of the Copyright Act
          Does Not Render Plaintiffs' 1999 Standards Uncopyrightable ..........................10

     C.   Moreover, the Idea / Expression Merger Doctrine Does Not Render Plaintiffs'
          1999 Standards Uncopyrightable.......................................................12

     D.   Additionally, the *Scenes a Faire* Doctrine Does Not Render Plaintiffs' 1999
          Standards Uncopyrightable................................................................15

IV.  WHETHER VOLUNTARILY PROMULGATED STANDARDS MAINTAIN THEIR
     COPYRIGHT PROTECTION AFTER BEING PURPORTEDLY INCORPORATED
     BY REFERENCE INTO REGULATION(S) IS A POLICY DECISION RESERVED
     TO CONGRESS, NOT THE COURTS ................................................................ 18

     A.  The Copyright Act Does Not Provide for the Loss of Protection of a Work
         Allegedly Incorporated by Reference into Regulation(s) .................................... 19

     B.  The Cases Relied Upon by Defendant, Denying Copyright Protection to
         Governmental Works, are Inapposite; None of The Cases Involve Voluntarily
         Promulgated Standards ....................................................................................... 23

     C.  If the Views of Defendant Adopted, the Loss of Copyright Protection via
         Government Incorporation by Reference of Voluntarily Promulgated Standards
         Would Amount to an Unconstitutional Taking Without Just Compensation ....... 26

     D.  Even if the Court were Inclined to Consider Defendant's Policy Arguments,
         They are Unsound ................................................................................................ 28

V.   DEFENDANT'S DIGITAL COPYING AND POSTING PLAINTIFFS' STANDARDS
     TO THE INTERNET IS NOT FAIR USE .................................................................. 30

     A.  Nothing Public Resource did with the 1999 Standards was Transformative ....... 31

     B.  Public Resource's Actions Do Not Fall Under the Exception for Reproductions
         for People with Disabilities ................................................................................. 34

     C.  The 1999 Standards are Not a Factual Work; They are a Collective Set of
         Opinions to Serve as Guidance for Best Testing Practices .................................. 37

     D.  Defendant Took the Entirety of the Sponsoring Organizations' Work - Well More
         Than Necessary Even Under Defendant's Theory ................................................ 37

     E.  Defendant's Activities Harmed the Market for the 1999 Standards and its
         Threatened Activities Will Harm the Market for the 2014 Standards .................. 38

VI.  PLAINTIFFS ARE ENTITLED TO A PERMANENT INJUNCTION ..................... 41

     A.  Plaintiffs' Established Success on the Merits for a Permanent Injunction .......... 41

B.    Plaintiffs Will Suffer Irreparable Injury Without a Permanent Injunction ..........43

C.    The Balance of Hardships Weighs in Favor of an Injunction ............................45

D.    The Public Interest Will Be Served by an Injunction ..........................................46

E.    Remedies Available at Law Are inadequate ........................................................47

VII.  DEFENDANT'S AMICI MERELY RESTATE DEFENDANT'S ARGUMENTS AND
      FAIL FOR THE SAME REASONS ............................................................................47

VIII. CONCLUSION ...........................................................................................................50

# TABLE OF AUTHORITIES

## Cases

*Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000) .................................................................... 4

*AARP v. Sycle*, 991 F. Supp. 2d 224  (D.D.C. 2013) ................................................................. 41

*Arista Records LLC v. Lime Wire LLC*, No. 06 Civ. 05936, 2010 WL 10031251 (S.D.N.Y. Aug. 9, 2010 ................................................................................................................................... 45

*Armstrong v. United States*, 364 U.S. 40 (1960) ......................................................................... 27

*Atari Games Corp v. Oman*, 888 F.2d 878 (D.C. Cir. 1989) ....................................................... 16

*Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87 (2d Cir. 2014) ............................................. 32, 36

*Banks v. Manchester*, 128 U.S. 244 (1888) ................................................................................. 24

*Bikram's Yoga College of India L.P. v. Evolution Yoga, LLC*, 803 F.3d 1032 (9th Cir. 2015)... 11, 12

*Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586 (7th Cir. 2003) .............................................. 3

*Breaking the Chain Found., Inc. v. Capitol Educ. Support, Inc.*, 589 F. Supp. 2d 25 (D.D.C. 2008).......................................................................................................................................... 42

*\*BUC Intern. Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129 (11th Cir. 2007)................. 13, 14

*Building Officials & Code Adm. v. Code Technology, Inc.*, 628 F.2d 730 (1st Cir. 1980) .......... 25

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) .................................................... 31, 38

*\*Castle Rock Entm't, Inc. v. Carol Pub. Group Inc.*, 150 F.3d 132 (1998) ................................. 40

*\*CCC Info. V. Servs., Inc. v. Maclean Hunter Mkt. Reports., Inc.,* 44 F.3d 61 (2d. Cir. 1994) ... 26

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................... 8

*Clarke v. United States*, 915 F.2d 699  (D.C. Cir. 1990)............................................................. 43

*Code Revision Comm. V. Public.Resource.org*, 1:15-CV-02594-MHC (N.D.Ga. Jan. 15, 2016) . 6

*Comm'n of Internal Rev. v. Asphalt Prods. Co., Inc.*, 482 U.S. 117  (1987) ............................... 21

*Consumer Prod. Safety Comm. v. GTE Sylvania Inc.*, 447 U.S. 102 (1980) ............................... 21

*CoStar Realty Info., Inc. v. Field*, 737 F.Supp.2d 496 (D. Md. 2010) ........................................ 4, 6

*Davis v. Blige*, 505 F.3d 90 (2d. Cir. 2007) ..................................................................................... 4

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) ........................................................ 41, 47

*\*Educational Testing Services v. Katzman*, 793 F.2d 533 (3d Cir. 1986) ............................. 13, 14

*Enterprise Mngm't Ltd., Inc. v. Warrick*, 717 F.3d 1112 (10th Cir. 2013) ................................. 12

*Fay v. Perles*, 59 F.Supp.3d 128 (D.D.C. 2014) ............................................................................. 2

*\*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ............................. 3, 16, 17

*Fox Television Stations, Inc. v. FilmOn X LLC*, 966 F. Supp. 2d 30  (D.D.C. 2013) .................. 46

*Gilbert v. Napolitano*, 670 F.3d 258  (D.C. Cir. 2012) ........................................................ 8, 9, 10

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ...................................................................... 29

*Greene v. Brown*, 104 F. Supp. 3d 12  (D.D.C. 2015) .................................................................. 41

*\*Hanley-Wood LLC v. Hanley Wood LLC*, 783 F. Supp. 2d 147 (D.D.C. 2011) ........................ 42

*Harper & Row, Publishers, Inc. v. Nation Enters.,* 471 U.S. 539 (1985) .................................... 39

*Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197 (9th Cir. 1989) ................................. 16

*Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339  (D.C. Cir. 1997) .................... 9, 10

*Horne v. Dept. of Agriculture*, 135 S.Ct. 2419 (2015) ................................................................. 26

*Howell v. Miller.*, 91 F. 129 (6th Cir. 1898) ................................................................................. 24

*Hustler Mag. Inc. v. Moral Majority Inc.*, 796 F.2d 1148 (9th Cir. 1986) .................................. 30

*Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96 (11th Cir. 1995) ............. 3

*James v. Campbell*, 104 U.S. 356  (1882) ................................................................... 28

*Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131 (D.D.C. 2008) .................................. 47

*Jones v. United States*, 934 F. Supp. 2d 284 (D.D.C. 2013)............................................ 5

*Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199 (3d Cir. 2005)................................. 12

*\*Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527 (5th Cir. 1994)....................... 11

*Kern River Gas Transmission Co. v. Coastal Corp.*, 899 F.2d 1458 (5th Cir. 1990)................. 25

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522  (6th Cir. 2004) ........... 5, 17

*Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005)....................................................... 27

*\*Lucas v. S. Carolina Coastal Council*, 505 U.S. 1003 (1992)................................. 27, 28

*Mai Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1993)...................................... 4, 6

*Marcus v. Rowley,* 695 F.2d 1171  (9th Cir. 1983)...................................................... 38

*Matthews v. Freedman,* 157 F.3d 25  (1st Cir.1998) .................................................. 16

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197 (C.D. Cal. 2007). 45

*Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212 (7th Cir. 1997)............................ 37

*Murphy v. Hunt*, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) ...................................... 43

*Music v. Gonzalez*, 430 F.3d 888 (7th Cir. 2005) ...................................................... 40

*Natural Res. Defense Council v. U.S. Envtl. Prot. Agency*, 915 F.2d 1314  (9th Cir. 1990)........ 21

*\*North Jersey Media Group, Inc. v. Jeanine Pirro and Fox News Network, LLC,* 74 F.Supp.3d
605 (S.D.N.Y. 2015) ................................................................................. 31, 33

*Peter Letterese and Assoc., Inc. v. World Inst. of Scientology Enter.*, 533 F.3d 1287 (11th Cir. 2008) ................................................................................................................. 41

*Practice Mgmt. Info. Corp. v. Am. Medical Ass'n*, 121 F.3d 516 (9th Cir. 1997) ....................... 26

*Pruneyard Shopping Center v. Robins,* 447 U.S. 74 (1980) ............................................. 26

*Rafeedie v. I.N.S.*, 795 F. Supp. 13  (D.D.C. 1992) ..................................................... 29

*Rains v. Cascade Indus., Inc.,* 402 F.2d 241 (3d Cir.1968) ............................................. 2

*Regions Hosp. v. Shalala,* 522 U.S. 448, 118 S.Ct. 909 (1998) ....................................... 35

*Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102 (D.D.C. 2011) ........................................ 5

*\*Schnapper v. Foley*, 471 F.Supp. 426  (D.D.C. 1979) ................................................. 29

*\*Situation Mngt. Sys., Inc. v. ASP. Consulting LLC*, 560 F.3d 53 (1st Cir. 2009) ................ 10, 37

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ............................ 35

*\*Sturdza v. United Arab Emirates*, 281 F.3d 1287 (D.C. Cir. 2002) ................................... 16

*TechnoMarine SA v. Giftports, Inc*., 758 F.3d 493 (2d Cir. 2014) .................................... 42

*Ticketmaster LLC v. RMG Tech., Inc.*, 507 F.Supp.2d 1096 (C.D.Cal. 2007) ......................... 6

*Tisdale v. Gravitt*, 51 F.Supp.3d 1378 (N.D.Ga 2014) ................................................. 2

*Veeck v. Southern Bldg. Code Congress Intern., Inc.***,** 293 F.3d 791 (5th Cir. 2002) .............. 24

*Washington Mkt. Co. v. Hoffman,* 101 U.S. 112 (1879) ............................................... 35

*Wheaton v. Peters*, 33 U.S. 591  (1834) ............................................................. 23

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ....................................... 47

*Worldwide Church of Good v. Phila. Church of God, Inc.*, 227 F.3d 1110  (9th Cir. 2000) ......... 41

**Statutes**

17 U.S.C. § 101 ................................................................................................................ 4

17 U.S.C. § 102(b) .............................................................................................. 10, 22, 37

17 U.S.C. § 105 ...................................................................................................... 22, 23, 24

17 U.S.C. § 106 ............................................................................................................... 28

17 U.S.C. § 106 (1) ......................................................................................................... 4

17 U.S.C. § 106 (2) ......................................................................................................... 4

17 U.S.C. § 106 (3) ......................................................................................................... 4

17 U.S.C. § 106 (5) ......................................................................................................... 4

17 U.S.C. § 106(2) ......................................................................................................... 39

17 U.S.C. § 107(4) .................................................................................................... 38, 39

17 U.S.C. § 121 .................................................................................................... passim

17 U.S.C. § 410(c) ...................................................................................................... 3, 4

17 U.S.C. §§ 102 ........................................................................................................... 21

**Rules**

Fed. R. Civ. P. 56(a) ...................................................................................................... 2

Fed. R. Civ. P. 8(c) ........................................................................................................ 8

Fed. R. Evid. 701 .......................................................................................................... 15

MD. Admin. Rule 09.12.26.06(AE)(1)(c)(i)................................................................. 20

Minn. Admin. Rule 4761.2460(2)................................................................................. 20

**Other Authorities**

*H.R. Rpt. 94-1476, 58, 1976 U.S.C.C.A.N. 5659 (1976) ................................................ 23, 24, 30

**Regulations**

34 C.F.R. § 668.146(b)(6) ............................................................................................................ 20

## INTRODUCTION

Plaintiffs/Counterclaim-Defendants, American Educational Research Association, Inc., American Psychological Association, Inc., and National Council on Measurement in Education, Inc. (collectively, "Plaintiffs" or the "Sponsoring Organizations"), file this combined Reply in support of its Motion for Summary Judgment [Dkt. 60] ("Plfs. Mtn.") and Opposition to Defendant/Counterclaim-Plaintiff's, Public.Resource.Org, Inc. (Defendant or "Public Resource"), Cross-Motion for Summary Judgment [Dkt. 69] ("Dft. Mtn."). Public Resource has failed to rebut Plaintiffs' *prima facie* case establishing the basis for Plaintiffs entitlement to summary judgment. Public Resource directly and contributorily infringed Plaintiffs' copyright in the "Standards for Educational and Psychological Testing (1999 ed.)" (the "1999 Standards"). Accordingly, summary judgment in Plaintiffs' favor is warranted.

Public Resource does not dispute, and in fact admits, generating an unauthorized copy of the 1999 Standards and posting that copy to the Internet where it was accessed by the public. Without dispute, Public Resource has directly and contributorily infringed Plaintiffs' copyright. Its defense amounts to three arguments: (1) the incorporation of the 1999 Standards by reference into administrative regulations turned the 1999 Standards into the "Law," resulting in the loss of any copyright protection; (2) irrespective of its status as the "Law," the 1999 Standards is not entitled to copyright protection; and (3) Public Resource's unauthorized copying is fair use. These defenses are without merit.

Public Resource's public policy arguments: 1) involve issues that are within the exclusive province of Congress to address, and 2) if accepted would result in serious Constitutional issues. Public Resource's arguments on the merits fail because Defendant ignores that the 1999 Standards is a *book* containing more than just the standards that were incorporated by reference.

Public Resource indiscriminately copied and encouraged further unlawful access to the *entire* 1999 Standards.  Thus, even if *all* of Public Resource's arguments are accepted - and they should not be - there still remains copyrightable expression within the 1999 Standards that is not the "Law" and which Public Resource infringed.

## ARGUMENT

**I.     PLAINTIFFS' UNREBUTTED PROOF WARRANTS SUMMARY JUDGMENT IN THEIR FAVOR AND DENIAL OF DEFENDANT'S CROSS-MOTION**

### A.     The Parties' Respective Burdens on Cross-Motion for Summary Judgment

The Court may only grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Where the parties have made cross-motions for summary judgment, that fact itself does not establish that there are no genuine issues for trial.  *Fay v. Perles*, 59 F.Supp.3d 128, 132 (D.D.C. 2014).  Rather, each cross-motion must be considered separately and each party bears its own burden to establish that it is entitled to summary judgment. *Tinsdale v. Gravitt*, 51 F.Supp.3d 1378, 1387 (D.D.C. 2014); *Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 245 (3d Cir.1968) ("Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified....").

Plaintiffs moved for summary judgment on their claims of direct and contributory copyright infringement.  (*See generally* Plfs. Mtn. [Dkt. 60]).  Public Resource crossed-moved for summary judgment that the 1999 Standards are (allegedly) not entitled to copyright protection or, in the alternative, that Defendant's actions constituted fair use.  (*See generally* Dft. Mtn. [Dkt. 69]).  Public Resource's arguments are without merit and fail to raise a genuine issue of material fact in response to the Sponsoring Organizations' motion.  Thus, Plaintiffs alone are

entitled to summary judgment in their favor.  Public Resource's cross-motion must be denied.

### B.    Plaintiffs' Unrebutted Proof of Defendants' Direct Infringement

To prevail on their claim of direct copyright infringement, Plaintiffs are only required to prove (1) ownership of a valid copyright and (2) copying of elements of the work that are original.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  Public Resource does not dispute that the 1999 Standards were registered with the U.S. Register of Copyrights and that Plaintiffs obtained assignments or work made-for-hire ("WMFH") agreements from 15 of the Joint Committee authors.  (Dft. State. of Disputed Facts in Opp. to Plfs. Mtn. for S.J. ("Dft. SDF") ¶¶ 40-41 [Dkt. 69-3]; Levine SJ Decl., ¶¶ 25, 26, Exh. RRR, Exh. SSS).

Public Resource incorrectly suggests that Plaintiffs' must further prove that those assignments/WMFH agreements were effective.  However, Defendant expressly does not seek summary judgment on Plaintiffs' copyright ownership.  (Dft. Memo. in Support of its Mtn. for S.J. ("Dft. Memo.") at 2, n.1 [Dkt. 69-1]).  Moreover, Plaintiffs' copyright registrations (Levine SJ Decl., ¶ 25, Exh. RRR, ¶ 26, Exh. SSS) are *prima facie* evidence of Plaintiffs' ownership, *see* 17 U.S.C. § 410(c).  Thus, ownership is established for purposes of summary judgment. Regardless, Public Resource cannot challenge Plaintiffs' assignments/WMFH.  None of the parties to those documents dispute the transfers, and as a third-party infringer Public Resource lacks standing to question their effectiveness.  *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 592-93 (7th Cir. 2003) (if there is "no dispute between the copyright owner and the transferee about the status of the copyright," it is "unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement"); *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir. 1995) (same).[1]

---

[1] Public Resource's assertion that Plaintiffs were required to seek assignments from individuals who commented on or assisted with the development of the 1999 Standards is incorrect.

Regarding the second element of Plaintiffs' infringement claim, Public Resource admits that it purchased a used copy of the 1999 Standards and, upon receipt, disassembled it and scanned the entire book to a PDF file (Dft. SDF at ¶ 76 [Dkt. 69-3]; Hudis SJ Decl., ¶ 2, Exh. A, pp. 257-259, 261-264, ¶ 21, Exh. T, Int. Ans. 3-4, ¶ 26, Exh. Y).  Public Resource further admits that it posted the resulting PDF file (*i.e.,* the entire 1999 Standards) to the Internet (Dft. SDF at ¶ 76) [Dkt. 69-3]; Dft. Ans. ¶¶ 7, 55 [Dkt. 12]; Hudis SJ Decl., ¶ 2, Exh. A, pp. 233-34, 271-72; ¶ 2 1, Exh. T, Int. Ans. No. 2).  Public Resource also does not dispute that it undertook these actions without Plaintiffs' permission  (Dft. SDF at ¶ 80 [Dkt. 69-3]; Hudis SJ Decl., ¶ 35, Exh. HH, Admission Nos. 4-5; Levine SJ Decl., ¶ 29; Ernesto SJ Decl., ¶ 35; Wise SJ Decl., ¶ 26).  Therefore, there is no genuine issue of material fact that Public Resource copied the 1999 Standards,[2] created derivative works thereof, distributed copies, and displayed the work in violation of Plaintiffs' rights under 17 U.S.C. § 106 (1), (2), (3), and (5).

Accordingly, the only remaining matter is the validity of copyright in the 1999 Standards.  As the Sponsoring Organizations' registrations are also *prima facie* evidence of validity, *see* 17 U.S.C. § 410(c), Public Resource shoulders the burden of rebutting that presumption.  *Lexmark*

---

Editorial or scholarly assistance, without more, does not result in joint-authorship. *Aalmuhammed v. Lee*, 202 F.3d 1227, 1235 (9th Cir. 2000) (providing "substantial and valuable contributions," including technical, scholarly, creative, and editorial assistance, does not result in joint authorship unless the contribution is independently copyrightable and the authors intended to create a joint work).  Regardless, Plaintiffs are only required to have co-ownership of the copyright in order to bring an action for infringement, not sole ownership. *Davis v. Blige*, 505 F.3d 90, 98 (2d. Cir. 2007).

[2] In its Statement of Disputed Facts, Public Resource contends that a "copy" for the purposes of the Copyright Act is limited to physical objects and thus Defendant did not make a "copy" of the 1999 Standards in the "legal sense." (*See e.g.* Dft. SDF ¶ 51, 58, 66, 82 [Dkt. 69-3]).  This simply is false.  Courts have long held that electronic copies of works saved in a computer's memory are "copies" under 17 U.S.C. § 101.  *See e.g., CoStar Realty Info., Inc. v. Field*, 737 F.Supp.2d 496, 507 (D. Md. 2010) (temporary electronic copy of a work stored in a computer's RAM constitutes an infringing "copy"); *Mai Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993) (same).

*Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 533-34 (6th Cir. 2004).   Public

Resource has not done so.

### C.   Plaintiffs' Unrebutted Proof of Defendant's Liability for Contributory Infringement

There is no genuine issue of material fact that Public Resource's actions also constitute

contributory infringement. Plaintiffs have shown (1) direct infringement by third parties, (2)

knowledge by Public Resource that third parties were directly infringing, and (3) substantial

participation by Public Resource in the infringing activities.  *Rundquist v. Vapiano SE*, 798 F.

Supp. 2d 102, 126 (D.D.C. 2011).  Summary judgment in Plaintiffs' favor is thus warranted.

*Direct Infringement by Third Parties*.  Public Resource admits that the unauthorized PDF

copies it posted to the Internet were repeatedly accessed by members of the public (Dft. SDF ¶¶

85-86 [Dkt. 69-3]; Hudis SJ Decl.,¶¶ 21, 29, Exh. T, Int. Ans. 2 and Amended Ans. 5 (labeled 6),

Exh. BB, pp. 124-132, ¶ 37, Exh. II).  It also does not dispute that neither its nor the Internet

Archive's website has restrictions in place to prevent individuals from downloading or printing

additional copies of the 1999 Standards.  (Dft. SDF ¶¶ 87-88 [Dkt. 69-3]; Hudis SJ Decl., ¶¶ 2,

27, Exh. A, pp. 347-48, Exh. Z, pp. 324-28, 167-173).  Public Resource's only challenge is that

Plaintiffs' evidence that students were obtaining free copies is allegedly inadmissible.[3]  (Dft.

SDF at ¶ 91 [Dkt. 69-3]; Camara Decl., ¶ 21, Exh. MMM; Wise Decl., ¶¶ 27-28, Exh. LLL).  On

summary judgment a court may consider evidence that is inadmissible if it can be converted at

trial.  *Jones v. United States*, 934 F. Supp. 2d 284, 289 (D.D.C. 2013) ("At the summary

judgment stage, a party is not required to produce evidence in a form that is admissible, but the

---

[3] Plaintiffs have no ability to verify when Public Resource uploaded the 1999 Standards to its
own website, nor to identify who accessed the document published there, because neither the
"file creation date" nor user access logs were produced during discovery, notwithstanding
production requests for this documentation and an accompanying discovery motion demanding
production that in relevant part was denied, and some of Defendant's logs were destroyed (Def.
SDF ¶¶ 84-85; Hudis SJ Decl., ¶¶ 21, 36, Exh. T, Int. Ans. 2 and Amended Ans. 5 (labeled 6)).

evidence must be capable of being converted into admissible evidence at trial.").

In this instance Plaintiffs sufficiently established third-party access to the infringed copies of the 1999 Standards over the Internet. [4] "[W]hen a person browses a website, and by doing so displays copyrighted material, a copy of the work is made in the computer's random access memory (RAM), to permit viewing of the material.  In making a copy, even a temporary one, the person who browsed infringes the copyright." *CoStar Realty Info., Inc.* 737 F.Supp.2d at 507 (D. Md. 2010); *Mai Sys. Corp.,* 991 F.2d at 518 (9th Cir. 1993) (temporary storage of a copy of a program in RAM constituted copyright infringement); *Ticketmaster LLC v. RMG Tech., Inc.*, 507 F.Supp.2d 1096, 1105 (C.D.Cal. 2007) (a cache copy of a webpage, which is stored in RAM upon viewing, constitutes copyright infringement).

*Defendant's Knowledge*.  Public Resource also does not dispute that Internet users were accessing the unauthorized PDF copies of the 1999 Standards Defendant published online.  Public Resource further admits that its purpose was to make the 1999 Standards available for free to any and all (Dft. SDF ¶¶ 49, 62, 63 [Dkt. 69-3]; Hudis SJ Decl., ¶ 2, Exh. A, pp. 94-95, 105-109, 172-73, 187-88, 218-219, 257, 358-61, ¶ 3, Exh. B, Section II.B., ¶ 4, Exh. C. Section 2.1).  In fact, just last month in a companion case, Public Resource stipulated to facts admitting that the electronic nature of the copies it posts to the Internet and their availability on the Internet "magnifies the ease and speed with which they may be copied and distributed to others"  (Plfs. SDF ¶ 4; Gray Decl. ¶ 54, Ex. UUUUU, Stip. Of Facts, *Code Revision Comm. V. Public.Resource.org*, 1:15-CV-02594-MHC at ¶¶ 48, 54, 58 (N.D.Ga. Jan. 15, 2016)).  Public Resource additionally stipulated that it posts material to the Internet "for the purpose of facilitating, enabling, encouraging and inducing others to view, *download, print, copy, and*

---

[4] That Public Resource argues over the exact number of times access and downloading occurred is immaterial; a single act of contributory infringement is sufficient to establish liability.

*distribute* those volumes…" (*Id.* (emphasis added)).   Moreover, Public Resource admits that, after Plaintiffs informed it of specific infringing uses by third parties, it refused to remove the unauthorized copies from the Internet until Plaintiffs filed suit and threatened to move for a preliminary injunction.  (Dft. SDF ¶¶ 92-93; (Levine Decl., ¶ 31, Exh. UUU; Hudis Decl., ¶ 2, Exh. A, pp. 310-28, ¶ 38, Exh. JJ, ¶ 39, Exh. KK, ¶ 40, Exh. LL, ¶ 41, Exh. MM).  Thus, the "knowledge" element of the Sponsoring Organizations' contributory infringement claim is met.

*Willful Blindness*.  As Public Resource admits that neither its nor the Internet Archive's websites had restrictions to prevent downloading or printing of the 1999 Standards, it is undisputed that, even if Public Resource had no direct knowledge of third-party infringement, it was willfully blind to the infringement and took no steps to prevent it (Dft. SDF at ¶¶ 87-88 [Dkt. 69-3]; Hudis SJ Decl., ¶¶ 2, 27, Exh. A, pp. 347-48, Exh. Z, pp. 324-28, 167-173).).

*Substantial Participation*.  Finally, the unauthorized copies Public Resource posted to the Internet were appended with self-made "Certificates" implying that the act of publication was authorized by law. (Dft. SDF at ¶¶ 71, 82; Hudis SJ Decl. ¶ 2, Exh. A, p. 257-259, 261-264, 275-284, ¶¶ 21, 29, Exh. T, Int. Ans. 2, Int. Ans. 3-4, ¶ 26, Exh. Y, Exh. BB, pp. 57-63, ¶ 30, Exh. CC (¶ 2 therein), ¶ 34, Exh. GG).  With the copy posted on the Internet Archives' website, Public Resource also admits to adding a statement that the 1999 Standards was subject to a Creative Commons license (which allows for free distribution of otherwise copyrightable work) and that no rights were asserted to it. (*Id.*).

## II.   ENTRY OF SUMMARY JUDGMENT ON DEFENDANT'S AFFIRMATIVE DEFENSES IS WARRANTED FOR PUBLIC RESOURCE'S FAILURE OF PROOF OR ARGUMENT IN OPPOSITION

In their Motion, Plaintiffs contended there was no support for Public Resource's affirmative defenses of unclean hands, copyright misuse, waiver, and estoppel.  (Plfs. Memo. in Support of its Mtn. for S.J. ("Plfs. Memo.") at 51-53 [Dkt. 60-1]).  Public Resource conceded the

issue by failing to offer proof or argument in rebuttal, and therefore there are no material facts in dispute. (*See generally* Def. Memo. [Dkt. 69-1]). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (there is no "genuine issue of material fact" where there has been "a complete failure of proof concerning an essential element of the nonmoving party's case," as the failure "necessarily renders all other facts immaterial"). As Public Resource had the burden of proof, entry of summary judgment in Plaintiffs' favor is warranted. *Id.* at 322. ("the plain language of Rule 56(c) mandates the entry of summary judgment…against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

III.     **DEFENDANT'S DEFENSES ASSERTED FOR THE FIRST TIME ON SUMMARY JUDGMENT SHOULD BE DISMISSED FOR FAILURE TO RAISE THEM *AB INITIO* IN PUBLIC RESOURCE'S ANSWER**

Public Resource raises for the first time several affirmative defenses that are not plead in its Answer [Dkt. 12], including (1) the systems, processes, procedures bar, (2) the idea/expression merger doctrine, and (3) the *scenes a faire* doctrine. Such circumvention of Fed. R. Civ. P. 8(c) is improper. Under D.C. Circuit precedent these affirmative defenses must be deemed waived and precluded from the Court's consideration. Further, even if the Court is inclined to consider them, these defenses are without merit and are not supported by evidence, let alone undisputed material facts.

### A.     Defenses Not Raised in Defendant's Answer Cannot be Raised for the First Time on Summary Judgment

Under Rule 8(c), failure to raise an affirmative defense in a party's responsive pleading constitutes waiver. Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense[.]"); *Gilbert v. Napolitano*, 670 F.3d 258, 261 (D.C. Cir. 2012) (holding that the court was precluded from considering an affirmative defense that

was first raised in a motion to dismiss, the defense having been forfeited for failure to plead it in

the defendant's answer); *Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 341 (D.C.

Cir. 1997) (holding that the District Court "should not…have considered" an affirmative defense

that was raised for the first time in a motion for summary judgment).

The D.C. Circuit follows a strict application of Rule 8(c) and rejects the allowance of

affirmative defenses that are raised for the first time in a dispositive motion even where there is

no prejudice.  *Harris*, 126 F.3d at 344-45 (reviewing the application of Rule 8(c) in various

circuits and declining to follow those circuits that permit parties to raise affirmative defenses for

the first time in dispositive motions where no prejudice is shown, stating "we hold that Rule 8(c)

means what it says: a party must first raise its affirmative defenses in a responsive pleading

before it can raise them in a dispositive motion.").  Thus, a court is precluded from considering

affirmative defenses that are not identified in a responsive pleading.  *Gilbert*, 670 F.3d at 261.

In its cross-motion, Public Resource challenges the validity of Plaintiffs' copyright in the

1999 Standards under (1) the systems, processes, procedures bar, (2) the idea/expression merger

doctrine, and (3) the *scenes a faire* doctrine (Dft. Memo. at 31-34).  These are all affirmative

defenses and thus under Fed. R. Civ. P. 8(c) Public Resource was required to be plead them in its

Answer.  Public Resource failed to do so (Dft. Dft. Ans. at 24-25 [Dkt. 12]).  Therefore, all three

defenses are waived.  *Gilbert*, 670 F.3d at 261; *Harris*, 126 F.3d at 345.

To be clear, while Public Resource's counterclaim does reference a "doctrine of merger"

regarding Defendant's theory that the 1999 Standards are uncopyrightable "Law" (Dft. Dft. Ans.

at ¶ 125 [Dkt. 12]), that is not the same as the affirmative defense asserted on page 33 of Public

Resource's brief supporting its summary judgment cross-motion.  The "doctrine of merger"

raised in Public Resource's counterclaim is argued separately on pages 18-19 of its brief. The

theory argued there is that: 1) "the law" is not copyrightable, and 2) when private standards are incorporated by reference into a regulation, that material "merges" with and becomes "the law". (Dft. Ans. at ¶¶ 116-125 [Dkt. 12]).

Separately, Public Resource for the first time asserts the idea/expression merger doctrine as an affirmative defense on page 33 of its brief, arguing that even if the 1999 Standards is not the "Law," it is still allegedly uncopyrightable because the idea of each standard purportedly can only be expressed in one way.  (*See* Dft. Memo. at 33 ("Plaintiffs do not believe that the standards can be expressed any other way.").  This defense was not plead in Public Resource's Answer and is therefore waived.  (Dft. Dft. Ans. at 24-25 [Dkt. 12]).

Accordingly, Public Resource's defenses of (1) the systems, processes, procedures bar, (2) the idea/expression merger doctrine, and (3) the *scenes a faire* doctrine are forfeited and the Court should not consider them.  *Gilbert*, 670 F.3d at 261; *Harris*, 126 F.3d at 345.

### B.   In Any Event, the Systems, Processes, Procedures Bar of the Copyright Act Does Not Render Plaintiffs' 1999 Standards Uncopyrightable

Public Resource argues that, regardless of the 1999 Standards' status as the "Law," it is uncopyrightable under 17 U.S.C. § 102(b)'s systems, processes, and procedures bar. Defendant's argument is based on a flawed premise that has twice been rejected judicially.  Specifically, Public Resource contends that the 1999 Standards is uncopyrightable because it "*describe[s]* procedures, statistical procedures, research procedures … how to design a test, how to collect evidence of its validity, how to calculate the reliability of the test." (Dft. Memo. at 32 (quoting Plaintiffs' 30(b)(6) witness, emphasis added)).  Even if true, *descriptions* are copyrightable expression even when they *describe* a process or system that itself is not copyrightable.  *See Situation Mngt. Sys., Inc. v. ASP. Consulting LLC*, 560 F.3d 53, 61 (1st Cir. 2009) (finding the district court erred in holding that a work describing processes and ideas uncopyrightable

because "[t]he fact that [plaintiff's] works describe processes or systems does not make their *expression* noncopyrightable") (emphasis original).  *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 534 (5th Cir. 1994) ("even if [the work] conveys *unprotectable ideas*, the specific words phrases, and sentences selected to convey those ideas are *protectable expression*.") (emphasis original).   The creative choices made by the authors of the 1999 Standards in describing those procedures and processes are without question subject to copyright protection.

Public Resource's argument that the 1999 Standards does not qualify as a creative compilation also is without merit.  First, Public Resource provides *no* evidence to support its contention that the utility of the 1999 Standards dictates its organization.  Moreover, its reliance on *Bikram's Yoga College of India L.P. v. Evolution Yoga, LLC* is misplaced.  (*See* Dft. Memo. at 33).  That case involved the determination of whether the copyright for a book describing the specific yoga poses and breathing exercises referred to as the Bikram Yoga Sequence extended to the Sequence itself such that the defendant infringed by offering a similar type of yoga.  803 F.3d 1032, 1035-36 (9th Cir. 2015).  In finding for the defendant, the Ninth Circuit expressly stated that it was not determining the validity of the copyright in the book but rather its scope.  *Id.* at 1039.  Use of the standards described in Plaintiffs' book, however, is not at issue.  Public Resource admits that it made an unauthorized copy of the entire 1999 Standards - a copyrighted book - and posted that copy to the Internet (Dft. SDF at ¶¶ 69, 71, 76, 78-80, 83).

Second, Public Resource's argument, if it had any support, incorrectly presumes that the 1999 Standards is nothing more than a list of standards.  The 1999 Standards is a *book*.  In addition to the 279 individual standards, in fifteen different categories, the 1999 Standards includes other expressive content, such as a preface and lengthy introduction ((Plfs. SMF, ¶¶ 12,

31 [Dkt. 60-2]; Levine SJ Decl., ¶¶ 11, 15, 28, Exh. TTT [Dkt. 60-78]).  Additionally, each chapter of the 1999 Standards includes an expansive background portion and comments are provided after the recitation of each standard (*Id.*).

Even if, *arguendo*, the individual standards were uncopyrightable facts whose organization was dictated by utility, Public Resource would still infringe as it posted the *entire book* to its website, including the preface, introduction, chapter backgrounds, and comments, all of which is undisputedly original expression entitled to copyright protection (Dft. SDF at ¶¶ 71, 76 [Dkt. 69-3]; Dft. Ans. ¶¶ 7, 55 [Dkt. 12]; Hudis SJ Decl., ¶ 2, Exh. A, pp. 232-240, 257-259, 261-264, 271-72, ¶ 21, Exh. T, Int. Ans. 2-4 ¶ 23, Exh. V, ¶ 26, Exh. Y).

### C.  Moreover, the Idea / Expression Merger Doctrine Does Not Render Plaintiffs' 1999 Standards Uncopyrightable

Public Resource asserts a cursory argument that the 1999 Standards cannot be articulated any other way than as written, meaning that, regardless of the 1999 Standards' status as the "Law," the 1999 Standards is, allegedly, still uncopyrightable under the idea/expression merger doctrine.  (Dft. Memo. at 33 ("Indeed, Plaintiffs do not believe the standards can be expressed any other way.").  This argument is without merit.

As explained, under the idea/expression merger doctrine, when a work expresses an idea the only way it can be expressed, that expression is denied copyright protection under the "idea/expression merger doctrine' to avoid giving the author a monopoly over the underlying idea.  *Enterprise Mngm't Ltd., Inc. v. Warrick*, 717 F.3d 1112, 1118 (10th Cir. 2013).  "Merger is rare, however, and is generally found in works with a utilitarian function."  *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 209 (3d Cir. 2005).

Where an idea may be expressed in a few ways - even if the number is limited - copyright may still exist, though its protection may be "thin" and limited to virtual identical coping.

*Educational Testing Services v. Katzman*, 793 F.2d 533, 539 (3d Cir. 1986) ("While the limited number of ways a concept can be addressed may be relevant to the extent of copying permitted, it does not render an original expression per se incapable of copyright … If other methods of expressing the idea are not foreclosed as a practical matter, then there is no merger.").

Not surprisingly it has been remarked that "[a]t the margins, the distinction between idea and expression can be subtle and difficult."  *BUC Intern. Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1143 (11th Cir. 2007).  Application of the doctrine therefore must be done with care to avoid frustrating the goal of the Copyright Act in providing protection for original expressions of authorship.  *Id*.  The inquiry starts with a careful and deliberate determination of precisely what the "idea" and its "expression" are.  *Id*.  This articulation "is not merely an exercise in semantics; it is a policy decision that must be carefully drawn." *Id*. at 1114.  An "idea" that is defined too narrowly will improperly skew the analysis to a finding of merger.  *Id*. ("By defining the idea around the contours of the chosen expression, MLS Solutions attempts to cast the idea and the expression as one. This type of analysis would swallow up the idea-expression dichotomy, and the merger doctrine would become the rule instead of the exception.").  Only then, once the idea is properly defined, is it examined to determine if the idea can be expressed in only one way - namely the work at issue - or in multiple ways (even if the number of different ways is limited).  *Id*.; *Educational Testing Services*, 793 F.2d at 539.

Public Resource's cursory and deficient analysis fails to establish that the 1999 Standards is uncopyrightable under the idea/expression merger doctrine.  Public Resource neither identifies what it defines the "idea" to be nor what its "expression" is.  (*See generally* Dft. Memo. at 34).  One can surmise from the little presented that Public Resource is attempting to define the "idea" separately for each specific standard, with an eye towards how they each are presently expressed

- in other words, the exact fallacy *BUC Intern. Corp. v. Int'l Yacht Council Ltd.* warned against. 489 F.3d at 1143.  The "idea" of the 1999 Standards is more appropriately stated as an outline of best practices in the development and evaluation of tests across multiple settings.  (Plfs. SDF ¶ 83; ICE Ex. 4 (Camara Dep., p. 23); Plfs. SJ Declarations, Camara Decl., ¶ 13).

The sole basis for Public Resource's claim is certain cherry-picked testimony from Diane Schneider concerning a rephrasing of one specific standard in the 1999 Standards (Dft. Memo. at 33 (*citing* Dft. Statement of Material Fact ("Dft. SMF") 80-82[5] [Dkt. 69-2], emphasis added).  First, Dr. Schneider's testimony is being misrepresented.   Dr. Schneider was asked hypothetically if *is there a risk* that rephrasing a standard *might* change the meaning.  (Plfs. SDF ¶ 81 ICE Ex. 2 (Schneider Dep. 136:18–21) She answered the hypothetical question accordingly, responding that there's a *chance* rephrasing could make anything unclear (*Id.*).   This is irrelevant.  The Copyright Act does not require absolute surety that the meaning of an "idea" will not be altered if the "expression" changes.  Rather, all that is required is that other means of expression remain available.  *Educational Testing Services*, 793 F.2d at 539 (3d Cir. 1986) ("If other methods of expressing the idea are not foreclosed as a practical matter, then there is no merger.").

Second, Dr. Schneider's personal ability to rephrase Standard 4.4 of the 1999 Standards is irrelevant.  Not only was Dr. Schneider not one of the authors of the 1999 Standards and the least qualified of Plaintiffs' witnesses to answer the question, but the question was an improper hypothetical calling for expert testimony.   (Plfs. SDF ¶ 82; Gray Reply Decl., ¶ 58, Exh. YYYYY, Schneider Dep. Tr. pp. 18-20; 27-31, 37-39).  Her response is therefore inadmissible.

---

[5] Plaintiffs believe there are numbering errors in Public Resource's citations to its Statement of Material Facts, and therefore Plaintiffs' Opposition responds to those Statement of Material Facts Plaintiffs believes Public Resource intended to cite.

Fed. R. Evid. 701 (if a witness is not testifying as an expert, opinion testimony is limited to opinions that are rationally based on perception, helpful, and not based on scientific, technical or other specialized knowledge).

Further, Plaintiffs have provided a Reply Declaration of Wayne Camara, Senior Vice President of Research of ACT, Inc., and one of Management Committee members for the 1999 Standards, rephrasing not only Standard 4.4 but also Standards 3.3, 5.2, and 5.3. (Plfs. SDF ¶ 82 Camara's Reply Declaration at ¶¶ 5-15). Accordingly, if Public Resource's unpled affirmative defenses are not deemed waived, there are disputed material facts whether the merger doctrine even applies here.

Finally, Public Resource copied the *entire* 1999 Standards, and the 1999 Standards is a *book* containing the standards as well as other expressive content. (*See generally* Hudis SJ Decl., ¶ 23, Exh. V). Even if, *arguendo*, Standard 4.4 (or any of the standards) was not copyrightable, Public Resource still infringed because it posted the *entire book* to the Internet, including all the expressive content that is undisputedly copyrightable. (Dft. SDF at ¶¶ 71, 76 [Dkt. 69-3]; Dft. Ans. ¶¶ 7, 55 [Dkt. 12]; Hudis SJ Decl., ¶ 2, Exh. A, pp. 232-240, 257-259, 261-264, 271-72, ¶ 21, Exh. T, Int. Ans. 2-4 ¶ 23, Exh. V, ¶ 26, Exh. Y).

### D. Additionally, the *Scenes a Faire* Doctrine Does Not Render Plaintiffs' 1999 Standards Uncopyrightable

Public Resource's argument that the *scenes a faire* doctrine renders Plaintiffs' 1999 Standards uncopyrightable is equally without merit. Not only has Public Resource misapplied the doctrine, but, even if it did apply (which it does not) this would not help Public Resource evade liability for its blatant infringement.

Specifically, Public Resource argues that the 1999 Standards are dictated by the current state of technical information on test development and use, practical requirements, and industry

demands and thus, being *scenes a faire*, are not entitled to protection.  (Dft. Memo. at 34 [Dkt. 69-1]).  This, however, is an over-simplification of *scenes a faire* doctrine.  The term "*scenes a faire*" refers to stereotyped expressions, "incidents, characters, or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic."  *Atari Games Corp v. Oman*, 888 F.2d 878, 886 (D.C. Cir. 1989).  Though copyright protection does not extend to *scenes a faire*, deeming something *scenes a faire* is not the end of the inquiry nor does it *per se* render the associated work uncopyrightable and free to the world for copying.

While elements that are *scenes a faire* may not be protected, the creative expression of those ideas or facts may still be.  *Feist Publications, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 348 (1991); *Sturdza v. United Arab Emirate*, 281 F.3d 1287, 1296 (D.C. Cir. 2002) ("protectable expression may arise through the ways in which artists combine even unprotectable elements").  As explained by the First Circuit, "the underlying idea (*e.g.,* the travails of two star-crossed lovers), even if original, cannot be removed from the public realm; but its expression in the form of a play script (such as William Shakespeare's *Romeo and Juliet* ) can be protected. Needless to say, the line is a blurry one." *Matthews v. Freedman,* 157 F.3d 25, 27 (1st Cir.1998).

Thus, even works composed entirely of *scenes a faire* or other unprotectable material may still include some protectable expression.  *See Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 204 (9th Cir. 1989) ("A copyrightable compilation can consist mainly or entirely of uncopyrightable elements.").  In such cases, the work may merit only a "thin" copyright that protects against virtual identical copying, but the work is still copyrightable.  *Id.  See also Feist*, 499 U.S. at 349 ("[t]he copyright in a factual compilation is thin.").

Public Resource's cursory treatment of Plaintiff's work is insufficient to show that the *scenes a faire* doctrine applies and, even if it did, that the 1999 Standards as a whole is not

entitled to copyright protection.  First, although Public Resource states that the "standards" constitute *scenes a faire*, it fails to provide any analysis of the doctrine whatsoever.  (Dft. Memo. at 34).  Merely stating something is unprotectable *scenes a faire* does not make it so, and such an inadequate analysis is insufficient to support summary judgment in Defendant's favor.

Second, Public Resource's "support" is a few cherry-picked statements from witnesses. Dr. Camara's testimony merely constituted reading descriptions of the 1985 version of the standards (Plfs. SDF ¶ 84; ICE Ex. 4 (Camara Dep. 131:25–132:11)).  Dr. Wise was merely asked to speculate on the purpose of a letter written by Dr. Camara to the Commission of Education for Alaska asking for the designation of someone to serve as a point of contact within the state department of education.  (Plfs. SDF ¶ 85; ICE Ex. 6 (Wise Dep. 82:13–20)).  Beyond being hearsay, she in no way testified that the expression of the 1999 Standards would be *dictated* by comments received from the individual.  (*Id*.)  Indeed, the vast majority of comments solicited during the development of the 1999 Standards were disregarded in their entirety.  (Dft. SDF ¶ 15-16 [Dkt. 69-3]; Camara Decl., ¶ 12; Schneider Decl., ¶ 7).

Nor does *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004), help Public Resource.  (*See generally* Dft. Memo. at 34).  There, the Sixth Circuit found that a toner loading program was uncopyrightable under the *scenes a faire* doctrine, but it's reasoning was highly fact specific.  In *Lexmark*, the printer that downloaded and executed the code sequence only understood a single programming language composed of eight simple commands. 387 F.3d 522, 539-40 (6th Cir. 2004).  The code sequence was restricted to being no larger than 55 bytes - a tiny amount - because that was all the printer could download.  *Id*.  This, in effect, meant that a programmer had no choice but to use the copyrighted code to calculate the toner levels as those restrictions dictated the literal words that could be used.  *Id*.

-17-

Here, the 1999 Standards is a treatment of best practices in the development and evaluation of tests and assessments.  (Plfs. SDF ¶ 10; ICE Ex. 2 (Schneider Dep. 176:23–177:06).  That concept is not *dictated* word-for-word by external factors any more than a new play about star-crossed lovers is dictated by Romeo and Juliet.  Nor is that concept constrained by any requirement preventing the text from being expressed more verbosely or succinctly than in the 1999 Standards, in different words, or even in another language.

Finally, there is no dispute that Public Resource copied the 1999 Standards *in its entirety*, a *book* that includes expressive content in addition to the standards.  (Dft. SDF at ¶¶ 71, 76 [Dkt. 69-3]; Dft. Ans. ¶¶ 7, 55 [Dkt. 12]; Hudis SJ Decl., ¶ 2, Exh. A, pp. 232-240, 257-259, 261-264, 271-72, ¶ 21, Exh. T, Int. Ans. 2-4 ¶ 23, Exh. V, ¶ 26, Exh. Y).  Public Resource has presented no evidence or argument suggesting, for example, that the introduction or chapter backgrounds are "dictated by external factors" or by "practical requirements and industry demands" or that they are in any way not entitled to copyright protection  (*See generally Id*.).  While inconvenient for Public Resource's position, these portions of the 1999 Standards cannot be ignored.

Accordingly, even if the Court considers Public Resource's untimely affirmative defenses, Defendant fails to show that there is a dispute of material fact that its copying of the 1999 Standard constituted infringement.  Summary judgment in Plaintiffs' favor is warranted.

## IV.       WHETHER VOLUNTARILY PROMULGATED STANDARDS MAINTAIN THEIR COPYRIGHT PROTECTION AFTER BEING PURPORTEDLY INCORPORATED BY REFERENCE INTO REGULATION(S) IS A POLICY DECISION RESERVED TO CONGRESS, NOT THE COURTS

Public Resource asks this Court to create a new doctrine of copyright law not contained in the Copyright Act and not supported by the case law.  In short, Defendant asks this Court to "legislate from the bench," which it cannot do.  Whether a voluntarily promulgated standard that is incorporated into a statute or regulation loses its copyright protection is a policy decision that

is reserved solely to Congress.  To change the law, as Defendant urges, would usurp the power of the elected branch of government and damages appropriate role of the judiciary.

Under Public Resource's position, the government could adopt any portion of a private copyrighted work for any purpose at any time, and the copyright would be invalidated.  Such a scenario would have a complete chilling effect upon standard development organizations ("SDOs"), which would have no incentive to spend enormous sums and time on the research and development required to produce standards.  The public also would suffer, as the government would be required to invest vast tax dollars to research areas which in the past the government has had the ability to rely on the private sector to develop.  Thus, any public policy benefits Public Resource might assert, are offset by considerable countervailing considerations.  The ultimate result would be antithetical to the interests otherwise protected by the Copyright Act and raise substantial problems under the Taking Clause of the Constitution.  Accordingly, Public Resource's position must be rejected.

### A.  The Copyright Act Does Not Provide for the Loss of Protection of a Work Allegedly Incorporated by Reference into Regulation(s)

Public Resource asks this Court, on the basis of nothing more than policy arguments, to create an exception to the Copyright Act that simply does not exist — and then to apply that exception in a manner that defies reason.  The Court must reject Defendant's invitation.  The Copyright Act neither provides for the loss of copyright protection when a private work is allegedly incorporated by reference into the "Law," nor is it susceptible of being so interpreted.

As a preliminary matter, Public Resource has not proven that the *1999 Standards* have been incorporated into the "Law."  Nowhere does Public Resource argue that the 1999 Standards have been incorporated into federal or State statutes.  All that has been asserted is the alleged incorporation by reference of *standards* in the 1999 Standards into a set of U.S. Department of

-19-

Education's regulations and to state regulations.  (Dft. Mtn. at 5-8 [Dkt. 63-1].

> 1.      Defendant Copied the Entirety of the 1999 Standards, but the Entirety of
> the 1999 Standards was Not Incorporated by Reference

The whole premise of Public Resource's defense repeatedly fails on this point: the 1999 Standards is a *book* containing protectable expression other than the standards, including the preface, introduction, chapter backgrounds, and comments.  The regulations citing the 1999 Standards are clear that it is the individual standards contained in the 1999 Standards and *not* the entire book that is referenced.[6]  Indeed, it would be absurd to interpret any of these regulations as requiring compliance with the preface or introduction of the 1999 Standards.

Thus, even if, *arguendo*, Public Resource was correct that the Copyright Act allows a private work to be rendered uncopyrightable when incorporated by reference into the "Law," that principle would *only* apply to the individual standards recited in the 1999 Standards.  Public Resource has not articulated any theory that would support the notion that the additional copyrightable expression within the 1999 Standards - which Public Resource copied - lost its protection.  Accordingly, under any theory elucidated to date, Public Resource is liable for copyright infringement even if the Court accepts its erroneous construction of the Copyright Act.

> 2.      Statutory Construction of the Copyright Act

Analysis of the Copyright Act, as all statutory construction, must begin with the Act itself and the plain meaning of the sections upon which Public Resource relies.  *Consumer Prod.*

---

[6] 34 C.F.R. § 668.146(b)(6) (for a test to be approved, it must "[m]eet all *standards* for test construction *provided in* the 1999 edition of the Standards for Educational and Psychological Testing…") (emphasis added); Minn. Admin. Rule 4761.2460(2) (applications must include documentation that "the examination meets the validity standards for educational and psychological testing *specified in* American Psychological Association (APA), Standards for Educational and Psychological Testing Association (1999)) (emphasis added); MD. Admin. Rule 09.12.26.06(AE)(1)(c)(i)) ("The written and practical tests shall be administered under circumstances approved by the auditor as meeting nationally recognized auditing standards.").

*Safety Comm. v. GTE Sylvania Inc.*, 447 U.S. 102, 108 (1980) ("We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself.  Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.").

To begin, the Copyright Act is explicit in providing when a work is ineligible for or loses protection.  *See e.g.,* 17 U.S.C. §§ 102 (Subject matter of copyright: in general), 103 (Subject of copyright: compilations and derivative works), 105 (Subject matter of copyright: United States Government works), 107-112, 117, 119 (Limitations on exclusive rights, including: fair use, reproduction by libraries and archives, effect of transfer of a particular copy or phonorecord, exemption of certain performances and displays, secondary transmissions, ephemeral recordings, computer programs, secondary transmission, reproductions for the blind or other people with disabilities), 113-115, 118, 120 (Scope of exclusive rights in pictorial, graphic, and sculptural works, sound recordings, nondramatic musical works, certain works in connection with noncommercial broadcasting, and architectural works), and 302-303 (Duration of copyright).

That Congress took such great pains to methodically detail the boundaries of the Copyright Act merits *pausing*.  "The ordinary presumption is that Congress' drafting of [] text is deliberate."  *Natural Res. Defense Council v. U.S. Envtl. Prot. Agency*, 915 F.2d 1314, 1321 (9th Cir. 1990).  "Judicial perception that a particular result would be unreasonable may enter into the construction of ambiguous provisions, but cannot justify disregard of what Congress has plainly and intentionally provided."  *Comm'n of Internal Rev. v. Asphalt Prods. Co., Inc.*, 482 U.S. 117, 121 (1987).  The Copyright Act represents intentional and deliberate policy choices made by Congress to maintain strong protections for works of authorship *and* to set forth clear lines at where those protections end.  Nowhere in the extensive detailing of the subject matter, scope,

and limitation of rights under the Copyright Act is there a provision providing for the loss of protection through the incorporation by reference of a work into a statutory or regulatory provision.  The clear inference is that Congress set forth those limitations on copyright that it intended the Act to have, and that it acted purposefully in not including further limitations.

Public Resource further argues that Sections 102 and 105 of the Copyright Act specifically support its contention that the "Law" is excluded from copyright protection by virtue that copyright is precluded for ideas, processes, and systems (17 U.S.C. § 102(b)) and for works of the U.S. Government (17 U.S.C. § 105). (Dft. Memo. at 12-13 [Dkt. 69-1]).

Section 102(b), in its entirety, states that "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."  17 U.S.C. § 102(b).  Notably absent is a clear statement that a work can be transmuted into any of the statutorily prohibited categories by actions taken by a third party (here, the federal or a state government) after the fact.

Again, the analysis of Public Resource's lofty policy argument must at each stage return to the specific facts of this case.  The 1999 Standards is a privately created work of authorship that contains not only the standards but other copyrightable content.  Public Resource's argument - as applied to this case - is that an *administrative body* can thrust a privately held property right into the public domain by referring to all or a portion of it as an administrative procedure, process, or system.  The language of Section 102(b) simply does not say this, nor can it reasonably interpreted this way.

Nor does Section 105 lead Public Resource to the exception it asks this Court to recognize.  Nothing in Section 105 refers to works created by private citizens.  *See* 17 U.S. C. §

105.[7]  The basic premise of Section 105 is that "works produced for the U.S. Government *by its officers and employees* should not be subject to copyright."  H.R. Rpt. 94-1476, 58, 1976 U.S.C.C.A.N. 5659, 5671 (1976) (emphasis added).  Indeed, in enacting Section 105, Congress in fact considered that there may be situations where the public interest is best served by denying a private citizen copyright but expressly *declined* to provide the exception Public Resource asks for, believing it is best addressed by direct legislation or contract:

> The bill deliberately avoids making any sort of outright, unqualified prohibition against copyright in works prepared under Government contract or grant. There may well be cases where it would be in the public interest to deny copyright in the writings … However, there are almost certainly many other cases where the denial of copyright protection would be unfair or would hamper the production and publication of important works. Where, under the particular circumstances, Congress or the agency involved finds that the need to have a work freely available outweighs the need of the private author to secure copyright, *the problem can be dealt with by specific legislation, agency regulations, or contractual restrictions.*

*Id*. at 59, 1976 U.S.C.C.A.N. at 5672.  No legislation directly addresses the incorporation by reference of a private work and no contract exists between Plaintiffs and any government body concerning the copyright in the 1999 Standards.  Accordingly, it was Congress' clear intent that copyright for the 1999 Standards remain vested in the Sponsoring Organizations.

### B.   The Cases Relied Upon by Defendant, Denying Copyright Protection to Governmental Works, are Inapposite; None of The Cases Involve Voluntarily Promulgated Standards

All of the cases relied upon by Public Resource are distinguishable:  *Wheaton v. Peters*, *Banks v. Manchester*, and *Howell v. Miller* (Dft. Memo. at 11-12 [Dkt. 69-1]) each addressed the copyrightability of judicial opinions or statutes, not voluntarily promulgated standards or other privately created works. *See Wheaton v. Peters*, 33 U.S. 591, 668 (1834) (addressing the

---

[7] "Copyright protection under this title is not available for any work of the United States Government, but the United States Government is not precluded from receiving and holding copyrights transferred to it by assignment, bequest, or otherwise."  17 U.S.C. § 105

copyrightability of Supreme Court decisions); *Banks v. Manchester*, 128 U.S. 244, 253-254 (1888) (addressing the copyrightability of Ohio Supreme Court decisions); *Howell v. Miller.*, 91 F. 129, 137 (6th Cir. 1898) (addressing the copyrightability of state statutes). Further, these cases predate the 1976 Copyright Act and simply recite the principle that ultimately was codified in Section 105 that works by U.S. Government officers and employees are not subject to copyright. *See* 17 U.S.C. § 105. Again, in enacting Section 105, Congress made explicitly clear its intent that, where the public needs free access to a privately created work, that need is to be addressed by specific legislation or contract, and *not* by the Copyright Act generally or judicially made exceptions. H.R. Rpt. 94-1476, 59, 1976 U.S.C.C.A.N. 5659, 5672 (1976).

Public Resource's heavy reliance on *Veeck v. S. Bldg. Code Congress Intern., Inc.*, is also misplaced. (*See* Dft. Memo. at 12 [Dkt. 69-1]). In that case, faced with deciding the copyrightability of model building codes that had been adopted by a municipality, the Fifth Circuit took great pains to distinguish its analysis from cases concerning extrinsic standards that had been incorporated by reference into statutes, recognizing that, for the purposes of copyright, the latter are inherently different:

> This case does *not* involve references to extrinsic standards. Instead, it concerns the wholesale adoption of a model code promoted by its author, SBCCI, precisely for use as legislation. Caselaw that derives from official incorporation of extrinsic standards is distinguishable in reasoning and result.
> …
> If a statute refers to [an extrinsic standard such as] the Red Book or to specific school books, the law requires citizens to consult or use a copyrighted work in the process of fulfilling their obligations. *The copyrighted works do not "become law" merely because a statute refers to them.*

*Veeck v. Southern Bldg. Code Congress Intern., Inc.*, 293 F.3d 791, 804-05 (5th Cir. 2002) (internal citation omitted, emphasis added). Accordingly, *Veeck* recognized the exact opposite of

-24-

what Public Resource asks this Court to find - the 1999 Standards - an extrinsic standard - did not become the "Law" by mere reference in an agency regulation.

*Building Officials & Code Adm. v. Code Tech. Inc.*, does not get Public Resource any further than *Veeck*.  (*See* Dft. Memo. at 16 [Dkt. 69-1]).  Like *Veeck*, *Building Officials & Code Adm.* addressed self-executing model codes that had been adopted word-for-word.  *Building Officials & Code Adm. v. Code Technology, Inc.*, 628 F.2d 730 (1st Cir. 1980).  Moreover, the First Circuit did *not* hold definitively that model codes enter the public domain when they are adopted by government bodies, let alone an extrinsic standard incorporated by reference, instead declining to rule on that issue based on the limited record before it, and merely vacating the district court's preliminary injunction.  *Id*. at 736.

Finally, Public Resource misunderstands the holding of *Kern River Gas Transmission Co. v. Coastal Corp*.  (*See* Dft. Memo. at 18 [Dkt. 69-1]).  The Fifth Circuit did *not* hold, as Public Resource contends, that *because* a regulatory commission approved the plaintiff's proposed location for a natural gas pipeline, the lines and mile markers expressing the location of the pipeline merged with the idea of the location.  (*See Id.*).  Rather, the Fifth Circuit recognized that the expression of the pipeline's proposed location as markings as on the map was not copyrightable irrespective of whether that location was approved:  "[s]uch map markings are certainly the only effective way to convey the idea of the *proposed* location of the pipeline across 1,000 miles of terrain."  *Kern River Gas Transmission Co. v. Coastal Corp.*, 899 F.2d 1458, 1464 (5th Cir. 1990) (emphasis added).  In other words, the location of a physical object and the representation of that location on a map *always* merge under the idea / expression merger doctrine because there is only one way to accurately express that location on a map, regardless of whether the location has been given official approval.  Unlike *Kern River's* map markings, which

were never copyrightable under the merger doctrine, the 1999 Standards was (and continues to be) copyrightable expression prior to its incorporation by reference.

Notably, no case cited by Public Resource addresses the incorporation by reference of a *portion* of a work.  It would be unreasonable for the Court to extend a holding such as, for example *Veeck*, addressing enactment of an entire model code word-for-word, to a privately held work containing both material incorporated by reference into an administrative regulation and material that was not.  Indeed, it is reasonable to conclude that had any of the foregoing Courts addressed that situation, their analysis would have been different.  Rather, as set forth in Plaintiffs' opening brief, this case is most properly guided by *CCC Info. V. Servs., Inc. v. Maclean Hunter Mkt. Reports., Inc.,* 44 F.3d 61 (2d. Cir. 1994) and *Practice Mgmt. Info. Corp. v. Am. Medical Ass'n*, 121 F.3d 516 (9th Cir. 1997).  (*See* Plfs. Memo. at 39-40 [Dkt. 60-1]).

C.     **If the Views of Defendant Adopted, the Loss of Copyright Protection via Government Incorporation by Reference of Voluntarily Promulgated Standards would amount to an Unconstitutional Taking Without Just Compensation**

Public Resource's arguments also must be rejected as raising serious constitutional concerns.  An interest in copyright, like any other property right, is protected by the due process and just compensation clauses of the U.S. Constitution.  *Horne v. Dept. of Agriculture*, 135 S.Ct. 2419, 2426 (2015) (the Takings Clause "protects 'private property' without any distinction between different types"); *Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 82 n. 6 (1980).  If Public Resource's position is accepted, the incorporation by reference of voluntarily promulgated standards, such as the 1999 Standards, would amount to a full-scale taking of thousands of copyrighted works by the government, subjecting the government to millions of dollars in claims for just compensation awards.  The spectre of constitutional issues raised by Public Resource's argument counsels against its adoption.

-26-

The Fifth Amendment prohibits the taking of private property for public use without just compensation.  U.S. Const. Amend. V.  A "regulatory taking" occurs when a government regulation is "so onerous that its effect is tantamount to a direct appropriation or ouster."  *Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528, 537 (2005).  Such takings are deemed "*per se*" where the regulation-in-question completely deprives an owner of "all economically beneficial us[e]" of her property and are compensable without specific inquiry into the public interest advanced in support of the regulation.  *Lucas v. S. Carolina Coastal Council*, 505 U.S. 1003, 1015, 1019 (1992).  Where the regulatory interference does not rise to the level of being *per se*, the taking can nevertheless still be actionable where the magnitude of the regulation's economic impact and the degree to which it interferes with legitimate property interests goes "too far."  *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537 (2005).

There is no serious question that a government regulation directly abrogating a private citizen's copyright would constitute a *per se* regulatory taking.  Such a regulation would result, in effect, in the owner being "called upon to sacrifice *all* economically beneficial uses in the name of the common good" and therefore to "suffer[] a taking."  *Lucas*, 505 U.S. at 1019.

The result is no different if this Court holds that the government's incorporation by reference of a privately developed and held standard results in that copyright holder losing all protection for the work.  In either case, the Sponsoring Organizations specifically would be forced to "sacrifice all economically beneficial uses" of the 1999 Standards that might otherwise be available from copyright ownership "in the name of the common good."  Without compensation for the Sponsoring Organizations' loss, that taking would be unconstitutional.  *Armstrong v. United States*, 364 U.S. 40, 49 (1960) (the "Fifth Amendment's guarantee…[is] designed to bar Government from forcing some people alone to bear public burdens which, in all

fairness and justice, should be borne by the public as a whole").

To the extent Public Resource claims that some economic benefits to the 1999 Standards would still exist even without copyright protection or that Plaintiffs have voluntarily shut down the market, both arguments are without merit.  Severing the 1999 Standards from its copyright would deprive Plaintiffs of the most economically profitable aspect of the Standards - the power to control its distribution.  17 U.S.C. § 106.  The issue .also must be analyzed at the time the taking occurred - here the enactment of the regulations incorporating the 1999 Standards by reference - at which point the 2014 Standards had not been released.  *See Lucas v. S. Carolina Coastal Council*, 505 U.S. 1003, 1010-12 (1992) (analyzing a taking claim at the time the taking occurred).]    Thus, Plaintiffs - and any other similarly situated standards development organization - would suffer severe economic harm.

Further, the unconstitutional nature of a taking does not change even where the taking was purportedly encouraged by the property owner.  Plaintiffs' have not encouraged any government entity to incorporate the 1999 Standards into any regulation, but even had they done so, the economic impact of the government taking would not change.  A copyright confers upon the holder an exclusive property right in the work which cannot be appropriated or used by the government without just compensation.  *James v. Campbell*, 104 U.S. 356, 358 (1882) (addressing the unconstitutional taking of a patent right).

### D.    Even if the Court were Inclined to Consider Defendant's Policy Arguments, They are Unsound

Public Resource's various policy arguments must be rejected as unsound.  The premise that maintaining copyright protection in the 1999 Standards renders the regulations incorporating it by reference vague and therefore in violation of the Due Process Clause is a *non sequitur*.  (*See generally* Dft. Memo. at 14 [Dkt. 69-1]).  The remedy for an enactment that is unconstitutionally

vague is invalidation of the enactment, not the uncompensated taking of a private property right. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ("an enactment is void for vagueness if its prohibitions are not clearly defined"); *See also Rafeedie v. I.N.S.*, 795 F. Supp. 13, 23 (D.D.C. 1992) ("The void-for-vagueness doctrine requires that if a statute's provisions are not clearly defined, they must be invalidated.").

Nor is enforcing the protections provided by the Copyright Act in conflict with the First Amendment. *Schnapper v. Foley*, 471 F.Supp. 426, 428 (D.D.C. 1979) ("it is well established that there is no conflict between the First Amendment and the copyright laws"); (*see generally* Dft. Memo. at 14 [Dkt. 69-1]). The public still has the ability to access, share, and discuss regulations incorporating the 1999 Standards by reference; the Copyright Act simply demands that they utilize a lawfully purchased copy of the 1999 Standards when doing so.

Public Resource's contention that Plaintiffs do not make the 1999 Standards sufficiently accessible is without merit. (*See generally* Dft. Memo. at 24-26 [Dkt. 69-1]). In addition to copies which can be purchased from Plaintiffs, the 1999 Standards are available at numerous libraries throughout the country. (Plfs. SDF ¶ 57; Gray Reply Decl. at ¶¶ 3-53, Ex. VVV-TTTTT; Hudis Reply Decl. at ¶ 3, Geisinger Dep. Tr. at 112:21-24; 243:16-24). With its Reply, Plaintiffs have provided evidence that over one thousand libraries include catalog entries for the 1999 Standards, including a copy of the specific catalog entry for fifty of those libraries. (*Id.*). While the law must be available, there is no unilateral right that it be provided on the Internet, and there is certainly no unilateral right that a voluntarily promulgated standard be provided without consideration of its copyright protection.

Finally, Public Resource's argument that the law must be available to the blind and print-disabled is addressed by the Chafee Amendment, 17 U.S.C. § 121. (*See generally* Dft. Memo. at

26 [Dkt. 69-1]).  As discussed subsequently in detail, Congress has carved out an exception to the Copyright Act for copying of works for the exclusive use of the blind and disabled *subject to specific requirements*.  Public Resource does not claim that it complies with those requirements, nor that it attempted to do so.

Again, the policy arguments raised by Public Resource are all within the exclusive province of Congress to address, not this Court.  As Congress has not seen fit to do so, and has expressed an explicit intent that such issues be dealt with through direct legislation or contract (H.R. Rpt. 94-1476, 59, 1976 U.S.C.C.A.N. 5659, 5672 (1976)), this Court must decline the invitation to make sweeping policy changes to copyright law and policy from the bench.

## V.   DEFENDANT'S DIGITAL COPYING AND POSTING PLAINTIFFS' STANDARDS TO THE INTERNET IS NOT FAIR USE

Public Resource's fair use defense is without merit.  Although fair use is a mixed question of law and fact, "[i]f there are no genuine issues of material fact, or if, even after resolving all issues in favor of the opposing party, a reasonable trier of fact can reach only one conclusion, a court may conclude as a matter of law whether the challenged use qualifies as a fair use of the copyrighted work."  *Hustler Mag. Inc. v. Moral Majority Inc.*, 796 F.2d 1148, 1150-51 (9th Cir. 1986) (citing *Harper & Row*, 417 U.S. 539).

Here, Public Resource's arguments are premised on the Court first finding the 1999 Standards constitute the "Law."  As that argument fails and Public Resource has not set forth an alternate fair use defense, summary judgment should be entered in Plaintiffs' favor.  Even considered on the merits, Public Resource's arguments do not set forth a disputed issue of material fact that would alter the fair use analysis.  As the first, third, and fourth fair use factors favor Plaintiffs while the second is neutral, summary judgment in Plaintiffs' favor is warranted.

**A.      Nothing Public Resource did with the 1999 Standards was Transformative**

Public Resource's fair use argument turns on its claimed noble crusade to publicize the "Law."  Public Resource's activities, however, merely supplanted Plaintiffs' original work. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578-579 (1994) (The justification for the fair use defense turns upon "whether and to what extent the new work is 'transformative'."  Where the new work "merely supersede[s] the objects' of the original creation, (supplanting the original)" it is not fair use.).

Public Resource's primary defense is the theory that digitization of the 1999 Standards enabled others to interact with the "Law" in new ways that *may* provide new information and enable criticism, comment, and the like.  (Dft. Memo. at 38-39 [Dkt. 69-1]).  There is a critical flaw in this argument.  It matters little what *others* may do with the work as they are not defendants in this case; and it is undisputed that Public Resource itself did not add any new information or criticize or comment on the work.  (Dft. SDF at ¶¶ 71, 76 [Dkt. 69-3]; Dft. Ans. ¶¶ 7, 55 [Dkt. 12]; Hudis SJ Decl., ¶ 2, Exh. A, pp. 232-240, 257-259, 261-264, 271-72, ¶ 21, Exh. T, Int. Ans. 2-4 ¶ 23, Exh. V, ¶ 26, Exh. Y).

In fact, far from being a "paradigmatic example[] of fair use" (*Id.* at 39), last year the Southern District of New York expressly rejected this same theory.  In *North Jersey Media Group Inc. v. Jeanine Pirro and Fox News Network, LLC.*, Fox News was sued for copyright infringement after a producer posted a copy of an iconic 9/11 photograph to the cable provider's Facebook page as part of a 9/11 anniversary tribute.  74 F.Supp.3d 605, 609-611  (S.D.N.Y. 2015).  Using a lower resolution copy of the photograph, it was cropped and juxtaposed against the classic World War II photo of four U.S. Marines raising the American flag on Iwo Jima with the caption "#never forget."  *Id.* at 610-11.  Finding infringement, the Court rejected Fox News' argument that posting to social media was by its very nature transformative, because the posts

promoted comment and criticism.  *Id.* at 615-16.  The same should be found here.

Nor does Public Resource's alleged enabling of search and analysis of the 1999 Standards excuse its infringement.  Public Resource concedes that the first copy posted on its own website was not enabled with Optical Character Recognition ("OCR").  (Dft. SDF ¶ 73 [Dkt. 69-3]; Hudis SJ Decl., ¶ 27, Exh. Z, pp. 309-310, ¶ 28, Exh. AA, p. 9 (and sub-Exh. B thereto)).  Without OCR-processing, word searching, online identification, and text-to-speech technology for assistance to the blind and print disabled was not enabled for that copy.  (Dft. SDF ¶ 75 [Dkt. 69-3]; Hudis SJ Decl., ¶ 27, Exh. Z, pp. 30, 122, 200-01, 206, 271-72, 315-16).  Therefore, Public Resource's use of that copy was neither transformative nor fair.

Regarding the second copy, Public Resource alleges that that copy underwent OCR-processing when it was uploaded to the Internet Archive.  If true, it was not by any action Public Resource took; the OCR-processing was done automatically by the upload process available at the Internet Archive (Plfs. SDF ¶ 37; Hudis SJ Decl., ¶ 29, Exh. BB, p. 87, 92; ¶ 33, Exh. FF).  Regardless, "[a]dded value or utility is not the test: a transformative work is one that serves a new and different function from the original work and is not a substitute for it." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 96 (2d Cir. 2014).

Indeed, Public Resource's reliance on *Authors Guild, Inc. v. HathiTrust* is misplaced.  In holding that the defendant's searchable database was fair use, the Second Circuit found highly important that users were presented with only the page number the search term was located on and were not allowed to view the books they were searching.  *Id.* at 97.  As a result, the Second Circuit Court found it compelling that no new, human-readable copies of any books were put into circulation and there was little to no discernible resemblance between the original work and the database.  *Id.*  In contrast, Public Resource posted *exact* copies of the 1999 Standards to the

Internet that were identical to the original, and constituted infringing, human-readable copies.

Public Resource also claims that the mere act of posting the 1999 Standards to its website was transformative because its website had a different purpose than Plaintiffs' book, namely to answer questions concerning what is the "Law" governing testing versus how to conduct testing. This argument is an exercise in tortured semantics. Informing the public about the "Law" of testing is hardly an "entirely different aesthetic" from informing them on how to conduct testing. *North Jersey Media Group*, 74 F.Supp.3d at 617 (holding minimal alterations to the content and purpose was not transformative as it did not constitute an "entirely different aesthetic"). Moreover, this argument fails because Public Resource copied and posted to the internet the *entire* 1999 Standards, including the preface, introduction, chapter backgrounds, and comments, which are superfluous to the claimed purpose of informing the public of the "Law."

Finally, the argument that Public Resource's conduct is akin to copying and displaying works while fulfilling a legal requirement or during a judicial proceeding is a *non sequitur*. (*See* Dft. Memo. at 37 [Dkt. 69-1]). There was no legal requirement that Public Resource copy and post a privately developed standard to the Internet, whether or not it constituted the "Law," nor was Public Resource participating in a judicial proceeding when it did so.

That Public Resource's copying was "indifferent" to the copyrightable expression of the 1999 Standards (Dft. Mtn. at 37) is obvious and does not further Public Resource's defense. If mere "indifference" were all that is needed, there would never be infringement; the fair use defense would supersede all protections of Copyright Act as every infringer would be said to act fairly. In sum, Public Resource's copying was not transformative, having merely usurped the 1999 Standards. The first fair use factor strongly favors the Sponsoring Organizations.

**B.     Public Resource's Actions Do Not Fall Under the Exception for Reproductions for People with Disabilities**

Public Resource's actions are not exempted from liability merely because it claims to have enabled print-disabled individuals to access the "Law."  First, Public Resource notably ignores the Chafee Amendment, which provides the parameters of the exception.  *Compare* Dft. Memo. at 40 [Dkt. 69-1] *with* 17 U.S.C. § 121.  Section 121 is specific regarding the limitations and requirements of the exception: the entity providing the copy must be an "authorized entity" whose primary mission is to provide specialized services relating to individuals with disabilities and the copies must (1) be in a specialized format exclusively for use by the blind or other disabled persons, (2) bear a notice that further reproduction or distribution in any format other than a specialized format is infringement, (3) include a copyright notice identifying the copyright owner and date of the original publication.  17 U.S.C. § 121.

Public Resource clearly did not comply with any of these requirements (Cite to Fruchterman's depo transcript and Phillips' expert's report).  Public Resource is not an "authorized entity" and the only notice included with the unauthorized copies it made of the 1999 Standards was a false "Certificate" giving a false semblance of governmental approval or permission to the unauthorized copying and online posting of the 1999 Standards .  (Dft. SDF at ¶ 49, 82 [Dkt. 69-3]; Hudis SJ Decl., ¶ 2, Exh. A, pp. 94-95, 105-109, 275-284 ¶¶ 3, 29, Exh. B, Section II.B., ¶ 4, Exh. C. Section 2.1, Exh. BB, pp. 57-63, ¶ 30, Exh. CC (¶ 2 therein), ¶ 34, Exh. GG).  Further, the copies Public Resource posted to the Internet were not for the "exclusive" use of print disabled individuals.  Nor were any security measures in place on either Public Resource's or the Internet Archive's website to prevent access by individuals who do not qualify as disabled under the definition in 17 U.S.C. § 121(d)(1).  (Dft. SDF at ¶ 87-88 [Dkt. 69-3]; Hudis SJ Decl., ¶¶ 2, 27, Exh. A, pp. 347-48, Exh. Z, pp. 324-28, 167-173).

-34-

If Congress intended access for the print disabled to constitute fair use without complying with the requirements of 17 U.S.C. § 121, it could have said so, but such a holding by this Court now would improperly render the requirements set forth in the Chafee Amendment superfluous. *See Regions Hosp. v. Shalala,* 522 U.S. 448, 118 S.Ct. 909, 920 (1998) (Scalia, *J.,* dissenting) ("It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word. As early as in Bacon's Abridgment, sect. 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.' ") (quoting *Washington Mkt. Co. v. Hoffman,* 101 U.S. 112, 115–16 (1879)).  Indeed, if Public Resource was correct, *any* digitization of a tangible book would qualify as fair use on the premise that all such conversions theoretically provide better access for the print disabled.

Second, none of the authorities relied upon by Public Resource support a finding that its actions constituted fair use.  The Chafee Amendment was enacted in 1996, after both the House Report No. 94-1476 (1973) and *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) and therefore supersedes them on this issue.  Pub. L. 104-197, Title III, § 316(a) (Sept. 16, 1996).  Moreover, the Supreme Court's brief mention of access for the blind in *Sony v. Universal* is *dicta* and merely references the House Report identification of access as an example of fair use - again, a Report that has been superseded.  464 U.S. at 455 n.40.  In enacting 17 U.S.C. § 121, Congress clearly set forth the scope and the requirements for providing the blind and disabled access to copyrightable materials.  Public Resource complied with none of them.

The Second Circuit's decision in *Authors Guild, Inc. v. HathiTrust* does not suggest that the requirements of 17 U.S.C. § 121 can be ignored when fair use is premised on access for the disabled.  While the *HathiTrust* court analyzed the defendant's conduct under the fair use

doctrine, the question at issue was the *scope* of the access the defendant had provided for the print-disabled, which included full access to separate text *and* image copies of the copyrighted work. *HathiTrust*, 755 F.3d at 101-02.  Notably, the defendant had complied with the requirements of the Chafee Amendment, requiring certification of an individual's disability from a qualified expert before allowing access and including security measures to prevent further unauthorized distribution. *HathiTrust*, 755 F.3d at 91, 100, 101.  Accordingly, Public Resource is not exempted from liability because it claims to have enabled access for the print-disabled.

Finally, James Fruchterman's report [Dkt. 70-50] on access to the 1999 Standards for the blind is both irrelevant to the central issue of this case and misleading in its omissions.  First, the question to be answered in this case is whether Public Resource utilized *appropriate* procedures for making a copyrighted work accessible to individuals with print disabilities.  As set forth above, it did not.

Second, Mr. Fruchterman ignores Public Resource's failure to take any security measures to prevent abuse by the sighted public, dismissing the use of sign-up procedures as having the effect of preventing individual's with disabilities from accessing websites.  (Plfs. SDF at ¶ 94; Gray Reply Decl., ¶ 55, Exh. VVVVV, Phillips Rebuttal Report ¶¶ 34, 48, 49).  This is notable as Mr. Fruchterman's own company, Benetech, takes great effort to prevent such abuse through its website, Bookshare.org, including the deployment of a detailed verification procedure before the blind are granted access to Bookshare.org's collection. Mr. Fruchterman's glaring omission of his own company's policies and procedures thus undermines the reliability of his opinion (*Id.*)

Third, Mr. Fruchterman failed to consider any additional ways that the blind could have accessed the 1999 Standards without making the 1999 Standards generally accessible online, such as by using the very same security procedures in place on Bookshare.org (Plfs. SDF at ¶ 94;

Gray Reply Decl., ¶ 55, Exh. VVVVV, Phillips Rebuttal Report ¶¶ 35, 51, 53, 54; ¶59, Exh. ZZZZZ, Screen Captures from BookShare website).  Accordingly, Mr. Fruchterman's report is marred by significant omissions and serves no purpose but to restate Public Resource's argument.  *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997) (it is "vital [] that judges not be deceived by the assertions of experts who offer credentials rather than analysis").

### C.     The 1999 Standards are Not a Factual Work; They are a Collective Set of Opinions to Serve as Guidance for Best Testing Practices

Public Resource has not shown that the second fair use factor, the nature of the copyrighted work, should be decided in its favor.  Public Resource's fair use argument that the 1999 Standards is a factual work fails for the same reason as does its earlier arguments: the 1999 Standards is copyrightable expression.  The 1999 Standards is a collective set of opinions on the best practices for testing, which do not fall under the prohibitions of 17 U.S.C. § 102(b).  *Situation Mngt. Sys.*, 560 F.3d at 61 ("[t]he fact that [plaintiff's] works describe processes or systems does not make their *expression* noncopyrightable").  Nor was the 1999 Standards transmuted into the "Law" for the reasons set forth above.  Further, even if the individual standards were facts, the 1999 Standards is a book containing additional expression by way of the preface, introduction, chapter backgrounds, and comments, all of which is not "Law" nor fact and all of which was copied by Public Resource.  Accordingly, while the 1999 Standards is not a work of fiction or fantasy, even in a light most favorable to Public Resource, it cannot be said to be a mere recitation of facts as a matter of law.  The second fair use factor then is at best neutral.

### D.     Defendant Took the Entirety of the Sponsoring Organizations' Work - Well More Than Necessary Even Under Defendant's Theory

The third fair use factor substantially favors Plaintiffs.  Public Resource does not dispute that it copied the entire 1999 Standards.  (Dft. SDF at ¶¶ 71, 76 [Dkt. 69-3]; Dft. Ans. ¶¶ 7, 55

[Dkt. 12]; Hudis SJ Decl., ¶ 2, Exh. A, pp. 232-240, 257-259, 261-264, 271-72, ¶ 21, Exh. T, Int. Ans. 2-4 ¶ 23, Exh. V, ¶ 26, Exh. Y).  Rather, it argues that its purpose in informing the public of the "Law" required copying the entire book.  (Dft. Memo. at 43 [Dkt. 69-1]).  This argument fails.  Even under Defendant's premise that the standards are the "Law," the other expressive portions of the 1999 Standards are not.  No regulation, for example, requires test providers to comply with the preface, introduction or comments of the 1999 Standards and any statutory interpretation otherwise would be ludicrous.  *See* Section IV(A), *supra*.  Thus under any of Public Resource's flawed theories articulated to date, its wholesale copying of the 1999 Standards far exceeded the bounds of fair use.  *Sony*, 464 U.S. at 450 (reproduction of an entire copyrighted work ordinarily "militat[es] against a finding of fair use"); *Marcus v. Rowley,* 695 F.2d 1171, 1176 (9th Cir. 1983) ("wholesale copying of copyrighted material precludes application of the fair use doctrine").

**E.     Defendant's Activities Harmed the Market for the 1999 Standards and its Threatened Activities Will Harm the Market for the 2014 Standards**

Public Resource has not rebutted the fact that the fourth factor favors Plaintiffs.  Its contention that the market for the 1999 Standards has not been harmed is incorrect, as is its argument that the analysis is limited to the 1999 Standards.  First, the fourth factor focuses on the effect the copying has on the *value* of the copyrighted work, *which includes the market for derivative works*.  17 U.S.C. § 107(4); *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 571 ("The fourth factor requires courts also to consider the potential market for derivative works.").

It is undisputed that the 2014 Standards is a derivative of the 1999 Standards (*See* Dft. SDF ¶ 92 [Dkt. 69-3]; Hudis SJ Decl., ¶ 2, Exh. A, pp. 322-28, ¶ 40, Exh. LL, ¶ 41, Exh. MM) (undisputed that the 2014 Standards are a "revision of the 1999 Standards")).  One of the exclusive rights of a copyright owner is the right to prepare and to authorize any derivative

works based upon the original copyrighted work.  17 U.S.C. § 106(2). Therefore, it would be improper to exclude consideration of the effect Public Resource's activities will have on the market for the 2014 Standards.

Second, while actual harm is one consideration under the fourth factor, of equal importance is the effect of the copying on *potential* markets.  17 U.S.C. § 107(4).  "[T]o negate fair use one need only show that if the challenged use 'should become widespread, it would adversely affect the *potential* market for the copyrighted work'." *Harper & Row, Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 568 (1985).

Public Resource does not dispute that if the 2014 Standards was copied in its entirety, as was the 1999 Standards, it would devastate the market for that derivative, completely supplanting it (Dft. Memo. at 46-47 [Dkt. 69-1]).  That alone tilts the fourth factor in favor of Plaintiffs.[8]  But, additionally, uncontrolled publication of the 1999 Standards will usurp the 2014 Standards because individuals will obtain free copies of the older standards from Public Resource without knowing that they have been superseded (Dft. SDF ¶ 99 [Dkt. 69-3]; Levine SJ Decl., ¶ 36; Camara SJ Decl., ¶ 23; Ernesto SJ Decl., ¶ 37; Geisinger SJ Decl., ¶ 27).  It will also usurp the market for future derivatives because, without the revenue from the 2014 Standards, the funding for such works will be unavailable (Dft. SDF. at ¶¶ 10, 100 [Dkt. 69-3]; Levine SJ Decl., ¶ 9; Camara SJ Decl., ¶ 10; Schneider SJ Decl., ¶ 5; Ernesto SJ Decl., ¶ 9; Wise SJ Decl., ¶ 9, Geisinger SJ Decl., ¶ 23).

Third, the unauthorized copying of the 1999 Standards *has* harmed the value of that

---

[8] The tacit representation that Public Resource has no intention to post the 2014 Standards to the Internet is entitled to no credit; Mr. Malamud has testified that he will consider doing so if the 2014 Standards are incorporated by reference into any regulation (*See* Dft. SDF ¶ 104  [Dkt. 69-3]).  Regardless, the inquiry asks the Court to consider what harm would occur *if* the use becomes widespread, not just what harm has occurred today.  *Harper & Row,* 471 U.S. at 568.

work.  Public Resource does not dispute that sales of the 1999 Standards decreased remarkably during the near 2-year period its illicit copies were on the Internet (2012-2014).  (Dft. SDF ¶ 94 [Dkt. 69-3]; Levine SJ Decl., ¶¶ 18, 33, Exh. OOO).  While 2011 sales of the 1999 Standards may have decreased in anticipation of the 2014 Standards, the vast majority of annual purchasers are students taking courses in which the 1999 Standards is required reading and who thus cannot delay in purchasing the book.  (Plfs. SDF ¶ 45; Hudis Reply Decl., ¶ 3, Ex. 1, Geisinger Dep. Tr. at 235:16-24; 237:12-23; 239:14-25; 244:4-13).  Sales to these students should have remained constant year-after-year until at least the release of the 2014 Standards.  (*Id.*, *See also* Hudis Reply Decl., ¶ 3, Ex. 1, Geisinger Dep. Tr. at 93:9-94:9; 99:8-18).

Yet, undisputed by Public Resource, sales of the 1999 Standards decreased *further* in 2012 when Public Resource posted copies to the Internet and remained suppressed in 2013 (Dft. SDF ¶ 94 [Dkt. 69-3]; Levine SJ Decl., ¶¶ 18, 33, Exh. OOO).  This second drop cannot be explained merely by professionals waiting for the next release, but instead suggests that students were obtaining copies from Public Resource's postings, consistent with how Plaintiffs learned of Public Resource's infringement (Dft. SDF ¶ 91 [Dkt. 69-3]; Camara SJ Decl., ¶ 21, Exh. MMM; Wise SJ Decl., ¶¶ 27-28, Exh. LLL).  *See e.g.*, *Music v. Gonzalez*, 430 F.3d 888, 890 (7th Cir. 2005) ("Music downloaded for free from the Internet is a close substitute for purchased music; many people are bound to keep the downloaded files without buying the originals.").

Finally, Plaintiffs' preference to promote the 2014 Standards over the 1999 Standards does not make Public Resource's unauthorized copying fair.  As the copyright holder, that is a decision for Plaintiffs to make.  *Castle Rock Entm't, Inc. v. Carol Pub. Group Inc.*, 150 F.3d 132, 145-146 (1998) ("Although [the plaintiff] has evidenced little if any interest in exploiting this market for derivative works based on *Seinfeld* … the copyright law must respect that creative

and economic choice.); *Peter Letterese and Assoc., Inc. v. World Inst. of Scientology Enter.*, 533 F.3d 1287, 1317 (11th Cir. 2008) (the copyright holder's concession that it failed to develop a market for the original work and will not do so in the future "falls short of establishing that the intrinsic value of the copyright is zero … first, because the relevant consideration [is] the 'potential market' and, second, because he has the right to change his mind") (citing *Worldwide Church of Good v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1119 (9th Cir. 2000)).  The fourth factor therefore favors the Sponsoring Organizations.

## VI.   PLAINTIFFS ARE ENTITLED TO A PERMANENT INJUNCTION

A permanent injunction is the appropriate remedy here.  Not only do Plaintiffs succeed on the merits, but all four factors in *eBay Inc. v. MercExchange, L.L.C.* weigh in favor of a permanent injunction.[9]

### A.   Plaintiffs' Established Success on the Merits for a Permanent Injunction

A plaintiff succeeds on the merits for a permanent injunction where a plaintiff establishes that there is a reasonable likelihood that the wrong will be repeated.  *AARP v. Sycle*, 991 F. Supp. 2d 224, 230 (D.D.C. 2013) ("Plaintiff has succeeded, by default, on the merits of the instant action. . . . Defendant's continuing disregard for Plaintiff's rights demonstrates that Defendant will continue to infringe on Plaintiff's rights, absent an injunction. *This finding alone entitles Plaintiff to a permanent injunction.*") (internal citations omitted, emphasis added); *see also Greene v. Brown*, 104 F. Supp. 3d 12, 20 (D.D.C. 2015) ("When a copyright plaintiff has established a threat of continuing infringement, he is *entitled* to an injunction.") (internal

---

[9] *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ("According to well-established principles of equity, a plaintiff seeking a permanent injunction must . . . demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.").

citations omitted, emphasis original).   "[T]he critical question for a district court in deciding whether to issue a permanent injunction is whether there is a reasonable likelihood that the wrong will be repeated."  *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 504 (2d Cir. 2014) (internal citations omitted).

Even after *eBay*, courts have consistently found an injunction warranted where, absent one, the defendant is likely to continue its infringement.  *See, e.g.*, *Hanley-Wood LLC v. Hanley Wood LLC*, 783 F. Supp. 2d 147, 151 (D.D.C. 2011) ("The Court further agrees that Defendants' continuing disregard for Plaintiff's rights demonstrates that Defendants will continue to infringe on Plaintiff's rights absent an injunction. This finding alone entitles Plaintiff to a permanent injunction."); *Breaking the Chain Found., Inc. v. Capitol Educ. Support, Inc.*, 589 F. Supp. 2d 25, 30 (D.D.C. 2008) (same).

Mr. Malamud admits that he created PDF copies of the 1999 Standards and posted them to the Internet.  (Dft. SMF at ¶ 28 [Dkt. 68-3]; Malamud Decl. ¶¶ 20, 23, 25).  He also admits that he took down the 1999 Standards solely as a result of this lawsuit and only pending resolution of the case.  (Dft. SMF at ¶ 39 [Dkt. 68-3]; Malamud Decl. ¶¶ 25).  Further, it is Public Resource's stated goal and mission to publicly post standards incorporated by reference into federal and state law.  (Dft. SMF at ¶ 2 [Dkt. 68-3]; Malamud Decl. ¶ 34).  Thus absent the issuance of a permanent injunction, Public Resource will continue to disseminate the 1999 Standards without authorization.  Mr. Malamud further admits he will strongly consider posting the 2014 Standards to the Internet if they are incorporated by reference into law.  (Plfs. SDF at ¶ 40; Hudis SJ Decl., Ex. A, Malamud Dep. 308:23-309:2).  As Plaintiffs have established that there is a reasonable likelihood that Public Resource will continue to copy and disseminate the 1999 Standards without authorization, Plaintiffs are entitled to a permanent injunction.

Additionally, because there is a reasonable likelihood that Public Resource will continue to copy and disseminate the 1999 Standards (and the 2014 Standards once incorporated by reference) without authorization, this case is not moot. The mootness doctrine includes an exception when the harm is "capable of repetition yet evading review." *Clarke v. United States*, 915 F.2d 699, 704 (D.C. Cir. 1990) (en banc). The exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* at 704 (*quoting Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982)).

Plaintiffs established a reasonable likelihood that, absent the issuance of a permanent injunction, Public Resource will continue to disseminate the 1999 Standards (and the 2014 Standards once incorporated by reference) without authorization. Additionally, because Public Resource can post and take down the 1999 Standards based on the existence of a lawsuit, Defendant's challenged activities are too short in duration to be fully litigated prior to its cessation or expiration. As a result, the exception to the mootness doctrine applies. Plaintiffs are entitled to a permanent injunction.

### B.      Plaintiffs Will Suffer Irreparable Injury Without a Permanent Injunction

Plaintiffs presented testimony of the dire economic harm they will face if Public Resource's infringement continues. (Plfs. SMF at ¶¶ 94-100).  Not only have Plaintiffs already experienced a 34% drop in sales of the 1999 Standards after Public Resource began copying and widely disseminating the 1999 Standards, Plaintiffs expect, without a permanent injunction, a future loss of revenue from sales of authorized copies (Dft. SDF at ¶¶ 65, 94-95, 99 [Dkt. 68-3]; Plfs. SDF 44, 51). Plaintiffs presented evidence that the extent of damage cannot be easily quantified because it is impossible to determine who has made copies of the PDFs Public

Resource posted online and what those individuals have done with such copies (Dft. SDF at ¶¶ 89-90 [Dkt. 68-3]; Plfs. SDF at ¶ 51).  Additionally, because Public Resource's dissemination of the 1999 Standards does not provide notice that they have been replaced by the 2014 Standards, Plaintiffs expect a loss of revenue from sales of authorized copies of the 2014 Standards, and harm to the public due to the sale of outdated standards (Dft. SDF at ¶ 99 [Dkt. 68-3]; Plfs. SDF at ¶ 51; Geisinger Decl. ¶¶ 25-29).  Additionally, Plaintiffs presented evidence and case law concerning the irreparable injury that results from Plaintiffs losing the ability to prevent the unwanted use and rampant dissemination of their work—a consideration that is particularly apt where, as here, a defendant places works online for copying and redistribution by numerous third parties. (Plfs. Mtn. at 53-54 [Dkt. 60-1].) Public Resource did not rebut this evidence.

Despite Public Resource's uncorroborated statements to the contrary, Plaintiffs continue to actively sell the 1999 Standards. (Plfs. SDF at ¶¶ 40-41; Levine Decl., ¶ 20, Exh. QQQ). Public Resource's allegation that Plaintiffs do not seek any business opportunities with respect to the 1999 Standards is wholly unsupported (*See* Dft. Mtn. at 56).  Sales revenue from prior versions of Plaintiffs' standards are vital to Plaintiffs' financing of future updates (Plfs. SDF at ¶¶ 51, 66).  A loss of revenue from selling the 1999 Standards would result in a lack of funding for future revisions of the 2014 Standards and beyond (Plfs. SDF at ¶ 51).

The consideration of widespread future infringement is particularly pressing in situations, like this one, involving digital distribution of a plaintiff's work that can start a potential chain-reaction of infringement.  "When digital works are distributed via the Internet, every downloader who receives one of the copyrighted works is in turn capable of also [re]transmitting perfect copies of the work[].  Accordingly, the process is potentially exponential rather than linear, threatening virtually unstoppable infringement of the copyright." *Metro-Goldwyn-Mayer Studios,*

*Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1218 (C.D. Cal. 2007) (citations and internal alterations omitted) (issuing permanent injunction).

Public Resource's publication of the 1999 Standards on the Internet enabled anyone with computer access to copy-paste and disseminate digitally (or even print, publish and resell) those standards (Dft. SDF at ¶¶ 83, 87 [Dkt. 68-3]). As noted in Plaintiffs' Motion for Summary Judgment, this concern is not hypothetical. In late 2013 and early 2014, Plaintiffs became aware that students had obtained copies of the 1999 Standards for free through Public Resource's website (Dft. SDF at ¶ 91 [Dkt. 68-3]). Public Resource does not dispute that its actions enabled the public to have free access (Dft. SDF at ¶¶ 83, 87 [Dkt. 68-3].), nor does it offer any response to the fact that its infringement enables limitless further infringement by third parties.

This constitutes a cognizable harm to Plaintiffs' copyright interests because "Plaintiffs' copyrighted works can be unstoppably and near-instantaneously infringed throughout the computer-literate world with the files obtained by [Public Resource's] endusers." *Grokster*, 518 F. Supp. 2d at 1218-19. Where the digital impact of infringement leads to an immeasurable level of copyright infringement and, therefore, immeasurable economic interference, it amounts to irreparable harm. *Id.* at 1219; *see also Arista Records LLC v. Lime Wire LLC*, No. 06 Civ. 05936, 2010 WL 10031251, at *4 (S.D.N.Y. Aug. 9, 2010) (entering permanent injunction because "damages cannot address this continued vulnerability" of future dissemination). An injunction is fully justified here.

### C.   The Balance of Hardships Weighs in Favor of an Injunction

In contrast to the hardship that will befall Plaintiffs as a result of continued infringement, Public Resource claims that it receives no income based on its posting of the 1999 Standards and will suffer no harm if an injunction issues. (Plfs. SDF at ¶¶ 5, 17; Malamud Decl. ¶¶ 30-31 [Dkt. 69-5]). Moreover, a defendant cannot claim an equitable interest in continuing to infringe a

plaintiff's copyrights "and thus cannot complain of the harm it will suffer if ordered to cease doing so."  *Fox Television Stations, Inc. v. FilmOn X LLC*, 966 F. Supp. 2d 30, 51 (D.D.C. 2013).  The balance of hardships cannot weigh in Public Resource's favor where it admittedly will suffer no legally recognizable harm.

### D.      The Public Interest Will Be Served by an Injunction

Unquestionably, the 1999 Standards serve an important public function. The 1999 Standards improve professional practice in testing and assessment across multiple settings for the ethical development and use of tests and the evaluation of the quality of tests and testing practices (Dft. SDF at ¶ 17 [Dkt. 68-3]; Geisinger SJ Decl., ¶ 18; Camara SJ Decl., ¶ 13; Wise SJ Decl., ¶ 12). Without Plaintiffs' Standards, government agencies would lose important tools on which they rely in fulfilling their regulatory duties, shifting the burden to the public sector and taxpayers.

The 1999 Standards are intended to guide test developers, sponsors, publishers, clinical or industrial psychologists, research directors, school psychologists, counselors, employment supervisors, teachers, and various administrators who select or interpret tests for their organizations.  (Dft. SDF at ¶ 18 [Dkt. 68-3]; Geisinger Decl. ¶ 19). Without identifying any specifically harmed individuals, Public Resource bemoans a lack of instantaneous access of the 1999 Standards to students, parents, and teachers on their smartphones, tablets, and Internet terminals.  (Dft. Mtn. at 58 [Dkt. 68-2]).  The adverse impact on Plaintiffs' ability to continue creating these important standards outweighs a speculative need for the general public's immediate access to them.

The public interest also is served through protecting and encouraging creativity by "upholding copyright protections and correspondingly, preventing the misappropriation" of Plaintiffs' work. *Fox Television Stations*, 966 F. Supp. 2d at 51.  Indeed, *Fox* confirms that the

*Winter* and *eBay* cases did not foreclose judicial consideration of the impact of infringement on fostering future creativity.  *See eBay*, 547 U.S. at 392-93; *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008).  This is especially important here, where fostering continued creation of standards by Plaintiffs serves important public functions.

> **E.     Remedies Available at Law Are Inadequate**

Defendant concedes the inadequacy of money damages by refusing to address the issue in its opposition brief.  Moreover, the damage that Defendant causes is difficult if not impossible to quantify (Dft. SDF at ¶¶ 89-90 [Dkt. 68-3]).  Defendant's posting of the 1999 Standards to the Internet results in their immeasurable distribution, and thus an immeasurable amount of harm that cannot be adequately compensated through money damages.  *See Grokster*, 518 F. Supp. 2d at 1218-19.  Further, distribution of the 1999 Standards without notice that they have been superseded immeasurably harms both Plaintiffs and the public who large who rely on the preparation and administration of valid, fair and reliable tests (Plfs. Mtn. at 25-26 [Dkt. 60-1]; Levine Decl., ¶ 36; Camara Decl., ¶ 23; Ernesto Decl., ¶ 37; Geisinger Decl., ¶ 27).

## VII.   DEFENDANT'S AMICI MERELY RESTATE DEFENDANT'S ARGUMENTS AND FAIL FOR THE SAME REASONS

The four amicus curiae briefs filed in support of Public Resource can be disposed of with a few remarks.  With little exception, the amici merely restate the Public Resource's arguments, relying on the same law and analysis.  That is not the purpose of *amicus* briefs.  *See Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 137 (D.D.C. 2008) (the purpose of an *amicus* brief is to provide "unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide"). Those arguments are addressed above.

The *amicus curiae* arguments share the same flaw does Public Resource's: they ignore that the 1999 Standards is a *book* containing expressive material in addition to the standards.

The regulations that cite the 1999 Standards incorporate by reference the individual *standards*. They do not require compliance with the additional portions of the book.  Not a single theory articulated to date justifies the Court invalidating the copyright in the entire 1999 Standards.

The *amici* all share other flaws as well.  All fail to recognize the significant Constitutional issues if the government is allowed to seize voluntarily promulgated standards and abolish their copyright protection, simply because it is more convenient to incorporate existing standards than independently develop them.  All *amici* additionally parrot Public Resource's contention that the 1999 Standards are not sufficiently accessible while likewise ignoring that copies of the book are available in *hundreds* of libraries throughout the country.

The Law Scholars' *amicus curiae* brief [Dkt. 78-1] essentially *is a second brief* by Public Resource's counsel and is therefore improper.  Pamela Samuelson and Jonathan Zittrain, two of the law scholars submitting the brief, are attorneys and board members of the Electronic Frontier Foundation ("EFF"), which represents Public Resource in this matter.  (*See* Law Scholars Amicus Curiae Brief at 2, n.3).  Regardless of Ms. Samuelson's and Mr. Zittrain's representation that they join the brief "solely as individuals," as attorneys and managing members of the EFF, they are bound by the same principle of loyalty to clients as all attorneys in a "firm" are, and are imputed to have knowledge of this case.  D.C. Rules of Prof. Conduct, Rule 1.10, Comm. 1, 4 ("a firm of lawyers is essentially one lawyer for purposes of the Rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated").  Defense counsel cannot circumvent the Court's page limits and briefing schedule under the guise of filing *amicus curiae* briefs.  The brief should be disregarded.

The fundamental premise of the Law Scholars' arguments analysis also is incorrect:

Plaintiffs are not voluntary "contributors" to a law and the 1999 Standards is not a "model code." (*See generally* Law Scholars Amicus Curiae Brief, *passim*).  Plaintiffs independently developed 1999 Standards as a guide of best practices for the educational and psychological testing fields, not as a "private contribution to government law."  (Dft. SDF ¶ 13 [Dkt. 69-3]; Camara Decl., ¶ 11; Wise Decl., ¶ 11).  The government *took* the standards recited in the 1999 Standards after the fact and incorporated them into administrative regulations.  The Law Scholars pointedly ignore the serious Fifth Amendment issues raised by their position.

Public Knowledge's contention that Plaintiffs' have other means of funding development of the standards is addressed in Plaintiffs' opening brief (*Compare* Public Knowledge Amicus Curiae Brief at 2-4 [Dkt. 81] *with* Plfs. Memo. at 53-56 (Dkt. 60-1)).  The examples it gives of standard-setting bodies that do not rely on copyright royalties are not analogous.  Each are *substantially* larger organizations, with larger membership pools and greater membership fees. (*See* Public Knowledge Amicus Curiae Brief at 2-3 [Dkt. 81]).  The World Wide Web Consortium for example charges membership fees of up to $77,000 per year!  *See* World Wide Web Consortium, *Fee Table for the United States*, https://www.w3.org/Consortium/fees?countryCode=US&quarter=01-01&year=2016   (accessed Feb. 13, 2016).

The Reporters Committee contends that maintaining copyright in voluntarily promulgated standards inhibits the news media's ability to report on the law (*See* Public Knowledge Amicus Curiae Brief at 2 [Dkt. 77]).  This argument fails to acknowledge that news reporting is one of the explicitly stated fair use categories and given substantial protection.  17 U.S.C. § 107 ("the fair use of a copyrighted work…for purposes such as criticism, comment, news reporting….is not an infringement of copyright"); *Harper & Row*, 471 U.S. at 561 ("News

reporting is one of the examples enumerated in § 107…").

Mr. Bahram's argument regarding accessibility for the blind overlooks that Congress has already provided for such access through the Chafee Amendment, 17 U.S.C. § 121.  If additional concessions are needed, that is an issue to be addressed by Congress, not by this Court.  The issue here is that Public Resource failed to comply with the requirements of that exception and deliberately posted unauthorized copies of the 1999 Standards in a manner that promoted abuse by the sighted public.  (Plfs. SDF ¶ 4; Gray Decl. ¶ 54, Ex. UUUUU, Stip. Of Facts, *Code Revision Comm. v. Public.Resource.org*, 1:15-CV-02594-MHC at ¶¶ 48, 54, 58 (N.D.Ga. Jan. 15, 2016)).   Further, Mr. Bahram is mistaken that Public Resource post-processes the unauthorized copies of standards it creates so that they are accessible to the blind.  It is undisputed that Public Resource did not do so with the unauthorized copies of the 1999 Standards it created (Dft. SDF ¶ 73 [Dkt. 69-3]; Hudis SJ Decl., ¶ 27, Exh. Z, pp. 309-310, ¶ 28, Exh. AA, p. 9 (and sub-Exh. B thereto)).

The *amicus curiae* briefs supporting Public Resource add nothing beyond what is argued by Public Resource, and suffer from the same flaws as do Public Resource's arguments.  The legal and policy arguments set forth by all fail on the same fundamental issues

## VIII.    CONCLUSION

For the reasons set forth in Plaintiffs Summary Judgment Motion [Dkt. 50-1] and above, Plaintiffs respectfully request that the Court enter summary judgment in their favor, finding Public Resource to have directly and contributorily infringed Plaintiffs' copyright in the 1999 Standards, issue an injunction, and deny Public Resource's Cross-Motion [Dkt. 69-1].

Respectfully submitted,

QUARLES & BRADY LLP

Dated: February 18, 2016

/s/ Jonathan Hudis

By:   Jonathan Hudis (DC Bar # 418872)
      Nikia L. Gray (*pro hac vice*)
      Jonathan P. Labukas (DC Bar # 998662)
      1700 K Street NW, Suite 825
      Washington, DC 20006-3825
      Tel. (202) 372-9600
      Fax (202) 372-9599
      E-Mail Jonathan.Hudis@quarles.com
      E-Mail Nikia.Gray@quarles.com
      E-Mail Jonathan.Labukas@quarles.com

      *Counsel for Plaintiffs American Educational
      Research Association, Inc., American
      Psychological Association, Inc., and
      National Council on Measurement in
      Education, Inc.*

-51-