UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., and NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC., <br><br> Plaintiffs/Counterclaim-Defendants, <br><br> v. <br><br> PUBLIC.RESOURCE.ORG, INC., <br><br> Defendant/Counterclaim-Plaintiff. | Civil Action No. 1:14-cv-00857-TSC-DAR <br><br> **REPLY DECLARATION OF WAYNE CAMARA IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, AND IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

I, WAYNE J. CAMARA, declare:

1. I submit this Reply Declaration in further support of Plaintiffs' Motion for Summary Judgment, and in Opposition to Public.Resource.Org, Inc.'s ("Defendant" or "Public Resource") Cross-Motion for Summary Judgment. Unless otherwise noted, I have knowledge of all facts set forth in this Declaration and I would, and could, testify competently thereto if called upon to do so.

2. I am currently the Senior Vice President, Research at ACT, Inc. ACT produces and publishes the ACT® college readiness assessment — a college admissions and placement test taken by millions of high school graduates every year. ACT also offers comprehensive assessment, research, information, and program management services to support education and workforce development. As the Senior Vice President of Research, I am responsible for all research and evidence related to the design, development, use, and validation of our assessments and programs. In my position, I serve on the Senior Leadership Team and manage over 110 researchers.

- 1 -

3.      Prior to working at ACT, I worked at The College Board, where I held the positions of Vice President, Research and Development (July, 2000 – September, 2013), Executive Director, Office of Research and Development (March, 1997 – June, 2000), and Research Scientist (September, 1994 – February, 1997).

4.      Before working at The College Board, I worked for the American Psychological Association, Inc. ("APA"), in the positions of Assistant Executive Director for Scientific Affairs and Executive Director of Science (1992-1994), Director, Scientific Affairs (February, 1989 – August, 1992), and Testing and Assessment Officer (November, 1987 – January, 1989).  During my employment at APA, I served as the Project Director for the revision of the 1985 version of the *Standards for Educational and Psychological Testing*, the new product of which was published in 1999 (the "1999 Standards").  In 1997, I was elected to APA's Council of Representatives, and I served on the Council from 1997-2003.  In April, 2012, I was elected to the Council of the American Educational Research Association, Inc. ("AERA"), serving from April, 2012 to April, 2015 as Vice President for Division D.  I also was elected to the Board of Directors of National Council On Measurement In Education, Inc. ("NCME"), serving on the Board from 2002-2005 and 2009-2012, and served as NCME's President from 2010-2011. Additionally, I served on the Management Committee for the Standards from 2005-2015.

5.      I have written extensively on the *Standards for Educational and Psychological Testing*, as well as other professional and technical guidelines which relate to educational and industrial testing and assessment, including journal articles, book chapters, and paper presentations at national conferences.

6.      I was asked to rephrase several of the standards recited in the 1999 Standards, without changing their meaning.

7. Standard 3.3, as recited in the 1999 Standards, states:

> Those responsible for test development should include relevant subgroups in validity, reliability/precision, and other preliminary studies used when constructing the test.

8. One of the many ways in which Standard 3.3 could be rephrased without changing its meaning is as follows:

> Studies collecting evidence for the interpretation and use of test scores, quantifying the inconsistency in examinee performance, and of other topics should be conducted during test construction by individuals and organizations who mandate, sponsor, prepare and design, and market tests so that study results will inform the discussion of the comparability of subgroup scores.

9. Standard 4.4, as recited in the 1999 Standards, states:

> If test developers prepare different versions of a test with some change to the test specifications, they should document the content and psychometric specifications of each version. The documentation should describe the impact of differences among versions on the validity of score interpretations for intended uses and on the precision and comparability of scores.

10. One of the many ways in which Standard 4.4 could be rephrased without changing its meaning is as follows:

> Changes or augmentations to assessments which impact content, constructs, or statistical properties of a test should be documented and made available to test users. Documentation should address any effect on the overall reliability of the test, the accuracy of scores, or the inferences which can be made from scores, as well as the extent that scores across different versions are comparable.

11. Standard 5.2, as recited in the 1999 Standards, states:

> The procedures for constructing scales used for reporting scores and the rationale for these procedures should be described clearly.

12. One of the many ways in which Standard 5.2 could be rephrased without changing its meaning is as follows:

> Testing programs that use derived scale scores to enhance interpretation of assessment results must report the justification and procedures used to create the derived scores.

- 4 -

13. Standard 5.3, as recited in the 1999 Standards, states:

> If there is sound reason to believe that specific misinterpretation of a score scale are likely, test users should be explicitly cautioned.

14. One of the many ways in which Standard 5.3 could be rephrased without changing its meaning is as follows:

> When inaccurate interpretations of reported scores by users can be anticipated, Test Publishers have the responsibility to articulate both the correct and the possible incorrect interpretations for users.

15. I believe the forgoing exercise could be done with any of the standards recited in the 1999 Standards by a person who is sufficiently knowledgeable in psychometrics and/or educational testing as well as the meaning and import of the standards contained within the 1999 Standards.

I DECLARE, under the penalty of perjury, that the foregoing is true and correct.

Dated: February 12, 2016

*[signature: Wayne J. Camara]*

Wayne J. Camara