# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AMERICAN EDUCATIONAL RESEARCH )
ASSOCIATION, INC., AMERICAN )
PSYCHOLOGICAL ASSOCIATION, INC., )     Civil Action No. 1:14-cv-00857-TSC-DAR
and NATIONAL COUNCIL ON )
MEASUREMENT IN EDUCATION, INC., )
   ) **PLAINTIFFS' OPPOSITION TO**
   Plaintiffs/Counterclaim-Defendants, ) **DEFENDANT'S MOTION TO STRIKE**
   ) **THE DECLARATION OF KURT F.**
   ) **GEISINGER**
v. )
   )
PUBLIC.RESOURCE.ORG, INC., )
   )
   Defendant/Counterclaim Plaintiff. )

### [PUBLIC VERSION]

Jonathan Hudis (DC Bar # 418872)
Jonathan P. Labukas (DC Bar # 998662)
Nikia L. Gray (*pro hac vice*)
QUARLES & BRADY LLP
1700 K Street NW, Suite 825
Washington, DC 20006-3825
Tel. (202) 372-9600
Fax (202) 372-9599
E-Mail Jonathan.Hudis@quarles.com
E-Mail Jonathan.Labukas@quarles.com
E-Mail Nikia.Gray@quarles.com

Counsel for Plaintiffs American Educational Research
Association, Inc., American Psychological Association, Inc.,
and National Council on Measurement in Education, Inc.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

LEGAL STANDARD..........................................................................................3

ARGUMENT ........................................................................................................5

I.      EACH OF THE SUBSTANTIVE STATEMENTS MADE IN DR. GEISINGER'S DECLARATION WAS ADEQUATELY PRESAGED IN HIS EXPERT REPORT AND FULLY EXAMINED IN HIS DEPOSITION ....................................................5

      a.    *Each Of The Substantive Statements In Dr. Geisinger's Declaration Is An Elaboration Of, And Consistent With, An Opinion Previously Asserted By Dr. Geisinger* ...............................................................5

      b.    *Even If The Geisinger Declaration Did Contain Disclosures Not Contained In The Expert Report, Defendant Fully Examined Dr. Geisinger At His Deposition On Each Of The Opinions Addressed In The Geisinger Declaration. Therefore, Any Alleged Failure To Disclose Is Harmless And Does Not Prejudice Defendant* ..................................................7

II.     DR. GEISINGER IS QUALIFIED TO OFFER EXPERT OPINIONS IN THIS CASE..................................................................................................9

III.    DR. GEISINGER'S OPINIONS ARE ADMISSIBLE ............................................16

      a.    *Defendant's Challenges To The Reliability And Methodology Relating To Dr. Geisinger's Opinions Are Merely Objections To The Validity And Weight Of The Conclusions, Not The Admissibility Of Them*...................16

          i.    *In Addition To His Personal Observations, Dr. Geisinger May, And Properly Did, Rely On Information Obtained From Others*..........................................................................17

          ii.   *Dr. Geisinger Properly Considered, And Rejected, Alternate Potential Causes For The Decline In Sales Of The 1999 Standards* ..................................................................18

          iii.  *Dr. Geisinger's Opinions Regarding Plaintiffs' Use Of Sales To Fund Subsequent Versions Of The Standards Are Admissible* ......19

          iv.  *Public Resource's Remaining Challenges To Dr. Geisinger's Opinions Are Red Herrings Designed To Distract The Court From*

*Public Resource's Failure To Carry Its Burden On Its Motion To Strike* ............................................................................................22

b.   *Dr. Geisinger Has Substantial Practical Experience With The Subject Matter Of This Litigation And Is Able To Assist The Court In Understanding The Evidence And Deciding The Particular Issues In This Case* ..................................................................................................23

CONCLUSION ..................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Ambrosini v. Labarraque,*
   101 F. 3d 129 (D.C. Cir. 1996) ................................................................. 19, 20, 23

*Antoine v. J.P. Morgan Chase Bank,*
   2009 WL 5842054 (D.D.C. Aug. 13, 2009) ........................................................... 5

*Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.,*
   222 F. Supp. 2d 423 (S.D.N.Y. 2002) ................................................................. 19

*Clarke v. United States,*
   915 F. 2d 699 (D.C. Cir. 1990) ........................................................................... 21

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
   509 U.S. 579 (1993) ................................................................. 4, 16, 17, 23

*Evans v. Washington Metro. Area Transit Auth.,*
   674 F. Supp. 2d 175 (D.D.C. 2009) ...................................................................... 4

*Freeland v. Iridium World Commc'ns, Ltd.,*
   545 F. Supp. 2d 59 (D.D.C. 2008) ...................................................................... 16

*Groobert v. President & Directors of Georgetown College,*
   219 F. Supp. 2d 1 (D.D.C. 2002) ........................................................................ 23

*Halcomb v. Wash. Metro. Area Transit Auth.,*
   526 F. Supp. 2d 24 (D.D.C. 2007) ........................................................................ 5

*Heller v. D.C.,*
   952 F. Supp. 2d 133 (D.D.C. 2013) ........................................................... 3, 5, 24

*In re Salem,*
   465 F. 3d 767 (7th Cir. 2006) ............................................................................... 5

*In re Sulfuric Acid Antitrust Litig.,*
   235 F.R.D. 646 (N.D. Ill. 2006) ....................................................................... 6, 8

*In Re TMI Litigation,*

193 F. 3d 613 (3d Cir. 1999) ........................................................................ 18

*Interplan Architects, Inc. v. C.L. Thomas, Inc.,*

2010 WL 4065465 (S.D. Tex. Oct. 9, 2010) ............................................... 15

*\* Kumho Tire Co. v. Carmichael,*

526 U.S. 137 (1999) ............................................................................ 4, 9, 23

*Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.,*

493 F. 3d 160 (D.C. Cir. 2007) ................................................................. 5, 7

*Sylla–Sawdon v. Uniroyal Goodrich Tire Co.,*

47 F. 3d 277 (8th Cir. 1995) ......................................................................... 7

*Thompson v. Doane Pet Care Co.,*

470 F. 3d 1201 (6th Cir. 2006) ..................................................................... 5

*U.S. Information Systems, Inc., v. Inter. Broth. of Elec. Workers Local Union No. 3,*

313 F. Supp. 2d 213 (S.D.N.Y. 2004) ......................................................... 19

*United States ex rel. K & R Ltd. P'ship v. Mass. Housing Fin. Agency,*

456 F. Supp. 2d 46 (D.D.C. 2006) ........................................................ 3, 22

*United States v. Brown,*

415 F. 3d 1257 (11th Cir. 2005) ................................................................... 5

*United States v. H & R Block, Inc.,*

831 F. Supp. 2d 27 (D.D.C. 2011) ............................................................... 4

*United States v. Hankey,*

203 F. 3d 1160 (9th Cir. 2000) ................................................................... 21

*United States v. Ramsey,*

165 F. 3d 980 (D.C. Cir. 1999) ................................................................... 23

*Window Specialists, Inc. v. Forney Enterprises, Inc.,*

47 F. Supp. 3d 53 (D.D.C. 2014) ................................................................. 4

**Rules**

Fed. R. Civ. P. 26(a) ............................................................................................ 8

Fed. R. Civ. P. 26(e)(1) .................................................................................. 7, 8

Fed. R. Civ. P. 26(e)(2) ....................................................................................... 7

Fed. R. Civ. P. 37 ..................................................................................... 4, 9, 23

Fed. R. Civ. P. 37(c) ........................................................................................... 8

Fed. R. Civ. P. 37(c)(1) ...................................................................................... 9

Fed. R. Evid. 702 ............................................................................................. 8, 9

**Other Authorities**

* Joseph, Gregory P.*, Expert Approaches,* 28 LITIGATION 20 (Summer 2002) ......................... 9

Plaintiffs, American Educational Research Association, Inc., American Psychological Association, Inc., and National Council on Measurement in Education, Inc. (collectively, "Plaintiffs" or the "Sponsoring Organizations"), submit this Opposition to Defendant's Motion to Strike ECF No. 60-88, the Declaration of Kurt F. Geisinger in Support of Plaintiffs' Motion for Summary Judgment and Permanent Injunction ("Motion to Strike").

## <u>INTRODUCTION</u>

Defendant, Public.Resource.Org, Inc. ("Defendant" or "Public Resource"), lacks any legitimate basis for striking the Declaration of Kurt F. Geisinger filed in support of Plaintiffs' Motion for Summary Judgment and Permanent Injunction (the "Geisinger Declaration"). Defendant's Motion is a meritless attempt to sequester from the Court's consideration any expert opinions Public Resource does not like.[1]

Despite Defendant's assertions to the contrary, Dr. Geisinger's Declaration simply reaffirms the conclusions *originally espoused* in his Expert's Report[2] and further promoted in his deposition testimony--which remain unchanged--and are thus properly within the scope of the Expert Report. The Geisinger Declaration does not contain any "new" or "untimely" disclosures as Defendant would have the Court believe. Rather, the Geisinger Declaration elaborates upon and advances the opinions set forth in Dr. Geisinger's Expert Report and that were *further elicited by defense counsel* during Dr. Geisinger's deposition. Indeed, defense counsel deposed Dr. Geisinger, at length, regarding *each and every* opinion expressed in the Geisinger Declaration and in other areas. Public Resource cannot now claim to have been unfairly

---

[1] In fact, it appears that Defendant's attacks on Dr. Geisinger's opinions stem from its failure to designate a rebuttal expert to refute Dr. Geisinger's well-reasoned opinions. Defendant's failure to secure its own expert--despite ample opportunity to do so--was a tactical mistake on its part and should not be entertained through a meritless Motion to Strike.

[2] Dr. Geisinger's expert's report is attached to the Declaration of Matthew Becker submitted in support of Defendant's Motion to Strike at Exhibit 3 (ECF 67-5) (the "Expert Report").

surprised, harmed, or otherwise prejudiced by the opinions in the Geisinger Declaration that would warrant the harsh remedy of exclusion.

Similarly, Defendant's attacks on Dr. Geisinger's qualifications to render his opinions are meritless.  Dr. Geisinger is unquestionably qualified to render opinions relevant to this case.  He has over 40 years of experience in the field of psychometric testing; holds and has held numerous director, chair, and/or co-chair-level positions for various colleges, universities, and professional associations, including with each of the three Sponsoring Organizations in this action; has authored, edited, or co-edited over 130 books, book chapters, and/or journal articles in the field and is familiar with the tracking and monitoring of sales of such publications; and is currently serving as the Director of the Buros Center for Testing, a position which he has held for nearly ten years.  To say that Dr. Geisinger's experience qualifies him to render his opinions in this case may be an understatement.

Moreover, Public Resource distorts the bases upon which Dr. Geisinger was offered as an expert.  Defendant focuses significantly on Dr. Geisinger's consideration of the sales revenues for the 1999 edition of the *Standards for Educational and Psychological Testing* (the "Standards") and the opinions he draws therefrom, concluding that Dr. Geisinger is not qualified to testify *as an economist*.[3]  However, Dr. Geisinger was never offered as an expert economist; rather he has been offered as an expert in the standards of the kind at issue in this lawsuit to render opinions based on his specialized knowledge and skill – born of many years of experience in psychometrics, including his familiarity with and understanding of each of the Plaintiffs'

---

[3] Curiously, Defendant also moved to strike Plaintiffs' expert in *ASTM, et al. v. Public.Resource.Org, Inc.* (Case No. 1:13-cv-01215) (D.D.C.), in part, on the basis that the expert, an *economist* with decades of experience, was not qualified to opine on issues relating to standards development organizations.  *See* Case No. 1:13-cv-01215, ECF No. 124.  Thus, it appears Public Resource will move to strike any type of expert, short of a mythically-omniscient, unicorn-like figure, offered to opine on issues that are adverse to its cause.

organizations as well as the authoring, editing, and publishing of books and other reference materials on testing and assessment issues.

Dr. Geisinger is intimately familiar with the "lifespan" of psychometrics, testing, and assessment publications, including reviewing, interpreting, and monitoring sales trends related thereto.  Public Resource's challenge to Dr. Geisinger's qualifications stems from Defendant's self-serving and overly restrictive view on what *Public Resource* deems necessary for this case, leading it to conclude, among other things, that Dr. Geisinger is unqualified to render such opinions because he is not an economist.

Further, all of Public Resource's objections to the "reliability" of Dr. Geisinger's opinions are objections to the *validity* of his conclusions.  In essence, Defendant distorts Dr. Geisinger's Declaration and associated opinions to assert evidentiary objections because Public Resource disagrees with the underlying facts upon which Dr. Geisinger relies.  However, the factual bases underlying an expert's opinion go to the credibility of his testimony, not to the admissibility of the testimony.  Likewise, Defendant's disagreements with Dr. Geisinger's methodology used to render his opinions goes to the weight of the proffered evidence, not its admissibility.

Public Resource fails to carry its burden requiring the harsh sanction of striking the Geisinger Declaration.  Dr. Geisinger's specialized experience, knowledge, and skill will, undoubtedly, assist the trier of fact.

## <u>LEGAL STANDARD</u>

"Rejection of an expert's testimony is the exception rather than the rule." *Heller v. D.C.,* 952 F. Supp. 2d 133, 140 (D.D.C. 2013); *see also United States ex rel. K & R Ltd. P'ship v. Mass. Housing Fin. Agency,* 456 F. Supp. 2d 46, 53 (D.D.C. 2006) (citations and quotations omitted) (denying motions to strike expert affidavit and demonstrative chart noting that "a

motion to strike is an exceptional remedy that is generally disfavored..., and that the proponent of such a motion must shoulder a formidable burden.").  Significantly, "[t]he presumption under the Federal Rules is that expert testimony is admissible." *Evans v. Washington Metro. Area Transit Auth.*, 674 F. Supp. 2d 175, 178 (D.D.C. 2009) (*citing Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588 (1993)); *see also Window Specialists, Inc. v. Forney Enterprises, Inc.*, 47 F. Supp. 3d 53, 59 (D.D.C. 2014).

> Federal Rule of Evidence 702 governs the admissibility of expert opinion testimony:
>
> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (noting that where the traditional *Daubert* factors do not apply, reliability concerns may focus on personal knowledge or experience).

A District Court is granted broad latitude is deciding how to determine reliability and rendering the ultimate determination of reliability. *Kumho*, 526 U.S. at 141-42.  "Courts take a flexible approach to deciding Rule 702 motions and have broad discretion in determining whether to admit or exclude expert testimony." *United States v. H & R Block, Inc.,* 831 F. Supp. 2d 27, 30 (D.D.C. 2011) (quotations omitted).

Importantly, where (as here) the judge and not a jury is the trier of fact, "[t]he Court's gatekeeper role is 'significantly diminished'" *Window Specialists, Inc.*, 47 F. Supp. at 59-60 (*quoting H & R Block, Inc*., 831 F. Supp. at 30).  This is because "[w]here the gatekeeper and the factfinder are one and the same—that is, the judge—the need to make such decisions prior to

hearing the testimony is lessened." *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006) (citing *United States v. Brown*, 415 F.3d 1257, 1268–69 (11th Cir. 2005)).

## ARGUMENT

I. **EACH OF THE SUBSTANTIVE STATEMENTS MADE IN DR. GEISINGER'S DECLARATION WAS ADEQUATELY PRESAGED IN HIS EXPERT REPORT AND FULLY EXAMINED IN HIS DEPOSITION**

    *a.* ***Each Of The Substantive Statements In Dr. Geisinger's Declaration Is An Elaboration Of, And Consistent With, An Opinion Previously Asserted By Dr. Geisinger***

"The purpose of [Fed. R. Civ. P.] … 26(a)(2) is to prevent unfair surprise at trial and to permit the opposing party to prepare rebuttal reports, to depose the expert, and to prepare for depositions and cross-examination at trial." *Antoine v. J.P. Morgan Chase Bank*, 2009 WL 5842054, at *2 (D.D.C. Aug. 13, 2009) (quoting *Halcomb v. Wash. Metro. Area Transit Auth.*, 526 F. Supp. 2d 24, 28 (D.D.C. 2007)). The Rule "'does not limit an expert's testimony simply to reading his report . . . . The rule contemplates that the expert will supplement, elaborate upon, [and] explain . . . his report' in his oral testimony." *Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.,* 493 F.3d 160, 167 (D.C. Cir. 2007) (quoting *Thompson v. Doane Pet Care Co.,* 470 F.3d 1201, 1203 (6th Cir. 2006)). "The expert report, then, is not the end of the road, but a means of providing adequate notice to the other side to enable it to challenge the expert's opinions and prepare to put on expert testimony of its own." *Heller,* 952 F. Supp. 2d at 139.

Dr. Geisinger's Expert Report is not as limited as Defendant would have the Court believe. Despite Public Resource's mischaracterizations, each of the substantive opinions in the Geisinger Declaration was adequately presaged in his Expert Report. While the precise language may differ, the initial opinions remain the same.

Principally, Dr. Geisinger opined in his Expert Report that:

- Defendant's posting of the 1999 Standards on the Internet resulted in a drop in sales volume, and corresponding drop in sales revenues, of the 1999 Standards (Expert Report at ¶¶ 50 and 55; Reply Declaration of Jonathan Hudis ("Hudis Reply Decl."), dated February 18, 2016, at ¶3, Exhibit 1 (September 10, 2015 Deposition of Dr. Kurt Geisinger ("Geisinger Dep.")) at 131:4-23; 151:4-24; 170:3-9);

- Plaintiffs derive revenues from the sale of the prior versions of the Standards, which are then applied to production of subsequent versions of the Standards (Expert Report at ¶ 60-61; Geisinger Dep. 169:21-170:11; 172:21-173:2);

- If the sales revenues stream is lost or otherwise insufficient to permit the publication of subsequent versions of the Standards, it is likely that the production of subsequent versions may cease (Expert Report at ¶¶ 52, 55,-56, 59-61 and 63; Geisinger Dep. at 86:17-25; 172:21-173:2);

- If the Standards are no longer published, there will be significant harm to the testing and assessment professions, as well as to members of the general public who rely on the outcomes of tests and assessments. (Expert Report at ¶¶ 57-58, 60, 62; Geisinger Dep. 249:1-14, 289:23-290:2); and

- If the 1999 Standards is made freely available on the Internet without notice that they are now outdated, psychometrics students, test developers and the general public might be harmed or otherwise subject to liability for reliance on obsolete testing recommendations (Expert Report at ¶ 62; Geisinger Dep. at 103:10-106:9, 110:5-21, 249:1-14, 250:7-16).

Moreover, Defendant deposed Dr. Geisinger and thoroughly examined him on each of the substantive statements in the Geisinger Declaration. *See, e.g., In re Sulfuric Acid Antitrust Litig.,* 235 F.R.D. 646, n. 13 (N.D. Ill. 2006) (citations omitted) ("Indeed, the very fact that the

defendants elicited such testimony at the deposition has been found, in other instances, to amount to all the disclosure necessary under Rules 26(a)(2) and 37(c)(1)").  The Geisinger Declaration merely summarizes, contextualizes, and reaffirms Dr. Geisinger's initial positions as set forth in his Expert Report and elicited during his deposition testimony.  Additionally, there has been no change in Dr. Geisinger's opinions; the Geisinger Declaration addresses opinions previously detailed by him in his Expert Report and that were elicited during his deposition testimony.  Thus, the opinions in the Geisinger Declaration are properly within the scope of his Expert Report.

> **b. Even If The Geisinger Declaration Did Contain Disclosures Not Contained In The Expert Report, Defendant Fully Examined Dr. Geisinger At His Deposition On Each Of The Opinions Addressed In The Geisinger Declaration. Therefore, Any Alleged Failure To Disclose Is Harmless And Does Not Prejudice Defendant**

Public Resource failed to claim or otherwise demonstrate how it has been prejudiced, harmed, or surprised, much less *unfairly* surprised, as a result of any alleged "untimely disclosure" that would warrant the extreme sanction of exclusion.  *See Muldrow ex rel. Estate of Muldrow,* 493 F.3d at 167 ("The purpose of the rule is to eliminate 'unfair surprise to the opposing party.'") (quoting *Sylla–Sawdon v. Uniroyal Goodrich Tire Co.,* 47 F.3d 277, 284 (8th Cir.1995)).  Instead, Defendant rests on its erroneous conclusion that "[o]pinions, facts, and data not included in the [expert] report are automatically excluded under Federal Rule of Civil Procedure 37."  *See* Motion to Strike at 2.  However, "automatic exclusion" is not the law and, indeed, not what Fed. R. Civ. P. 37 explicitly states.  *See* Fed. R. Civ. P. 37(c) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless.*") (emphasis added).

Public Resource's apparent contention that Plaintiffs are engaging in trial-by-ambush is far from accurate.  Dr. Geisinger's Expert Report was provided to defense counsel on June 15, 2015.  On September 10, 2015, Defendant took Dr. Geisinger's deposition. *See* Exhibit A to Hudis Reply Decl.  During that deposition, defense counsel questioned Dr. Geisinger at length regarding his various opinions, effectively leaving no stone unturned.  During his deposition, Dr. Geisinger provided context and explained the opinions set forth in his Expert Report.

Thus, despite its blustering, Public Resource has not shown, and cannot establish, that it has been unfairly surprised, harmed, or otherwise prejudiced, in any way, by what Defendant deems an "untimely disclosure."  Public Resource fails to provide a single fact, a single example, or a single specific reason to conclude otherwise.  Instead, Defendant calls upon the Court to reach that conclusion for it, without providing any support, in law or in fact, by which to do so. *In re Sulfuric Acid Antitrust Litig.,* 235 F.R.D. 646, 657 (N.D. Ill. 2006) ("It is not for a court to do the work the lawyers have chosen not to do.").

However, even if the Court were to determine that the Dr. Geisinger's Declaration somehow includes "new" or "undisclosed" information not contained in his Expert Report so as to be "untimely" under Fed. R. Civ. P. 26(e)(2) or 37(c), the fact that the challenged opinions were elicited during Dr. Geisinger's deposition in response to pointed questions from defense counsel may well be perceived as expanding the scope of Dr. Geisinger's testimony.  As noted commenter Gregory P. Joseph has said:

> If you really intend to try your case, you ought to think long and hard about whether you want to take that expert deposition. Why? Not only because the 26(a) report freezes experts' testimony to their reported opinions and sources—and thus eliminates the need for a deposition to accomplish that—but also because taking a deposition can actually liberate experts to expound far beyond the bounds of their reports. If an expert volunteers new or different opinions, data, or exhibits in a deposition, that cures their omission from the expert's Rule 26(a) report. The automatic preclusion remedy of Rule 37(c)(1) will no longer apply because there

is a carve-out from the preclusion remedy in Rule 37(c)(1) if the omitted expert testimony has "otherwise been made known to the other parties during the discovery process or in writing," under Rule 26(e)(1). ***An expert deposition is a prime example of "ma[king] known" the expert's opinion "during the discovery process."***

\* \* \*

***If you decide to take an expert deposition, you must be careful what you ask. You may open the door to testimony*** that would otherwise be precluded under Rule 37(c)(1). There is, to be specific, considerable downside in asking common deposition questions designed to ensure that no unexplored opinions exist—like the traditional catch-all question, "Do you have any other opinions as to this case that we haven't discussed?"  You generally don't want to know the answer to that question. If you don't ask it and the opinions are not provided either in the report, in the deposition, or otherwise "in writing" (under Rule 26(e)(1)), the undisclosed opinions are presumptively excluded under Rule 37(c)(1)"

*See* Joseph, Gregory P., "Expert Approaches", 28 LITIGATION 20, 21 (Summer 2002) (emphasis added).  Here, defense counsel, indeed, asked pointed questions that elicited the very testimony and opinions Public Resource now complains are untimely.  *See, e.g.,* Geisinger Dep. at 99:8-18; 130:8-12; 131:4-23; 151:4-24; 170:3-9 (discussing review of sales records and causation).  Thus, Defendant cannot credibly claim unfair surprise, harm, or prejudice from any of the opinions detailed in the Gesiginer Declaration that would warrant exclusion.

## II.   DR. GEISINGER IS QUALIFIED TO OFFER EXPERT OPINIONS IN THIS CASE

An expert may be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "[T]he text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience.  In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."  Fed. R. Evid. 702 advisory committee notes, 2000 amendments.  In light of these qualifications, courts assess whether a proffered expert has "sufficient specialized knowledge to assist the jurors in deciding the particular issues in this case." *Kumho Tire Co.*, 526 U.S. at 156 (internal quotation marks omitted).  Here, Dr. Geisinger

unquestionably possesses "sufficient specialized knowledge" to assist the Court in deciding the particular issues in this case.

Defendant's challenges to Dr. Geisinger's qualifications stem from its overly restrictive view on what *Public Resource* deems required for this case. While Dr. Geisinger, admittedly, is not an economist, as Defendant contends is required in this case, he:

- is a 40-year veteran in the field of psychometrics, having researched, studied, and taught in the field of testing and assessment during that period of time (Expert Report, ¶6; Geisinger Declaration, ¶5);

- is a fellow, diplomat, and member of numerous professional societies, including the APA, AERA, and NCME (Expert Report, ¶6; Geisinger Declaration, ¶5);

- represented APA by serving on and chairing the Joint Committee on Testing Practices (Expert Report, ¶6; Geisinger Declaration, ¶5);

- served on APA's Committee on Psychological Tests and Assessment (Expert Report, ¶6; Geisinger Declaration, ¶5);

- was elected to serve two terms as the representative on the Council of Representatives for the APA's Division of Evaluation, Measurement and Statistics (Expert Report, ¶6; Geisinger Declaration, ¶5);

- was elected to serve as a member-at-large on the APA's Board of Directors (Expert Report, ¶6; Geisinger Declaration, ¶5);

- co-chaired a sub-committee of the APA's Joint Committee on Testing Practices (Expert Report, ¶11; Geisinger Declaration, ¶10);

- jointly represented AERA, APA, and NCME in developing the International Organization for Standardizations (Expert Report, ¶15; Geisinger Declaration, ¶14);

- is currently serving as the Director of the Buros Center for Testing, a position which he has held for the past nearly ten years (Expert Report, ¶1; Geisinger Declaration, ¶¶1, 18);

- has had past and ongoing relationships, as a member or fellow, with AERA, APA, and NCME (Expert Report, ¶23);

- currently serves as a committee chair on one of AERA's divisions' International Committee (Expert Report, ¶23);

- has presented at AERA's annual conferences regularly (Expert Report, ¶23);

- has served on and chaired NCME's professional development committee, served as a program co-chair for its annual meeting, represented NCME on the committee that developed its code of professional conduct, and was a

representative and advisory board member of a doctoral program in psychometrics that was being developed at Morgan State University (Expert Report, ¶24);

- was elected and served as a member of APA's Committee on Psychological Tests and Assessments, Committee on International Relations in Psychology, Joint Committee on Testing Practices, Council of Representatives representing the Division of Measurement, Evaluation and Statistics, and on APA's Board of Directors (Expert Report, ¶25);

- served as a member of APA's editorial board for its journal, Psychological Assessment (Expert Report, ¶25);

- served the APA, AERA, and NCME by representing them on an American National Standards Institute/International Organization for Standardization committee that developed an international standard for industrial testing (Expert Report, ¶25);

- is the Treasurer of the International Test Commission (Geisinger Dep. at 158:1-2);

- published in several of NCME's journals and has served on the editorial committee for the journal (Expert Report, ¶24);

- knows every member of the joint committee that prepared the 1999 Standards (Geisinger Dep. at 146:16-19);

- is intimately familiar with the standards at issue in this case as well as previous and subsequent versions thereof (Geisinger Dep. 101:6-13);

- has authored, edited, or co-edited over 130 books, book chapters, and/or journal articles in the field of testing (Expert Report, ¶10; Geisinger Declaration, ¶9); and

- is familiar with the tracking and monitoring of sales of such publications (Geisinger Dep. at 134:6-21, 136:20-137:5).

Thus, Dr. Geisinger's considerable knowledge and experience gained from his participation and association with each of the activities listed above has assisted in informing his opinions in this case. Indeed, for example, Dr. Geisinger properly explained during his deposition that his conclusions were based on, among other things:



As evidenced above, Dr. Geisinger has extensive knowledge and experience with each of the three Sponsoring Organizations in this action. Nevertheless, Public Resource contends that "[Dr. Geisinger] is not an organizational consultant or historian, which could possibly qualify him to render opinions on the internal politics of Plaintiffs' organizations" (Motion to Strike at 4), that "[Dr. Geisinger's] qualifications . . . are not relevant to evaluating the business justification for Plaintiffs' use of sales revenue to pay for development costs and generate investment returns" (Motion to Strike at 12), and that "[Dr.] Geisinger is not qualified to render an opinion whether Plaintiffs will continue to update the Standards" (Motion to Strike at 14.). However, as demonstrated above, Dr. Geisinger's membership and professional association with each of the Sponsoring Organizations, including several director and chair-level positions, his past and ongoing relationships with members of each them, as well as his extensive experience with standards of the kind involved in this lawsuit, provide the requisite knowledge, skill, experience, training, or education to render his opinions on these issues.

For example, when questioned during his deposition regarding the use of sales revenues for development of future updates to the Joint Standards, Dr. Geisinger stated:

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]





*See also* Expert Report at ¶¶ 59-61, 63; Geisinger Declaration at ¶¶ 22-23.  Moreover, Dr. Geisinger is well familiar with the "lifespan" of books and publications of the kind in this litigation and has the "knowledge, skill, experience, training, or education" to opine on the tracking and monitoring of sales relating to such publications.  As Dr. Geisinger explained in his deposition:

Thus, Dr. Geisinger brings to the Court his vast experience related to the specific Sponsoring Organizations who are the Plaintiffs in this case *and* the tracking and monitoring of sales relating to publications relating to psychometrics, testing and assessment.  This includes the general function of tracking and monitoring book sales over time.[4]

---

[4] Defendant also contends that Dr. Geisinger lacks qualifications to opine on the effect of online availability of versions of the Standards on Plaintiffs' revenues.  *See* Motion to Strike at 14.

Nevertheless, Defendant contends that "[c]ourts, however, routinely reject claims that a person's personal, anecdotal experiences qualify them as expert witnesses."  Motion to Strike at 5.  However, the cases cited by Defendant in support of this assertion do not stand for that proposition.  For example, in *Interplan Architects*, the Court explained that a witness may not base its opinions *solely* on attenuated relationships with two architects to opine on industry custom, however, virtually in the same breadth and with respect to the same witness, the Court held that:

> With respect to his opinions on convenience store design, Mr. Mitchell's experience has provided him with a detailed knowledge regarding the various ways in which convenience stores may be designed, the interior arrangement of elements, and how some design choices are chosen over others.  With respect to his opinions regarding the factors for success of a convenience store, Mr. Mitchell may not be an economist or econometrist who can quantify the exact impact of certain variables, such as store location, price of goods, cleanliness of bathrooms, upon a convenience store's success. However, he may offer general, non-quantitative opinions regarding the factors that impact a store's performance based upon his years of practical experience in the industry.

*Interplan Architects, Inc. v. C.L. Thomas, Inc.,* No. 4:08-CV-03181, 2010 WL 4065465, at *13 (S.D. Tex. Oct. 9, 2010) (footnotes omitted).  That is exactly what Dr. Geisinger has done here.  His years of practical experience in tracking and monitoring books sales for the Buros Center for Testing, as well as the tracking and monitoring of sales of his own publications over the years, provided him with a detailed knowledge regarding the "lifespan" of books of the kind to opine that one would expect a general decline in sales over time, not a precipitous drop in sales as was experienced in this case.[5]

---

Defendant is incorrect.  As Dr. Gesinger testified in his deposition, ███████████

[5] Public Resource also contends that Dr. Geisinger's "opinion" that "Plaintiffs cannot calculate their lost revenues with 'any degree of certainty'" (citing Paragraph 24 of the Geisinger

Given his specialized knowledge, skill, experience, training, and education, Dr. Geisinger certainly is qualified to opine on each of the matters Defendant challenges.

## III.    DR. GEISINGER'S OPINIONS ARE ADMISSIBLE

### a.    *Defendant's Challenges To The Reliability And Methodology Relating To Dr. Geisinger's Opinions Are Merely Objections To The Validity And Weight Of The Conclusions, Not The Admissibility Of Them*

Public Resource distorts the Geisinger Declaration to assert evidentiary objections because it disagrees with the underlying facts upon which Dr. Geisinger relies.  However, the factual basis of an expert opinion goes to the credibility of the testimony, not its admissibility. *Freeland v. Iridium World Commc'ns, Ltd.,* 545 F. Supp. 2d 59, 88 (D.D.C. 2008) ("Motorola may cross-examine Saunders about the factual basis of his opinions, but its disagreements with that factual basis does not affect the testimony's admissibility.").  Similarly, Defendant's disagreement with Dr. Geisinger's methodology goes to the weight of the proffered evidence, not its admissibility.  *Id.*

As *Daubert* instructs, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky, but admissible, evidence." *Daubert,* 509 U.S. at 595.  Public Resource fails to

---

Declaration) should be struck because he "has not demonstrated any familiarity with, or expertise in, calculating lost revenue."  Motion to Strike at 11.  However, that is not what Dr. Geisinger opines on and was not retained to do.  Indeed, nowhere in Paragraph 24 does Dr. Geisinger discuss lost revenues.  Paragraph 24 merely discusses Plaintiffs' inability to calculate "with any degree of certainty the number of university/college professors, students, testing companies and others who would have purchased Plaintiffs' Standards but for their wholesale posting on Defendant's https://law.resource.org website and the Internet Archive http://archive.org website."  This is because it is virtually impossible to determine how many people, after accessing and downloading the Standards from Defendant's website, thereafter distributed it to friends or colleagues, who thereafter may have done the same--a veritable snowball effect.  Defendant's misapprehension, again, is a result of their overly restrictive view on what they perceive Dr. Geisinger's opinions concern and deem required for this case, as well as their failure to read carefully and contextualize the actual opinions of Dr. Geisinger.

provide any evidence to rebut Dr. Geisinger's opinions. Despite ample opportunity to do so, Defendant failed to engage any expert of its own. Accordingly, Dr. Geisinger's opinions stand unrebutted. Thus, Public Resource is left in the unenviable position of conjuring up meritless reliability and methodology objections, rife with red herrings, to challenge Dr. Geisinger's opinions.

### i.  In Addition To His Personal Observations, Dr. Geisinger May, And Properly Did, Rely On Information Obtained From Others

Defendant asserts that Dr. Geisinger's reliance on, and "uncritical" acceptance of, statements from Plaintiffs' executives requires the exclusion of his opinions formed from those conversations as being unreliable. Specifically, Defendant states "[Dr. Geisinger's] opinion [regarding Plaintiffs' use of sales proceeds] is based on talking with a handful of Plaintiffs' senior executive and that he did nothing to verify the information he received" (Motion to Strike at 13) and "[a]s to opinions concerning why Plaintiffs would not fund future development of the Standards from other sources . . . [i]t appear he once again relied, uncritically, on information from Plaintiff's [sic] senior executives." (Motion to Strike at 16).

However, Fed. R. Evid. § 703 provides that "the facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted." *See also Daubert,* 509 U.S. at 595. Dr. Geisinger's consideration of facts provided by Plaintiffs' executives is well within the scope of materials an expert is allowed to rely on under Fed. R. Evid. § 703. Thus, it is not unreasonable to rely on an executive's description of the use of sales proceeds for his or her own organization. Even if that were the case, however, Dr. Geisinger is familiar with each of the

17

Sponsoring Organizations, having held numerous director and chair-level positions within each of them, and, moreover, supported his opinions based on his own personal observations. *See, e.g.*, Geisinger Dep. at 152:5-153:2 and 190:16-191:4.[6]

### ii. Dr. Geisinger Properly Considered, And Rejected, Alternate Potential Causes For The Decline In Sales Of The 1999 Standards

Public Resource erroneously asserts that Dr. Geisinger "did not consider any other alternative causes for the decline in sales, despite numerous possibilities." Motion to Strike at 10. First, that is patently false. ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████[7]

---

[6] Defendant's reliance on *In Re TMI Litigation,* 193 F.3d 613 (3d Cir. 1999) is misplaced.  In that case, the Court found that "[t]here is nothing improper about a medical report prepared solely for litigation" however, "[a doctor] cannot rely on medical summaries prepared from interviews conducted by nonprofessionals as [the expert] did here." 193 F.3d at 698.  Here, Dr. Geisinger personally interviewed several of Plaintiffs' executives and also relied on his own experience and knowledge with the Sponsoring Organizations to render his opinions.  This is a far cry relying on "summaries prepared from interviews conducted by" others.

[7] 

Second, Public Resource's apparent requirement that an expert consider and eliminate *every* possible explanation in rendering an opinion is incorrect under the law. Even so, such purported requirements go to the "accuracy of the conclusion, not the soundness of the methodology." *Ambrosini v. Labarraque,* 101 F.3d 129, 140 (D.C. Cir. 1996) ("The fact that several possible causes might remain 'uneliminated,' the court explained, only goes to the accuracy of the conclusion, not the soundness of the methodology."); *U.S. Information Systems, Inc. v. Inter. Broth. of Elec. Workers Local Union No. 3,* 313 F.Supp.2d 213, 235 (S.D.N.Y. 2004) (quoting *Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.,* 222 F.Supp.2d 423, 488 (S.D.N.Y. 2002)) ("While an expert should address evidence that contradicts his conclusions, '[i]t is not required ... that an expert categorically exclude each and every possible alternative cause in order to render the proffered testimony admissible.'").

Nonetheless, as noted above, Dr. Geisinger carefully explained why he rejected alternative explanations and settled on the conclusions he presented in this case.



### iii.  Dr. Geisinger's Opinions Regarding Plaintiffs' Use Of Sales To Fund Subsequent Versions Of The Standards Are Admissible

Public Resource's challenges to the reliability of and methodology used by Dr. Geisinger in rendering his opinions relating to Plaintiffs' use of revenues generated from the 1999 Standards to fund subsequent versions of the standards are, equally, unavailing.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████   Putting aside for the moment that there is no requirement that an expert quantify the likelihood of an outcome to establish that it is probable (*see Ambrosini*, 101 F.3d at 135 ("Dr. Strom's evidence does not warrant exclusion simply because it fails to establish the causal link to a specified degree of probability.")), Public Resource's self-serving, overly restrictive view on this case has caused them to be unable "to see the forest for the trees."

Public Resource's focus on this one statement (procured after endlessly repetitive questions on this point) has caused them to lose sight of Dr. Geisinger's overwhelming, unequivocal, and unrebutted testimony, based on his experience and knowledge relating to each of the Sponsoring Organizations as well as his interviews of several of Plaintiffs' executives, that



████████████████████[8]

---

[8] Public Resource also contends that Dr. Geisinger "has no basis to assume that, if Public Resource prevails in this litigation, it will post the 2014 Standards, which are not incorporated by reference into law." Motion to Strike at 15. However, it was confirmed by Carl Malamud in his deposition that if the 2014 Standards are incorporated by reference into law, he will post them on the Internet. *See* Plaintiffs' Statement of Material Facts In Support Of Their Motion For

Likewise, Defendant suggests that Dr. Geisinger lacks specialized knowledge about "optimal or necessary methods for financing projects generally, or standards specifically." Motion to Strike at 13.  Public Resource appears to be suggesting merely that Dr. Geisinger did not use a methodology *they* perceive as being fit for *their* purposes.  As explained throughout, Dr. Geisinger based his opinions on his specialized knowledge, skill, training, and experience, his interviews with several of Plaintiffs' executives, his personal knowledge and observations of the Sponsoring Organizations' businesses obtained through his involvement with each of them, as well as his review of the relevant facts of this case.  The factors, taken as a whole, comprise a solid foundation for the admissibility of Dr. Geisinger's opinions concerning the Plaintiffs' development of future versions of the standards.  *United States v. Hankey,* 203 F.3d 1160, 1169 (9th Cir.2000) (noting that with non-scientific experts, as Dr. Geisinger is in this case, "the *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable" and "reliability depends heavily on the knowledge and experience of the expert rather than the methodology or theory behind it.").

---

Summary Judgment (ECF No. 60-2) at ¶ 104.  Dr. Geisinger read and properly relied upon the deposition of Carl Malamud. *See, e.g.,* Geising Dep. at 266:23-267:1.  Further, Public Resource contends that Dr. Geisinger's opinion that if Public Resource prevails, the public will be harmed by uncontrolled publication of the 1999 Standards without any notice that those guidelines have been replaced by the 2014 Standards lacks any reliable foundation because, among other things, he is "not aware of any instance where a member of the public encountered the 1999 Standards after the 2014 Standards were published and believed the 1999 Standards were the current standards."  Motion to Strike at 17.  While Dr. Geisinger was not able to address the *specific* scenario Public Resource sets forth in its challenge, █████████████████████████████████
████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████; *see also* *Clarke v. United States*, 915 F.2d 699, 704 (D.C. Cir. 1990) (en banc) (the mootness doctrine includes an exception when the harm is "capable of repetition yet evading review").

### iv.   *Public Resource's Remaining Challenges To Dr. Geisinger's Opinions Are Red Herrings Designed To Distract The Court From Public Resource's Failure To Carry Its Burden On Its Motion To Strike*

Having unsuccessfully failed to conjure up sufficient bases to render Dr. Geisinger's opinions inadmissible, Public Resource next turns to constructing various "red herrings" to draw the Court's attention away from its failure to "shoulder [its] formidable burden." *United States ex rel. K & R Ltd. P'ship,* 456 F. Supp. 2d at 53.

For example, Public Resource asserts that Dr. Geisinger's opinions regarding Plaintiffs' use of sales proceeds to fund subsequent versions are inadmissible because: (1) he has not offered any opinion on whether expenses incurred in developing the standards were necessary (*i.e.*, that Dr. Geisinger has failed to "render[] any opinion on whether Plaintiffs' could find cheaper travel and lodging alternatives (e.g. teleconferencing) or whether doing so would affect the quality of the Standards") (Motion to Strike at 15); (2) he "offers no opinion whether Plaintiffs would continue to develop the Standards following a decline in sales revenue, as opposed to the complete elimination of all sales revenues" (*i.e.*, that "[h]e has not identified any threshold beyond which a decline in sales would prevent the development of standards or materially affect their quality") (Motion to Strike at 15); (3) "[Dr.] Geisinger ignores that Plaintiffs currently have sufficient funding to update the standards for decades" (Motion to Strike at 16); and (4) he has not evaluated "probable" responses to online availability to the standards, including "decreasing the price of the Standards, including explanatory material that is not incorporated by reference into law, issuing updates more frequently, or seeking alternative sources of funding" (Motion to Strike at 16), to name a few.

Public Resource appears to suggest that in order for Dr. Geisinger's opinions to be admissible, he must "travel down the rabbit hole" to consider a hypothetical, Wonderland

scenario where Plaintiffs are *required* to completely restructure their organizations and business models so as to *permit Defendant's unlawful conduct*.  That is preposterous.  Each of these "red herrings" does nothing to dispel, or otherwise call into question, the reliability of Dr. Geisinger's conclusions and the methodology used to render his opinions; *at most*, they go to the validity or weight of the testimony, not its admissibility.   Accordingly, Defendant's challenges to Dr. Geisinger's expert opinions are without merit.

   **b.   Dr. Geisinger Has Substantial Practical Experience With The Subject Matter Of This Litigation And Is Able To Assist The Court In Understanding The Evidence And Deciding The Particular Issues In This Case**

In its Motion to Strike, Public Resource ignores almost completely that personal experience is a reliable and valid basis for the admission of expert testimony.  *See Kumho Tire*, 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").   Dr. Geisinger's opinions are based, properly, on the wealth of knowledge and experience he holds, rather than any formalistic methodology or theory.   *See, e.g. United States v. Ramsey,* 165 F.3d 980 (D.C. Cir. 1999) (upholding admission of Drug Enforcement Administration agent's testimony regarding defendant's past criminal history because expert was testifying based on specialized knowledge); *Groobert v. President & Directors of Georgetown College,* 219 F. Supp. 2d 1, 8 (D.D.C. 2002) (admitting expert's testimony based on his 12 years of experience in the field of stock photography, various speaking engagements and his continuous study of industry trends).

Indeed, as explained above, the presumption under the Federal Rules of Evidence is that expert testimony is admissible. *Daubert,* 509 U.S. at 588; *Ambrosini,* 101 F.3d at 134; Fed. R. Evid. 702 Advisory Committee Note (2000) ("A review of the case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."). Under this body of law,

Dr. Geisinger's extensive knowledge and experience in the standards of the kind involved in this lawsuit, his review of the relevant facts in this case, and the application of his knowledge to the facts to generate his opinions, sufficiently satisfy the requirements of *Daubert*, *Kumho*, and Fed. R. Evid. 702--*i.e.* Dr. Geisinger's "professional judgment obtained through long experience in the field" (*Heller,* 952 F. Supp. at 142)--and will assist the Court in understanding the evidence and deciding the particular issues in this case.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Strike ECF No. 60-88, the Declaration of Kurt F. Geisinger in Support of Plaintiffs' Motion for Summary Judgment and Permanent Injunction should be denied in its entirety.

Respectfully submitted,

QUARLES & BRADY LLP

Dated: February 18, 2016

*/s/ Jonathan Hudis*

By:   Jonathan Hudis (DC Bar # 418872)
      Jonathan P. Labukas (DC Bar # 998662)
      Nikia L. Gray (*pro hac vice*)
      1700 K Street NW, Suite 825
      Washington, DC 20006-3825
      Tel. (202) 372-9600
      Fax (202) 372-9599
      E-Mail Jonathan.Hudis@quarles.com
      E-Mail Jonathan.Labukas@quarles.com
      E-Mail Nikia.Gray@quarles.com

      Counsel for Plaintiffs American Educational
      Research Association, Inc., American
      Psychological Association, Inc., and
      National Council on Measurement in
      Education, Inc.