**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., and NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC., <br><br>              Plaintiffs, <br><br>     v. <br><br> PUBLIC.RESOURCE.ORG, <br><br>              Defendant. | Case No. 1:14-CV-00857-TSC-DAR <br><br> **REPLY IN SUPPORT OF DEFENDANT PUBLIC RESOURCE'S MOTION TO STRIKE THE DECLARATION OF KURT F. GEISINGER** <br><br> Action Filed:   May 23, 2014 |

**[REDACTED VERSION]**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................2

I.  GEISINGER'S EXPERT DISCLOSURE FAILED TO "ADEQUATELY
    PRESAGE" THE NEW OPINIONS IN HIS DECLARATION. ......................................2

    A.  Geisinger's New Opinions Are Not Elaborations of His Expert
        Disclosure. ..........................................................................................................3

    B.  Dr. Geisinger Was Not Permitted to "Supplement" His Report with
        New Opinions During his Deposition. ...................................................................4

II.  PLAINTIFFS HAVE NOT EXPLAINED HOW GEISINGER'S
     QUALIFICATIONS AS A PSYCHOLOGIST SUPPORT HIS OPINIONS
     ABOUT NON-PSYCHOLOGICAL MATTERS. ...............................................................5

III.  GEISINGER'S OPINIONS ARE UNRELIABLE. ...........................................................7

    A.  Plaintiffs Have Not Rehabilitated Geisinger's Unreliable Opinion That
        Public Resource Caused a Decrease in Plaintiffs' Revenues. ..................................7

    B.  Plaintiffs Have Failed to Rehabilitate Geisinger's Unreliable Opinion
        that Plaintiffs Cannot Reasonably Calculate Their Lost Revenue. ........................11

    C.  Plaintiffs Have Not Shown that Geisinger's Opinion that Plaintiffs
        Will Cease Developing the Standards Is Reliable. ................................................12

    D.  Plaintiffs Have Not Shown that Geisinger's Remaining Opinions Are
        Admissible. .........................................................................................................16

IV.  CONCLUSION.................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allgood v. Gen. Motors Corp.*,
No. 1:02CV01077 DFHTAE, 2007 WL 647496 (S.D. Ind. Feb. 2, 2007) ..............................5

*Ambrosini v. Labarraque*,
101 F.3d 129 (D.C. Cir. 1996) ......................................................................................10

*Astra Aktiebolag v. Andrx Pharm., Inc.*,
222 F. Supp. 2d 423 (S.D.N.Y. 2002)..........................................................................10

*Blake v. Bell's Trucking, Inc.*,
168 F. Supp. 2d 529 (D. Md. 2001) ................................................................................8

*Eiben v. Gorilla Ladder Co.*,
No. 11–CV–10298, 2013 WL 1721677, at *4–7 (E.D. Mich. April 22, 2013) ........................5

*Fail-Safe, L.L.C. v. A.O. Smith Corp.*,
744 F. Supp. 2d 870 (E.D. Wis. 2010)..........................................................................15

*Freeland v. Iridium World Commc'ns, Ltd.*,
545 F. Supp. 2d 59 (D.D.C. 2008) ................................................................................7

*Groobert v. President & Directors of Georgetown College*,
219 F. Supp. 2d 1 (D.D.C. 2002) ................................................................................13

*In re Executive Telecard, Ltd. Sec. Litig.*,
979 F. Supp. 1021 (S.D.N.Y. 1997)..............................................................................10

*In re Sulfuric Acid Antitrust Litig.*,
235 F.R.D. 646 (N.D. Ill. 2006)......................................................................................4

*In re TMI Litig.*,
193 F.3d 613 (3d Cir. 1999)..........................................................................................15

*Interplan Architects, Inc. v. C.L. Thomas, Inc.*,
No. 4:08-CV-03181, 2010 WL 4065465 (S.D. Tex. Oct. 9, 2010) ...........................................6

*Montgomery Cty. v. Microvote Corp.*,
320 F.3d 440 (3d Cir. 2003)..........................................................................................15

*Moore v. Napolitano*,
926 F. Supp. 2d 8 (D.D.C. 2013) ................................................................................5

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*,
  493 F.3d 160 (D.C. Cir. 2007) .................................................................................3, 4

*U.S. Information Systems, Inc. v. Inter. Broth. of Elec. Workers Local*
  *Union No. 3*,
  313 F.Supp.2d 213 (S.D.N.Y. 2004) ............................................................................10

*Ullman v. Auto-Owners Mut. Ins. Co.*,
  No. 2:05-CV-1000, 2007 WL 1057397 (S.D. Ohio Apr. 5, 2007) ...........................................4

*United States v. Hankey*,
  203 F.3d 1160 (9th Cir. 2000) ...............................................................................13

*United States v. Ramsey*,
  165 F.3d 980 (D.C. Cir. 1999) ...............................................................................13

### RULES

Fed. R. Civ. P. 26 .........................................................................................1, 2, 4

Fed. R. Civ. P. 37 ...........................................................................................5

*Fed. R. Evid. 702 .........................................................................................1, 7

*Fed. R. Evid. 703 ..........................................................................................15

### OTHER AUTHORITIES

Joseph, Gregory P., *Expert Approaches*, 28 Litigation 20 (2002) ..........................................4

Merriam-Webster.com, http://www.merriam-webster.com/dictionary/presage (last
  visited Mar. 3, 2016) .......................................................................................3

# GLOSSARY

| Short Form | Cited Document |
|---|---|
| G. Decl. | ECF No. 60-06, Declaration of Kurt. F. Geisinger in Support of Plaintiffs' Motion for Summary Judgment and Entry of a Permanent Injunction |
| G. Dep. | ECF No. 90-02, Complete Transcript of the Deposition of Kurt F. Geisinger attached as Exhibit 1 to the Declaration of Jonathan Hudis in opposition to Defendant-Counterclaimant Public Resource's Motion to Strike the Declaration of Kurt. F. Geisinger in Support of Plaintiffs' Motion for Summary Judgment and Entry of a Permanent Injunction |
| G. Rep. | ECF No. 67-05, Expert Report of Kurt F. Geisinger attached as Exhibit 3 to the Declaration of Matthew Becker in support of Defendant-Counterclaimant Public Resource's Motion to Strike the Declaration of Kurt. F. Geisinger in Support of Plaintiffs' Motion for Summary Judgment and Entry of a Permanent Injunction |
| Mot. | ECF No. 67, Defendant-Counterclaimant Public Resource's Motion to Strike the Declaration of Kurt. F. Geisinger in Support of Plaintiffs' Motion for Summary Judgment and Entry of a Permanent Injunction |
| Opp. | ECF No. 91, Plaintiffs' Opposition to Defendant-Counterclaimant Public Resource's Motion to Strike the Declaration of Kurt. F. Geisinger in Support of Plaintiffs' Motion for Summary Judgment and Entry of a Permanent Injunction |

## INTRODUCTION

Plaintiffs failed to satisfy their burden to show that Dr. Geisinger's declaration is admissible. Even under the liberal standard for admitting expert testimony where the Court is the factfinder, expert opinions must satisfy the requirements of Federal Rule of Evidence 702: qualification, helpfulness, and reliability. Each of Dr. Geisinger's opinions falls short of meeting those requirements. In addition, several of his opinions were late and violated the expert disclosure obligations under Federal Rule of Civil Procedure 26(a)(2)(B) and the Court's scheduling order (ECF No. 53).

Public Resource does not dispute that Dr. Geisinger has expertise in the field of psychometric testing. But his declaration ranges far outside that field, into areas where he has no professional, expert knowledge but where he simply serves as a mouthpiece for Plaintiffs to dress up their arguments with a false veneer of respectability and authority. For example, he has no relevant qualifications to opine on the effect on Plaintiffs' sales of Public Resource's posting the 1999 Standards. But instead of retaining a qualified expert to opine on topics where Geisinger lacks experience or training, Plaintiffs had Geisinger cram all the "opinions" they needed into his declaration. Not surprisingly, Geisinger cannot support the opinions on issues outside his field of expertise, and his analysis on those issues manifestly flounders. His opinions rest on unreliable assumptions, deficient or non-existent principles and methods, and inadmissible and biased evidence. Two reasons to exclude Geisinger's key opinions stand out as particularly compelling:

- Geisinger's opinion that Public Resource caused a decline in sales of the 1999 Standards rests on his assumption that sales of the Standards had gradually declined since their first publication. ████████████████████████████████ ██████████████████████████████████████

1

- Geisinger's opinion that Plaintiffs will not update the 2014 Standards if Public Resource prevails in this case rests on his opinion that Plaintiffs would lack funding to pay their development costs. But that underlying opinion in turn rests on a false assumption: ███████████████████████████████ ███████████████████████████████████ ██████████████████████ (based on Plaintiffs' 15 year revision cycle). Geisinger's opinions therefore do not fit the facts of this case.

Plaintiffs also concede that their disclosures of Geisinger's new "opinions" were late and that the lateness of the disclosure was not substantially justified. Instead, Plaintiffs argue that their late efforts to squeeze in new opinions were harmless even though they deprived Public Resource of adequate notice to prepare fully for Dr. Geisinger's deposition.

This Court should not consider unqualified and unreliable expert testimony, especially testimony on opinions that were not timely disclosed. The Court should strike the Geisinger declaration entirely.

## ARGUMENT

### I.   GEISINGER'S EXPERT DISCLOSURE FAILED TO "ADEQUATELY PRESAGE" THE NEW OPINIONS IN HIS DECLARATION.

Plaintiffs could have easily avoided any argument about Geisinger's sandbagging opinions by simply filing his expert disclosure under oath instead of a declaration that strays far from the scope of his disclosure. There are clear differences between the opinions in Geisinger's expert disclosure and his declaration. Although experts may elaborate on the facts and data that support their opinions during direct and cross-examination, Federal Rule of Civil Procedure 26(a)(2)(B) requires that each expert disclose a "complete statement of all opinions the witness will express and the basis and reasons for them." Plaintiffs cannot, as they now suggest, disclose

an incomplete report that "presages," meaning "to give an omen or warning of: foreshadow," future opinions that the expert may contrive. *See* Merriam-Webster.com, http://www.merriam-webster.com/dictionary/presage (last visited Mar. 3, 2016). Plaintiffs cannot meet their burden to show that their delay in revealing Geisinger's new opinions was substantially justified or harmless. Therefore, most of Geisinger's opinions should be excluded as untimely.

### A. Geisinger's New Opinions Are Not Elaborations of His Expert Disclosure.

Public Resource moves to strike Geisinger's testimony in paragraphs 22, 24, and 25 of his declaration because that testimony is new and untimely. Mot. at 6, 11, 12. ████████ ████████████████████████████████████████████████ ████████████████████████████████ Plaintiffs fail to show where in Geisinger's disclosure he identified the opinions that appear in his new declaration. *See* Opp. at 6. ██ ████████████████████████████████ Geisinger's report reveals that he *assumed* that Public Resource posting the standards online would cause the elimination of all of Plaintiffs' revenue from the Standards and opined on the consequences he *feared* would result. G. Rep. ¶ 55. Plaintiffs make no effort to locate in his expert disclosure Geisinger's opinion that it is impossible to calculate Plaintiffs' allegedly lost revenue. Instead, much of Plaintiffs' argument is a red herring, focusing on other opinions that Public Resource never argued were new. *See* Opp. at 6 (last three bullet points).

Although experts may elaborate on the facts and data supporting their opinions, Plaintiffs cite no authority that permits experts to submit new *opinions* under the guise of "elaboration." Plaintiffs rely on *Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167–68 (D.C. Cir. 2007), which does not support their position. In *Muldrow*, the expert testimony included additional facts about a specific fatality report concerning a resident at defendant's juvenile transitional living facility. The court held that testimony was admissible because the

expert had disclosed that he reviewed the facility's fatality reports in the expert report and

merely elaborated on a particular example from those reports. It rejected the appellant's

characterization of the expert's testimony as rendering a new opinion. *Id.* at 167. Other courts

have rejected attempts like that of Plaintiffs here to expand the scope of expert opinions under

the guise of supplementation. *E.g.*, *Ullman v. Auto-Owners Mut. Ins. Co.*, No. 2:05-CV-1000,

2007 WL 1057397, at *4 (S.D. Ohio Apr. 5, 2007) (excluding supplemental report that provided

actual reasoning for assertions in initial report). ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████

## B.    Dr. Geisinger Was Not Permitted to "Supplement" His Report with New Opinions During his Deposition.

Plaintiffs fall back on the claim that their untimely disclosure is excused because

Geisinger revealed his new opinions during his deposition. There is no authority from this circuit

that permits sandbagging by withholding expert opinions until the expert's deposition. To

support their claim that Geisinger could render new opinions in his deposition, Plaintiffs rely

upon an old article advocating fewer expert depositions and upon a case that cited to that article a

decade ago. *See* Mot. at 7–8 (citing Gregory P. Joseph, *Expert Approaches*, 28 Litigation 20, 21

(2002) and *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 646, n. 13 (N.D. Ill. 2006)). The

argument in the article was that an expert's deposition testimony constitutes supplementation

under Federal Rule of Civil Procedure 26(e)(1). Most courts, however, limit supplementation to

correction of inaccurate information or the provision of "additional" information that was not

available at the time of the initial report or deposition. "Rule 26(e) imposes a duty on the

producing party to supplement information that is incorrect or incomplete. It does not give the

producing party a license to disregard discovery deadlines and to offer new opinions under the

guise of the 'supplement' label." *Allgood v. Gen. Motors Corp.*, No. 1:02CV01077 DFHTAE, 2007 WL 647496, at *3 (S.D. Ind. Feb. 2, 2007); *accord Eiben v. Gorilla Ladder Co.*, No. 11–CV–10298, 2013 WL 1721677, at *4–7 (E.D. Mich. April 22, 2013) (excluding supplemental expert opinions as untimely).

Plaintiffs also argue that the untimely disclosure of Geisinger's opinions was harmless under Rule 37 because Public Resource deposed Geisinger. Plaintiffs bear the burden of showing lack of harm. *Moore v. Napolitano*, 926 F. Supp. 2d 8, 27 (D.D.C. 2013). Public Resource's deposition of Geisinger did not render his new opinions harmless because Public Resource lacked advance notice of his opinions and had no ability to prepare questions concerning those opinions. Permitting parties to introduce new opinions only at deposition would flout the purpose of the full disclosure rule and destroy the finality of expert reports. *See Allgood*, 2007 WL 647496, at *3–4.

## II.   PLAINTIFFS HAVE NOT EXPLAINED HOW GEISINGER'S QUALIFICATIONS AS A PSYCHOLOGIST SUPPORT HIS OPINIONS ABOUT NON-PSYCHOLOGICAL MATTERS.

Plaintiffs contend that Geisinger's membership and participation with the sponsoring organizations show that he has the requisite experience to render opinions about the cause of Plaintiffs' sales decline and likely future conduct regarding updating the standards. Opp. at 12. Plaintiffs also argue that he is qualified because he and his foundation have published books. Opp. at 15. What Plaintiffs fail to show, however, is a connection between Geisinger's experience and the opinions he draws. As a long-time member of Plaintiffs' organizations, he may be familiar with their history, but that does not explain how that membership informed his opinion about what Plaintiffs would do in the future if they cannot continue to claim copyright ownership over the 1999 Standards. His opinion that Plaintiffs will stop developing the standards rests on his faulty assumption that lack of copyright ownership will eliminate Plaintiffs' revenues

entirely, and his testimony was simply as a mouthpiece to provide a pseudo-expert veneer upon what should have been percipient witness evidence from Plaintiffs' executives about their intentions. *See* G. Rep. ¶ 23. There is no reason to allow this subterfuge.

Plaintiffs claim that Geisinger's familiarity with his own publications, or those of his foundation, qualify him to opine on the cause of Plaintiffs' decline in sales revenue is weak. Authorship of some publications does not qualify someone, without substantially more, to opine upon a marketplace for very different publications and the hypothetical effect of court decisions on different marketplaces. Geisinger has made no efforts to explain why he would expect his publications to sell similarly to the Standards. And there are obvious differences: ███████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ And the Buros Center updates its Mental Measurements Yearbooks annually, while Plaintiffs publish their Standards every 15 years.

Plaintiffs fail to distinguish *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 4:08-CV-03181, 2010 WL 4065465, at *13 (S.D. Tex. Oct. 9, 2010). In that case the court found that an architect-expert's opinions on industry custom must be excluded because he relied only on his knowledge of two other architects, but that his opinions on convenience store design were admissible because of his personal experience with many such store designs. Similarly, Geisinger may testify about the content of the Standards, or which tests follow the Standards, or non-quantitative opinions about the factors that affect the success or accuracy of a particular test. ██████████████████████████████████████████████████████████████

█████████████████ And Public Resource never challenged his qualifications for his opinions expressed in paragraphs 17–21 of his declaration, which concern the Standards' development

and use (although those opinions are not helpful to the Court). Beyond those topics, Geisinger strayed far beyond his expertise, and his further opinions should be excluded on that basis.

## III.   GEISINGER'S OPINIONS ARE UNRELIABLE.

Public Resource also moves to exclude Geisinger's declaration because he failed to use reliable methods or apply methods reliably. Plaintiffs contend that these methodological criticisms affect the weight of Geisinger's testimony but not their admissibility. That argument is directly contrary to Federal Rule of Evidence 702. Not surprisingly, the case Plaintiffs claim supports their assertion never states that methodological critiques go only to the weight of an opinion. Opp. at 16 (citing *Freeland v. Iridium World Commc'ns, Ltd.*, 545 F. Supp. 2d 59, 88 (D.D.C. 2008) (holding the party seeking exclusion had attacked only the factual basis for the expert's report and not the methodology)).

Plaintiffs further claim that Geisinger should be immune from methodological critiques because his opinions are based on experience, not testing. Opp. at 21. But Geisinger's challenged opinions are not of the kind that may rest on experience alone. Were he opining on whether a particular test followed the Standards, his experience reviewing other tests with similar characteristics would probably be sufficient. But his prediction about whether Plaintiffs will continue to develop the standards and his causal opinion as to why sales of the 1999 Standards declined in 2012 are untethered to his professional experience. He has no reliable scientific basis for his conclusions because he identified no comparable circumstances from which he can extrapolate data.

### A.   Plaintiffs Have Not Rehabilitated Geisinger's Unreliable Opinion That Public Resource Caused a Decrease in Plaintiffs' Revenues.

Geisinger opines that sales of the 1999 Standards should have declined gradually and that what he called the "precipitous drop" in 2012 sales could be explained only by the fact that

Public Resource posted the Standards that year. G. Decl. ¶ 25. Plaintiffs do not address, let alone

rebut, most of Public Resource's arguments why Geisinger's opinion is unreliable. Public

Resource seeks to exclude that opinion because (1) Geisinger is not qualified to opine on the

cause of economic phenomena; (2) he did not use any reliable principles or methodology to

render his opinion; (3) his assumption that sales of the 1999 Standards would gradually decline

was not reliable and contradicted Standards' *actual* sales history; (4) he did not apply any

reliable principles or methodology to evaluating alternate causes of the decline of sales; and (5)

he did not consider similar events where other organizations made standards available online

without negative repercussions. Plaintiffs respond only to Public Resource's fourth critique.[1]

This Court may also exclude Geisinger's opinion on this issue for any of the other, unrebutted,

reasons in Public Resource's opening brief.

Geisinger's false assumption about Plaintiffs' sales is fatal to his opinion on this issue.

"A district court has a responsibility to ensure that an expert's opinion has an adequate basis in

fact." *Blake v. Bell's Trucking, Inc.*, 168 F. Supp. 2d 529, 533 (D. Md. 2001) (excluding expert

opinion that was not supported by the record). Geisinger's opinion that sales of the 1999

Standards should have gradually declined is contradicted by Plaintiffs' actual sales data. *See*

Mot. at 8 (sales data table). Further, if Plaintiffs were correct that Public Resource's acts caused

the decline in sales, then Plaintiffs' sales figures should have continued to decline as more people

learned the 1999 Standards were available online. ██████████████████████████

---

[1] Plaintiffs claim that Public Resource's argument that Geisinger "did not consider any other
alternative causes for the decline in sales" is "patently false" because he considered and rejected
the announcement of the imminent publication of the 2014 Standards as an alternate cause. Opp.
at 18. Plaintiffs misunderstood Public Resource's use of the phrase "*other* alternative causes."
Public Resource acknowledged that Geisinger testified at deposition that he considered the
imminent publication of the 2014 Standards, although he did not give it due weight, but he failed
to consider any *other* alternate causes for the decline in sales. *See* Mot. at 10.



If Geisinger were correct that knowledge of the Standards' online availability would impair significantly sales, then sales should have continued to drop markedly as knowledge of their online availability spread.

As for Geisinger's failure to address alternative causes of Plaintiffs' sales decline, Plaintiffs contend that Geisinger "ruled out the possibility [that the expectation of the 2014 Standards caused the decline in sales] based on his experience in tracking and monitoring book sales throughout his career." Opp. at 18. That's not what Geisinger said.

Plaintiffs also exaggerate Geisinger's experience "tracking and monitoring book sales."

Plaintiffs contend that Geisinger is not required to address *every* alternative cause for the decline in Plaintiffs' sales. Mot. at 19. That is a classic straw man argument. Of course Geisinger need not address every alternative cause, but he is required to use a reliable methodology. One searches Geisinger's declaration in vain to identify any methodology he used, or what alternative causes he considered or deliberately ignored. Plaintiffs have thus failed to carry their burden on the admissibility of Geisinger's testimony. Thus this case stands in contrast to Plaintiffs' cited

---

[2] Plaintiffs argue for the first time in their opposition that "vast majority of annual purchasers are students taking courses in which the 1999 Standards is required reading." Opp. at 18 n.7 (citing G. Dep. at 244:4–13).
There is no evidence that the vast majority of purchasers are students, no explanation for how Plaintiffs' new theory is consistent with the precipitous drop in sales before Public Resource posted the Standards, and no reason why students would not also opt to purchase a used copy of the 1999 Standards upon learning the reference work would shortly become obsolete.

authority stating that experts are not required to eliminate every alternative cause. (Mot. at 19 *citing Ambrosini v. Labarraque,* 101 F.3d 129, 140 (D.C. Cir. 1996) and *U.S. Information Systems, Inc. v. Inter. Broth. of Elec. Workers Local Union No. 3*, 313 F.Supp.2d 213, 235 (S.D.N.Y. 2004).) The court in *Ambrosini* held that the challenged physician-expert followed a reliable methodology for determining the cause of plaintiff's birth defects because he considered and ruled out several alternative causes that the medical community had found for the patient's condition. 101 F.3d at 140. In *U.S. Information Systems*, defendants argued that the expert inconsistently applied his "methodology" to prefer documentary evidence over testimony, which has little relevance to this case. Far more interesting is that the quote that Plaintiffs selected, that an expert need not "categorically exclude each and every possible alternative cause" comes from *Astra Aktiebolag v. Andrx Pharm., Inc.*, 222 F. Supp. 2d 423, 488 (S.D.N.Y. 2002), in which the immediately preceding sentence states: "Failure to test for alternative causes or the use of control experiments may provide a basis for exclusion."

In cases involving economic opinions, for example, courts have excluded expert testimony because the expert failed to rule out alternative causes for stock price fluctuations. *See In re Executive Telecard, Ltd. Sec. Litig.*, 979 F. Supp. 1021, 1025 (S.D.N.Y. 1997) (excluding expert's testimony on stock price decline because he failed to "adequately . . . distinguish between fraud related and non-fraud related company specific influences on [defendant's] stock price"). Especially for economic analyses, controlling for alternative causation is essential to avoid committing a *post hoc ergo propter hoc* fallacy. Here, Geisinger's failure to rule out any alternative causes in his report and testimony that he only considered one possible alternative cause is fatal to his testimony's admissibility.

Plaintiffs ignore most of the reasons Public Resource gave for why Geisinger's opinions on lost sales should be excluded. They also fail to explain why he looked at one alternate cause for declining sales, but not others. His opinion on this issue should be excluded.

**B.      Plaintiffs Have Failed to Rehabilitate Geisinger's Unreliable Opinion that Plaintiffs Cannot Reasonably Calculate Their Lost Revenue.**

Plaintiffs contend that Geisinger does not actually opine that they cannot reasonably calculate lost revenue. Apparently he meant something else when he stated that Plaintiffs cannot reasonably calculate "the number of [people] who would have purchased Plaintiffs' Standards but for their wholesale posting on Defendants' [] website." Opp. at 16 n.5. It appears Plaintiffs' point is simply that Geisinger did not use the phrase "lost revenue." But discussing the number of people who would have purchased Plaintiffs' Standards is just another way of discussing lost revenue. It is clear that he is discussing lost revenue because his opinion is that people would have purchased the Standards but for Public Resource's acts and now Plaintiffs have lost the revenue they would have had from those purchases. Plaintiffs further argue that this opinion properly rests on Plaintiffs' alleged inability to determine how many people copied and redistributed the 1999 Standards. That itself is a questionable assertion given available statistical methods, and it is an assertion that Geisinger has no qualifications to make. But even if Plaintiffs cannot know how many people circulated copies of the Standards, they can reasonably calculate lost sales based on reasonable expectations about what sales should have been in 2012. Plaintiffs have not presented any reason to suspect that sales should have increased that year. Plaintiffs can reasonably calculate lost revenue by taking their expected sales, subtracting their actual sales,

and then accounting for other reasons why sales would have declined in 2012. That is what economists do all the time. But Plaintiffs declined to retain an economist to do that calculation.[3]

### C.   Plaintiffs Have Not Shown that Geisinger's Opinion that Plaintiffs Will Cease Developing the Standards Is Reliable.

Geisinger opines that Plaintiffs will cease developing future versions of the standards if Public Resource prevails in this litigation. G. Decl. ¶ 23. Public Resource moved to exclude that opinion because (1) it is inconsistent with his deposition testimony; (2) Geisinger lacks qualifications to support that opinion; (3) his opinion concerns only the 2014 Standards, which are not at issue in this litigation; (4) his opinion rests on the unsupported and unreasonable assumption that Plaintiffs would lose all its revenue and that Plaintiffs' costs are fixed; (5) his opinion rests on the unverified self-interested statements of Plaintiffs' executives, which he fails to show would be accepted by experts in the particular field; and (6) his opinions do not fit this case because he failed to consider the $1.5 million in funding dedicated to developing future standards. Plaintiffs fail to adequately rebut each of these arguments.

*Inconsistent Deposition Testimony*: Geisinger declared that it was "extremely likely" that Plaintiffs will cease developing the Standards if Public Resource prevails. G. Decl. ¶ 23. ████

████████████████████████████████████████████████████████████████

████████████   That probability is baseless and, if true, would hardly support that his prediction was "extremely likely." Plaintiffs respond with two arguments, first that Geisinger was not

---

[3] Plaintiffs argue that Public Resource is taking inconsistent positions by moving to exclude Geisinger and an economist in the ASTM case. Plaintiffs present a false dichotomy between having an economist or not. Many litigants retain multiple experts so that each expert can testify within their domain of expertise. For economic opinions, litigants often require a general economist and another expert familiar with the market conditions of the industry at issue. Plaintiffs in both this case and the ASTM case committed the same fundamental error—they instructed their retained experts to testify beyond the area of their expertise. ASTM's economics expert opined about non-economic issues and Geisinger, a psychology expert, opined about economic ones.

required to quantify the probability, and second, that Public Resource has failed "to see the forest for the trees." Opp. at 20. The first argument is a non-sequitur. Geisinger's problem is not his failure to quantify his confidence level but that he did so in a way that exposed his methodology and conclusion as unreliable. Plaintiffs' second argument appears to be simply that there are facts that support his opinion. Those facts, however, do not alter Geisinger's expression of his relatively low confidence in his conclusion that Plaintiffs will cease developing the standards.

*Qualifications*: Plaintiffs fail to identify how Geisinger's past experiences with Plaintiffs' organizations support this opinion. His list of qualifications shows that he is eminently suited to evaluate the quality of tests and to develop standards for rating and designing tests. Not surprisingly, Plaintiffs defend his qualifications to opine on Plaintiffs' future course of conduct by referring to his experiences generally, without any specifics tied to content of that opinion. Opp. at 21. Plaintiffs' reliance on *United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000) does not support their claim. In that case, the Ninth Circuit admitted a police gang expert's testimony about a particular gang's code of silence, to impeach defendant's alibi witness, based on the officer's observations and communications with gang members. The expert had an opinion about a standard practice of an organization—retaliating against gang members testifying—based on years of personal experience.[4] Here, Geisinger is not opining about a standard practice. He has not identified any comparable events as the source of his opinion. In theory, Plaintiffs could have introduced someone with experience about on how Plaintiffs, or other comparable professional organizations, responded to declines in sales revenue for their publications. But Plaintiffs have

---

[4] Plaintiffs' other cited cases involving experienced experts also involved experts opining on standard practices or population averages. *See United States v. Ramsey*, 165 F.3d 980 (D.C. Cir. 1999) (police expert on criminal behavior); *Groobert v. President & Directors of Georgetown College*, 219 F. Supp. 2d 1, 8 (D.D.C. 2002) (stock photographer on lost future income of plaintiff stock photographer).

not shown Geisinger's experience is pertinent to his opinion.

*Relevance of the 2014 Standards*: ███████████████████████████
████████████████████████████████████████████████ His opinion

applies to the 2014 Standards only. Therefore, his opinions do not fit the facts of this case.

Plaintiffs contend his opinion should still be admissible because he properly relied on Carl

Malamud's deposition testimony that Public Resource will post the 2014 Standards if they are

incorporated by reference into law. Opp. at 20 n.8. That post-hoc rationalization is untimely and

unreliable. Geisinger has offered no evidence about whether the 2014 Standards will be

incorporated by reference into law or when it might happen, i.e., before or after Plaintiffs earned

enough revenue to cover the cost of developing the next set of Standards. Therefore, Geisinger's

opinion does not fit the facts of this case.

*Total vs. Partial Loss of Revenue*: Plaintiffs ignore that Geisinger's opinion incorrectly

assumes that Plaintiffs will lose all revenue from the Standards. They cannot refute that Plaintiffs

continued to earn revenue on the 1999 Standards after Public Resource posted it or that other

entities successfully sell material in the public domain. Geisinger also does not marshal facts to

show that Plaintiffs would be unable to reduce the costs of developing the Standards if there was

a drop in revenue or raise funds in other ways. These are crucial gaps in his analysis. Plaintiffs

retort that these arguments are "red herrings," "preposterous," and that Geisinger is not required

to "travel down the rabbit hole." Opp. 22–23. While the imagery is colorful, Plaintiffs' rhetoric

lacks reasoning. Plaintiffs seek to introduce Geisinger's opinion that, if Public Resource prevails,

Plaintiffs would stop developing the Standards. The reliability of that opinion rests on

Geisinger's consideration of Plaintiffs' potential responses to an adverse decision. He did not

conduct that analysis. Therefore, his opinion is not reliable.

*Mouthpiece Function to Convey Plaintiffs' Self-Interested Assertions:* Plaintiffs contend that Geisinger's reliance on self-serving statements by Plaintiffs' executives falls within the scope of materials permitted by Federal Rule of Evidence 703. Opp. at 17. Not surprisingly, Plaintiffs offer no authority for that assertion. It is hard to imagine that any expert worth his salt would rely on his client's assertions without independent verification. In fact, courts routinely find that self-interested statements made in litigation are not reliable. *In re TMI Litig.*, 193 F.3d 613 (3d Cir. 1999); *Montgomery Cty. v. Microvote Corp.*, 320 F.3d 440, 448 (3d Cir. 2003) (excluding testimony where expert relied on unreliable documents prepared by client); *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 887 (E.D. Wis. 2010) (excluding expert opinion based on uncritical acceptance of party's sales forecasts). Plaintiffs argue in the alternative that Geisinger's personal observations support his opinion. But the two sections of deposition testimony that Plaintiffs cite do not support that claim. Opp. at 18 (citing G. Dep. at 152:5–153:2 and 190:16–191:4). ████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████████████████

*Currently Available Funds:* Plaintiffs effectively ignore that Geisinger failed to account for the fact that Plaintiffs have $1.5 million in a restricted fund devoted to developing the Standards. Geisinger does not opine that Plaintiffs will cease developing the standards once they deplete that fund (which would probably take nearly half a century); he opines that the 2014 Standards would be the "last one developed or published." G. Rep. ¶ 52; *accord* G. Decl. ¶ 23. Plaintiffs argue that this omission is another "red herring." Opp. at 22. Yet Geisinger's failure to

acknowledge that the Standards are already funded for decades renders his opinions unreliable and shows that the opinions do not fit the facts of this case.

> **D.      Plaintiffs Have Not Shown that Geisinger's Remaining Opinions Are Admissible.**

*Availability of Past Versions*: Geisinger opines the public at large would be harmed by the "uncontrolled publication of the 1999 Standards without any notice that those guidelines have been replaced by the 2014 Standards." G. Decl. ¶ 27. Although neither his report nor declaration provides a reliable basis for this opinion, ███████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████ The fact of those instances, however, do not show the significance of current confusion between editions, causation between availability of an edition of the Standards online and confusion, or detrimental reliance by anyone on an outdated version of the Standards. Geisinger's opinion is wholly speculative and should be excluded.

*Advantages of the Standards*: Plaintiffs do not dispute that Geisinger's opinions about the advantages of the Standards (G. Decl. ¶¶ 17–21) are not germane to this matter and therefore should be excluded because they are not helpful to the Court.

## IV.      CONCLUSION

In support of admitting Geisinger's declaration, Plaintiffs primarily rely on generic recitations of the legal standard favoring admissibility, especially when the court acts as a factfinder. Public Resource readily concedes that point, but only as a tie-breaker if the Court finds the question of admissibility too close to call. The Federal Rules of Evidence still apply to summary judgment proceedings and Plaintiffs must still meet their burden of proof on the admissibility of their expert's opinions. Plaintiffs have not met their burden here because

Geisinger's opinions are either unhelpful or unreliable. His opinions about testing and the use of the Standards in the testing field, while within his area of competence, are not germane to this dispute and therefore not helpful to the Court. His opinions about Plaintiffs' sales and whether Plaintiffs will continue to develop the Standards, while germane, fall outside his area of competence and lack reliability. And his untimely disclosures prejudiced Public Resource's ability to respond. His declaration should therefore be stricken from the record.

Dated: March 3, 2016                              Respectfully submitted,


                                                 */s/   Andrew P. Bridges*
                                                 Andrew P. Bridges (admitted)
                                                 abridges@fenwick.com
                                                 Sebastian E. Kaplan (admitted *pro hac vice*)
                                                 skaplan@fenwick.com
                                                 Matthew Becker (admitted *pro hac vice*)
                                                 mbecker@fenwick.com
                                                 FENWICK & WEST LLP
                                                 555 California Street, 12th Floor
                                                 San Francisco, CA 94104
                                                 Telephone:   (415) 875-2300
                                                 Facsimile:    (415) 281-1350

                                                 Corynne McSherry (admitted *pro hac vice*)
                                                 corynne@eff.org
                                                 Mitchell L. Stoltz (D.C. Bar No. 978149)
                                                 mitch@eff.org
                                                 ELECTRONIC FRONTIER FOUNDATION
                                                 815 Eddy Street
                                                 San Francisco, CA 94109
                                                 Telephone:   (415) 436-9333
                                                 Facsimile:    (415) 436-9993

                                                 David Halperin (D.C. Bar No. 426078)
                                                 davidhalperindc@gmail.com
                                                 1530 P Street NW
                                                 Washington, DC 20005
                                                 Telephone: (202) 905-3434

                                                 *Attorneys for Defendant-Counterclaimant*
                                                 Public.Resource.Org, Inc.