# EXHIBIT 81

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC., AMERICAN PSYCHOLOGICAL ASSOCIATION, INC., and NATIONAL COUNCIL ON MEASUREMENT IN EDUCATION, INC., ) ) ) ) ) | Civil Action No. 1:14-cv-00857-TSC-DAR |
| Plaintiffs/Counterdefendants, ) | **DEFENDANT-COUNTERCLAIMANT PUBLIC.RESOURCE.ORG, INC.'S SECOND AMENDED RESPONSES TO PLAINTIFFS-COUNTERDEFENDANTS' FIRST SET OF INTERROGATORIES (NO. 8)** |
| v. ) ) | |
| PUBLIC.RESOURCE.ORG, INC., ) ) | |
| Defendant/Counterclaimant. ) ) | |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, the Local Civil Rules of Civil Procedure of this Court, and the Court's Order of May 20, 2015 (Dkt. No. 49), Defendant Public.Resource.Org, Inc. ("Public Resource") hereby amends its response to Plaintiffs' American Educational Research Association, Inc., American Psychological Association, Inc., and National Council on Measurement in Education, Inc., Interrogatory No. 8.

## GENERAL OBJECTIONS

1.     Public Resource objects to the interrogatories to the extent that they are overly broad, unduly burdensome, or oppressive, or to the extent they are inconsistent with, or purport to impose obligations on Public Resource beyond those set forth by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Columbia, the Federal Rules of Evidence, or any applicable regulations and case law, particularly to the extent that compliance would force Public Resource to incur a substantial expense that outweighs any likely benefit of the discovery.  Public Resource's responses, regardless of whether they include a specific objection, do not constitute an adoption or acceptance of the definitions and instructions that Plaintiffs seek to impose.

2.      Public Resource objects to the interrogatories to the extent that they seek documents and information that are neither relevant to the Action nor reasonably calculated to lead to the discovery of admissible evidence.  Public Resource objects to the interrogatories to the extent that they seek documents and information that are not in Public Resource's possession, custody or control.  Public Resource objects to the interrogatories on the ground that they seek to impose obligations on Public Resource that are unduly burdensome, especially to the extent that requested information is publicly available or burdensome to search for or obtain.  Public Resource further objects to the extent that the interrogatories are overbroad and that their number exceeds the number that the Federal Rules of Civil Procedure authorize.

3.      Public Resource objects to the interrogatories to the extent that they seek information that falls under the attorney-client privilege, work-product doctrine, common interest privilege, or other applicable privileges or protections.  Public Resource will not provide such information, and any inadvertent production is not a waiver of any applicable privilege or protection.

4.      Public Resource objects to the interrogatories, and each and every instruction and definition, to the extent that Plaintiffs seek information that is not limited to a relevant and reasonable period of time.

5.      Public Resource objects to the interrogatories to the extent they are argumentative.

6.      Public Resource objects to the interrogatories to the extent they are cumulative and/or duplicative of any other of Plaintiffs' discovery requests.

7.      Public Resource objects to the definition of "Public Resource" on the grounds that it is vague, ambiguous, overbroad, and unduly burdensome, particularly to the extent that it purports to include any affiliates or other persons when such persons are acting outside of a capacity of representing Public Resource.

8.      Public Resource reserves the right to amend or supplement its responses as the Action proceeds.

9.     Public Resource's responses to these interrogatories are made without waiving, or intending to waive, but on the contrary, preserving and intending to preserve: (a) the right to object, on the grounds of competency, privilege, relevance or materiality, or any other proper grounds, to the use of any documents or other information for any purpose in whole or in part, in any subsequent proceeding in this action or in any other action; (b) the right to object on any and all grounds, at any time, to other requests for production, interrogatories, or other discovery procedures involving or relating to the subject matter of the interrogatory to which Defendants have responded here; and (c) the right at any time to revise, correct, add to, or clarify any of the responses made here.

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 8:

State the factual and legal basis of each Affirmative and Other Defense to Plaintiffs' Complaint, as asserted in Public Resource's Counterclaim and Answer filed with the Court on July 14, 2014.

### RESPONSE TO INTERROGATORY NO.8:

Public Resource incorporates its general objections as if fully set forth here.  Public Resource objects to this interrogatory to the extent it purports to impose upon Public Resource obligations broader than, or inconsistent with, the Federal Rules of Civil Procedure, local rules, Court Orders for this proceeding, or any applicable regulations and case law.  Public Resource objects to this interrogatory to the extent it seeks disclosure of information that falls under the work product doctrine.  Public Resource objects to this interrogatory because it is argumentative. Public Resource objects to this interrogatory because it seeks information that is publicly available, already known, or equally available to Plaintiffs.  Public Resource objects to this interrogatory as it seeks "factual and legal basis" at an early stage of the litigation.

### AMENDED RESPONSE TO INTERROGATORY NO. 8:

Public Resource incorporates its general objections as if fully set forth here.  Public Resource objects to this interrogatory to the extent it purports to impose upon Public Resource obligations broader than, or inconsistent with, the Federal Rules of Civil Procedure, local rules, Court Orders for this proceeding, or any applicable regulations and case law.  Public Resource objects to this interrogatory to the extent it seeks disclosure of information that falls under attorney-client privilege or the work product doctrine.  Public Resource objects to this interrogatory because it is argumentative.  Public Resource objects to this interrogatory because it seeks information that is publicly available, already known, or equally available to Plaintiffs. Public Resource objects to this interrogatory because it is compound and comprises at least nine separate interrogatories.

Subject to and without waiving the foregoing objections, Public Resource responds as follows:

1.     **The Complaint and each claim within it fail to allege facts sufficient to state a cause of action.**

Public Resource includes this defense out of an abundance of caution, but this is not an issue on which Public Resource bears the burden of proof, and in pleading this defense among its affirmative and other defenses Public Resource does not intend to shift the burden of proof. Moreover, Public Resource's investigation is ongoing.

Plaintiffs' Complaint fails to allege facts sufficient to state a cause of action because the Complaint itself pleads a defense to the cause of action for copyright infringement and contributory copyright infringement, in that the complaint acknowledges the adoption of the 1999 Standards in state and federal legislation by their reference to the "citation" of them by federal and state legislators.   Plaintiffs have no enforceable copyright rights in works that government entities have incorporated by reference into law, and so the facts stated within the complaint do not sufficiently allege a cause of action because Plaintiffs do not own any copyrights that Public Resource has infringed.

In addition, Plaintiffs' Complaint alleges that committees of "experts" who are not alleged to be employees or agents of Plaintiffs have prepared the standard at issue, and it indicates that at least one such committee "created" the work.  The Complaint does not plead facts showing *authorship* of the 1999 Standards by the Plaintiffs; indeed, the certificate of copyright registration and amendment that the Complaint indicate facts inconsistent with ownership, and Plaintiffs fail to plead facts (as opposed to conclusions) establishing ownership of the copyright in the 1999 Standards by the Plaintiffs.

2.      **Plaintiffs have no copyrights in works that government entities have incorporated by reference into law.**

Public Resource includes this defense out of an abundance of caution, but this is not an issue on which Public Resource bears the burden of proof, and in pleading this defense among its affirmative and other defenses Public Resource does not intend to shift the burden of proof.  Moreover, Public Resource's investigation is ongoing.

Public Resource incorporates its response to Plaintiffs' Interrogatories Nos. 9-11, stating instances that Public Resource is aware of where the 1999 Standards have been incorporated by reference into the law or cited by a governmental agency.  The 1999 Standards have been formally incorporated by reference into the law, and therefore the 1999 Standards are now law.  As law, the 1999 Standards have entered the public domain and are not subject to copyright protection or ownership.  The law is a fact, among other things a speech act of government, and is not subject to copyright protection.  In addition, the law is a procedure, process, system, or method of operation, and it is therefore not subject to copyright protection.  Plaintiffs designed the 1999 Standards for use and adoption by governmental agencies and policymakers; Plaintiffs promoted the use and citation of the 1999 Standards by governmental agencies and policymakers; and Plaintiffs lobbied for the mandating of the 1999 Standards by law.  The 1999 Standards have been adopted by governmental agencies.  Governmental agencies require that members of the public follow the 1999 Standards in order to comply with regulations or to be

awarded contracts.  Because the 1999 Standards in their entirety are law, there is only one correct way to present the law embodied in the 1999 Standards, and that is verbatim.

Alternatively, adoption or incorporation by reference of the 1999 Standards into legislation or regulation is an intervening act of authorship, through which the government has created a new work that is free from copyright restrictions, that being the 1999 Standards as law.

### 3.   **Lack of ownership of the alleged copyrights bars Plaintiffs' claims.**

Public Resource includes this defense out of an abundance of caution, but this is not an issue on which Public Resource bears the burden of proof, and in pleading this defense among its affirmative and other defenses Public Resource does not intend to shift the burden of proof. Moreover, Public Resource's investigation is ongoing.

Public Resource incorporates its response to Plaintiffs' Interrogatories Nos. 9-11, stating instances that Public Resource is aware of where the 1999 Standards have been incorporated by reference into the law or cited by a governmental agency.  The 1999 Standards have been formally incorporated by reference into the law, and therefore the 1999 Standards are now law. As law, the 1999 Standards have entered the public domain and are not subject to copyright protection or ownership.  The law is a fact and is not subject to copyright protection or ownership.  In addition, the law is a procedure, process, system, or method of operation and is not subject to copyright protection or ownership.  Plaintiffs designed the 1999 Standards for use and adoption by governmental agencies and policymakers, they promoted the use and citation of the 1999 Standards by governmental agencies and policymakers, and they lobbied for the mandating of the 1999 Standards by law.  The 1999 Standards have been adopted by governmental agencies.  Governmental agencies require that members of the public follow the 1999 Standards in order to comply with regulation or to be awarded contracts.  Because the 1999 Standards are law, there is only one correct way to present the law contained in the 1999 Standards, and that is verbatim.

Plaintiffs did not author the 1999 Standards and do not own the copyright for the component parts of the 1999 Standards.  The 1999 Standards were authored by hundreds of individuals and organizations that were not employees or agents of the Plaintiffs, and who did not create the 1999 Standards as a work-for-hire for the Plaintiffs.  Plaintiffs did not require any of the individuals or organizations that created the 1999 Standards to assign their copyright interests in the 1999 Standards to Plaintiffs at the time that the 1999 Standards were created.  In preparation for this litigation and during the course of this litigation, Plaintiffs have allegedly obtained 15 agreements purporting to assign to Plaintiffs the copyright interests from individuals who participated in the creation of the 1999 Standards.  Two of these purported copyright assignments are allegedly from the heirs of deceased individuals who participated in the development of the 1999 Standards, and the contracts underlying these purported assignments lack consideration and are therefore void.  Plaintiffs have tried to obtain a copyright assignment from at least one other individual, Manfred Meier, but have failed.  Plaintiffs have also acknowledged that they do not have an assignment of copyright from another individual who authored content in the 1999 Standards, Albert E. Beaton.  Plaintiffs have not attempted to obtain copyright assignments from the hundreds of other individuals and organizations that participated in the creation of the 1999 Standards.  In those instances where Plaintiffs obtained purported copyright assignments, Plaintiffs failed to ensure that no other individual or entity owned the copyright to the contributions of the assignors, such as the employers of the assignors at the time that the 1999 Standards were created.

Plaintiffs have stated that the 1999 Standards are technical documents with a functional purpose.  The 1999 Standards are technical documents with a functional purpose concerning ideas, procedures, processes, systems, methods of operation, concepts, or principles, not creative works as required under 17 U.S.C. § 102.  Because the 1999 Standards are technical documents with a functional purpose, there is only one correct way to present the functional information contained in the 1999 Standards, and that is verbatim.  Therefore, Plaintiffs do not own a valid copyright for the 1999 Standards because they are uncopyrightable.

4.      **The doctrine of copyright fair use bars Plaintiffs' claims.**

Public Resource incorporates its response to Plaintiffs' Interrogatories Nos. 9-11, stating instances that Public Resource is aware of where the 1999 Standards have been incorporated by reference into the law or cited by a governmental agency.  The 1999 Standards are law, and therefore fact (including the fact of the speech act of governments that have made them binding on the public).  Because the 1999 Standards are law, there is only one correct way to present the law contained in the 1999 Standards, and that is verbatim.  The 1999 Standards are a technical document with a functional purpose concerning ideas, procedures, processes, systems, methods of operation, concepts, or principles, not creative works.  Because the 1999 Standards are a technical document with a functional purpose, there is only one correct way to present the functional information contained in the 1999 Standards, and that is verbatim.

Public Resource created an electronic version of the 1999 Standards and posted that electronic version to the Public Resource website on the Internet.  Plaintiffs have never made an electronic version of the 1999 Standards available to the public for free or for purchase, and Plaintiffs have stated that they do not intend to make an electronic version of the 1999 Standards available to the public for free or for purchase in the future.  The electronic versions of the 1999 Standards that Public Resource posted on its website and on the Internet Archive website are accessible to people who are blind or have other visual disabilities or impairments, while the paper copies of the 1999 Standards printed by Plaintiffs are not.  Versions of the 1999 Standards that are accessible to people who are blind or have other visual impairments or disabilities are not available to people who are blind or have other visual impairments or disabilities through alternative sources.  Before Defendant posted an electronic version of the 1999 Standards to the Internet, people who are blind or have other visual impairments or disabilities had no means of independently accessing the contents of the 1999 Standards.  Plaintiffs do not offer to the public free copies of the 1999 Standards, and before Public Resource posted a version to its website, members of the public had either to pay a fee to view the contents of the 1999 Standards or to

travel to a location where the 1999 Standards had been deposited for public viewing, such as the Office of the Federal Register in Washington, D.C. The travel costs of such an endeavor are potentially even greater than the costs of purchase, making access prohibitively expensive for many individuals and organizations.  The electronic version of the 1999 Standards that Public Resource posted to the Internet allowed citizens to read, critique, compare, comment on, and otherwise use the 1999 Standards in ways that were not easy or possible when only paper copies were available for purchase.

Plaintiffs have released a new set of standards that supersedes the 1999 Standards (the "2014 Standards"), and Plaintiffs have stopped selling the 1999 Standards to the public. Plaintiffs state in their complaint that they have given free copies of the 1999 Standards to students and to professors.  Plaintiffs state that once costs are accounted for, all revenue from the sale of the 1999 Standards goes into a fund for the development of the next edition of the standards, but that next edition has already been developed and released, and Plaintiffs have stopped selling the 1999 Standards in favor of selling only the 2014 edition instead.  Plaintiffs intended the 1999 Standards to be mandated by the government and incorporated into the law, and they have reaped the benefits of the 1999 Standards having been made law: citizens have had to purchase copies of the 1999 Standards from Plaintiffs; Plaintiffs have enjoyed the credibility that comes from having the 1999 Standards made law; Plaintiffs' members have been able to participate in the development of the 1999 Standards in order to promote inclusion of provisions that benefit them; Plaintiffs have enjoyed greater membership enrollment and participation as a result of the 1999 Standards being made law; and Plaintiffs have enjoyed greater attendance at training programs and other educational sessions on the 1999 Standards as a result of the 1999 Standards having been made law.  Plaintiffs have celebrated the incorporation by reference of the 1999 Standards into law because it has given Plaintiffs prestige and authority in the realm of testing and assessment.  Incorporation of the 1999 Standards into law also allows the Plaintiffs to sell training programs and guides to the public to educate the public on compliance with the 1999 Standards.  Public Resource's posting of an electronic version of the 1999 Standards to the

Internet compromises none of those benefits.  Plaintiffs' revenues from the sale of the 1999
Standards had naturally decreased after the 1999 Standards had been available for over a decade,
and the public was aware that they would soon be replaced by the 2014 edition of the Standards.
Individuals and organizations that want to ensure they have authentic copies of the 1999
Standards would seek to purchase the 1999 Standards from Plaintiffs, rather than viewing a
version on the Internet that the Plaintiffs have not certified as official.

The entirety of the 1999 Standards has been incorporated by reference into the law.
Public Resource posted that law on the Internet, namely the 1999 Standards in their entirety.
Scholarship, criticism, analysis, and other public engagements with the law are not possible
without access to the complete 1999 Standards.  Therefore, Public Resource posted on the
Internet as much of the 1999 Standards as was necessary to fulfill its purposes for facilitating
scholarship, criticism, analysis, and other public engagements with the law.


5.    **The doctrine of unclean hands bars Plaintiffs' claims.**

The doctrine of unclean hands bars Plaintiffs' claim against Public Resource because
Plaintiffs have perpetrated a fraud on the Copyright Office by claiming copyright to a work that
they did not author, they did not own any portion of the copyright at the time that the copyright
was registered, the did not own the copyright when they sought amendment of the copyright
registration.  Plaintiffs did not author the 1999 Standards and do not own the copyright for the
component parts of the 1999 Standards.  The 1999 Standards were authored by hundreds of
individuals and organizations that were not employees or agents of the Plaintiffs, and who did
not author the 1999 Standards as a work-for-hire for the Plaintiffs.  Plaintiffs did not require any
of the individuals or organizations that authored the 1999 Standards to assign their copyright
interests in the 1999 Standards to Plaintiffs at the time that the 1999 Standards were authored.  In
preparation for this litigation and during the course of this litigation, Plaintiffs have allegedly
obtained 15 agreements purporting to assign to Plaintiffs the copyright interests from individuals
who participated in the development of the 1999 Standards.  Two of these purported copyright

10

assignments are allegedly from the heirs of deceased individuals who participated in the development of the 1999 Standards, and the contracts underlying these purported assignments lack consideration and are therefore void.  Plaintiffs have tried to obtain a copyright assignment from at least one other individual, Manfred Meier, but have failed.  Plaintiffs have also acknowledged that they do not have an assignment of copyright from another individual who authored content in the 1999 Standards, Albert E. Beaton.  Plaintiffs have not attempted to obtain copyright assignments from the hundreds of other individuals and organizations that participated in the development of the 1999 Standards.  In those instances where Plaintiffs obtained purported copyright assignments, Plaintiffs failed to ensure that no other individual or entity owned the copyright to the contributions of the assignors, such as the employers of the assignors at the time that the 1999 Standards were created.  Plaintiffs are not joint authors of the 1999 Standards.  To the extent Plaintiffs claim to be a joint author of the 1999 Standards, they have not acted consistent with such a claim. Plaintiffs did not register the 1999 Standards with the U.S. Copyright Office as a joint work. Plaintiffs have not compensated other alleged joint authors of the work in proportion to their contribution.  In the alternative, Plaintiffs do not own a valid copyright for the 1999 Standards because it is uncopyrightable.  Plaintiffs have stated that the 1999 Standards are technical documents with a functional purpose.  The 1999 Standards are technical documents with a functional purpose concerning ideas, procedures, processes, systems, methods of operation, concepts, or principles, not creative works as required under 17 U.S.C. § 102.  Because the 1999 Standards are technical documents with a functional purpose, there is only one correct way to present the functional information contained in the 1999 Standards, and that is verbatim.

Unclean hands bars Plaintiffs' claim against Public Resource because Plaintiffs have misrepresented the scope of their alleged copyright to the Court by claiming that they own a greater portion of the works than they actually do, and continuing to claim such ownership even after they have admitted failure in obtaining copyright assignments from all the creators of the 1999 Standards.  Plaintiffs did not author the 1999 Standards and do not own the copyright for

11

the component parts of the 1999 Standards.  The 1999 Standards were authored by hundreds of

individuals and organizations that were not employees of the Plaintiffs, and who did not author

the 1999 Standards as a work-for-hire for the Plaintiffs.  Plaintiffs did not require any of the

individuals or organizations that created the 1999 Standards to assign their copyright interests in

the 1999 Standards to Plaintiffs at the time that the 1999 Standards were authored.  In

preparation for this litigation and during the course of this litigation, Plaintiffs have allegedly

obtained 15 agreements purporting to assign to Plaintiffs the copyright interests from individuals

who participated in the development of the 1999 Standards.  Two of these purported copyright

assignments are allegedly from the heirs of deceased individuals who participated in the

development of the 1999 Standards, and the contracts underlying these purported assignments

lack consideration and are therefore void.  Plaintiffs have tried to obtain a copyright assignment

from at least one other individual, Manfred Meier, but have failed.  Plaintiffs have also

acknowledged that they do not have an assignment of copyright from another individual who

authored content in the 1999 Standards, Albert E. Beaton.  Plaintiffs have not attempted to obtain

copyright assignments from the hundreds of other individuals and organizations that participated

in the development of the 1999 Standards.  In those instances where Plaintiffs obtained purported

copyright assignments, Plaintiffs failed to ensure that no other individual or entity owned the

copyright to the contributions of the assignors, such as the employers of the assignors at the time

that the 1999 Standards were authored.  Plaintiffs are not joint authors of the 1999 Standards.  To

the extent Plaintiffs claim to be a joint author of the 1999 Standards, they have not acted

consistent with such a claim. Plaintiffs did not register the 1999 Standards with the U.S.

Copyright Office as a joint work. Plaintiffs have not compensated other alleged joint authors of

the work in proportion to their contribution.  In the alternative, Plaintiffs do not own a valid

copyright for the 1999 Standards because it is uncopyrightable.  Plaintiffs have stated that the

1999 Standards are technical documents with a functional purpose.  The 1999 Standards are

technical documents with a functional purpose concerning ideas, procedures, processes, systems,

methods of operation, concepts, or principles, not creative works as required under 17 U.S.C.

§ 102.  Because the 1999 Standards are technical documents with a functional purpose, there is only one correct way to present the functional information contained in the 1999 Standards, and that is verbatim.

      6.     **The doctrine of copyright misuse bars Plaintiffs' claims.**

Plaintiffs have successfully colluded to eliminate and prevent the existence of competing standards in the field of testing and assessment.  One of the purposes of Plaintiffs' collusion to eliminate and prevent the existence of competing standards in the field of testing and assessment is to ensure that government entities adopted, and made law, only Plaintiffs' standards (in this case the 1999 Standards).  As a result of Plaintiffs' collusion, government entities have no comparable alternative standards in the field of testing and assessment to draw on for reference, citation, adoption, or incorporation by reference, and governments have therefore selected the 1999 Standards for reference, citation, adoption, or incorporation by reference.  Plaintiffs' collusive practices have eliminated competition in the field of testing and assessment standards and ensured that the 1999 Standards was made law, and therefore Plaintiffs' claim against Public Resource for copyright infringement and contributory copyright infringement is barred by the doctrine of copyright misuse.

Public Resource incorporates its response to Plaintiffs' Interrogatories Nos. 9-11, stating instances that Public Resource is aware of where the 1999 Standards have been incorporated by reference into the law or cited by a governmental agency.  Plaintiffs have lobbied government entities and officials for the purpose of encouraging the citation, use, adoption, and incorporation by reference of the 1999 Standards into law, and have succeeded in getting the 1999 Standards cited, used, adopted, and incorporated by reference by government entities into law.  The 1999 Standards are now law.  Plaintiffs have later attempted to expand the protection that copyright law affords beyond the copyrighted work itself, to improperly assert copyright over the law that consists of the 1999 Standards.  Plaintiffs' actions in improperly asserting copyright control

beyond the limits of copyright protection to cover the use, posting, reproducing, accessing, or production of derivative works of the law is barred by the doctrine of copyright misuse.

Plaintiffs have lobbied government entities and officials for the purpose of encouraging the citation, use, adoption, and incorporation by reference of the 1999 Standards into law, and have succeeded in getting the 1999 Standards cited, used, adopted, and incorporated by reference by government entities into law.  The 1999 Standards are now law.  Plaintiffs have later wrongfully told members of the public, including users of the Public Resource and Internet Archive websites, that use, posting, reproducing, accessing, or production of derivative works of the 1999 Standards as law is prohibited by copyright law, and Plaintiffs have therefore wrongfully interfered with Public Resource's ongoing non-profit mission and activities. Plaintiffs' actions in improperly expanding copyright control beyond the limits of copyright protection for the 1999 Standards to controlling the law in order to interfere with the ongoing non-profit mission and activities of Public Resource constitutes copyright misuse and Plaintiffs' claims for copyright infringement and contributory copyright infringement is therefore barred.

The 1999 Standards are uncopyrightable, in whole or in part, because they are law, they are factual material (including but not limited to speech acts of government), they are the only way to express the concepts or ideas contained with their pages, and they are a technical document with a functional purpose concerning ideas, procedures, processes, systems, methods of operation, concepts, or principles, not a creative work as required under 17 U.S.C. § 102.  By this litigation, Plaintiffs have attempted to prevent the lawful use, posting, reproducing, accessing, or production of derivative works of the law.  Plaintiffs' attempt to prevent the lawful use of uncopyrightable material constitutes copyright misuse, and Plaintiffs' claims for copyright infringement and contributory copyright infringement are therefore barred.

7.   **Waiver and estoppel bar Plaintiffs' claims.**

Public Resource incorporates its response to Plaintiffs' Interrogatories Nos. 9-11, stating instances that Public Resource is aware of where the 1999 Standards have been incorporated by

reference into the law or cited by a governmental agency.  Plaintiffs have abandoned or forfeited any copyright they may have had in the 1999 Standards by lobbying the government for adoption of the 1999 Standards into law, and the subsequent adoption of the 1999 Standards into law.

Plaintiffs are estopped from asserting copyright infringement or contributory copyright infringement because Public Resource has suffered detrimentally as a result of reliance on the conduct of Plaintiffs in lobbying for the 1999 Standards to be adopted into law.  Plaintiffs' actions in seeking and succeeding in making the 1999 Standards law induced Public Resource to believe that Plaintiffs no longer would seek to limit the public accessibility of the 1999 Standards, because they are now law.

8.      **Lack of irreparable injury bars Plaintiffs' demand for injunction.**

Public Resource includes this defense out of an abundance of caution, but this is not an issue on which Public Resource bears the burden of proof, and in pleading this defense among its affirmative and other defenses Public Resource does not intend to shift the burden of proof.  Moreover, Public Resource's investigation is ongoing.

Plaintiffs have released a new set of standards that supersedes the 1999 Standards (the "2014 Standards"), and Plaintiffs have now stopped selling the 1999 Standards to the public.  Plaintiffs state in their complaint that they have given free copies of the 1999 Standards to students and to professors.  They have further stated that, once costs are accounted for, all revenue from the sale of the 1999 Standards goes into a fund for the development of the next edition of the standards, but that next edition has already been developed and released, and Plaintiffs have stopped selling the 1999 Standards in favor of selling the 2014 edition instead.  Plaintiffs intended for the 1999 Standards to be mandated by the government and incorporated into the law, and they have reaped the benefits of the 1999 Standards having been made law: citizens have had to purchase copies of the 1999 Standards from Plaintiffs; Plaintiffs have enjoyed the credibility that comes from having the 1999 Standards made law; Plaintiffs' members have been able to participate in the development of the 1999 Standards to include

provisions that benefit them; Plaintiffs have enjoyed greater membership enrollment and
participation as a result of the 1999 Standards being made law; and Plaintiffs have enjoyed
greater attendance at training programs and other educational sessions on the 1999 Standards as a
result of the 1999 Standards having been made law.  Plaintiffs have celebrated the incorporation
by reference of the 1999 Standards into law, as it has given Plaintiffs prestige and authority in
the realm of testing and assessment.  Incorporation of the 1999 Standards into law also allows
the Plaintiffs sell training programs and guides to the public to educate the public on compliance
with the 1999 Standards.  Public Resource's posting of an electronic version of the 1999
Standards to the Internet has compromised none of those benefits.  Plaintiffs' revenues from the
sale of the 1999 Standards had naturally decreased after the 1999 Standards had been available
for over a decade, and the public was aware that they would soon be replaced by the 2014 edition
of the Standards.  Individuals and organizations that want to ensure they have authentic copies of
the 1999 Standards would seek to purchase the 1999 Standards from Plaintiffs, rather than
viewing a version on the Internet that the Plaintiffs have not certified as official.


      9.      **Injunction would greatly harm the public interest and thus the public
interest bars Plaintiffs' demand for injunction.**

Public Resource includes this defense out of an abundance of caution, but this is not an
issue on which Public Resource bears the burden of proof, and in pleading this defense among its
affirmative and other defenses Public Resource does not intend to shift the burden of proof.
Moreover, Public Resource's investigation is ongoing.

Currently, Plaintiffs do not offer the 1999 Standards for sale, and Public Resource has
taken down the electronic version of the 1999 Standards, pending the resolution of this case.
This means that citizens affected by the 1999 Standards as law, including those who must
comply with this law, have no way to access the 1999 Standards except by attempting to
purchase second-hand copies, or to travel to a location that offers a copy of the 1999 Standards
for viewing by the public.  An electronic version of the 1999 Standards is no longer available to

the public.  People who are blind or who have reading or visual impairments now have no way to independently access the content of the 1999 Standards.  An injunction would continue this harm to citizens and their democratic rights, and leave the public without adequate options for accessing, using, evaluating, comparing, producing derivative works from, or discussing the law by which they are governed.

Public Resource's investigation is ongoing, and Public Resource reserves the right to amend or supplement its responses as the case proceeds.  Additional facts responsive to this interrogatory are in the possession of Plaintiffs.

Date: June 4, 2015                FENWICK & WEST LLP

*/s/ Andrew P. Bridges*
Andrew P. Bridges (admitted)
abridges@fenwick.com
Matthew B. Becker (pro hac vice)
mbecker@fenwick.com
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350

David Halperin (D.C. Bar No. 426078)
davidhalperindc@gmail.com
1530 P Street NW
Washington, DC 20005
Telephone: (202) 905-3434

Corynne McSherry (pro hac vice)
corynne@eff.org
Mitchell L. Stoltz (D.C. Bar No. 978149)
mitch@eff.org
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

*Attorneys for Defendant-Counterclaimant*
PUBLIC.RESOURCE.ORG, INC.

## **VERIFICATION**

I, Carl Malamud, declare:

I am President of Public.Resource.Org, a nonprofit corporation organized and existing under the laws of California, which is the defendant in the above-entitled action, and I have been authorized to make this verification on its behalf.

I have read the foregoing DEFENDANT-COUNTERCLAIMANT PUBLIC.RESOURCE.ORG, INC.'S SECOND AMENDED RESPONSES TO PLAINTIFF-COUNTERDEFENDANTS' FIRST SET OF INTERROGATORIES (NO. 8) and know its contents. They are true, except as to those matters identified as on information and belief, and, as to those matters, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 4th day of June, 2015.

_____
Carl Malamud