# EXHIBIT Z

Case No. 1:14-cv-00857-TSC-DAR



<span style="color:red">CONFIDENTIAL</span>

# Transcript of **James R. Fruchterman**

**Date:** September 8, 2015

**Case:** American Educational Research Assoc., Inc., et al -v- Public.Resource.Org., Inc.

Planet Depos
Phone: 888-433-3767
Fax: 888-503-3767
Email: transcripts@planetdepos.com
Internet: <www.planetdepos.com>

Court Reporting | Videography | Videoconferencing | Interpretation | Transcription

1

1                UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF COLUMBIA

3

4    AMERICAN EDUCATIONAL RESEARCH

5    ASSOCIATION, INC., ET AL.,

6            PLAINTIFF,

7         vs.                    No.  1:14-CV-00857-TSC-DAR

8    PUBLIC.RESOURCE.ORG, INC.,

9            DEFENDANT.

     _____

10

11

12

13              VIDEOTAPED DEPOSITION OF

14             JAMES R. FRUCHTERMAN

15                 CONFIDENTIAL

16          Tuesday, September 8, 2015

17

18

19

20

21

22

23

24    Reported By:

25    KATHLEEN WILKINS, CSR #10068, RPR-RMR-CRR-CCRR-CLR

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

2

1          VIDEOTAPED DEPOSITION OF JAMES R. FRUCHTERMAN

2              BE IT REMEMBERED that on Tuesday,

3      September 8, 2015, commencing at the hour of

4      9:21 a.m. thereof, at FENWICK & WEST, LLP, 801

5      California Street, Mountain View, California,

6      before me, Kathleen A. Wilkins,

7      RPR-RMR-CRR-CCRR-CLR, a Certified Shorthand

8      Reporter, in and for the State of California,

9      personally appeared JAMES R. FRUCHTERMAN, a

10     witness in the above-entitled court and cause,

11     who, being by me first duly sworn, was thereupon

12     examined as a witness in said action.

13

14

15

16

17

18

19

20

21

22

23

24

25

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

3

```
 1              APPEARANCES OF COUNSEL
 2     FOR THE PLAINTIFFS:
 3              QUARLES & BRADY LLP
 4              BY:  JONATHAN HUDIS, ESQ.
 5              1700 K Street, NW, Suite 825
 6              Washington, D.C.  20006
 7              Telephone:  (202) 372-9599
 8              E-mail:  jon.hudis@quarles.com
 9              and
10              OBLON, MCCLELLAND, MAIER & NEUSTADT,
11              L.L.P.
12              BY:  KATHERINE D. CAPPAERT, ESQ.
13              1940 Duke Street
14              Alexandria, Virginia  22314
15              Telephone:  (703) 413-3000
16              E-mail:  Kcappaert@oblon.com
17     FOR THE DEFENDANT:
18              FENWICK & WEST, LLP
19              BY:  SEBASTIAN KAPLAN, ESQ.
20              555 California Street, 12th Floor
21              San Francisco, California  94104
22              Telephone:  (415) 875-2477
23              E-mail:  skaplan@fenwick.com
24     ALSO PRESENT:
25              STEVE PATAPOFF, VIDEOGRAPHER
```

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

4

1                      INDEX

2             INDEX OF EXAMINATIONS

3                                        PAGE

4    EXAMINATION BY MR. HUDIS .....................9

5    AFTERNOON SESSION .........................143

6

7                 INDEX OF EXHIBITS

8    EXHIBIT          DESCRIPTION          PAGE

9    Exhibit 48    Document entitled, ...........12

10                 "Subpoena to Testify in a

11                 Civil Action"

12   Exhibit 49    Curriculum Vitae, James .......21

13                 R. Fruchterman

14   Exhibit 50    Spreadsheet entitled, ........41

15                 "Patents, Trademarks and

16                 Copyrights of Calera

17                 Recognition Systems,

18                 Inc."

19   Exhibit 51    Spreadsheet entitled, ........50

20                 "Patents and Trademarks

21                 of RAF Technology, Inc."

22   Exhibit 52    Document entitled, ...........68

23                 "Patents and Trademarks

24                 of Arkenstone, Inc."

25   / /

CONTAINS CONFIDENTIAL INFORMATION
PLANET DEPOS | 888.433.3767 | WWW.PLANETDEPOS.COM

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

5

1           INDEX OF EXHIBITS (Continued)

2    EXHIBIT              DESCRIPTION              PAGE

3    Exhibit 53A    United States Patent No. ......69

4                   5,470,233

5    Exhibit 53B    Document entitled, ............69

6                   "Abstract of Title for

7                   Application 08210239"

8    Exhibit 54     Spreadsheet entitled, .........98

9                   "Trademarks and

10                  Copyrights of Beneficent,

11                  Inc."

12   Exhibit 55     Screenshots from .............143

13                  Bookshare website

14   Exhibit 56     Document entitled, "The ......179

15                  Chafee Amendment:

16                  Improving Access to

17                  Information"

18   Exhibit 57     Article entitled, ............185

19                  "Developing Information

20                  Technology to Meet Social

21                  Needs"

22   Exhibit 58     Document entitled, ..........190

23                  "Assistive Technology for

24                  Visually Impaired and

25                  Blind People"

CONTAINS CONFIDENTIAL INFORMATION
PLANET DEPOS | 888.433.3767 | WWW.PLANETDEPOS.COM

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

6

1              INDEX OF EXHIBITS (Continued)

2       EXHIBIT            DESCRIPTION              PAGE

3       Exhibit 59     Document entitled, ..........208

4                      "Declaration of James

5                      Fruchterman in Support of

6                      Motion For Summary

7                      Judgment"

8       Exhibit 60     Document entitled, ..........208

9                      "Supplemental Declaration

10                     of James Fruchterman In

11                     Support of Defendant

12                     Intervenors' Opposition

13                     to Plaintiffs' Motion For

14                     Summary Judgment"

15      Exhibit 61     Westlaw reported version .....229

16                     of district court opinion

17                     in the Authors Guild,

18                     Inc. versus HathiTrust,

19                     et al., reported at 902

20                     F.Supp.2d 445

21

22

23

24

25      / /

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

7

1              INDEX OF EXHIBITS (Continued)

2      EXHIBIT            DESCRIPTION            PAGE

3      Exhibit 62      Lexis reported version of ....237

4                      the Second Circuit Court

5                      of Appeals decision in

6                      Authors Guild versus

7                      HathiTrust reported at

8                      755 F.3d 87

9      Exhibit 63      Document entitled, "The ......241

10                     Internet Archive's Open

11                     Library is violating

12                     authors' copyrights"

13     Exhibit 64      Document entitled, ..........249

14                     "Expert Report of James

15                     R. Fruchterman"

16

17             EXHIBITS PREVIOUSLY MARKED

18         AND REFERRED TO IN THIS DEPOSITION

19     EXHIBIT                               PAGE

20     Exhibit 34                            304

21

22     QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER

23                     PAGE    LINE

24                     221      8

25                     227      4

CONTAINS CONFIDENTIAL INFORMATION

Case 1:14-cv-00857-TSC   Document 60-34   Filed 12/21/15   Page 10 of 36
Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

8

| | | |
|---|---|---|
| 1 | September 8, 2015                          9:21 A.M. | |
| 2 | P R O C E E D I N G S | |
| 3 | THE VIDEOGRAPHER:  Good morning.  Here | 09:16:23 |
| 4 | begins Tape No. 1 in the video deposition of | 09:20:44 |
| 5 | James Fruchterman in the matter of American | 09:20:47 |
| 6 | Educational Research Association, Incorporated, et | 09:20:49 |
| 7 | al., versus Public.Resource.Org, Incorporated, in | 09:20:53 |
| 8 | the U.S. District Court of the District of | 09:21:00 |
| 9 | Columbia, Case Number 1:14-CV-00857-TSC-DAR. | 09:21:02 |
| 10 | Today's date is September 8th, 2015. | 09:21:12 |
| 11 | Time on the video monitor is 9:21 a.m.  The | 09:21:15 |
| 12 | videographer today is Steve Patapoff representing | 09:21:18 |
| 13 | Planet Depos.  The video deposition is taking | 09:21:21 |
| 14 | place at Fenwick & West, 801 California Street, | 09:21:23 |
| 15 | Mountain View, California. | 09:21:26 |
| 16 | Would counsel please voice-identify | 09:21:29 |
| 17 | themselves and state whom they represent. | 09:21:31 |
| 18 | MR. HUDIS:  Jonathan Hudis, | 09:21:35 |
| 19 | Quarles & Brady, LLP, for plaintiffs. | 09:21:36 |
| 20 | MS. CAPPAERT:  Katherine Cappaert from | 09:21:41 |
| 21 | Oblon, LLP, for plaintiffs. | 09:21:46 |
| 22 | MR. KAPLAN:  Sebastian Kaplan, | 09:21:48 |
| 23 | Fenwick & West, LLP, for defendant | 09:21:49 |
| 24 | Public.Resource.Org, Incorporated. | 09:21:52 |
| 25 | THE VIDEOGRAPHER:  Court reporter today | 09:21:56 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

9

| | | |
|---|---|---|
| 1 | is Kathleen Wilkins representing Planet Depos. | 09:21:56 |
| 2 | Would the reporter please swear in the | 09:21:59 |
| 3 | witness. | 09:22:01 |
| 4 | JAMES R. FRUCHTERMAN, | 09:22:11 |
| 5 | having been duly sworn, | 09:22:11 |
| 6 | was examined and testified as follows: | 09:22:11 |
| 7 | EXAMINATION BY MR. HUDIS | 09:22:10 |
| 8 | BY MR. HUDIS: | 09:22:11 |
| 9 | Q.    Good morning, sir.  Would you state your | 09:22:13 |
| 10 | full name and address for the record. | 09:22:15 |
| 11 | A.    James Robert Fruchterman, Jr. | 09:22:18 |
| 12 | 1850 Middlefield Road, Palo Alto, California. | 09:22:20 |
| 13 | Q.    And is that your business address or | 09:22:26 |
| 14 | your home address? | 09:22:28 |
| 15 | A.    My home address. | 09:22:30 |
| 16 | Q.    Could I have your business address, | 09:22:31 |
| 17 | please. | 09:22:33 |
| 18 | A.    My business address is 4780 California | 09:22:33 |
| 19 | Avenue, Palo Alto, California. | 09:22:36 |
| 20 | Q.    Mr. Fruchterman, I am here -- my name is | 09:22:39 |
| 21 | Jonathan Hudis, representing the plaintiffs in an | 09:22:41 |
| 22 | action in which you've been designated as an | 09:22:45 |
| 23 | expert witness. | 09:22:47 |
| 24 | My colleague, Katherine Cappaert, is | 09:22:48 |
| 25 | here with me and will be working with me during | 09:22:50 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

29

| | | |
|---|---|---|
| 1 | as you sit here today? | 09:47:43 |
| 2 | A.    Oh, many ideas.  Microfluidics, math and | 09:47:46 |
| 3 | science simulation software, more pattern | 09:47:57 |
| 4 | recognition companies, but none of these reached | 09:48:06 |
| 5 | the point of where I was actually employed, | 09:48:10 |
| 6 | because they never got started. | 09:48:13 |
| 7 | Q.    Could you define for us microfluidics? | 09:48:14 |
| 8 | A.    It's a semiconductor-based technology | 09:48:18 |
| 9 | for moving gases or fluids rather than electrical | 09:48:22 |
| 10 | current, but under the control of electrical | 09:48:28 |
| 11 | signals. | 09:48:32 |
| 12 | Q.    Any other notable projects in your | 09:48:41 |
| 13 | working background that you haven't told us about? | 09:48:44 |
| 14 | MR. KAPLAN:  Objection.  Vague. | 09:48:47 |
| 15 | THE WITNESS:  I taught night school, in | 09:48:49 |
| 16 | computer programming.  I crawled under houses as | 09:48:51 |
| 17 | part of helping homeowners understand more of | 09:48:59 |
| 18 | their earthquake risks.  But those were back in | 09:49:03 |
| 19 | the early '80s, when I was trying to get my first | 09:49:08 |
| 20 | company really going. | 09:49:11 |
| 21 | BY MR. HUDIS: | 09:49:14 |
| 22 | Q.    Since it's a fair part of your expert's | 09:49:20 |
| 23 | report, Mr. Fruchterman, in simple terms could you | 09:49:24 |
| 24 | please define what is "optical character | 09:49:28 |
| 25 | recognition" and what does it do? | 09:49:31 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

30

1    A.    So optical character recognition is the         09:49:36

2    process of having a machine recognizing letters       09:49:41

3    and words, generally from documents, though it can    09:49:44

4    be from other objects, and translating those into     09:49:49

5    the letter or word equivalent so that those things    09:49:53

6    can be processed.                                      09:49:59

7         So the most common application of                09:50:00

8    optical character recognition is scanning, let's      09:50:03

9    say, a page of a document and turning it into a       09:50:07

10   word processor file that is the equivalent of what    09:50:09

11   you would have done if you had typed it in, but       09:50:14

12   the machine, instead, had it scanned and then took    09:50:16

13   the picture of the page and turned it into the        09:50:19

14   text of the page.                                      09:50:23

15   Q.    So for the remainder of this deposition,        09:50:25

16   if I use the initials "OCR," we'll understand that    09:50:28

17   to mean "optical character recognition"?              09:50:32

18   A.    Yes.                                            09:50:35

19   Q.    Is OCR a common method of creating              09:50:36

20   searchable digital copies of texts?                   09:50:39

21        MR. KAPLAN:  Objection.  Competence.             09:50:47

22   Vague.                                                09:50:52

23        THE WITNESS:  It is the most common form         09:50:55

24   when the source document is in physical or solely     09:50:56

25   image-based form, but it's probably not the most      09:51:02

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

31

| | | |
|---|---|---|
| 1 | common. | 09:51:07 |
| 2 | BY MR. HUDIS: | 09:51:07 |
| 3 | Q.    What is the most common? | 09:51:07 |
| 4 | A.    Having digitally created content that | 09:51:09 |
| 5 | stays digital and then is searched. | 09:51:11 |
| 6 | Q.    So, for example -- | 09:51:13 |
| 7 | MR. KAPLAN:  Can I just interject.  For | 09:51:14 |
| 8 | the court reporter, you had my objection as | 09:51:16 |
| 9 | "compound."  It was "competence."  I just wanted | 09:51:17 |
| 10 | to make sure we had that on the record. | 09:51:21 |
| 11 | BY MR. HUDIS: | 09:51:50 |
| 12 | Q.    So, for example, Mr. Fruchterman, a | 09:51:50 |
| 13 | document created in Microsoft Word would be a | 09:51:52 |
| 14 | method of creating searchable digital text? | 09:51:58 |
| 15 | MR. KAPLAN:  Objection.  Incomplete | 09:52:01 |
| 16 | hypothetical.  Vague. | 09:52:02 |
| 17 | THE WITNESS:  It would be a great source | 09:52:06 |
| 18 | document to put into a system that analyzed | 09:52:07 |
| 19 | documents for full text.  I'm not sure -- could | 09:52:12 |
| 20 | you repeat the question. | 09:52:18 |
| 21 | BY MR. HUDIS: | 09:52:19 |
| 22 | Q.    Yes. | 09:52:20 |
| 23 | So, for example, a document created in | 09:52:23 |
| 24 | Microsoft Word would be a method of creating | 09:52:26 |
| 25 | searchable digital text? | 09:52:29 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

121

| | | |
|---|---|---|
| 1 | I might want to know pages that mention | 12:09:18 |
| 2 | Constitution and bananas on the same page. | 12:09:24 |
| 3 | Q.   All right.  So that would be a Boolean | 12:09:27 |
| 4 | search? | 12:09:29 |
| 5 | A.   Yes.  So there are searches you could | 12:09:29 |
| 6 | do.  Those are easier to do on digital content, | 12:09:31 |
| 7 | obviously.  But, you know, human beings often do | 12:09:34 |
| 8 | word spotting as well.  Skimming.  There's | 12:09:38 |
| 9 | skimming that people do. | 12:09:41 |
| 10 | And -- I mean, there are other tasks | 12:09:42 |
| 11 | that people do.  I choose to focus on those as the | 12:09:47 |
| 12 | primary ones that encompass what 95 percent or | 12:09:51 |
| 13 | more people would want to do with a given | 12:09:55 |
| 14 | document. | 12:09:57 |
| 15 | Q.   And those functional tasks, just to | 12:09:57 |
| 16 | summarize -- I've been listening very carefully -- | 12:10:00 |
| 17 | to obtain the content, to read the content, to use | 12:10:03 |
| 18 | the structure of the document such as by markup or | 12:10:06 |
| 19 | by search, to skim the document and more | 12:10:08 |
| 20 | complicated phrase searches? | 12:10:10 |
| 21 | A.   Yeah. | 12:10:12 |
| 22 | MR. KAPLAN:  Objection.  Misstates | 12:10:13 |
| 23 | testimony. | 12:10:14 |
| 24 | Go ahead. | 12:10:15 |
| 25 | THE WITNESS:  More or less, yeah. | 12:10:16 |

CONTAINS CONFIDENTIAL INFORMATION
PLANET DEPOS | 888.433.3767 | WWW.PLANETDEPOS.COM

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

122

| | | |
|---|---|---|
| 1 | BY MR. HUDIS: | 12:10:17 |
| 2 | Q.    Okay.  All right.  Could Bookshare's | 12:10:18 |
| 3 | members with print disabilities access the content | 12:10:26 |
| 4 | in the TIFF file created by the process you | 12:10:28 |
| 5 | described earlier without having the file undergo | 12:10:33 |
| 6 | an OCR process? | 12:10:36 |
| 7 | MR. KAPLAN:  Objection.  Incomplete | 12:10:39 |
| 8 | hypothetical.  Vague.  Lacks foundation. | 12:10:42 |
| 9 | THE WITNESS:  They could have a human | 12:10:45 |
| 10 | being read it to them. | 12:10:46 |
| 11 | BY MR. HUDIS: | 12:10:54 |
| 12 | Q.    Without intervention by another human | 12:10:56 |
| 13 | being, could Bookshare's members with print | 12:11:00 |
| 14 | disabilities access the TIFF file created as we | 12:11:05 |
| 15 | discussed -- I'm going to rephrase the question. | 12:11:08 |
| 16 | Without human intervention, could | 12:11:15 |
| 17 | Bookshare's members with print disabilities access | 12:11:17 |
| 18 | the content in the TIFF file without having | 12:11:19 |
| 19 | undergone the OCR process? | 12:11:23 |
| 20 | MR. KAPLAN:  Objection.  Incomplete | 12:11:24 |
| 21 | hypothetical.  Vague.  Lacks foundation. | 12:11:26 |
| 22 | THE WITNESS:  I think the answer is no. | 12:11:28 |
| 23 | They need either OCR or a human to access TIFF | 12:11:31 |
| 24 | images if they're completely blind. | 12:11:36 |
| 25 | | |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

123

| | | |
|---|---|---|
| 1 | BY MR. HUDIS: | 12:11:41 |
| 2 | Q. Now, what if they are a low-vision | 12:11:41 |
| 3 | reader? | 12:11:43 |
| 4 | MR. KAPLAN: Objection. Incomplete | 12:11:44 |
| 5 | hypothetical. Vague. Lacks foundation. | 12:11:46 |
| 6 | THE WITNESS: Then they could view the | 12:11:48 |
| 7 | TIFF image magnified or otherwise visually | 12:11:52 |
| 8 | processed and read the document. | 12:11:56 |
| 9 | BY MR. HUDIS: | 12:11:58 |
| 10 | Q. What do you mean by "visually | 12:11:59 |
| 11 | processed"? | 12:11:59 |
| 12 | A. An example -- one obvious example is | 12:12:03 |
| 13 | making it bigger. Another one is reversing the | 12:12:06 |
| 14 | contrast so that instead of being black text on a | 12:12:09 |
| 15 | white background, being white text on black | 12:12:12 |
| 16 | background. There are many other visual things | 12:12:15 |
| 17 | that people with low vision benefit from other | 12:12:18 |
| 18 | than those two. Those are the two most common. | 12:12:22 |
| 19 | Q. With the current state of technology as | 12:12:26 |
| 20 | you know it, how accurate is the OCR process in | 12:12:27 |
| 21 | recognizing words on a printed page? | 12:12:32 |
| 22 | MR. KAPLAN: Objection. Vague. | 12:12:34 |
| 23 | THE WITNESS: It's quite good. | 12:12:38 |
| 24 | BY MR. HUDIS: | 12:12:39 |
| 25 | Q. Is there a known error recognition rate? | 12:12:39 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

166

| | | |
|---|---|---|
| 1 | BY MR. HUDIS: | 01:32:17 |
| 2 | Q.   And that would include what we talked | 01:32:18 |
| 3 | about earlier; that's the storage of the content | 01:32:20 |
| 4 | on your service -- on your servers or, more | 01:32:23 |
| 5 | recently, the Amazon cloud -- | 01:32:26 |
| 6 | MR. KAPLAN:  Objection. | 01:32:29 |
| 7 | BY MR. HUDIS: | 01:32:29 |
| 8 | Q.   -- in a secure manner? | 01:32:29 |
| 9 | MR. KAPLAN:  Objection.  Misstates | 01:32:31 |
| 10 | testimony.  Vague. | 01:32:32 |
| 11 | THE WITNESS:  I would differentiate | 01:32:35 |
| 12 | between things that are just the way we operate | 01:32:36 |
| 13 | the service and representations or changes we've | 01:32:38 |
| 14 | made in conversations with the publishers. | 01:32:41 |
| 15 | There are many, many things where we | 01:32:44 |
| 16 | simply say, We're doing it this way, and -- they | 01:32:45 |
| 17 | don't -- the association doesn't have any ability | 01:32:50 |
| 18 | to approve of our activities.  It's not their | 01:32:53 |
| 19 | place, as it were. | 01:32:57 |
| 20 | BY MR. HUDIS: | 01:32:59 |
| 21 | Q.   Right. | 01:32:59 |
| 22 | A.   They're simply a way to effectively | 01:33:01 |
| 23 | converse with the industry association and with | 01:33:03 |
| 24 | the industry.  And if they see an issue that they | 01:33:06 |
| 25 | think their members want to hear about, they'll go | 01:33:08 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

167

| | | |
|---|---|---|
| 1 | back to their members and talk to them.  So it's | 01:33:12 |
| 2 | an efficiency mechanism. | 01:33:14 |
| 3 | But there is a difference between things | 01:33:16 |
| 4 | we just do and things we've explicitly conversed | 01:33:17 |
| 5 | with them and maybe made changes as a result of | 01:33:21 |
| 6 | that conversation. | 01:33:23 |
| 7 | Q.    So what I'm concerned about is how you | 01:33:24 |
| 8 | worked with the American -- with the Association | 01:33:27 |
| 9 | of American Publishers to make them comfortable | 01:33:30 |
| 10 | that the Bookshare site would not be subject to | 01:33:34 |
| 11 | abuse. | 01:33:37 |
| 12 | MR. KAPLAN:  Objection.  Was there a | 01:33:40 |
| 13 | question? | 01:33:43 |
| 14 | MR. HUDIS:  Yes.  I'll phrase it a | 01:33:44 |
| 15 | different way. | 01:33:48 |
| 16 | Q.    In what ways did you work with the | 01:33:49 |
| 17 | Association of American Publishers to ensure | 01:33:50 |
| 18 | that -- to make them comfortable that the | 01:33:56 |
| 19 | Bookshare site would not be the subject of abuse? | 01:33:59 |
| 20 | That people in the sighted community would not be | 01:34:03 |
| 21 | able to download their content without permission, | 01:34:06 |
| 22 | without compensation? | 01:34:11 |
| 23 | MR. KAPLAN:  Objection.  Argumentative. | 01:34:13 |
| 24 | Vague. | 01:34:14 |
| 25 | THE WITNESS:  Okay.  So we're now in a | 01:34:19 |

CONTAINS CONFIDENTIAL INFORMATION
PLANET DEPOS | 888.433.3767 | WWW.PLANETDEPOS.COM

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

168

| | | |
|---|---|---|
| 1 | much narrower area, and I'd say the | 01:34:21 |
| 2 | representations in our seven-point digital rights | 01:34:25 |
| 3 | management plan were the primary mechanism that we | 01:34:32 |
| 4 | dealt with that particular concern of the | 01:34:37 |
| 5 | publishing industry. | 01:34:40 |
| 6 | BY MR. HUDIS: | 01:34:41 |
| 7 | Q.    Okay.  The last sentence on that page, | 01:34:46 |
| 8 | page 15 of Exhibit 55, it says: | 01:34:49 |
| 9 | "With the extensive input | 01:34:51 |
| 10 | from consumers, authors, | 01:34:54 |
| 11 | publishers and leading | 01:34:56 |
| 12 | organizations, we have created a | 01:34:57 |
| 13 | model for Bookshare that can be | 01:34:59 |
| 14 | supported by a broad array of | 01:35:01 |
| 15 | interests." | 01:35:04 |
| 16 | What model is this passage talking | 01:35:05 |
| 17 | about? | 01:35:08 |
| 18 | MR. KAPLAN:  Objection.  Lacks | 01:35:09 |
| 19 | foundation. | 01:35:10 |
| 20 | THE WITNESS:  The Bookshare operational | 01:35:14 |
| 21 | model. | 01:35:17 |
| 22 | BY MR. HUDIS: | 01:35:21 |
| 23 | Q.    How would you describe the Bookshare | 01:35:21 |
| 24 | operational model? | 01:35:22 |
| 25 | A.    A package of technologies and policies | 01:35:24 |

CONTAINS CONFIDENTIAL INFORMATION
PLANET DEPOS | 888.433.3767 | WWW.PLANETDEPOS.COM

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

169

| | | |
|---|---|---|
| 1 | and legal agreements and product features and -- I | 01:35:27 |
| 2 | mean, you know, it's a -- these things combined | 01:35:33 |
| 3 | create a service that delivers a value to people | 01:35:38 |
| 4 | with disabilities in a way that gets support from | 01:35:46 |
| 5 | these different stakeholders. | 01:35:48 |
| 6 | Q. Including the publishing industry? | 01:35:53 |
| 7 | A. Yes. | 01:35:55 |
| 8 | Q. Could we turn to page 16 of Exhibit 55. | 01:35:57 |
| 9 | Under copyright information, it says: | 01:36:00 |
| 10 | "Bookshare is an online | 01:36:02 |
| 11 | library that provides accessible | 01:36:04 |
| 12 | eBooks to people with print | 01:36:06 |
| 13 | disabilities. Bookshare meets the | 01:36:07 |
| 14 | requirements of the Chafee | 01:36:09 |
| 15 | Amendment which permits an | 01:36:09 |
| 16 | authorized entity like Benetech to | 01:36:12 |
| 17 | make books available to people | 01:36:14 |
| 18 | with print disabilities provided | 01:36:16 |
| 19 | that copies may not be reproduced | 01:36:17 |
| 20 | or distributed in a format other | 01:36:19 |
| 21 | than a specialized format | 01:36:21 |
| 22 | exclusively for use by blind or | 01:36:23 |
| 23 | other persons with disabilities. | 01:36:25 |
| 24 | Must bear a notice that any | 01:36:27 |
| 25 | further reproduction or | 01:36:32 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

170

| | | |
|---|---|---|
| 1 | distribution in a format other | 01:36:33 |
| 2 | than a specialized format is an | 01:36:35 |
| 3 | infringement.  Must include a | 01:36:37 |
| 4 | copyright notice identifying the | 01:36:39 |
| 5 | copyright owner and the date of | 01:36:43 |
| 6 | the original publication. | 01:36:45 |
| 7 | 'Specialized formats' means | 01:36:46 |
| 8 | Braille, audio or digital text | 01:36:50 |
| 9 | which is exclusively intended for | 01:36:53 |
| 10 | use by blind or other persons with | 01:36:54 |
| 11 | disabilities." | 01:36:56 |
| 12 | All right.  So I've read this passage, | 01:36:59 |
| 13 | Mr. Fruchterman. | 01:37:01 |
| 14 | A.    Right. | 01:37:01 |
| 15 | Q.    Does this accurately describe the | 01:37:01 |
| 16 | overall way that Benetech makes reading materials | 01:37:03 |
| 17 | available to its members? | 01:37:07 |
| 18 | MR. KAPLAN:  Objection.  Vague. | 01:37:08 |
| 19 | Misleading. | 01:37:09 |
| 20 | THE WITNESS:  I think that these bullet | 01:37:14 |
| 21 | points that you just read recapitulate the | 01:37:16 |
| 22 | provisions of the Chafee Amendment, which is the | 01:37:19 |
| 23 | primary copyright exception that we use for making | 01:37:23 |
| 24 | copyright material to people with qualifying | 01:37:26 |
| 25 | disabilities inside the United States. | 01:37:28 |

CONTAINS CONFIDENTIAL INFORMATION
PLANET DEPOS | 888.433.3767 | WWW.PLANETDEPOS.COM

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

171

| | | |
|---|---|---|
| 1 | BY MR. HUDIS: | 01:37:31 |
| 2 | Q.    If we could go to page 17 of Exhibit 55. | 01:37:31 |
| 3 | What is the purpose of this page on | 01:37:36 |
| 4 | Bookshare's web site? | 01:37:38 |
| 5 | MR. KAPLAN:  Objection.  Vague.  Lacks | 01:37:40 |
| 6 | foundation. | 01:37:41 |
| 7 | THE WITNESS:  This is part of our, | 01:37:44 |
| 8 | essentially, frequently asked questions, and it's | 01:37:45 |
| 9 | entitled "Digital Millennium Copyright Act." | 01:37:49 |
| 10 | And so as a -- and I'm not a lawyer, but | 01:37:54 |
| 11 | my understanding is is someone who provides access | 01:37:58 |
| 12 | to copyrighted material online, we are required to | 01:38:02 |
| 13 | have a DMCA agent to accept notices that there is | 01:38:06 |
| 14 | content on our web site that infringes the | 01:38:12 |
| 15 | copyright of others. | 01:38:14 |
| 16 | We frequently get DMCA notices from | 01:38:17 |
| 17 | authors or their agents or publishers saying, We | 01:38:23 |
| 18 | searched the web.  This copyright work is on your | 01:38:26 |
| 19 | web site.  Take it down. | 01:38:29 |
| 20 | And this is both explaining the DMCA | 01:38:30 |
| 21 | notice process at some level, as well as the, more | 01:38:36 |
| 22 | or less, if you don't know what the Chafee | 01:38:40 |
| 23 | Amendment is, you should look it up because we're | 01:38:42 |
| 24 | allowed to have it. | 01:38:47 |
| 25 | But I'm summarizing this in very direct | 01:38:48 |

CONTAINS CONFIDENTIAL INFORMATION
PLANET DEPOS | 888.433.3767 | WWW.PLANETDEPOS.COM

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

172

| | | |
|---|---|---|
| 1 | terms, because it's very rare for someone to issue | 01:38:54 |
| 2 | us a DMCA notice that results in us actually | 01:38:56 |
| 3 | taking down the work because it's usually legally | 01:39:01 |
| 4 | permitted under the copyright amendment. | 01:39:04 |
| 5 | BY MR. HUDIS: | 01:39:05 |
| 6 | Q.    The Chafee Amendment to the copyright? | 01:39:06 |
| 7 | A.     The Chafee Amendment.  Or often a | 01:39:07 |
| 8 | license from the author's publisher who gave us | 01:39:10 |
| 9 | the content, but the author and their agent | 01:39:12 |
| 10 | weren't aware this was one of the nice things that | 01:39:14 |
| 11 | their publisher did for their entire catalog of | 01:39:17 |
| 12 | books, not just that author. | 01:39:21 |
| 13 | Q.    Mr. Fruchterman, could we turn to page | 01:39:23 |
| 14 | 18 of Exhibit 55. | 01:39:25 |
| 15 | Is this text on page 18 Bookshare's | 01:39:34 |
| 16 | digital rights plan -- digital rights management | 01:39:40 |
| 17 | plan? | 01:39:46 |
| 18 | A.    This is the current or, let's just say, | 01:39:46 |
| 19 | last month's current -- but I don't believe it's | 01:39:49 |
| 20 | changed since last month -- version of our | 01:39:51 |
| 21 | seven-point digital rights management plan that we | 01:39:53 |
| 22 | have discussed earlier. | 01:39:56 |
| 23 | Q.    And what was the purpose of Bookshare | 01:39:58 |
| 24 | implementing this DRM plan? | 01:39:59 |
| 25 | MR. KAPLAN:  Objection.  Vague.  Lacks | 01:40:04 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

173

| | | |
|---|---|---|
| 1 | foundation. | 01:40:05 |
| 2 | THE WITNESS:  I would say that the | 01:40:11 |
| 3 | purpose of this was to represent to the | 01:40:12 |
| 4 | intellectual property industry, especially | 01:40:17 |
| 5 | publishers, that we were intending to follow the | 01:40:19 |
| 6 | law when it came to use of these materials.  So it | 01:40:22 |
| 7 | was created for that original conversation we had | 01:40:25 |
| 8 | with the publishing industry quite a number of | 01:40:27 |
| 9 | years ago. | 01:40:31 |
| 10 | BY MR. HUDIS: | 01:40:31 |
| 11 | Q.   And when you say "these materials," | 01:40:32 |
| 12 | that's the copyrighted materials on the Bookshare | 01:40:34 |
| 13 | web site? | 01:40:36 |
| 14 | MR. KAPLAN:  Objection.  Misstates | 01:40:39 |
| 15 | testimony. | 01:40:40 |
| 16 | THE WITNESS:  Yes. | 01:40:42 |
| 17 | BY MR. HUDIS: | 01:40:43 |
| 18 | Q.   Could we turn to page 19. | 01:40:43 |
| 19 | A.   Mh-hmm. | 01:40:46 |
| 20 | Q.   What's the purpose of this sign-up page? | 01:40:46 |
| 21 | That's page 19 of Exhibit 55. | 01:40:52 |
| 22 | MR. KAPLAN:  Objection.  Vague.  Lacks | 01:40:54 |
| 23 | foundation. | 01:40:55 |
| 24 | THE WITNESS:  This is a screen shot that | 01:41:15 |
| 25 | appears to be of the individual sign-up for | 01:41:16 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

174

| | | |
|---|---|---|
| 1 | Bookshare that is collecting data about a | 01:41:22 |
| 2 | potential user in order to start the process of | 01:41:24 |
| 3 | becoming a Bookshare member. | 01:41:29 |
| 4 | BY MR. HUDIS: | 01:41:32 |
| 5 | Q.    And at the bottom it says -- it has a | 01:41:32 |
| 6 | check box, and then you would sign your name or | 01:41:34 |
| 7 | its equivalent. | 01:41:36 |
| 8 | Do you see at the bottom? | 01:41:38 |
| 9 | A.    Yes. | 01:41:39 |
| 10 | Q.    And by doing so you're agreeing to the | 01:41:39 |
| 11 | terms and conditions of the Bookshare web site. | 01:41:42 |
| 12 | Do you see that? | 01:41:44 |
| 13 | MR. KAPLAN:  Objection.  Is the -- the | 01:41:45 |
| 14 | question is whether or not he sees that check box? | 01:41:49 |
| 15 | MR. HUDIS:  Counsel, good. | 01:41:53 |
| 16 | Q.    Is the purpose of this check box to have | 01:41:55 |
| 17 | the user acknowledge that he or she is agreeing to | 01:42:02 |
| 18 | the terms and conditions of the Bookshare web | 01:42:04 |
| 19 | site? | 01:42:07 |
| 20 | MR. KAPLAN:  Objection.  Vague.  Lacks | 01:42:08 |
| 21 | foundation. | 01:42:09 |
| 22 | MR. HUDIS:  Thank you, Counsel. | 01:42:10 |
| 23 | THE WITNESS:  Yes.  I believe that that | 01:42:13 |
| 24 | check box and the filling in of your name | 01:42:14 |
| 25 | indicates that you're agreeing to the terms and | 01:42:17 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

199

| | | |
|---|---|---|
| 1 | technique still in wide use today. | 02:19:04 |
| 2 | The Perkins Brailler and Braille | 02:19:06 |
| 3 | printing presses are important | 02:19:10 |
| 4 | tools for professionals to use to | 02:19:11 |
| 5 | create Braille books.  And | 02:19:16 |
| 6 | human-narrated books are widely | 02:19:17 |
| 7 | available on audio cassettes." | 02:19:20 |
| 8 | We've replaced audio cassettes at this | 02:19:23 |
| 9 | point with technology, but the rest of it, are | 02:19:25 |
| 10 | these still document transformation methods in use | 02:19:31 |
| 11 | today? | 02:19:33 |
| 12 | MR. KAPLAN:  Objection. | 02:19:34 |
| 13 | BY MR. HUDIS: | 02:19:34 |
| 14 | Q.    All right.  And that -- and the ones | 02:19:34 |
| 15 | that I'm pointing to are having the sighted person | 02:19:35 |
| 16 | read aloud, the Perkins Brailler and a Braille | 02:19:39 |
| 17 | printing press. | 02:19:42 |
| 18 | MR. KAPLAN:  Objection.  Vague. | 02:19:46 |
| 19 | THE WITNESS:  All of these are still in | 02:19:48 |
| 20 | use today. | 02:19:49 |
| 21 | BY MR. HUDIS: | 02:19:50 |
| 22 | Q.    Now, the next paragraph, it says: | 02:19:55 |
| 23 | "Technology in use today has | 02:19:56 |
| 24 | greatly expanded the options | 02:19:58 |
| 25 | available for accessible reading | 02:19:59 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

200

| | | |
|---|---|---|
| 1 | and lessoned the need to have a | 02:20:01 |
| 2 | sighted person intervene in the | 02:20:03 |
| 3 | process.  We now have Braille | 02:20:04 |
| 4 | transcription software, personal | 02:20:06 |
| 5 | Braille embossers, refreshable | 02:20:08 |
| 6 | electronic Braille displays for | 02:20:11 |
| 7 | audio.  We have computer | 02:20:13 |
| 8 | synthesized voices to speak aloud | 02:20:15 |
| 9 | digital text, also known as text | 02:20:19 |
| 10 | to speech or TTS." | 02:20:21 |
| 11 | My question is, are these technologies | 02:20:23 |
| 12 | still in use today as nonhuman intervention | 02:20:26 |
| 13 | methods for the print-disabled to access printed | 02:20:30 |
| 14 | material? | 02:20:36 |
| 15 | MR. KAPLAN:  Objection.  Vague and | 02:20:37 |
| 16 | confusing. | 02:20:38 |
| 17 | THE WITNESS:  Yes. | 02:20:41 |
| 18 | BY MR. HUDIS: | 02:20:42 |
| 19 | Q.    The next sentence says: | 02:20:47 |
| 20 | "With reading systems that | 02:20:49 |
| 21 | use optical character recognition, | 02:20:50 |
| 22 | or OCR, we can provide access to | 02:20:52 |
| 23 | Braille, audio and customized | 02:20:56 |
| 24 | visual displays directly from the | 02:20:58 |
| 25 | printed page." | 02:21:00 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

201

| | | |
|---|---|---|
| 1 | Why is this important? | 02:21:01 |
| 2 | MR. KAPLAN: Objection. Vague. | 02:21:02 |
| 3 | THE WITNESS: Because we want to turn | 02:21:11 |
| 4 | inaccessible print books into forms where disabled | 02:21:13 |
| 5 | people can access them using OCR. | 02:21:16 |
| 6 | BY MR. HUDIS: | 02:21:21 |
| 7 | Q. Could we turn to page 557 of Exhibit 58. | 02:21:21 |
| 8 | At the bottom of page 50 -- 557 to the | 02:21:34 |
| 9 | top of 558 it says: | 02:21:37 |
| 10 | "Authors and publishers of | 02:21:39 |
| 11 | books are concerned about piracy | 02:21:41 |
| 12 | and worry about making books | 02:21:43 |
| 13 | easily available in electronic | 02:21:45 |
| 14 | form, although they rarely object | 02:21:47 |
| 15 | to access for people with | 02:21:49 |
| 16 | disabilities." | 02:21:50 |
| 17 | Do you believe this is still true? | 02:21:51 |
| 18 | MR. KAPLAN: Objection. Vague. | 02:21:54 |
| 19 | THE WITNESS: Yes. | 02:22:10 |
| 20 | BY MR. HUDIS: | 02:22:11 |
| 21 | Q. Mr. Fruchterman, could we turn to page | 02:22:23 |
| 22 | 558. | 02:22:25 |
| 23 | A. Yes. | 02:22:27 |
| 24 | MR. KAPLAN: We were there. | 02:22:29 |
| 25 | MR. HUDIS: We were there. Okay. Thank | 02:22:30 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

202

| | | |
|---|---|---|
| 1 | you. | 02:22:31 |
| 2 | Q. I would like to direct your attention to | 02:22:39 |
| 3 | the middle of the page, where it starts "however." | 02:22:40 |
| 4 | A. Yes. | 02:22:45 |
| 5 | Q. All right. It says: | 02:22:46 |
| 6 | "However, the image cannot be | 02:22:47 |
| 7 | directly used to generate Braille | 02:22:49 |
| 8 | or synthetic voice output." | 02:22:51 |
| 9 | Why is that? | 02:22:54 |
| 10 | MR. KAPLAN: Objection. Vague. Lacks | 02:22:55 |
| 11 | foundation. Incomplete hypothetical. | 02:22:56 |
| 12 | THE WITNESS: You need to convert the | 02:23:04 |
| 13 | inaccessible image into a text file in OCR. | 02:23:05 |
| 14 | BY MR. HUDIS: | 02:23:14 |
| 15 | Q. Mr. Fruchterman, could you turn to page | 02:23:24 |
| 16 | 560 of Exhibit 58. | 02:23:26 |
| 17 | This paragraph at the bottom of page 560 | 02:23:40 |
| 18 | talks about the image processing steps of -- in | 02:23:46 |
| 19 | OCR. And it talks about despeckling, orienting | 02:23:49 |
| 20 | and straightening the page, recognition of | 02:23:55 |
| 21 | specialty fine characteristics and recognition of | 02:23:57 |
| 22 | a character or glyph. | 02:24:01 |
| 23 | Are those the -- | 02:24:02 |
| 24 | MR. KAPLAN: You're talking about the | 02:24:05 |
| 25 | last full paragraph, not the last paragraph? | 02:24:05 |

CONTAINS CONFIDENTIAL INFORMATION

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

205

| | | |
|---|---|---|
| 1 | What is the DAISY standard? | 02:26:50 |
| 2 | A.    The DAISY standard is a standard for | 02:26:58 |
| 3 | delivering accessible books to people with | 02:27:01 |
| 4 | disabilities. | 02:27:05 |
| 5 | Q.    Is that standard still in use today? | 02:27:06 |
| 6 | A.    It is. | 02:27:11 |
| 7 | Q.    By whom? | 02:27:11 |
| 8 | MR. KAPLAN:  Objection.  Lacks | 02:27:14 |
| 9 | foundation.  Vague. | 02:27:14 |
| 10 | THE WITNESS:  The DAISY consortium is | 02:27:17 |
| 11 | essentially the leading libraries for people with | 02:27:21 |
| 12 | print-disabilities, and I believe almost all of | 02:27:25 |
| 13 | the DAISY members' libraries use the DAISY format | 02:27:27 |
| 14 | as part of their system of delivering accessible | 02:27:32 |
| 15 | books to their disabled patrons. | 02:27:35 |
| 16 | BY MR. HUDIS: | 02:27:37 |
| 17 | Q.    Is this a proprietary format? | 02:27:37 |
| 18 | MR. KAPLAN:  Objection.  Vague. | 02:27:41 |
| 19 | Confusing. | 02:27:41 |
| 20 | MR. HUDIS:  I'll ask -- I'll reask the | 02:27:42 |
| 21 | question. | 02:27:44 |
| 22 | Q.    Is DAISY a proprietary format by the | 02:27:44 |
| 23 | participating libraries in the consortium? | 02:27:47 |
| 24 | MR. KAPLAN:  Objection.  Vague. | 02:27:50 |
| 25 | Confusing. | 02:27:50 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

206

| | | |
|---|---|---|
| 1 | THE WITNESS:  My understanding is the | 02:27:55 |
| 2 | DAISY format is shared widely so that anyone can | 02:27:57 |
| 3 | use the standard and it is not proprietary to the | 02:28:01 |
| 4 | members. | 02:28:04 |
| 5 | BY MR. HUDIS: | 02:28:04 |
| 6 | Q.    Does this technology require use of a | 02:28:04 |
| 7 | PDF file? | 02:28:07 |
| 8 | MR. KAPLAN:  Objection.  Vague and | 02:28:11 |
| 9 | confusing. | 02:28:13 |
| 10 | THE WITNESS:  It's the antithesis of a | 02:28:14 |
| 11 | PDF file. | 02:28:16 |
| 12 | BY MR. HUDIS: | 02:28:19 |
| 13 | Q.    Okay.  And why do you say that? | 02:28:20 |
| 14 | A.    Because PDFs are frequently not | 02:28:22 |
| 15 | accessible in the form that they present | 02:28:25 |
| 16 | themselves. | 02:28:27 |
| 17 | Q.    Without OCR technology? | 02:28:28 |
| 18 | A.    That's -- | 02:28:31 |
| 19 | MR. KAPLAN:  Objection.  Vague. | 02:28:31 |
| 20 | THE WITNESS:  That's one of the problems | 02:28:32 |
| 21 | with PDFs.  Yes. | 02:28:34 |
| 22 | BY MR. HUDIS: | 02:28:35 |
| 23 | Q.    All right.  So does -- does the DAISY | 02:28:36 |
| 24 | technology require use of an OCR-processed PDF | 02:28:38 |
| 25 | file? | 02:28:42 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

207

| | | |
|---|---|---|
| 1 | MR. KAPLAN:  Objection.  Vague and | 02:28:44 |
| 2 | confusing. | 02:28:45 |
| 3 | THE WITNESS:  No. | 02:28:46 |
| 4 | BY MR. HUDIS: | 02:28:49 |
| 5 | Q.   What is required for use of DAISY | 02:28:49 |
| 6 | technology? | 02:28:51 |
| 7 | MR. KAPLAN:  Objection.  Vague. | 02:28:53 |
| 8 | THE WITNESS:  Well, the DAISY standard | 02:28:57 |
| 9 | is a format for digitally delivering typically | 02:29:01 |
| 10 | books, but could be other kinds of documents.  It | 02:29:05 |
| 11 | encompasses digital text, structure, audio, video, | 02:29:08 |
| 12 | pictures, tactile graphics. | 02:29:12 |
| 13 | And so a DAISY book might contain one or | 02:29:17 |
| 14 | all of those different elements without respect to | 02:29:21 |
| 15 | how it was created or how it will get used.  It's | 02:29:27 |
| 16 | just a file format. | 02:29:31 |
| 17 | BY MR. HUDIS: | 02:29:32 |
| 18 | Q.   And -- | 02:29:32 |
| 19 | MR. KAPLAN:  Can we, when you're done | 02:29:33 |
| 20 | with this line of questioning, take a very short | 02:29:34 |
| 21 | break? | 02:29:37 |
| 22 | MR. HUDIS:  Yes. | 02:29:37 |
| 23 | MR. KAPLAN:  Thank you. | 02:29:38 |
| 24 | BY MR. HUDIS: | 02:29:39 |
| 25 | Q.   And DAISY -- DAISY-processed texts can | 02:29:39 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

270

| | | |
|---|---|---|
| 1 | the screen aloud. | 04:13:47 |
| 2 | Q.   All right.  And is that example of text | 04:13:49 |
| 3 | to speech? | 04:13:52 |
| 4 | MR. KAPLAN:  Objection.  Vague. | 04:13:54 |
| 5 | THE WITNESS:  Different users use their | 04:13:56 |
| 6 | screen reader with different forms of information. | 04:13:58 |
| 7 | The most common is text to speech.  But, for | 04:14:04 |
| 8 | example, a deaf/blind person uses a screen reader | 04:14:06 |
| 9 | with a Braille display, and the text is -- that's | 04:14:11 |
| 10 | on the screen is presented on the Braille display. | 04:14:15 |
| 11 | BY MR. HUDIS: | 04:14:18 |
| 12 | Q.   And, again, so that -- if it's a blind | 04:14:20 |
| 13 | and deaf person, it would be a tactile Braille? | 04:14:22 |
| 14 | A.   All Braille is tactile.  Or at least all | 04:14:26 |
| 15 | sensible uses of Braille are tactile, though there | 04:14:33 |
| 16 | are sighted people who can read Braille visually, | 04:14:38 |
| 17 | so ... | 04:14:42 |
| 18 | Q.   I'd like to know if you recognize these | 04:14:43 |
| 19 | as brand names of screen reader technology. | 04:14:45 |
| 20 | JAWS from Freedom Scientific? | 04:14:48 |
| 21 | A.   Yes. | 04:14:50 |
| 22 | Q.   Window-Eyes from GW Micro? | 04:14:52 |
| 23 | A.   Yes. | 04:14:54 |
| 24 | Q.   Okay.  Dolphin SuperNova from Dolphin | 04:14:55 |
| 25 | Computer Access? | 04:14:59 |

Case 1:14-cv-00857-TSC Document 60-30 Filed 12/10/15 Page 35 of 47
Case 1:14-cv-00857-TSC Document 84-14 Filed 2/10/45-9 Page 278 of 396

271

| | | |
|---|---|---|
| 1 | A.    Yes. | 04:15:00 |
| 2 | Q.    System Access from Serotek? | 04:15:00 |
| 3 | A.    Yes. | 04:15:02 |
| 4 | Q.    ZoomText from Ai Squared? | 04:15:04 |
| 5 | A.    ZoomText is a combination screen reader, | 04:15:08 |
| 6 | but most people think of it as a screen | 04:15:10 |
| 7 | magnification product. | 04:15:13 |
| 8 | Q.    And NVDA open source screen reader. | 04:15:14 |
| 9 | A.    Yes. | 04:15:17 |
| 10 | Q.    Would screen reader technology work with | 04:15:21 |
| 11 | an image-only PDF document? | 04:15:24 |
| 12 | MR. KAPLAN:  Objection.  Incomplete | 04:15:29 |
| 13 | hypothetical.  Vague. | 04:15:31 |
| 14 | THE WITNESS:  Some do.  Some screeners | 04:15:32 |
| 15 | also have image magnification as well as screen | 04:15:33 |
| 16 | reading.  So you can make it big or change the | 04:15:37 |
| 17 | contrast by reversing the contrast or changing the | 04:15:40 |
| 18 | colors, so -- but that would be not the typical | 04:15:43 |
| 19 | use. | 04:15:50 |
| 20 | BY MR. HUDIS: | 04:15:50 |
| 21 | Q.    What is the typical use of screen reader | 04:15:51 |
| 22 | technology? | 04:15:53 |
| 23 | MR. KAPLAN:  Objection.  Vague. | 04:15:53 |
| 24 | Confusing. | 04:15:54 |
| 25 | THE WITNESS:  Generally, to read what's | 04:15:56 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

272

| | | |
|---|---|---|
| 1 | on the screen aloud in words. | 04:15:57 |
| 2 | BY MR. HUDIS: | 04:15:59 |
| 3 | Q.    So text to speech? | 04:15:59 |
| 4 | A.    Yes. | 04:16:00 |
| 5 | Q.    So would screen reader technology for | 04:16:01 |
| 6 | text to speak -- text to speech work with an | 04:16:04 |
| 7 | image-only PDF document? | 04:16:12 |
| 8 | MR. KAPLAN:  Objection.  Incomplete | 04:16:16 |
| 9 | hypothetical.  Vague. | 04:16:17 |
| 10 | THE WITNESS:  No. | 04:16:19 |
| 11 | BY MR. HUDIS: | 04:16:22 |
| 12 | Q.    Mr. Fruchterman, please turn to page 4 | 04:16:33 |
| 13 | of your report.  And I'm focusing in on the first | 04:16:35 |
| 14 | full paragraph of that page.  The paragraph starts | 04:16:40 |
| 15 | "For the purpose of this report." | 04:16:46 |
| 16 | Do you see that? | 04:16:49 |
| 17 | A.    Mh-hmm. | 04:16:49 |
| 18 | Q.    And the second sentence says: | 04:16:50 |
| 19 | "Based on the information the | 04:16:51 |
| 20 | screen reader can glean from the | 04:16:52 |
| 21 | pages displayed on the screen, can | 04:16:55 |
| 22 | a blind person locate the standard | 04:16:57 |
| 23 | and read it." | 04:17:00 |
| 24 | In this context, what did you mean by | 04:17:01 |
| 25 | "locate the standard"? | 04:17:03 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

273

| | | |
|---|---|---|
| 1 | A. In this context, I was focusing on web | 04:17:07 |
| 2 | searches. | 04:17:10 |
| 3 | Q. And in this context, what did you mean | 04:17:17 |
| 4 | by "read the standard"? | 04:17:19 |
| 5 | A. Basically, read it aloud, generally, | 04:17:29 |
| 6 | would be the most common use. | 04:17:31 |
| 7 | Q. Which, if the person was blind, could | 04:17:37 |
| 8 | not do? | 04:17:39 |
| 9 | MR. KAPLAN: Objection. Vague and | 04:17:40 |
| 10 | confusing. | 04:17:41 |
| 11 | THE WITNESS: Well, if they located a | 04:17:54 |
| 12 | text version of the standard, they certainly could | 04:17:56 |
| 13 | read it aloud. | 04:17:59 |
| 14 | BY MR. HUDIS: | 04:18:01 |
| 15 | Q. They'd need assistive technology to do | 04:18:02 |
| 16 | so? | 04:18:05 |
| 17 | A. Yes. But when -- when I use the term | 04:18:08 |
| 18 | "can a blind person read it," I'm presuming that | 04:18:10 |
| 19 | they're using technology to read it as opposed to | 04:18:16 |
| 20 | something else. | 04:18:22 |
| 21 | Q. And when you say "use technology," what | 04:18:23 |
| 22 | did you mean? | 04:18:25 |
| 23 | MR. KAPLAN: Objection. Vague. | 04:18:27 |
| 24 | THE WITNESS: Okay. Taking a step back. | 04:18:29 |
| 25 | | |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

314

| | | |
|---|---|---|
| 1 | BY MR. KAPLAN: | 05:16:35 |
| 2 | Q. So let's take that one at a time. | 05:16:35 |
| 3 | So you checked for adds? | 05:16:37 |
| 4 | A. Well, I examined the document, and I'm | 05:16:39 |
| 5 | talking about errors I observed as opposed to | 05:16:41 |
| 6 | errors I didn't observe. So if I had seen an add, | 05:16:44 |
| 7 | I would have been seeing it. I don't know. | 05:16:47 |
| 8 | Q. So -- | 05:16:50 |
| 9 | A. I was looking for errors. | 05:16:51 |
| 10 | Q. Right. So my first question is, did you | 05:16:52 |
| 11 | check for adds errors? | 05:16:55 |
| 12 | MR. KAPLAN: Objection. Vague. | 05:16:58 |
| 13 | THE WITNESS: If I -- if an add had been | 05:16:59 |
| 14 | there and I had been looking at it, I would have | 05:17:01 |
| 15 | been checking for them, yes. But -- | 05:17:03 |
| 16 | BY MR. KAPLAN: | 05:17:05 |
| 17 | Q. And you didn't find any? | 05:17:06 |
| 18 | A. I didn't see any adds. | 05:17:07 |
| 19 | Q. And did you check the entire 212 pages | 05:17:08 |
| 20 | of the document for adds errors? | 05:17:11 |
| 21 | A. No. | 05:17:13 |
| 22 | Q. So now we're at page 10, at the bottom | 05:17:22 |
| 23 | of page -- of Exhibit 64, your expert's report. | 05:17:24 |
| 24 | A. Yes. | 05:17:28 |
| 25 | Q. After you OCR-processed select pages | 05:17:29 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

315

| | | |
|---|---|---|
| 1 | from the image-only PDF file of the 1999 standards | 05:17:32 |
| 2 | given to you by defense counsel, you used the | 05:17:35 |
| 3 | Window-Eyes software tool to read text aloud and | 05:17:39 |
| 4 | to conduct full-text searches by keyword? | 05:17:43 |
| 5 | A.    Right. | 05:17:47 |
| 6 | Q.    All right.  Now, Mr. Fruchterman, you | 05:17:48 |
| 7 | could not use the Window-Eyes software tool to | 05:17:51 |
| 8 | read text of the 1999 standards aloud or to | 05:17:54 |
| 9 | conduct full-text searches by keyword before the | 05:17:58 |
| 10 | PDF pages were OCR processed. | 05:18:01 |
| 11 | MR. KAPLAN:  Objection.  Vague. | 05:18:04 |
| 12 | Compound. | 05:18:05 |
| 13 | THE WITNESS:  You're making a statement. | 05:18:10 |
| 14 | What's the question? | 05:18:10 |
| 15 | BY MR. KAPLAN: | 05:18:13 |
| 16 | Q.    All right.  I will ask the question a | 05:18:13 |
| 17 | different way. | 05:18:14 |
| 18 | Could you use the Window-Eyes software | 05:18:16 |
| 19 | tool to read the text of the 1999 standards aloud | 05:18:18 |
| 20 | before the PDF pages were OCR processed? | 05:18:22 |
| 21 | MR. KAPLAN:  Objection.  Vague. | 05:18:25 |
| 22 | Confusing. | 05:18:26 |
| 23 | THE WITNESS:  No. | 05:18:30 |
| 24 | BY MR. KAPLAN: | 05:18:30 |
| 25 | Q.    Could you use the Window-Eyes software | 05:18:31 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

316

| | | |
|---|---|---|
| 1 | to conduct full-text searches by keyword before | 05:18:34 |
| 2 | the PDF pages were OCR processed? | 05:18:37 |
| 3 | MR. KAPLAN:  Objection.  Vague and | 05:18:41 |
| 4 | confusing. | 05:18:41 |
| 5 | THE WITNESS:  No. | 05:18:46 |
| 6 | BY MR. KAPLAN: | 05:18:46 |
| 7 | Q.    And, in fact, Mr. Fruchterman, you could | 05:18:53 |
| 8 | not use any screen reader software tool to read | 05:18:54 |
| 9 | the text of the 1999 standards aloud before the | 05:18:57 |
| 10 | PDF pages were OCR processed? | 05:19:01 |
| 11 | MR. KAPLAN:  Objection.  Vague and | 05:19:04 |
| 12 | confusing. | 05:19:05 |
| 13 | THE WITNESS:  That's correct.  But some | 05:19:09 |
| 14 | screen readers have OCR software built in and | 05:19:10 |
| 15 | would be able to do that process inside the screen | 05:19:13 |
| 16 | reader.  But I did not do that process inside the | 05:19:15 |
| 17 | screen reader.  I did it in a separate product. | 05:19:18 |
| 18 | BY MR. KAPLAN: | 05:19:21 |
| 19 | Q.    And you could not use a screen reader | 05:19:21 |
| 20 | software tool to conduct full-text searches by | 05:19:23 |
| 21 | keyword before the PDF pages were OCR processed? | 05:19:26 |
| 22 | MR. KAPLAN:  Objection.  Vague and | 05:19:31 |
| 23 | confusing. | 05:19:32 |
| 24 | THE WITNESS:  Correct. | 05:19:33 |
| 25 | | |

CONTAINS CONFIDENTIAL INFORMATION
PLANET DEPOS | 888.433.3767 | WWW.PLANETDEPOS.COM

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

317

| | | |
|---|---|---|
| 1 | BY MR. KAPLAN: | 05:19:33 |
| 2 | Q.    Let's turn to pages 11 and 12 of your | 05:19:39 |
| 3 | report.  And I'm focusing on the textual material | 05:19:42 |
| 4 | in your report, Mr. Fruchterman, under the title | 05:19:50 |
| 5 | "The Archive.Org Version of the 1999 Standards." | 05:19:53 |
| 6 | A.    Yes. | 05:19:57 |
| 7 | Q.    Now, it's true you were -- it's true you | 05:19:59 |
| 8 | were told by a representative of the Internet | 05:20:09 |
| 9 | Archive that an electronic text or txt version of | 05:20:11 |
| 10 | the '99 standards was hosted on the Internet | 05:20:15 |
| 11 | Archive web site at one time? | 05:20:18 |
| 12 | A.    Yes. | 05:20:20 |
| 13 | Q.    You did not attempt to locate a | 05:20:21 |
| 14 | historical version of the Internet Archive web | 05:20:24 |
| 15 | site to determine whether an electronic text | 05:20:26 |
| 16 | version of the 1999 standards was previously | 05:20:29 |
| 17 | hosted on Internet Archive? | 05:20:32 |
| 18 | MR. KAPLAN:  Objection.  Vague and | 05:20:34 |
| 19 | confusing. | 05:20:40 |
| 20 | THE WITNESS:  Not beyond doing a Google | 05:20:41 |
| 21 | search, which I don't believe turned it up for me. | 05:20:43 |
| 22 | But it might have if I kept going in the results. | 05:20:45 |
| 23 | BY MR. HUDIS: | 05:20:47 |
| 24 | Q.    But if you did, you didn't document it | 05:20:48 |
| 25 | in your report. | 05:20:50 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

323

| | | |
|---|---|---|
| 1 | Q.    I'm sorry.  It's late. | 05:27:02 |
| 2 | Mr. Fruchterman -- | 05:27:04 |
| 3 | A.    Yes. | 05:27:04 |
| 4 | Q.    -- if you could turn to page 7 of your | 05:27:04 |
| 5 | expert's report, Exhibit 64. | 05:27:07 |
| 6 | MR. KAPLAN:  That one almost slipped | 05:27:10 |
| 7 | past me. | 05:27:10 |
| 8 | (Reporter interruption.) | 05:27:10 |
| 9 | MR. HUDIS:  Sure.  What he said was I | 05:27:11 |
| 10 | blew past him. | 05:27:20 |
| 11 | MR. KAPLAN:  Yes. | 05:27:22 |
| 12 | BY MR. HUDIS: | 05:27:22 |
| 13 | Q.    Are you there, Mr. Fruchterman? | 05:27:23 |
| 14 | A.    I am. | 05:27:24 |
| 15 | Q.    Thank you. | 05:27:25 |
| 16 | As part -- now, looking at page 7, the | 05:27:26 |
| 17 | top paragraph of your expert's report, as part of | 05:27:29 |
| 18 | your accessibility review for the purposes of your | 05:27:34 |
| 19 | expert's report, you reviewed the | 05:27:35 |
| 20 | Public.Resource.Org web site? | 05:27:38 |
| 21 | MR. KAPLAN:  Objection.  Vague. | 05:27:41 |
| 22 | THE WITNESS:  Yes. | 05:27:44 |
| 23 | BY MR. HUDIS: | 05:27:46 |
| 24 | Q.    Did you observe on Public.Resource's web | 05:27:46 |
| 25 | site any place where Public.Resource held itself | 05:27:49 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

324

| | | |
|---|---|---|
| 1 | out as making the materials posted on its site | 05:27:51 |
| 2 | accessible to the blind or print-disabled? | 05:27:55 |
| 3 | MR. KAPLAN:  Objection.  Vague. | 05:27:59 |
| 4 | THE WITNESS:  I did not. | 05:28:02 |
| 5 | BY MR. HUDIS: | 05:28:03 |
| 6 | Q.    Except for a placeholder noting the | 05:28:04 |
| 7 | voluntary takedown of the 1999 standards, you | 05:28:05 |
| 8 | could not locate this document on the | 05:28:12 |
| 9 | Public.Resource web site, correct? | 05:28:14 |
| 10 | MR. KAPLAN:  Objection.  Vague. | 05:28:17 |
| 11 | THE WITNESS:  Correct. | 05:28:18 |
| 12 | BY MR. HUDIS: | 05:28:18 |
| 13 | Q.    However, you did search for and access | 05:28:18 |
| 14 | other standards posted on the Public.Resource web | 05:28:20 |
| 15 | site? | 05:28:22 |
| 16 | MR. KAPLAN:  Objection.  Vague. | 05:28:24 |
| 17 | THE WITNESS:  Correct. | 05:28:26 |
| 18 | BY MR. HUDIS: | 05:28:27 |
| 19 | Q.    Mr. Malamud -- I did it again.  My | 05:28:29 |
| 20 | apologies. | 05:28:32 |
| 21 | Mr. Fruchterman, there were no sign-up | 05:28:34 |
| 22 | procedures in order for an Internet user to access | 05:28:36 |
| 23 | the content on the Public.Resource web site, | 05:28:38 |
| 24 | correct? | 05:28:41 |
| 25 | MR. KAPLAN:  Objection.  Vague.  Calls | 05:28:41 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

325

| | | |
|---|---|---|
| 1 | for speculation.  Lacks foundation. | 05:28:43 |
| 2 | THE WITNESS:  Correct. | 05:28:46 |
| 3 | BY MR. HUDIS: | 05:28:46 |
| 4 | Q.    During your review of Public.Resource's | 05:28:51 |
| 5 | web site, you were able to access standards | 05:28:53 |
| 6 | produced by other companies, such as the NFPA, | 05:28:56 |
| 7 | without restriction? | 05:29:01 |
| 8 | MR. KAPLAN:  Objection.  Vague. | 05:29:04 |
| 9 | THE WITNESS:  Yes. | 05:29:08 |
| 10 | BY MR. HUDIS: | 05:29:08 |
| 11 | Q.    There were no requirements that a user | 05:29:10 |
| 12 | be visually impaired to access these other | 05:29:11 |
| 13 | standards documents on Public.Resource's web site? | 05:29:15 |
| 14 | MR. KAPLAN:  Objection.  Vague. | 05:29:19 |
| 15 | THE WITNESS:  Correct. | 05:29:20 |
| 16 | BY MR. HUDIS: | 05:29:20 |
| 17 | Q.    Mr. Fruchterman, for the next series of | 05:29:32 |
| 18 | questions, I would like you to pull out | 05:29:34 |
| 19 | Exhibit 60, which was your supplemental | 05:29:36 |
| 20 | declaration from the HathiTrust litigation. | 05:29:40 |
| 21 | A.    Okay. | 05:29:42 |
| 22 | Q.    And I'd also like you to pull out | 05:29:43 |
| 23 | Exhibit 55, which is the materials we reviewed | 05:29:47 |
| 24 | from the Bookshare web site. | 05:29:52 |
| 25 | A.    Good.  Do I get to put the rest of them | 05:29:59 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

326

| | | |
|---|---|---|
| 1 | away? | 05:30:02 |
| 2 | Q.    Soon. | 05:30:02 |
| 3 | A.    Or are these the only two I need to have | 05:30:03 |
| 4 | out now? | 05:30:05 |
| 5 | Q.    Those are the only two you have to have | 05:30:07 |
| 6 | out now. | 05:30:09 |
| 7 | A.    Okay.  I have those two documents in | 05:30:18 |
| 8 | front of me, Exhibit 55 and 60. | 05:30:19 |
| 9 | Q.    Okay.  So I would like to focus your | 05:30:25 |
| 10 | attention on -- in the supplemental declaration, | 05:30:25 |
| 11 | Exhibit 60, to pages 2 and 3, where you talk about | 05:30:28 |
| 12 | the digital rights management plan. | 05:30:33 |
| 13 | A.    Yes. | 05:30:37 |
| 14 | Q.    Okay.  And similarly, an explanation of | 05:30:38 |
| 15 | the DRM plan on page 18 of Exhibit 55.  And that's | 05:30:43 |
| 16 | the Bookshare web site. | 05:31:04 |
| 17 | A.    Okay. | 05:31:13 |
| 18 | Q.    During your review of Public.Resource's | 05:31:13 |
| 19 | web site, how did their web site compare with the | 05:31:16 |
| 20 | Bookshare web site in terms of employing a digital | 05:31:20 |
| 21 | rights management or DRM plan to protect the | 05:31:23 |
| 22 | digital copies of standards posted on | 05:31:27 |
| 23 | Public.Resource's web site from unauthorized | 05:31:30 |
| 24 | copying? | 05:31:35 |
| 25 | MR. KAPLAN:  Objection.  Vague.  Calls | 05:31:35 |

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

327

| | | |
|---|---|---|
| 1 | for a legal conclusion.  Confusing. | 05:31:36 |
| 2 | THE WITNESS:  I didn't find a DRM plan | 05:31:43 |
| 3 | in evidence on the Public.Resource.Org site. | 05:31:45 |
| 4 | MR. HUDIS:  I'd like to take a break for | 05:31:52 |
| 5 | five minutes. | 05:33:18 |
| 6 | THE VIDEOGRAPHER:  Going off the record | 05:33:19 |
| 7 | at 5:33. | 05:33:20 |
| 8 | (Whereupon, a recess was taken.) | 05:33:27 |
| 9 | THE VIDEOGRAPHER:  Back on the record at | 05:39:35 |
| 10 | 5:39. | 05:39:37 |
| 11 | BY MR. HUDIS: | 05:39:38 |
| 12 | Q.    Mr. Fruchterman, when you examined | 05:39:40 |
| 13 | Public.Resource's web site, you noticed a number | 05:39:44 |
| 14 | of standards that were hosted on that web site? | 05:39:48 |
| 15 | A.    Correct. | 05:39:58 |
| 16 | MR. KAPLAN:  Objection.  Vague.  Asked | 05:39:59 |
| 17 | and answered. | 05:40:00 |
| 18 | BY MR. HUDIS: | 05:40:00 |
| 19 | Q.    Did you notice any restrictions on the | 05:40:01 |
| 20 | ability of an Internet user to copy any of the | 05:40:02 |
| 21 | standards that you saw on Public.Resource's web | 05:40:11 |
| 22 | site? | 05:40:13 |
| 23 | MR. KAPLAN:  Objection.  Vague. | 05:40:14 |
| 24 | THE WITNESS:  No. | 05:40:17 |
| 25 | | |

CONTAINS CONFIDENTIAL INFORMATION

Confidential Videotaped Deposition of James R. Fruchterman
Conducted on September 8, 2015

328

| | | |
|---|---|---|
| 1 | BY MR. HUDIS: | 05:40:17 |
| 2 | Q. Did you notice any restrictions on the | 05:40:19 |
| 3 | ability of an Internet user to download any of the | 05:40:20 |
| 4 | standards hosted on the Public.Resource's web | 05:40:28 |
| 5 | site? | 05:40:31 |
| 6 | MR. KAPLAN: Objection. Vague. | 05:40:31 |
| 7 | THE WITNESS: No. | 05:40:32 |
| 8 | BY MR. HUDIS: | 05:40:32 |
| 9 | Q. Did you notice any restrictions on the | 05:40:32 |
| 10 | ability of an Internet user to print any of the | 05:40:35 |
| 11 | standards hosted on the Public.Resource web site? | 05:40:37 |
| 12 | MR. KAPLAN: Objection. Vague. | 05:40:40 |
| 13 | THE WITNESS: No. | 05:40:41 |
| 14 | MR. HUDIS: Thank you, Mr. Fruchterman. | 05:40:43 |
| 15 | That's all I have. | 05:40:43 |
| 16 | THE WITNESS: Okay. Thank you. | 05:40:46 |
| 17 | MR. KAPLAN: I have no questions at this | 05:40:52 |
| 18 | time. | 05:40:53 |
| 19 | THE WITNESS: Okay. Oh, that's right. | 05:40:53 |
| 20 | You get a chance, huh. | 05:40:54 |
| 21 | THE VIDEOGRAPHER: This marks the end of | 05:40:56 |
| 22 | the deposition of James Fruchterman. Going off | 05:40:56 |
| 23 | the record at 5:41. | 05:40:59 |
| 24 | (Whereupon, the deposition concluded | 05:41:00 |
| 25 | at 5:41 p.m.) | 05:41:00 |