# EXHIBIT 48

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO.: 1:12-cv-21431-COOKE/TORRES

**UNITED STATES OF AMERICA**
**and THE STATE OF FLORIDA,**
*ex rel* **JUAN PEÑA,**

                **Plaintiffs/Relator**

**vs.**

**FASTTRAIN II CORP.,**
**d/b/a FASTTRAIN COLLEGE,**
**an administratively dissolved for profit**
**Florida corporation and**
**ALEJANDRO AMOR,**
**an Individual,**

                **Defendants.**

_____/

### UNITED STATES OF AMERICA'S AND STATE OF FLORIDA'S
### COMPLAINT IN INTERVENTION

    Plaintiffs, the United States of America ("United States") and the State of Florida

("Florida") through their undersigned counsel, represent as follows:

## I.    INTRODUCTION

    1.    The United States brings this action to recover treble damages, civil penalties,

and costs under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, and to recover

damages and other monetary relief under the common law and equitable theories of unjust

enrichment and payment by mistake.

    2.    Florida brings this action to recover treble damages, civil penalties, and costs

under the Florida False Claims Act, §§ 68.081-68.09, Florida Statutes, and to recover

damages and other monetary relief under the common law and equitable theories of unjust enrichment and payment by mistake.

3.      This action arises from false statements and claims that Defendants FastTrain II Corp. d/b/a FastTrain College ("FastTrain") and its President and Chief Executive Officer Alejandro Amor, listed in the caption (collectively "Defendants"), knowingly presented to, or caused to be presented to, the United States and the United States Department of Education ("Department of Education"), and Florida, in violation of the FCA, the Florida False Claims Act and common law.

4.      Defendants knowingly presented and/or made, or caused to be presented and/or made, the false claims and statements at issue, in order to participate in the federal student aid programs authorized pursuant to Title IV of the Higher Education Act of 1965 ("HEA"), as amended, 20 U.S.C. §§ 1070 *et seq.* ("Title IV, HEA Programs").  The Title IV, HEA programs, which are administered by the Department of Education, provide students with financial aid in the form of, among other things, Federal Pell Grants, Federal Direct Loans, and formerly, loans guaranteed by the Federal Government.  From at least January 1, 2009 through June 22, 2012 when Defendants closed FastTrain, Defendants knowingly submitted, or caused to be submitted, numerous false claims for payment to the Department of Education arising from Defendants' fraudulent course of conduct.

5.      In order to be eligible to receive federal funding under Title IV, FastTrain was required to adhere to a variety of regulations related to the operation of its for-profit, proprietary schools. *See, e.g.*, 34 C.F.R. Parts 600, 668.  FastTrain entered into contractual agreements with the Department of Education, each signed by Defendant Alejandro Amor,

called Program Participation Agreements ("PPAs"), in which FastTrain specifically agreed

to abide by these regulations. Execution of these PPAs with the Department of Education

was a condition precedent to FastTrain's eligibility to receive federal funding under Title IV

of the HEA. FastTrain also certified each time it drew down federal grant monies that the

funds were being expended in accordance with the conditions of the applicable PPAs.

      6.      During all times material hereto, Title 34 Code of Federal Regulations [34

C.F.R.] § 668.32 provided, among other things, that:

> A student is eligible to receive title IV, HEA program assistance if the
> student—
>
> (e)(1) Has a high school diploma or its recognized equivalent;
>
>       . . .
>
> (f) Maintains satisfactory progress in his or her course of study
> according to the institution's published standards of satisfactory progress
> that satisfy the provisions of § 668.16(e), and, if applicable, the
> provisions of § 668.34;
>
>       . . .

FastTrain agreed that it would comply with these and other requirements in each PPA it

executed.

      7.      Beginning in at least January 1, 2009 and continuing through its closure in

2012, FastTrain engaged in a widespread scheme to defraud the Department of Education

in order to receive federal funding it would not otherwise have been entitled to receive.

      8.      FastTrain made false statements and concealed material information from the

Department of Education in order to ensure that it would continue to receive federal

funding under Title IV of the HEA. For example, FastTrain and its employees knowingly

submitted and/or caused to be submitted false information relating to the eligibility of

students to receive title IV, HEA program assistance, by providing false documentation that

students had high school diplomas or its recognized equivalent, when such students did not
have such credentials.

9.     FastTrain engaged in fraudulent conduct in an attempt to secure federal aid
for students who, but for FastTrain's conduct, would have been ineligible for assistance
under Title IV of the HEA.   For instance, FastTrain fabricated high school diplomas of
some of its prospective students at some of its campuses in order to permit unqualified
students to enroll at FastTrain.   FastTrain then improperly received and retained Title IV
assistance for those unqualified students.   FastTrain also told prospective students who did
not have high school diplomas or their equivalency that they could enroll and receive
federal financial assistance if they attended FastTrain.   FastTrain instructed and counseled
certain ineligible prospective students to provide false high school completion attestations
and further coached certain prospective ineligible students to lie on Free Application for
Federal Student Aid ("FAFSA") documentation.   FastTrain also improperly received and
retained Title IV assistance for those unqualified students.

10.     FastTrain also routinely altered attendance records of students who were not
meeting minimum requirements.   FastTrain kept students on its attendance rolls - and, as
such, federal financial aid recipient list – when students were not attending FastTrain.
Finally, FastTrain employees falsified financial aid records in order to secure more federal
funding for students than the students were eligible to receive.

11.     Defendants' conduct was knowing and material to FastTrain's continued
eligibility to participate in the Title IV programs.   As a result of Defendants' fraudulent
scheme and its false representations of Title IV eligibility, FastTrain has received millions of

dollars of Title IV financial aid that it otherwise would not have received but for its conduct.

## II.     JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over the United States' claims brought under the FCA, 31 U.S.C. §§ 3279, et seq., pursuant to 31 U.S.C. §§ 3730 and 3732. This Court has supplemental jurisdiction to entertain the common law and equitable causes of action under 28 U.S.C. § 1367(a).

13.     This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because at all times material hereto, Defendants transacted business and are found in this district, and acts proscribed by 31 U.S.C. § 3729 occurred in this district.

14.     Venue is proper in this district pursuant to 31 U.S.C. § 3732(a), and under 28 U.S.C. §§ 1391(b) and 1395(a), because FastTrain is an administratively dissolved Florida corporation that did business and was headquartered in Miami-Dade County within this district.   Moreover, Alejando Amor resides and does business in Miami-Dade County within this district.   Furthermore, certain of the acts that form the basis of this Complaint occurred in this district.

## III.    PARTIES

15.     Plaintiffs are:

    a.  The United States, acting on behalf of the Department of Education. The Department of Education is a federal agency that, among other things, administers the student financial assistance provisions under Title IV of the HEA.

    b.  Florida, acting on behalf of the Florida Department of Education.

16.     Relator Juan Peña ("Peña" or "Relator") is a resident of Miami-Dade

County, Florida.  Peña was an admissions employee of FastTrain.  Although having no prior college admissions experience, Peña was recruited and commenced his employment at FastTrain as an admissions representative on December 21, 2010 and was laid off on May 25, 2012 after being informed that FastTrain was having cash flow problems and needed to downsize.  Peña started at the FastTrain-Flagler campus and after being trained by FastTrain admissions executives, became immensely successful at recruiting ineligible students for FastTrain.  Peña was eventually promoted to the position of Assistant Director of Admissions at FastTrain's Flagler campus.  In May 2011, Peña was promoted to be the Director of Admissions for FastTrain's Plantation campus.[1]

17.  Defendant FastTrain is an administratively dissolved Florida corporation.  At times material hereto, FastTrain, whose principal place of business was located in Miami-Dade County, Florida, was a privately-held, for-profit proprietary college that awarded career diplomas and industry certifications in several career fields.  At times material hereto, FastTrain operated seven campuses in Florida in Miami-Dade, Broward, Hillsborough, Pinellas and Duval counties.

18.  Defendant Alejandro Amor was at times material hereto, the owner, President and Chief Executive Officer of FastTrain.  He is a resident of and does business in Miami-Dade County, Florida.

---

[1]  Peña originally brought this complaint in his capacity as a Relator on behalf of the United States and Florida, against Defendant FastTrain II Corp. then doing business as FastTrain College, for violating the federal FCA and the Florida False Claims Act. Peña also asserted claims in his original complaint on behalf of himself against Alejandro Amor and Chris Amor for violations of the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 207 ("FLSA'").  The United States and Florida have intervened only on the claims set forth in this Complaint in Intervention.

## IV.   FEDERAL AND FLORIDA STATUTORY BACKGROUND

19.    The United States alleges that, from at least January 1, 2009 through June 22, 2012, Defendants violated the FCA by "knowingly" submitting and/or causing the submission of false claims for payment to the Department of Education in the form of Free Applications for Federal Student Aid (FAFSA) and the resulting drawdowns of Title IV funds related to each approved FAFSA.   These claims for payment were false because FastTrain: (1) made knowingly false statements and promises in its PPAs, and in certifications accompanying its drawdowns of federal aid, that it was complying with, and would continue to comply with, applicable laws and regulations governing the award of Title IV funding; and/or (2) made, or caused to be made, false representations in grant and loan applications that the students seeking federal financial aid were eligible to receive such aid.

20.    Florida similarly alleges from at least January 1, 2009 through June 22, 2012, Defendants violated the Florida False Claims Act as alleged further below in Counts VI and VII.

### A.    The Federal False Claims Act

21.    The FCA, as amended by the Fraud Enforcement and Recovery Act of 2009 (FERA), Pub. L. 111-21, § 4(f), 123 Stat. 1617, 1625 (2009), provides in pertinent part that a person is liable to the United States government for three times the amount of damages the government sustains because of the act of that person, plus a civil penalty, for each instance in which the person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."   31 U.S.C. § 3729(a)(l)(A) (2009).   Prior to the FERA amendments, the FCA provided that a person is liable to the United States government for

each instance in which the person "knowingly presents, or causes to be presented, to an officer or employee of the United States Government...[a] false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(l) (2006).

22.    As amended by FERA, the FCA also makes a person liable to the United States government for three times the amount of damages which the government sustains because of the act of that person, plus a civil penalty, for each instance in which the person "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  31 U.S.C. § 3729(a)(1)(B) (2009).  The FCA, prior to the FERA amendments, provided that a person is liable to the United States government for each instance in which the person "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(2) (2006).

23.    In addition, the FCA also makes a person liable to the United States government for three times the amount of damages which the government sustains because of the act of that person, plus a civil penalty, in which the person "conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G)" of 31 U.S.C. § 3729(a)(1).  31 U.S.C. § 3729(a)(1)(C) (2009).

24.    The FCA defines the term "claim" to mean "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be drawn down or used on the Government's behalf or to advance a

Government program or interest, and if the United States Government (i) provides or has

provided any portion of the money or property requested or demanded; or (ii) will

reimburse such contractor, grantee, or other recipient for any portion of the money or

property which is requested or demanded...." 31 U.S.C. § 3729(b)(2)(A) (2009).

25.     The FCA defines the terms "knowing" and "knowingly" to mean that a

person, with respect to information: (1) "has actual knowledge of the information;" (2) "acts

in deliberate ignorance of the truth or falsity of the information;" or (3) "acts in reckless

disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A) (2009). The

FCA further provides that "no proof of specific intent to defraud" is required. 31 U.S.C. §

3729(b) (2006); 31 U.S.C. § 3729(b)(1)(B) (2009).

**B.     The Florida False Claims Act**

26.     The Florida False Claims Act, provides in pertinent part that

> Any person who:
>
> (a) Knowingly presents or causes to be presented to an officer or employee of an agency a false or fraudulent claim for payment or approval;
>
> (b) Knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by an agency; [or]
>
> (c) Conspires to submit a false or fraudulent claim to an agency or to deceive an agency for the purpose of getting a false or fraudulent claim allowed or paid;
>
>                              . . .
>
> is liable to the state for a civil penalty of not less than $5,500 and not more than $11,000 and for treble the amount of damages the agency sustains because of the act or omission of that person.

§68.082 (2), Florida Statutes.

27.     The Florida False Claims Act defines the term "claim" to include

> any written or electronically submitted request or demand, under a
> contract or otherwise, for money, property, or services, which is made
> to any employee, officer, or agent of an agency, or to any contractor,
> grantee, or other recipient if the agency provides any portion of the
> money or property requested or demanded, or if the agency will
> reimburse the contractor, grantee, or other recipient for any portion of
> the money or property requested or demanded.

§68.082 (1)(b), Florida Statutes

28.     The Florida False Claims Act provides that the term "knowing" or

"knowingly" means, with respect to information, that a person:

> 1.   Has actual knowledge of the information;
>
> 2.   Acts in deliberate ignorance of the truth or falsity of the
> information; or
>
> 3.   Acts in reckless disregard of the truth or falsity of the information.
>
> No proof of specific intent to defraud is required. Innocent mistake shall
> be a defense to an action under this act.

§68.082 (1)(c), Florida Statutes.

29.     In addition, the term "Agency" as used in the Florida False Claims Act

means:

> any official, officer, commission, board, authority, council, committee,
> or department of the executive branch of state government.

§68.082 (1)(a), Florida Statutes.  The term "State government" means "the government of

the state or any department, division, bureau, commission, regional planning agency, board,

district, authority, agency, or other instrumentality of the state."  §68.082 (1)(d), Florida

Statutes.

### C.     The Title IV, HEA Programs

30.     Under Title IV of the HEA, 20 U.S.C. §§ 1070 *et seq*., Congress established

various student loan and grant programs, including but not limited to, the Federal Pell

Grant Program ("Pell", "Pell Grant" or "Pell Grants"), the Federal Family Education Loan

("FFEL") Program, and the Federal Direct Loan ("FDL") Program in order to financially assist eligible students in obtaining a post-secondary education (collectively the "Title IV, HEA Programs").

**D. Federal Regulations Governing Title IV Funding**

31.     There are a variety of federal statutes and regulations that govern the award of Title IV, HEA program funds.  First, only "eligible" students are permitted to receive federal financial aid under Title IV of the HEA.  In order to qualify as an eligible student, a student must meet the requirements of 34 C.F.R. § 668.32.  Among other things, the student must have a high school diploma or its recognized equivalent, unless an enumerated exception applies (such as, during the relevant time period, having "obtained a passing score specified by the Secretary on an independently administered test"); and must be maintaining satisfactory academic progress in his or her course of study according to the school's published standards, and in accordance with federal guidelines.  34 C.F.R. §§ 668.32, 668.34.

32.     An institution may only retain Title IV funds that it earns.  When a student withdraws without completing a program of instruction, an institution must calculate the amount of Title IV funds that it can retain and refund to the Department of Education and the student any excess funds that it has not earned.  34 C.F.R. § 668.22.

33.     The Department of Education has the authority to revoke or terminate an institution's PPA if it is found to have engaged in substantial misrepresentation.  34 C.F.R. §§ 668.13(d); 668.86(a)(1)(ii)(A).

**E. PPAs**

34.     All post-secondary educational institutions must enter into PPAs with the

Department of Education in order to become eligible to receive payment of Title IV funds under programs such as Pell, FFEL Program, or FDL Program, or to have its students receive Title IV funding.  20 U.S.C. § 1094; 34 C.F.R. § 668.14.

35.    "A program participation agreement conditions the initial and continued participation of an eligible institution in any Title IV, HEA program upon compliance with the provisions of this part, the individual program regulations, and any additional conditions specified in the program participation agreement that the Secretary requires the institution to meet."  34 C.F.R. § 668.14(a)(1).

36.    By signing a PPA, an educational institution agrees that its participation in Title IV, HEA Programs, including receiving payment of Title IV funds, is "subject to the terms and conditions set forth in [the PPA]."

37.    Each PPA expressly conditions a school's initial and continuing eligibility to receive payment under Title IV, HEA Programs on compliance with specific statutory requirements that include the proper determination of student eligibility for these funds, and compliance with all institutional eligibility requirements, such as those set forth in the above paragraphs.

**F.    Claims for Payment under Title IV Programs**

38.    After a school becomes eligible to receive Title IV funding by entering into a PPA, claims for payment of those funds can be made in various ways.  Under Pell and FDL Program, for example, students submit requests for funding directly to the Department of Education, or to the Department of Education with the assistance of schools.  Under the FFEL Program, students and schools jointly submit requests to private lenders for loans that

are then guaranteed by state agencies and are, in turn, insured by the Department of Education and paid in the event of a default.

39.     With respect to all Title IV, HEA Programs, the disbursement of federal funds rests on required statements of eligibility.  Schools must make such statements for payment requests to be considered.

40.     For all Title IV, HEA Programs, students who are interested in receiving federal student aid must complete a FAFSA.

### 1.     Title IV Loan Programs

41.     The FDL Program is administered by the Office of Federal Student Aid. Under the FDL Program, the federal government is the lender, and does not pay subsidies to private lenders or guaranty agencies. The federal government borrows funds from the U.S. Treasury and disburses the loan directly to the student at his or her school. The student repays the loan directly to the government.  Although the FDL Program is administered in part by the U.S. Department of Education, the federal government pays private contractors to handle most of the loan servicing tasks and defaulted loan collections.  Servicing contracts are awarded through a competitive bidding process, and the current private contractors that operate the FDL Program are the same contractors that handle servicing tasks for private lenders in the FFEL Program and other financial businesses.  Like the FFEL Program, the FDL Program includes Direct Subsidized Stafford Loans, Direct Unsubsidized Stafford Loans, Direct PLUS Loans, Direct Consolidation Loans.

42.     Under the FFEL Program, which includes subsidized and un-subsidized Stafford Loans, a guaranty agency makes the eventual claim for payment by the United

States.  No new loans were made under FFEL Program after July 1, 2010.  Prior to that date, the school and student submitted an application to a private lender for a loan on behalf of the student.  If a student defaults in repaying a loan under the FFEL Program, a state or private guaranty agency reimburses the lender or subsequent holder of the loan for the outstanding balance and takes assignment of the loan for collection action.  34 C.P.R.§ 682.401(b)(14).  If the guaranty agency is unable to collect from the borrower, the Department of Education reimburses the guaranty agency for the loss it incurred in honoring the defaulted claims, 20 U.S.C. § 1078(c)(l)(A), and the Department of Education may, in its discretion, take assignment of the loan.  20 U.S.C. § 1078(c)(8).  In this way, the government is ultimately called upon to satisfy claims for payment.

43.     In order to participate in the FFEL Program or any other Title IV loan program, as opposed to a grant program, a student completes a Master Promissory Note (MPN) and submits the MPN to the educational institution.  The institution, in turn, completes a "School Certification," in which it certifies the accuracy of the information it provided to the Department of Education and the student's eligibility for the loan.  34 C.P.R. § 682.102.  While the MPN itself is valid for ten years, the educational institution determines the student's ongoing eligibility for aid and completes the School Certification annually.

44.     Under the FFEL Program, the educational institution submits the MPN to the lender. Upon approval by the lender, the lender obtains a loan guarantee from a guarantee agency. 34 C.F.R. § 682.102.  The loan is made in reliance upon the accuracy of the information provided by the educational institution.

-14-

45.     The lender transfers the FFEL Program funds directly into the educational institution's account.  Upon receiving the FFEL Program funds, the educational institution credits a student's account for education-related expenses, such as tuition, fees, books, and supplies.

46.     For subsidized Stafford Loans, the government pays the interest on the student's behalf during the time the student is enrolled in school on at least a half-time basis, and during the student's grace period before repayment commences.  34 C.F.R. § 682.102(d)(2).

47.     In the event of default on the loan, the Department pays to the guarantee agency all or part of the unpaid principal and accrued interest, as well as a variety of administrative costs.  34 C.P.R.§ 682.404.

### 2.     Title IV Grant Programs

48.     Under the Pell Grant program, which provides federal funds to assist post-secondary school students in financial need, 20 U.S.C. § 1070a; 34 C.F.R. § 690.1, the student initiates the process by submitting a FAFSA to the Department of Education to have the student's expected family contribution ("EFC") calculated in order to receive an accurate amount of Pell funds.  34 C.P.R.§ 690.12(a).  The student either sends the FAFSA directly to the Department of Education or provides it to a school for the school to transmit to the Department of Education on the student's behalf.  34 C.P.R.§ 690.12(b).

49.     The Department of Education sends the student's application information and EFC to the student on a Student Aid Report ("SAR") and sends each school the student has designated an Institutional Student Information Record ("ISIR") for that student.  34

C.F.R. § 690.13.

50.    The school uses the above-described information, including the EFC, to calculate the student's eligibility for all aid and to assemble a "financial aid award package" for the student borrower.  The financial aid package may include Pell Grants, FDL Program Direct Loans, or Campus-Based Aid (which, in turn, includes Federal Supplemental Educational Opportunity Grants, Federal Work-Study, and Federal Perkins Loans), as well as other scholarships or aid for which the student may be eligible.

51.    The student can accept all or part of the financial aid award package.

52.    If the student accepts a Pell Grant, an FDL Program Direct Loan (for which the Department of Education is both lender and guarantor), or both a Pell Grant and a Direct Loan, the school creates an electronic "origination" record that the school submits to a Department of Education computerized database called "COD" - the Common Origination and Disbursement system.   The origination record includes student demographic data, the award or payment period, the award amount, and disbursement dates and amounts.  The COD database, in turn, links the information in the origination record to another Department of Education database, called "CPS," the Central Processing System, which compares the information in the origination record to the information on the student's SAR and ISIR.

53.    Provided that the information submitted by the school is consistent with the information possessed by the Department of Education, the Department of Education makes funds available for the school to electronically draw down from a computerized system known as "G5."

54.     Schools must electronically certify in G5 prior to drawing down the funds that "by processing this payment request...the funds are being expended within three business days of receipt for the purpose and condition[s] of the [Program Participation] agreement."

55.     In addition to the Pell Grants themselves, the Department of Education also pays to the school an annual administrative cost allowance of $5.00 for each student who receives a Pell Grant, to be used to pay the costs of administering the Pell Grant and other Title IV, HEA federal student aid programs.  20 U.S.C. § 1096; 34 C.P.R. § 690.10.

## V.     FASTTRAIN'S PARTICIPATION IN TITLE IV, HEA PROGRAMS

### A.     PPAs FastTrain Signed and Submitted

56.     FastTrain signed and submitted PPAs to the Department of Education on behalf of all of FastTrain's campuses throughout Florida.  The chart below identifies the PPAs signed by FastTrain's President, Alejandro Amor and the Department of Education from 2009 through FastTrain's closing.

| FastTrain Campus | OPE ID No. | DUNS No. | Date PPA Signed by Alejandro Amor | Date PPA Signed by DOE | PPA Approval Expiration Date |
|---|---|---|---|---|---|
| Miami | 04131900 | 808082924 | 3/13/2008 | 3/18/2009 | 6/30/2009 |
| Jacksonville | 04132200 | 789457475 | 4/24/2008 | 4/29/2008 | 6/30/2009 |
| Ft. Lauderdale | 04132000 | 867663085 | 6/18/2008 | 6/23/2009 | 6/30/2009 |
| Tampa | 04132100 | 113421858 | 6/12/2008 | 6/17/2008 | 6/30/2009 |
| | | | | | |
| Miami | 04131900 | 808082924 | 7/7/2010 | 7/9/2010 | 6/30/2014 |
| Ft. Lauderdale | 04132000 | 867663085 | 7/7/2010 | 7/9/2010 | 6/30/2014 |
| Jacksonville | 04132200 | 789457475 | 7/7/2010 | 7/9/2010 | 6/30/2014 |
| Tampa | 04132100 | 113421858 | 7/7/2010 | 7/9/2010 | 6/30/2014 |

57.     The PPAs signed by Alejandro Amor on behalf of FastTrain state with

emphasis in bold letters on the first page of the PPAs in a double-lined box that:

> **The execution of this Agreement by the Institution and the Secretary is a prerequisite to the Institution's initial or continued participation in any Title IV, HEA Program.**

58.  By signing the PPAs, Alejandro Amor, on FastTrain's behalf certified that FastTrain would comply with Title IV of the HEA's requirements.  In the first enumerated paragraph of each PPA, all of the PPAs signed by Alejandro Amor on FastTrain's behalf, state:

> 1.  The Institution understands and agrees that it is subject to and will comply with the program statutes and implementing regulations for institutional eligibility as set forth in 34 CFR Part 600 and for each Title IV, HEA program in which it participates, as well as the general provisions set forth in Part F and Part G of Title IV of the HEA, and the Student Assistance General Provisions regulations set forth in 34 CFR Part 668.
>
> *The recitation of any portion of the statute or regulations in this Agreement does not limit the Institution's obligation to comply with other applicable statutes and regulations.*

59.  Alejandro Amor also certified on behalf of FastTrain in each PPA that:

> By entering into this Program Participation Agreement, the Institution agrees that:
>
> (1) It will comply with all statutory provisions of or applicable to Title IV of the HEA, all applicable regulatory provisions prescribed under that statutory authority, and all applicable special arrangements, agreements, and limitations entered into under the authority of statutes applicable to Title IV of the HEA, including the requirement that the institution will use funds it receives under any Title IV, HEA program and any interest or other earnings thereon, solely for the purposes specified in and in accordance with that program;

60.  As described in greater detail below, FastTrain and Alejandro Amor knowingly made false statements, certifications, and claims regarding FastTrain's

compliance with Department of Education regulations and the terms of its PPAs. In order to secure greater federal funding, beginning in at least 2009, FastTrain was violating federal regulations by, among other things, enrolling and maintaining enrollment for students who were not eligible, and then concealed their ineligibility by fabricating documents.

61.     Alejandro Amor, on behalf of FastTrain, nevertheless executed the PPAs and agreed that FastTrain would comply with applicable federal regulations and the terms of the PPAs. FastTrain then drew down federal grant funds and again stated that the funds were being used in accordance with the conditions of the PPAs. Alejandro Amor's and FastTrain's statements were false when made, and caused the Department of Education to pay various claims under Title IV, HEA Programs that it would not have paid but for FastTrain's fraud.

**B.**     **Federal Funds Received from the Department of Education**

62.     FastTrain has received substantial sums in Title IV funding from the Department of Education as a result of its fraudulent conduct.

63.     During the period January 1, 2009 through FastTrain's closing on June 22, 2012, FastTrain records reflect it received at least $10,844,531.00 in Title IV funds for students enrolled at FastTrain's Miami, Florida-Flagler and Kendall campuses as follows:

| School Year | Pell Grants | FFEL | FDL | FWS/SE | Total Title IV |
|---|---|---|---|---|---|
| 2008_09 | $ 400,501.00 | $ 1,667,064.00 | $ 158,137.00 | $ - | $ 2,225,702.00 |
| 2009_10 | $ 573,963.00 | $ 825,502.00 | $ 1,158,134.00 | $ 13,292.00 | $ 2,570,891.00 |
| 2010_11 | $ 936,407.00 | $ 1,055.00 | $ 1,363,314.00 | $ 38,229.00 | $ 2,339,005.00 |
| 2011_12 | $ 1,188,195.00 | $ - | $ 2,506,494.00 | $ 14,244.00 | $ 3,708,933.00 |
| **Grand Total** | **$ 3,099,066.00** | **$ 2,493,621.00** | **$ 5,186,079.00** | **$ 65,765.00** | **$ 10,844,531.00** |

64.     During the period January 1, 2009 through FastTrain's closing on June 22,

2012, FastTrain records reflect it received at least $10,109,186.00 in Title IV funds for students enrolled at FastTrain's Plantation, Florida and Pembroke Pines, Florida campuses as follows:

| School Year | Pell Grants | FFEL | FDL | FWS/SE | Total Title IV |
|---|---|---|---|---|---|
| 2008_09 | $ 154,677.00 | $ 563,796.00 | $ 22,670.00 | $ - | $ 741,143.00 |
| 2009_10 | $ 343,294.00 | $ 433,469.00 | $ 975,427.00 | $ 11,251.00 | $ 1,763,441.00 |
| 2010_11 | $ 1,280,217.00 | $ 1,715.00 | $ 2,147,984.00 | $ 15,774.00 | $ 3,445,690.00 |
| 2011_12 | $ 1,304,699.00 | $ - | $ 2,835,094.00 | $ 19,119.00 | $ 4,158,912.00 |
| Grand Total | $ 3,082,887.00 | $ 998,980.00 | $ 5,981,175.00 | $ 46,144.00 | $ 10,109,186.00 |

65.    During the period January 1, 2009 through FastTrain's closing on June 22, 2012, FastTrain records reflect it received at least $6,937,215.00 in Title IV funds for students enrolled at FastTrain's Jacksonville, Florida campus as follows:

| School Year | Pell Grants | FFEL | FDL | FWS/SE | Total Title IV |
|---|---|---|---|---|---|
| 2008_09 | $ 191,665.00 | $ 850,718.00 | $ 114,510.00 | $ - | $ 1,156,893.00 |
| 2009_10 | $ 342,938.00 | $ 310,034.00 | $ 1,130,411.00 | $ 10,404.00 | $ 1,793,787.00 |
| 2010_11 | $ 493,100.00 | $ - | $ 1,219,345.00 | $ 18,134.00 | $ 1,730,579.00 |
| 2011_12 | $ 712,356.00 | $ - | $ 1,534,698.00 | $ 8,902.00 | $ 2,255,956.00 |
| Grand Total | $ 1,740,059.00 | $ 1,160,752.00 | $ 3,998,964.00 | $ 37,440.00 | $ 6,937,215.00 |

66.    During the period January 1, 2009 through FastTrain's closing on June 22, 2012, FastTrain records reflect it received at least $7,236,346.00 in Title IV funds for students enrolled at FastTrain's Tampa, Florida and Clearwater, Florida campuses as follows:

| School Year | Pell Grants | FFEL | FDL | FWS/SE | Total Title IV |
|---|---|---|---|---|---|
| 2008_09 | $ 163,123.00 | $ 839,622.00 | $ 72,838.00 | $ - | $ 1,075,583.00 |
| 2009_10 | $ 268,363.00 | $ 470,917.00 | $ 897,053.00 | $ 10,082.00 | $ 1,646,415.00 |
| 2010_11 | $ 318,541.00 | $ - | $ 587,363.00 | $ 15,664.00 | $ 921,568.00 |
| 2011_12 | $ 1,281,551.00 | $ - | $ 2,296,922.00 | $ 14,307.00 | $ 3,592,780.00 |
| Grand Total | $ 2,031,578.00 | $ 1,310,539.00 | $ 3,854,176.00 | $ 40,053.00 | $ 7,236,346.00 |

67.     In total, from January 1, 2009 through FastTrain's closing on June 22, 2012, FastTrain records reflect it received at least $35,127,278.00 in Title IV funds for students enrolled at FastTrain's seven campuses in Florida.  Of that $9,953,590.00 was through Pell Grants, $19,020,394.00 through the FDL Program and $5,963,892.00 through the FFEL Program, and $189,402.00 in Campus Based funds.

## VI.     FASTTRAIN'S AND ALEJANDRO AMOR'S FRAUDULENT SCHEME

### A.     Background

68.     At times material hereto, FastTrain was a privately owned, for-profit college that provided vocational training in (a) Allied Health Programs through Fast Train's School of Health Sciences and (b) Information Technology Programs through FastTrain's School of Computer Science.  At times material hereto, FastTrain's School of Health Science provided courses leading to a: Medical Assistant Diploma, Medical Coding Professional Diploma, Medical Office Administrator AS Degree, Patient Care Technician Diploma, and Pharmacy Technician Diploma.  FastTrain's School of Computer Sciences provided courses leading to a:  Computer Technician Diploma, Network Professional Diploma, Management Information Systems Diploma and Information Technology.

69.     During all times relevant hereto, FastTrain had a corporate office and team located in its Miami, Florida – Kendall campus that was responsible for the overall management of FastTrain and its various campuses.  The corporate team, headed by FastTrain's President, CEO and owner Alejandro Amor, was responsible for setting overall corporate goals and strategies, and overseeing the operations at each of FastTrain's campuses.

70.     During all times relevant hereto, FastTrain also employed an Admissions

Director who took direction from Alejandro Amor, Associate Admissions Directors who took direction from Alejandro Amor and FastTrain's Admissions Director as well as Admissions Representatives who reported to Alejandro Amor, FastTrain's Admissions Director and the respective FastTrain campus Admissions Director where an admissions representative worked.

71.     In addition, FastTrain's Chief Financial Officer was Dawn Amor, Alejandro Amor's wife, who among other responsibilities, managed FastTrain's Financial Aid department where financial aid representatives worked.

72.     During all times relevant hereto, each FastTrain campus also had a number of other employees situated at FastTrain's various campuses, including Admissions Representatives and Financial Aid employees.

**B.     FastTrain Engaged In Various Fraudulent Schemes that Caused the U.S. Department Of Education to Determine Eligibility For Title IV Funding To Ineligible Students**

73.     In order to receive funding under Title IV of the HEA, federal law requires that a prospective FastTrain student have a valid high school diploma or its recognized equivalent.  Federal law also states that only a student maintaining satisfactory academic progress in his or her course of study according to the school's published standards, and in accordance with federal guidelines, is eligible for financial assistance under Title IV of the HEA.  By signing its PPAs, FastTrain agreed it would comply with these regulations.

74.     FastTrain engaged in various fraudulent schemes in order to ensure that the U.S. Department of Education determined eligibility for Title IV funding to students who were not qualified to receive such federal funds.  Through these schemes, FastTrain was

able to increase its enrollment numbers and receive federal financial aid on behalf of those students, regardless of whether the students were actually benefitting from FastTrain's instruction. FastTrain's conduct caused the U.S. Department of Education to determine students were eligible for federal funding when such students would not otherwise have been eligible to receive such funding. FastTrain's conduct caused the U.S. Department of Education to disburse FDL funds and make payments of interest, defaulted principal and other benefits on FDL and FFEL loans for which the students were ineligible.

75. To generate as much revenue as possible, FastTrain would fill its classes with ineligible students. FastTrain's and Alejandro Amor's focus on permitting the recruitment of ineligible students resulted in FastTrain engaging in a variety of fraudulent practices designed to extract federal funding from the U.S. Department of Education and from students. FastTrain's conduct, as explained below, violated the Federal FCA and resulted in payment by mistake and in FastTrain being unjustly enriched.

76. During all times relevant hereto, FastTrain management, headed by Alejandro Amor, employed a corporate strategy focused on increased admissions and profits above all else.

77. FastTrain's main priority was increasing its enrollment numbers and, hence, its revenues. In furtherance of that strategy, FastTrain employed many Admissions Representatives and put intense pressure on them to enroll as many students as possible. Admissions Representatives went to great lengths to recruit students, regardless of whether they were eligible to receive Title IV funds.

78. FastTrain's Student Catalog for the 2011-2013 period made clear to each

FastTrain student that that a student's "direct contact" was his or her "Admissions Representative." FastTrain students were directed to contact their Admissions Representative "for any assistance." FastTrain advised students: "We want to ensure a positive training experience, and provide you with all the resources available." FastTrain's Student Catalog 2011-2013, Vol. XV, No. 2, July 2011 at 7.

79. FastTrain employed female exotic dancers as admissions representatives at least one campus to lure young male students.

80. FastTrain Admissions Representatives would recruit new students on the streets and in the malls of Florida's inner cities where FastTrain campuses were located.

81. During all times material hereto, FastTrain Admissions Representatives, under Alejandro Amor's directives, would lure some students to FastTrain with promises of free education.

82. During all times relevant hereto, FastTrain Admissions Representatives were pressured to make their sales goals. FastTrain Admissions Representatives were told they would be terminated if they did not meet FastTrain's sales goals.

83. During all times relevant hereto, to meet those sales goals, under Alejandro Amor's directives, FastTrain Admissions Representatives would enroll students regardless of whether those students were qualified for enrollment. As discussed below, FastTrain Admissions Representatives would fabricate proofs of education to enroll unqualified students. FastTrain Admissions Representatives would coach prospective students to lie to FastTrain Financial Aid representatives in completing FASFA applications. In the words of one highly successful FastTrain Admissions Representative, the Relator Juan Peña, who

worked at the direction of Alejandro Amor and Amor's appointed Corporate Director of Admissions, Juan Arreola, the majority of FastTrain students Peña recruited as a FastTrain Admissions Representative, were not high school graduates and did not have a diploma or its equivalent.

84.     During all times material hereto, FastTrain and Alejandro Amor's main focus was on enrolling students, and making those students appear to be eligible for Title IV funds as set forth in U.S. Department of Education regulations.

85.     Many of these admissions representative employees were trained to recruit and admit students who did not have a high school diploma.    Additionally, many admissions representative employees were trained to coach the unqualified FastTrain applicants they recruited to lie to other FastTrain staff members they may encounter in FastTrain's Financial Aid Department and to submit false documents to the Department of Education.

### 1.    Falsification of High School Diplomas and Graduation Records

86.     FastTrain caused students to submit applications for federal financial aid ("FASFA") that contained false statements, including false statements regarding the student's eligibility for federal aid and/or the student's financial situation.    Those false statements were material to the Department of Education's determination of those applicants' eligibility to receive federal aid when the Department of Education processed the FAFSAs.  FastTrain also falsely certified, in its PPAs from at least January 1, 2009 and each time it drew down federal grant monies, that it was complying with federal regulations governing the eligibility and award of Title IV funding under the HEA.  FastTrain's false

statements and fraudulent conduct resulted in FastTrain receiving federal aid that it would not otherwise have been entitled to receive but for its fraud.

87. Management at FastTrain taught, condoned, and encouraged this fraudulent conduct. For example, Corporate Director of Admissions Juan Arreola said that Alejandro Amor instructed him sometime in 2010 to recruit any student regardless of whether he or she had a high school diploma. Peña stated that upon being hired, he in turn was instructed by Juan Arreola to recruit anyone who agreed to attend FastTrain.

88. Some FastTrain's admissions and financial aid representatives who suspected and refused to go along with FastTrain's fraud were terminated or constantly threatened with termination.

   a. Dianne Gladky, a Financial Aid representative was threatened with being terminated because she asked prospective FastTrain students too many questions during enrollment. Alejandro Amor suggested that she was not a good fit at FastTrain because she chased off potential students because of her questions regarding their high school completion status and if they were listing accurate information on the FAFSA.

   b. Meiling Nau, FastTrain-Plantation admissions representative was fired because she refused to participate any further in the fraudulent activity of recruiting potential FastTrain enrollees who did not have a high school diploma or GED.

### a. Falsification of High School Diplomas

89. FastTrain regularly engaged in falsifying high school diplomas in order to award Title IV funds in violation of federal regulations. For example, FastTrain fabricated

high school diplomas of students FastTrain enrolled and to whom were awarded loans and grants for which the students were ineligible, resulting in loss to the United States for these students as shown by the examples below:

| Student | FDL | Pell | Total Title IV |
|---------|-----|------|----------------|
| Claudia Zepeda | $ 3,167.00 | $ 1,850.00 | $ 5,017.00 |
| Patrick Hall | $ - | $ 1,832.00 | $ 1,832.00 |
| Javier Ventura | $ 3,167.00 | $ 1,850.00 | $ 5,017.00 |
| Stephanie Dominique | $ 3,167.00 | $ 1,850.00 | $ 5,017.00 |
| Fanny Hall | $ 3,167.00 | $ 1,850.00 | $ 1,850.00 |
| Edgar Castro | $ 1,834.00 | $ 1,367.00 | $ 3,201.00 |
| Dwight Rivera | $ 9,500.00 | $ 3,700.00 | $ 13,200.00 |
| Gabriel Hernandez | $ 3,668.00 | $ 3,700.00 | $ 7,368.00 |

**b. Promises of High School Diplomas**

90.     FastTrain Admissions Representatives would recruit students who did not have a high school diploma with promises of a high school diploma.

91.     Students recruited by FastTrain Admissions Representative Jose Gonzalez were told that to receive a high school diploma, they would have to pay Gonzalez $200.00 or $300.00.  Gonzalez would complete a high school diploma exam from "American Worldwide Academy" ("AWA") on behalf of the students in exchange for a fee.  Gonzalez thus obtained fraudulent AWA diplomas that he supplied to prospective students he recruited.

92.     Students recruited by FastTrain's Corporate Director of Admissions Juan Arreola, FastTrain Plantation's Director of Admissions Luis Arroyo, and Peña were also provided with fake diplomas purportedly from AWA, North Miami Beach Senior High School, Plantation High School, Florida Christian Academy and other schools.  Some of

these diplomas were created by Arroyo or Peña who were trained how to make the fake diplomas by Arreola. FastTrain employees provided these invalid diplomas to FastTrain students at FastTrain's Kendall, Flagler, Plantation, Clearwater, and Jacksonville campuses.

93.     With respect to 79 students that FastTrain reported as having a diploma from AWA, officials of that entity, indicated 69 of the 79 students never received diplomas or graduated, much less attended there. Due to Defendants' fraud with respect to those 69 former FastTrain students' loan applications, the United States was damaged in the amount of at least $643,127.00, of which $410,425.00 are FDL loans and $232,702.00 are losses on Pell Grants.

### c. Coaching Students to Lie on FASFA Applications

94.     FastTrain's admissions employees, under the directives of Alejandro Amor also engaged in a variety of fraudulent practices that resulted in students receiving more federal aid than they were entitled to receive. For example, FastTrain employees, as directed by Alejandro Amor and his admissions and associate admissions directors, coached financial aid applicants to lie on their FASFA applications by, among other things, stating that they were high school graduates when they had not graduated from high school, did not have a legitimate high school diploma or its equivalent. Instances of such conduct include:

a. Hundreds of loans and grants were issued to former FastTrain students who were not eligible to receive them or were related to students whom FastTrain coached to provide documentation as having graduated from a Miami-Dade County, Florida public school. Public school officials in Miami-Dade County,

Florida have determined that 403 FastTrain students whose FASFA and/or FastTrain Admissions Applications stated that they graduated from a Miami-Dade County, Florida public school, did not do so. None of these 403 students were eligible to receive Title IV federal funds, and yet, due to FastTrain's fraud, all of these 403 FastTrain students were awarded $1,952,113.00 in FDL, $208,691.00 in FFEL, and $1,014,753.00 in Pell grants for which FastTrain knew that they did not qualify.

b. Hundreds of loans and grants were issued to former FastTrain students who were not eligible to receive them or were related to students whom FastTrain coached to provide documentation as having graduated from a Duval County, Florida public school. Public school officials in Duval County, Florida have determined that 128 FastTrain students whose FASFA and/or FastTrain Admissions Applications stated that they graduated from a Duval County, Florida public school, did not do so. None of these 128 students were eligible to receive Title IV federal funds, and yet, due to FastTrain's fraud, all of these 128 FastTrain students were awarded $640,054.00 in FDL, $66,326.00 in FFEL and $340,964.00 in Pell grants for which FastTrain knew that they did not qualify.

c. Over a hundred loans and grants were issued to former FastTrain students who were not eligible to receive them or were related to students whom FastTrain coached to provide documentation as having graduated from a Broward County, Florida public school. Public school officials in Broward County,

Florida have determined that 53 FastTrain students whose FASFA and/or FastTrain Admissions Applications stated that they graduated from a Broward County, Florida public school, did not do so. None of these 53 students were eligible to receive Title IV federal funds, and yet, due to FastTrain's fraud, all of these 53 FastTrain students were awarded $227,267.00 in FDL, $12,139.00 in FFEL and $131,017.00 in Pell grants for which FastTrain knew that they did not qualify.

d. Scores of loans and grants were issued to former FastTrain students who were not eligible to receive them or were related to students whom FastTrain coached to provide documentation as having graduated from a Hillsborough County, Florida public school. Public school officials in Hillsborough County, Florida have determined that 73 FastTrain students whose FASFA and/or FastTrain Admissions Applications stated that they graduated from a Hillsborough County, Florida public school, did not do so. None of these 73 students were eligible to receive Title IV federal funds, and yet, due to FastTrain's fraud, all of these 73 FastTrain students were awarded $373,292.00 in FDL and $209,308.00 in Pell grants for which FastTrain knew that they did not qualify.

e. Dozens of loans and grants were issued to former FastTrain students who were not eligible to receive them or were related to students whom FastTrain coached to provide documentation as having graduated from a Pinellas County, Florida public school. Public school officials in Pinellas County,

Florida have determined that 34 FastTrain students whose FASFA and/or FastTrain Admissions Applications stated that they graduated from a Pinellas County, Florida public school, did not do so. None of these 34 students were eligible to receive Title IV federal funds, and yet, due to FastTrain's fraud, all of these 34 FastTrain students were awarded $137,335.00 in FDL and $97,087.00 in Pell grants for which FastTrain knew that they did not qualify.

f.    Similarly, dozens of loans and grants were issued to former FastTrain students who were not eligible to receive them or were related to students whom FastTrain employees coached to provide documentation as having earned a G.E.D. in Florida. The Florida Department of Education has determined that 74 FastTrain students whose FASFA and/or FastTrain Admissions Applications stated that they had a GED, did not do so. None of these 74 students were eligible to receive Title IV federal funds, and yet, due to FastTrain's fraud, all of these 74 FastTrain students were awarded $280,835.00 in FDL, $33,769.00 in FFEL and $187,073.00 in Pell grants for which FastTrain knew that they did not qualify.

### 2.    Falsification of Attendance Records

95.    Pursuant to 34 CFR 685.303(b)(4), if a student is enrolled in the first year of an undergraduate program of study and has not previously received a Federal Stafford, Federal Supplemental Loans for Students, Direct Subsidized, or Direct Unsubsidized Loan, a school may not disburse the proceeds of a Direct Subsidized or Direct Unsubsidized Loan until 30 days after the first day of the student's program. FastTrain routinely drew down

federal financial student aid for students who had not attended a minimum of 30 days and often backdated the enrollment date so that FastTrain could draw down funds early on students who had started within the first five days of their program.

96.    FastTrain's Admissions Representatives pressured the ineligible students they enrolled to attend classes for at least the first five days of the period.  When students did not have transportation to get to a FastTrain campus at which they were enrolled, FastTrain's Admissions Representatives would pick them up and take them to school.  After the first five days, FastTrain drew down Title IV funds on the students' behalf.

97.    There were students, however, who would enroll at FastTrain, yet not attend classes.  In order to avoid losing federal aid for those students, FastTrain would falsify attendance reports to make it appear as though those students who enrolled but did not attend classes had actually done so.

**C.    FastTrain Knowingly Made False Statements and Falsified Files in Order to Cover Up Its Fraudulent Scheme**

98.    FastTrain knowingly made, or caused to be made, the false statements and claims outlined above.  FastTrain's fraudulent conduct permeated the FastTrain Admissions Department in all of its seven campuses.  The fraudulent conduct of FastTrain Admissions Representatives and other employees was also encouraged and/or directed by Fast Train's senior management.  Alejandro Amor, FastTrain's Corporate Admissions Director Juan Arreola, campus admissions directors such as Luis Arroyo and other FastTrain management personnel encouraged FastTrain Admissions Representatives to do what had to be done to get students enrolled and packaged.  In addition to Alejandro Amor, the management level employees who were aware of and/or encouraged the fraud include, but

are not limited to, Juan Arreola, Luis Arroyo, Michael Grubbs, Anthony Mincey, Norman Dorn, and Jose Gonzalez.

99.    On behalf of FastTrain, Alejandro Amor certified when he signed FastTrain's PPAs in 2010 and each time FastTrain drew down federal grants and loan monies that FastTrain would comply with the federal regulations governing the award of Title IV funding, including the requirements that it would award Title IV funds only to eligible students.  Indeed, FastTrain had been engaged in a scheme since at least January 1, 2009 to defraud the Department of Education in order to secure as much federal aid as possible.

100.    The concealment of material information was directed and encouraged by upper level management at FastTrain.  For example, Juan Arreola and Luis Arroyo purposely hired attractive women and sometimes exotic dancers and encouraged them to dress provocatively while they recruited young men in neighborhoods to attend FastTrain.

## VII.    THE SUBMISSION OF FALSE CLAIMS

### A.    False Claims

101.    Every request for a federal grant or Federal Direct Loan or federally guaranteed loan made on behalf of a student at FastTrain's campuses constitutes a separate false claim.  The following examples of student financial aid packages, each of which included a false secondary education credential in the student's file, illustrate FastTrain's false claims:

> a.  FastTrain student Curtiss Bennett who did not have a high school diploma or G.E.D., received a financial aid package consisting of $1,850.00 in Pell Grant funds, $6,334.00 in FDL funds for the 2011-2012 financial aid award year. Bennett did not receive any additional funds when he was murdered in a drive-

by shooting.

b.   FastTrain student Kiara Butler who did not have a high school diploma or G.E.D., received a financial aid package consisting of $4,971.00 in Pell Grant funds, $6,334.00 in FDL funds for the 2011--2012 financial aid award year.

c.   FastTrain student Cordell Canty who did not have a high school diploma or G.E.D., received a financial aid package consisting of $1,850.00 in Pell Grant funds, $3,167.00 in FDL funds for the 2011--2012 financial aid award year. Canty defaulted on his loan obligations on August 2, 2013, when he was incarcerated in a Florida prison.

d.   FastTrain student Sheldrick Cooley who did not have a high school diploma or G.E.D., received a financial aid package consisting of $3,700.00 in Pell Grant funds, $6,334.00 in FDL funds, for the 2010--2011 financial aid award year.

e.   FastTrain student Stephanie Dominique who did not have a high school diploma or G.E.D., received a financial aid package consisting of $1,850.00 in Pell Grant funds, $3,167.00 in FDL funds for the 2011-2012 financial aid award year.

f.   FastTrain student Fanny Hall who did not have a high school diploma or G.E.D., received a financial aid package consisting of $1,850.00 in Pell Grant funds, $3,167.00 in FDL funds for the 2011--2012 financial aid award year.

g.   FastTrain student Kiara Mott who did not have a high school diploma or G.E.D., received a financial aid package consisting of $5,500.00 in Pell Grant funds, $5,500.00 in FDL funds for the 2011--2012 financial aid award year.

Mott defaulted on her loan obligations on October 31, 2013.

h. FastTrain student Cortney Douglas who did not have a high school diploma or
G.E.D., received a financial aid package consisting of $1,850.00 in Pell Grant
funds, $6,334.00 in FDL funds for the 2010--2011 financial aid award year.

102. The Pell Grant, FDL, and FFEL awards described in this Complaint were
caused by FastTrain's false statements and fraudulent promises in FastTrain's PPAs that it
would comply with applicable laws and regulations governing the award of federal financial
aid, and/or the false representations in each grant and loan application that the student
seeking federal government aid was eligible to receive Title IV funding under the HEA.
FastTrain's conduct was knowing and material to the Department of Education's
disbursement of Pell Grant and FDL funds to FastTrain, and payment of interest, defaulted
principal and other benefits on FFEL loans. Each request for payment thus constitutes a
false claim under the FCA.

103. The examples above are illustrative of the many false claims presented by, or
caused to be presented by, FastTrain for federal financial assistance under Title IV of the
HEA.

104. Between Calendar Years 2008 and 2012, the Department of Education
disbursed $3,931,821.00 in FDL and FFEL loans for a total of 655 students in Broward,
Duval, Hillsborough, Miami-Dade and Pinellas Counties as well as students claiming a
GED in Jacksonville, Florida and Ft. Lauderdale, Florida. Those loans to FastTrain
students who FastTrain caused to lie on their Financial Aid applications at a time Alejandro
Amor certified FastTrain was in compliance with federal regulations, were fraudulent

because as discussed above, the 655 FastTrain students who received these federal loans, were not qualified to receive them.

| Total Calendar Years 2008-2012 | | | | | |
|---|---|---|---|---|---|
| School District | Direct Loan Students | Amount FDL | FFEL Students | Amount FFEL | Total FDL and FFEL Paid 2008-2012 to Date |
| Broward | 49 | $227,267.00 | 1 | $12,139.00 | $ 239,406.00 |
| Duval | 110 | $640,054.00 | 7 | $66,326.00 | $ 706,380.00 |
| FT-GED | 38 | $163,952.00 | 1 | $ 9,668.00 | $ 173,620.00 |
| GED-JAX | 23 | $116,883.00 | 2 | $24,101.00 | $ 140,984.00 |
| Hillsborough | 66 | $373,292.00 | 0 | | $ 373,292.00 |
| Miami-Dade | 352 | $1,952,193.00 | 20 | $208,691.00 | $ 2,160,804.00 |
| Pinellas | 32 | $137,335.00 | 0 | | $ 137,335.00 |
| Grand Total | 627 | $3,610,896.00 | 28 | $320,925.00 | $ 3,931,821.00 |

| Calendar Year 2008 | | |
|---|---|---|
| School District | # of Students | Loans Paid to Date |
| Broward | 1 | $ 9,500.00 |
| Duval | 5 | $ 32,460.00 |
| FT-GED | 0 | |
| GED-JAX | 1 | $ 9,500.00 |
| Hillsborough | 0 | |
| Miami-Dade | 12 | $ 97,129.00 |
| Pinellas | 0 | |
| Grand Total | 18 | $ 148,589.00 |

| Calendar Year 2009 | | |
|---|---|---|
| School District | # of Students | Loans Paid to Date |
| Broward | 7 | $ 48,705.00 |
| Duval | 6 | $ 45,700.00 |
| FT-GED | 2 | $ 22,599.00 |
| GED-JAX | 3 | $ 20,935.00 |
| Hillsborough | 2 | $ 11,918.00 |
| Miami-Dade | 42 | $ 304,321.00 |
| Pinellas | 0 | |
| Grand Total | 55 | $ 454,178.00 |

| Calendar Year 2010 | | |
|---|---|---|
| School District | # of Students | Loans Paid to Date |
| Broward | 6 | $ 23,778.00 |
| Duval | 20 | $ 155,248.00 |
| FT-GED | 8 | $ 46,667.00 |
| GED-JAX | 0 | |
| Hillsborough | 7 | $ 59,334.00 |
| Miami-Dade | 55 | $ 384,644.00 |
| Pinellas | | |
| Grand Total | 90 | $ 669,671.00 |

| Calendar Year 2011 | | |
|---|---|---|
| School District | # of Students | Loans Paid to Date |
| Broward | 11 | $ 42,395.00 |
| Duval | 54 | $ 329,074.00 |
| FT-GED | 8 | $ 33,101.00 |
| GED-JAX | 12 | $ 74,205.00 |
| Hillsborough | 30 | $ 158,856.00 |
| Miami-Dade | 161 | $ 904,750.00 |
| Pinellas | 13 | $ 51,278.00 |
| Grand Total | 273 | $ 1,593,659.00 |

| Calendar Year 2012 | | |
|---|---|---|
| School District | # of Students | Loans Paid to Date |
| Broward | 29 | $ 115,028.00 |
| Duval | 44 | $ 143,898.00 |
| FT-GED | 22 | $ 71,253.00 |
| GED-JAX | 11 | $ 36,344.00 |
| Hillsborough | 34 | $ 143,184.00 |
| Miami-Dade | 141 | $ 469,960.00 |
| Pinellas | 20 | $ 86,057.00 |
| Grand Total | 281 | $ 1,065,724.00 |

105.    As a result of FastTrain's fraudulent conduct, approximately 1,611 loans were

awarded to approximately 655 former FastTrain students, the vast majority of whom were

not qualified to receive such loans as a result of their failure to have graduated from high

school or earn a G.E.D.  Of these, 627 former FastTrain students received FDL funds and

28 former FastTrain students received FFEL funds.

106.   Between Academic Years 2009 and 2012, the Department of Education disbursed $1,980,202.00 in Pell Grants for a total of 658 students in Broward, Duval, Hillsborough, Miami-Dade and Pinellas Counties as well as students claiming a GED in Jacksonville, Florida and Ft. Lauderdale, Florida.  These Pell Grants to FastTrain students who FastTrain caused to lie on their Financial Aid applications at a time Alejandro Amor certified FastTrain was in compliance with federal regulations, were fraudulent because as discussed above, the 658 FastTrain students who received the Pell Grants, were not qualified to receive them.

| Total Academic Years 2009-2012 | | |
|---|---|---|
| **School District** | **Total Number of Students** | **Total Pell Paid to Date** |
| Broward | 52 | $ 131,017.00 |
| Duval | 119 | $ 340,964.00 |
| FT-GED | 43 | $ 104,372.00 |
| GED-JAX | 27 | $ 82,701.00 |
| Hillsborough | 69 | $ 209,308.00 |
| Miami-Dade | 359 | $ 1,014,753.00 |
| Pinellas | 34 | $ 97,087.00 |
| **Grand Total** | **658** | **$ 1,980,202.00** |

| Academic Year 2009 | | |
|---|---|---|
| **School District** | **Number of Students** | **Pell Paid to Date** |
| Broward | 1 | $ 4,731.00 |
| Duval | 8 | $ 21,127.00 |
| FT-GED | 0 | |
| GED-JAX | 2 | $ 6,034.00 |
| Hillsborough | 1 | $ 1,914.00 |
| Miami-Dade | 10 | $ 17,984.00 |
| Pinellas | 0 | |
| **Grand Total** | **19** | **$ 51,790.00** |

| Academic Year 2010 | | |
|---|---|---|
| **School District** | **Number of Students** | **Pell Paid to Date** |
| Broward | 7 | $ 23,243.00 |
| Duval | 10 | $ 15,309.00 |
| FT-GED | 6 | $ 10,257.00 |
| GED-JAX | 1 | $ 2,230.00 |
| Hillsborough | 2 | $ 367.00 |
| Miami-Dade | 43 | $ 96,946.00 |
| Pinellas | 0 | |
| **Grand Total** | **66** | **$ 148,352.00** |

| Academic Year 2011 | | |
|---|---|---|
| **School District** | **Number of Students** | **Pell Paid to Date** |
| Broward | 8 | $ 13,412.00 |
| Duval | 31 | $ 82,991.00 |
| FT-GED | 13 | $ 31,674.00 |
| GED-JAX | 4 | $ 11,563.00 |
| Hillsborough | 9 | $ 26,838.00 |
| Miami-Dade | 90 | $ 235,801.00 |
| Pinellas | 1 | $ 5,041.00 |
| **Grand Total** | **145** | **$ 407,320.00** |

| Academic Year 2012 | | |
|---|---|---|
| **School District** | **Number of Students** | **Pell Paid to Date** |
| Broward | 39 | $ 89,631.00 |
| Duval | 82 | $ 221,537.00 |
| FT-GED | 28 | $ 62,441.00 |
| GED-JAX | 21 | $ 62,874.00 |
| Hillsborough | 62 | $ 180,189.00 |
| Miami-Dade | 263 | $ 664,022.00 |
| Pinellas | 33 | $ 92,046.00 |
| **Grand Total** | **497** | **$ 1,372,740.00** |

107.    With respect to 79 students that FastTrain coached to indicate as having a diploma from AWA, officials of AWA, have indicated 69 of the 79 students never received diplomas or graduated, much less attended there.  Due to FastTrain's fraud with respect to those 69 former FastTrain students' financial aid applications, the United States was damaged in the amount of at least $643,127.00, of which $410,425.00 are FDL loans and $232,702.00 are losses on Pell Grants.

108.    The United States sustained damages for over $4,340,000.00 in student loans ($4,021,321.00 in FDL Program and $320,925.00 in disbursed FFEL Program loans).  In addition, the United States has sustained damages through Pell Grants obtained through FastTrain's fraudulent activities in the amount of $2,212,904.00.

**B.    Loan Defaults as of November 20, 2014**

109.    As of November 20, 2014, 84 loans of former FastTrain students that are in default are related to students whom FastTrain coached to provide false documentation as having graduated from a Miami-Dade County, Florida public school, when these students did not do so, in order for the students to be awarded federal loans and grants for which

FastTrain knew that they did not qualify.

110.    As of November 20, 2014, 14 loans of former FastTrain students that are in default are related to students whom FastTrain coached to provide false documentation as having graduated from a Broward County, Florida public school, when these students did not do so, in order for the students to be awarded federal loans and grants for which FastTrain knew that they did not qualify.

111.    As of November 20, 2014, 24 loans of former FastTrain students that are in default are related to students whom FastTrain coached to provide false documentation as having graduated from a Duval County, Florida public school, when these students did not do so, in order for the students to be awarded federal loans and grants for which FastTrain knew that they did not qualify.

112.    As of November 20, 2014, 19 loans of former FastTrain students that are in default are related to students whom FastTrain coached to provide false documentation as having graduated from a Hillsborough County, Florida public school, when these students did not do so, in order for the students to be awarded federal loans and grants for which FastTrain knew that they did not qualify.

113.    As of November 20, 2014, 6 loans of former FastTrain students that are in default are related to students whom FastTrain coached to provide false documentation as having graduated from a Pinellas County, Florida public school, when these students did not do so, in order for the students to be awarded federal loans and grants for which FastTrain knew that they did not qualify.

114.    As of November 20, 2014, 16 loans of former FastTrain students that are in

default are related to students whom FastTrain coached to provide false documentation as having earned a GED, when these students did not do so, in order for the students to be awarded federal loans and grants for which FastTrain knew that they did not qualify.

## VIII. CAUSES OF ACTION

### Count 1: False or Fraudulent Claims (31 U.S.C. § 3729(a)(1)(A) (2009), formerly 31 U.S.C. § 3729(a)(1)(2006)) (AGAINST FASTTRAIN AND ALEJANDRO AMOR)

115.   The United States re-alleges and incorporates herein, Paragraphs 1 through 114 of this Complaint in Intervention.

116.   Defendants FastTrain and Alejandro Amor knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l) (2009), formerly 31 U.S.C. § 3729(a)(1)(2006), specifically, the claims for student loan and Pell Grant payments under the Title IV student financial assistance programs.

117.   Because of the Defendant's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $5,500 and up to $11,000 for each violation.

### Count II:  False Statements (31 U.S.C. § 3729(a)(1)(B) (2009), formerly 31 U.S.C. § 3729(a)(2)(2006)) (AGAINST FASTTRAIN AND ALEJANDRO AMOR)

118.   The United States re-alleges and incorporates herein, Paragraphs 1 through 114 of this Complaint in Intervention.

119.   Defendants FastTrain and Alejandro Amor knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim, and/or to get the United States to pay or approve false or fraudulent claims, in violation of

the FCA, 31 U.S.C. § 3729(a)(l)(B) (2009), formerly 31 U.S.C. § 3729(a)(2)(2006).

120.     Because of the Defendants' acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $5,500 and up to $11,000 for each violation.

### Count III:  Conspiracy (31 U.S.C. § 3729(a)(1)(C) (2009),
### formerly 31 U.S.C. § 3729(a)(3)(2006))
### (AGAINST FASTTRAIN AND ALEJANDRO AMOR)

121.     The United States re-alleges and incorporates herein, Paragraphs 1 through 114 of this Complaint in Intervention.

122.     Defendants FastTrain and Alejandro Amor conspired to commit a violation of subparagraph in violation of the FCA, 31 U.S.C. § 3729(a)(l)(a) and/or (B) (2009), formerly 31 U.S.C. § 3729(a)(2) and (3) (2006).

123.     Because of the Defendants' acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $5,500 and up to $11,000 for each violation.

### Count IV: Unjust Enrichment
### (AGAINST FASTTRAIN AND ALEJANDRO AMOR)

124.     The United States re-alleges and incorporates herein, Paragraphs 1 through 114 of this Complaint in Intervention.

125.     By reason of the foregoing conduct and violation of federal law, Defendants FastTrain and Alejandro Amor were unjustly enriched and are liable to account for and pay such amounts, which are to be determined at trial, to the United States.

### Count V: Payment by Mistake
### AGAINST FASTTRAIN AND ALEJANDRO AMOR)

126.     The United States re-alleges and incorporates herein, Paragraphs 1 through

114 of this Complaint in Intervention.

127.    By reason of the foregoing conduct of the Defendants FastTrain and

Alejandro Amor, the United States made payments under mistake of fact.

128.    As a result of these payments made by the United States under mistake of

fact, the United States has sustained damages in an amount to be proven at trial.

**Count VI: Violation of Florida False Claims Act,**
**False Claims for Payment, § 68.082(2)(a), Fla. Stat.**
**(AGAINST FASTTRAIN AND ALEJANDRO AMOR)**

129.    Florida re-alleges and incorporates herein, Paragraphs 1 through 114 of this

Complaint in Intervention.

130.    Defendants FastTrain and Alejandro Amor knowingly presented or caused to

be presented to an officer or employee of an agency of Florida, false or fraudulent claims for

payment or approval in violation of § 68.082(2)(a), Fla. Stat.

131.    During the academic years 2009/2010 through 2011/2012, Defendants

FastTrain and Alejandro Amor received in excess of $15,000.00 in state funds as a result of

these Defendants' presentation to an officer or employee of an agency of Florida a claim for

payment or approval in connection with student grants and scholarships.

132.    The institutional eligibility requirements for participation in Florida

scholarship and grant programs include that the institutions are Title IV eligible and

therefore in compliance with the applicable Title IV regulations.  Defendants FastTrain and

Alejandro Amor represented their institutions as Title IV eligible in connection with these

Defendants' presentation of said claims for payment or approval.  Such representations were

false, for the reasons set forth in the foregoing paragraphs.

133.     As a result of the Defendants FastTrain's and Alejandro Amor's conduct as set forth in these causes of action, Florida has suffered actual damages in excess of $15,000.00.

134.     Pursuant to §§ 68.082(2) and 68.086, Fla. Stat., Florida is entitled to treble the amount of actual damages sustained, and no less than $5,500 and not more than $11,000 in civil penalties per claim, attorney's fees, expenses, and costs.

### COUNT VII: Violation of Florida False Claims Act,
### False Records or Statements to Get False or Fraudulent Claims Paid or Approved,
### § 68.082(2)(b), Fla. Stat.]
### (AGAINST FASTTRAIN AND ALEJANDRO AMOR)

135.     Florida re-alleges and incorporates herein, Paragraphs 1 through 114 of this Complaint in Intervention.

136.     Defendants FastTrain and Alejandro Amor knowingly made, used, or caused to be made or used a false record or statement to get a false or fraudulent claim paid or approved by Florida, in violation of §68.082(2)(b), Fla. Stat.

137.     During the academic years 2009/2010 through 2011/2012, Defendants FastTrain and Alejandro Amor received in excess of $15,000.00 in state funds as a result of these Defendants' records and/or statements for payment or approval of claims in connection with student grants and scholarships.

138.     The institutional eligibility requirements for participation in Florida scholarship and grant programs include that the institutions are Title IV eligible and therefore in compliance with the applicable Title IV regulations. Defendants FastTrain and Alejandro Amor presented records and/or statements of their institutions as Title IV eligible in connection with Defendants' presentation of said claims for payment or approval. Such

statements were false, for the reasons set forth in the foregoing paragraphs.

139.    As a result of the Defendants FastTrain's and Alejandro Amor's conduct as set forth in these causes of action, the Florida has suffered actual damages in excess of $15,000.00.

140.    Pursuant to §§ 68.082(2) and 68.086, Fla. Stat., Florida is entitled to treble the amount of actual damages sustained, and no less than $5,500 and not more than $11,000 in civil penalties per claim, attorney's fees, expenses, and costs.

### **PRAYER FOR RELIEF**

141.    Wherefore, Plaintiff, the United States, demands judgment in its favor and against Defendants Fast Train and Alejandro Amor as follows:

a.    Under Counts I, II and III (FCA), for an amount of the United States' damages, trebled as required by law, plus such civil penalties as are required by law, together with all such further relief as may be just and proper;

b.    Under Count IV (Unjust Enrichment), for an accounting and the amount by which Defendant was unjustly enriched, plus interest and costs, and expenses, and all such further relief as may be just and proper;

c.    Under Count V (Payment by Mistake), for an accounting and the amount the United States paid to the Defendant, plus interest and costs, and expenses, and all such further relief as may be just and proper;

d.    Such other relief as this Court may deem just and proper, together with interest and costs of this action.

142.    Wherefore, Plaintiff, Florida, demands judgment in its favor and against

Defendants FastTrain and Alejandro Amor, individually or jointly as appropriate, under

Counts VI and VII (Florida False Claims Act), for an amount of Florida's actual damages,

trebled as required by law, for the period beginning January 1, 2009 through the date of trial

pursuant to § 68.082(2), Fla. Stat, plus a civil penalty of $11,000, for each and every false

claim made to Florida identified in this action, interest on the judgment, attorneys' fees,

expenses, investigatory costs, and for such other and further relief as the Court deems just

and equitable pursuant to §68.086, Fla. Stat.

   THE UNITED STATES and FLORIDA DEMAND A JURY TRIAL AS TO ALL

ISSUES SO TRIABLE.

Dated:  December 2, 2014     Respectfully submitted,

**JOYCE R. BRANDA**       **WIFREDO A. FERRER**
**ACTING ASSISTANT**      **UNITED STATES ATTORNEY**
**ATTORNEY GENERAL**

                /s James A. Weinkle
**MICHAEL D. GRANSTON**    **JAMES A. WEINKLE**
**RENÉE BROOKER**       **Assistant United States Attorney**
**JAY MAJORS**         Fla. Bar No.: 0710891
Attorneys          99 N.E. 4th Street, 3rd Floor
**U.S. Department of Justice**    Miami, Florida 33132
Civil Division
P.O. Box 261, Ben Franklin Station
Washington, DC 20044     Tel.:  305.961.9290/Fax:  305.530.7139
Tel.:202.307-0264/Fax:202.514.0280
Email: Jay.Majors@usdoj.gov   Email:  James.Weinkle@usdoj.gov

                Counsel for United States
Counsel for United States

                **PAMELA JO BONDI**
                **ATTORNEY GENERAL, State Of Florida**

                /s Mark S. Hamilton
                **Mark S. Hamilton**
                Special Counsel, Consumer Protection Division
                Florida Bar No.: 63819
                Office of the Attorney General

The Capitol, PL-01
Tallahassee, Florida 32399-1050
Phone: (850) 414-3300/Fax: 850-488-4483
Email: Mark.Hamilton@myfloridalegal.com

Counsel for State of Florida

# CERTIFICATE OF FILING AND SERVICE

*United States of America, State of Florida ex rel Juan Peña, Plaintiffs/Relator vs.*
*FastTrain II Corp. d/b/a FastTrain College, et. al, Defendants,*
## CASE NO.: 1:12-cv-21431-COOKE/TORRES
United States District Court, Southern District of Florida

I hereby certify that on December 2, 2014, a copy of the foregoing United States of America's and State of Florida's Complaint in Intervention was served on Counsel for Relator, by email at the following addresses:

| | |
|---|---|
| **Mark S. Hamilton**<br>Special Counsel<br>Consumer Protection Division<br>Office of the Attorney General<br>State of Florida<br>The Capitol, PL-01<br>Tallahassee, Florida 32399-1050<br><br>Phone: 850.414.3300<br>Facsimile: 850.488.4483<br><br>Email: Mark.Hamilton@myfloridalegal.com<br><br>Counsel for the State of Florida | |
| **Matthew Seth Sarelson, Esq.**<br>**MATTHEW SETH SARELSON, P.A.**<br>1522 Cecilia Ave<br>Coral Gables, FL 33146-1625<br>Telephone: 305.773.1952<br>Email: msarelson@sarelson.com<br><br>Counsel for Relator | **Jon M. Herskowitz, Esq.**<br>**BARON & HERSKOWITZ**<br>9100 S. Dadeland Blvd.<br>Penthouse 1, Suite 1704<br>One Datran Center<br>Miami, FL 33156<br><br>Telephone: 305.670.0101<br>Facsimile: 305.670.2393<br><br>Email: jon@bbfloridalaw.com<br><br>Counsel for Relator |

The Complaint in Intervention will be served upon Defendants in accordance with the Federal Rules of Civil Procedure and the False Claims Act.

/s James A. Weinkle
**JAMES A. WEINKLE**